**IN THE UNITED STATES DISTRICT
COURT FOR THE NORTHERN DISTRICT
OF TEXAS FT. WORTH DIVISION**

| | | |
|---|---|---|
| **EUGENIO VARGAS**<br>**Plaintiff/Counterclaim Defendant** | § <br> § <br> § <br> § <br> § <br> § | |
| **V.** | § <br> § <br> § | **Case No. 4:22-CV-00430-Y** |
| **ASSOCIATION OF**<br>**PROFESSIONAL FLIGHT**<br>**ATTENDANTS, JULIE HEDRICK,**<br>**ERIK HARRIS** | § <br> § <br> § <br> § <br> § <br> § | |
| **Defendants/Counterclaim Plaintiff.** | § <br> § | |

---

**INDEX TO APPENDIX TO PLAINTIFF'S BRIEF IN SUPPORT OF ITS RESPONSE TO
DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**

---

| Tab Description | Appendix Pages |
|---|---|
| 1. **04/20/2022 and 10/22/2020 Email from O'Neil to Harris and Harris to Nikitas and Officers containing Full Review and Confidential Memo**<br>*(prepared by Woods Stephens & O'Neil, L.L.P)* | 001-015 |
| 2. **04/18/2022 Affidavit of Nena Martin and communication from National Treasurer, Erik Harris, to the entire Board and Executive Committee** | 016-024 |
| 3. **01/14/2022 Plaintiff's Original Petition**<br>*(Tarrant County Justice Court, Precinct Three*<br>*Cause No. JP03-22-D C00017757)* | 025-035 |
| 4. **06/18/2014 APFA Constitution**<br>(Article VII – governing *hearings and disciplinary procedures*) | 036-048 |
| 5. **AAA Recommendation "Challenges to an Arbitration Award"**<br>*(published by The American Arbitration Association)* | 049 |

| Tab | Description | Appendix Pages |
|---|---|---|
| 6. | **Affidavit by Ladonna Casey** | **050-052** |
| 7. | **09/23/2019 1st Set of Charges Against Vargas**<br>*(Chinery and Lee Recommendation re Charges*<br>*Executive Committee's vote Charges were not timely filed)* | **053-057** |
| 8. | **11/24/2020 2cd Set of Charges Against Vargas**<br>*(Chinery and Lee Recommendation re Charges*<br>*Executive Committee's vote Charges were not timely filed)* | **058-062** |
| 9. | **12/1/2020 APFA Executive Committee Resolutions Recommending Disciplinary Proceedings against Ross and Vargas** | **063-065** |
| 10. | **07/2019 -01/2020 Disparaging Emails and Social Media Posts**<br>*(Chinery-Lee criticism of Ross to APFA members)* | **066-067** |

# APPENDIX

## Margot Nikitas

**From:** Erik Harris
**Sent:** Wednesday, April 20, 2022 6:19 PM
**To:** Margot Nikitas; Officers
**Subject:** FW: Memo for the Board and EC
**Attachments:** APFA - Board and EC memo.pdf; APFA - Vargas schedules A - C.pdf; APFA - Dunaway schedules A - C.pdf; APFA - Martin schedules A - C.pdf; APFA - Ross schedules A - C.pdf

**Follow Up Flag:** Follow up
**Flag Status:** Flagged

--
# Erik Harris *Pronouns: he, him, his*
National Treasurer
Association of Professional Flight Attendants
Office 817.540.0108x 8231 | Email eharris@apfa.org
*The content of this email is intended solely for the recipient(s).*
*It is not to be shared, forwarded or posted without the author's written consent.*



**From:** Hal O'Neil <oneil@
**Date:** Thursday, October 22, 2020 at 12:11 PM
**To:** Erik Harris <eharris@
**Cc:** Pam Bush <pbush@v
**Subject:** Memo for the Board and EC

Erik.....attached is the Board and EC Memo for your review. Also are the attached schedules for each officer. Please get back to me if this memo looks OK.

Thanks, Hal

Hal O'Neil, CPA
Wood, Stephens & O'Neil, L.L.P.
6300 Ridglea Place, Suite #318
Fort Worth, TX 76116

**Direct line - 817-886-3428**
Firm tele. - 817-377-1700 *(my extension #601)*
Firm fax - 817-377-1870

*Important/confidential: This communication and any files or documents attached to it are intended only for the use of the person(s) or entity to which it is addressed; consequently, it may contain information which is privileged and confidential. If you are not the intended recipient(s) of this communication, you are hereby notified that the copying, distribution or other use of this communication is strictly prohibited. If you have received this communication by mistake, please notify the sender immediately by electronic mail and destroy all forms of this communication (electronic or paper). Thank you.*

CONFIDENTIAL - SUBJECT TO PROTECTIVE ORDER
APPENDIX 1

*Any tax advice contained in this communication (including any attachments) is not intended or written to be used, and cannot be used, by the recipient for the purpose of avoiding tax penalties that may be imposed or promoting, marketing or recommending to another party any transaction or tax-related matter(s).*

CONFIDENTIAL - SUBJECT TO PROTECTIVE ORDER

**APPENDIX 2**

# Wood, Stephens & O'Neil, L.L.P.
## Certified Public Accountants

6300 Ridglea Place, Suite 318
Fort Worth, TX 76116
Tele. 817-377-1700
Fax 817-377-1870

---

## CONFIDENTIAL MEMORANDUM

MEMO TO:      APFA Board of Directors and the Executive Committee

FROM:         Hal O'Neil, CPA, Pam Bush
SUBJECT:     Review of officer disbursements and the Bob Ross transition agreement
DATE:         October 22, 2020

The current APFA officers, in consultation with the APFA staff attorney and outside counsel, requested that our firm review specific former officer expense reimbursements and payroll disbursements, as well as the payments arising from the Bob Ross confidential transition agreement. This informal engagement is substantially less in scope than an audit engagement, the objective of which would be the expression of an opinion regarding these specific disbursements. Accordingly, we do not express an opinion or any form of assurance regarding these disbursements. Our task under this informal engagement, was as follows:

1. To review the backup for the former officers' salary disbursement amounts from 2016 - 2018 and to determine these base salaries were calculated correctly and in compliance with the guidelines and pay rates stipulated in the APFA policy manual. Please see the enclosed schedule A for each officer.

2. To prepare an overpayment schedule of the accrued and unused sick, and accrued and unused vacation time payments made to Bob Ross in 2018, similar to the overpayment schedules we prepared previously for the other three officers. Please see the enclosed schedules B and C for each officer. These overpayment schedules for the other officers were previously provided to the Board of Directors. Please note the Bob Ross confidential transition agreement states that he will be paid all of his accrued and unused sick, and accrued and unused vacation time. This agreement doesn't specify that the payments be made in accordance with the policy manual guidelines. Consequently, these payments appear appropriate and in compliance with the transition agreement. This agreement also specifies reimbursement payments to him of up to $10,000 in actual moving expenses. His moving expense reimbursement payments did not exceed this amount.

3. To assist the APFA accounting department staff in reviewing and organizing the various requested documents, as set forth in the flight attendants Chinery and Lee financial document request.

Please contact us should the Board of Directors or the Executive Committee have questions regarding our limited engagement.

Sincerely,

*Hal O'Neil, CPA*

CONFIDENTIAL - SUBJECT TO PROTECTIVE ORDER

APPENDIX 3

| A |
|---|

## Marcy Dunaway - National Secretary Pay

105 hours paid monthly at the highest purser pay including international overide, per the policy manual.

| | | | | |
|---|---|---|---|---|
| * | Maximum flight attendant pay | 60.13 | | |
| | Purser Pay | 7.50 | | |
| | International pay | 3.75 | | |
| | | 71.38 | 105 hours | 7,494.90 |

| Bi-monthly pay 4/1/16 - 12/31/16 | 3,747.45 |
|---|---|

| | | | | |
|---|---|---|---|---|
| ** | Maximum flight attendant pay | 61.33 | | |
| | Purser Pay | 7.50 | | |
| | International pay | 3.75 | | |
| | | 72.58 | 105 hours | 7,620.90 |

| Bi-monthly pay - 1/1/17 - 5/1/17 | 3,810.45 |
|---|---|

| 91,450.80 | Annual salary |
|---|---|
| 250.55 | Daily rate for sick and vacation |

| | | | | |
|---|---|---|---|---|
| *** | Maximum flight attendant pay | 64.96 | | |
| | Purser Pay | 7.50 | | |
| | International pay | 3.75 | | |
| | | 76.21 | 105 hours | 8,002.05 |

| Bi-monthly pay - 5/2/17 - 12/31/17 | 4,001.03 |
|---|---|

| 96,024.60 | Annual salary |
|---|---|
| 263.08 | Daily rate for sick and vacation |

| | | | | |
|---|---|---|---|---|
| **** | Maximum flight attendant pay | 66.26 | | |
| | Purser Pay | 7.50 | | |
| | International pay | 3.75 | | |
| | | 77.51 | 105 hours | 8,138.55 |

| Bi-monthly pay - 1/1/18 - 3/31/18 | 4,069.28 |
|---|---|

| 97,662.60 | Annual salary |
|---|---|
| 267.57 | Daily rate for sick and vacation |

| | |
|---|---|
| * | Pay rates effective 4/1/16 |
| ** | Pay rates effective 1/1/17 - 5/1/17 |
| *** | Pay rates effective 5/2/17 - 12/31/17 (1.6% increase) |
| **** | Pay rates effective 1/1/18 - 3/31/18 |

CONFIDENTIAL - SUBJECT TO PROTECTIVE ORDER

APPENDIX 4

| | | | | B | | | | | |
|---|---|---|---|---|---|---|---|---|---|
| **National Officer:** | **Marcy Dunaway** | | | | | | | | |
| | | | Annual | Daily amount | Eligible | | | | |
| | | | Salary | (divide by 365) | Days to pay | Payment | | | |
| **Profit Sharing - 2016** | | | | | | | | | |
| | | | | | | 2,424.86 | *(paid 3/10/17)* | | |
| **Vacation Pay - 2017** | | | | | | | | | |
| | | | $ 91,450.80 | 250.55 | 14 | 3,507.70 | *(paid 3/31/2017)* | | |
| **Sick Pay - 2017** | | | | | | | | | |
| | | | $ 91,450.80 | 250.55 | 12 | 3,006.60 | *(paid 3/31/2017)* | | |
| **Retro** | | | | | | 831.60 | *(paid 6/1/17)* | | |
| **Triple Grand Slam** | | | | | | 300.00 | *(paid 7/6/17)* | | |
| **Grand Slam** | | | | | | 150.00 | *(paid 1/25/18)* | | |
| **Profit Sharing - 2018** | | | | | | 2,270.35 | *(paid 3/9/18)* | | |
| **Vacation Pay - 2018** | | | | | | | | | |
| | | | $ 112,659.36 | 308.66 | 14 | 4,321.24 | *(paid 3/29/2018)* | | |
| **Sick Pay - 2018** | | | | | | | | | |
| | | | $ 112,659.36 | 308.66 | 12 | 3,703.92 | *(paid 3/29/2018)* | | |
| **Vacation Pay - 2017 - (adjustment paid in 2018)** | | | | | | 513.10 | | | |
| **Sick Pay - 2017 - (adjustment paid in 2018)** | | | | | | 439.80 | | | |
| | | | | | | 952.90 | *(paid 3/29/2018)* | | |
| **End of Term Payout - 2018** | | | | | | | | | |
| | | | $ 110,926.06 | 303.91 | 60 | 18,234.60 | *(paid 6/29/2018)* | | |
| **Profit Sharing - 2018** | | | | | | 1,199.47 | *(paid 3/8/19)* | | |

CONFIDENTIAL - SUBJECT TO PROTECTIVE ORDER

APPENDIX 5

| | | | C | | | | | | |
|---|---|---|---|---|---|---|---|---|---|

**National Officer:** **Marcy Dunaway**     <u>**Overpayment Calculation**</u>

| | Annual | Daily amount | Eligible | | | |
|---|---|---|---|---|---|---|
| | Salary | (divide by 365) | Days to pay | Payment | | |

**Vacation Pay - 2018**

| | Annual Salary | Daily amount (divide by 365) | Eligible Days to pay | Payment | | |
|---|---|---|---|---|---|---|
| Original amount - paid in error (a) | $ 112,659.36 | 308.66 | 14 | $ 4,321.24 | *(paid 3/29/2018)* | |
| Correct calculation amount | $ 97,662.72 | 267.57 | 14 | $ 3,745.98 | | |
| | | | Overpayment | $ 575.26 | $ 575.26 | |

**Sick Pay - 2018**

| | | | | | | |
|---|---|---|---|---|---|---|
| Original amount - paid in error (a) | $ 112,659.36 | 308.66 | 12 | $ 3,703.92 | *(paid 3/29/2018)* | |
| Correct calculation amount | $ 97,662.72 | 267.57 | 12 | $ 3,210.84 | | |
| | | | Overpayment | $ 493.08 | $ 493.08 | |

**End of term payout - 2018**

| | | | | | | |
|---|---|---|---|---|---|---|
| Original amount - paid in error (a) | $ 110,926.06 | 303.91 | 60 | $ 18,234.60 | *(paid 6/29/2018)* | |
| Correct calculation amount | $ 97,662.60 | 267.57 | 60 | $ 16,054.20 | | |
| | | | Overpayment | $ 2,180.40 | $ 2,180.40 | |

| | | | | |
|---|---|---|---|---|
| **Vacation Pay - 2017 (adjustment paid in 2018....all paid in error)** | Overpayment | $ 513.10 | $ 513.10 | *(paid 3/29/2018)* |
| **Sick Pay - 2017 (adjustment paid in 2018....all paid in error)** | Overpayment | $ 439.80 | $ 439.80 | *(paid 3/29/2018)* |
| | Overpayment subtotal | | $ 4,201.64 | ** |
| **Add 2018 profit-sharing contribution paid (3/8/2019) on excess amount above \*\*** | | | $ 58.82 | *(based on 1.4%)* |
| **Total overpayment - due to APFA** | | | $ 4,260.46 | |

(a) - included union pay (MEA/SAF)

CONFIDENTIAL - SUBJECT TO PROTECTIVE ORDER

**A**

**Nena Martin - National Vice President Pay**
**National President Pay (3/2/18)**

110.5 hours paid monthly at the highest purser pay including international overide, per the policy manual.

|   |   |   |   |   |
|---|---|---|---|---|
| * Maximum flight attendant pay | 60.13 | | | |
| Purser Pay | 7.50 | | | |
| International pay | 3.75 | | | |
| | 71.38 | 110.5 hours | 7,887.49 | |

| **Bi-monthly pay 4/1/16 - 12/31/16** | | | **3,943.75** |
|---|---|---|---|

|   |   |   |   |   |
|---|---|---|---|---|
| ** Maximum flight attendant pay | 61.33 | | | |
| Purser Pay | 7.50 | | | |
| International pay | 3.75 | | | |
| | 72.58 | 110.5 hours | 8,020.09 | |

| **Bi-monthly pay - 1/1/17 - 5/1/17** | | | **4,010.05** |
|---|---|---|---|

| 96,241.08 | Annual salary |
|---|---|
| 263.67 | Daily rate for sick and vacation |

|   |   |   |   |   |
|---|---|---|---|---|
| *** Maximum flight attendant pay | 64.96 | | | - |
| Purser Pay | 7.50 | | | |
| International pay | 3.75 | | | |
| | 76.21 | 110.5 hours | 8,421.21 | |

| **Bi-monthly pay - 5/2/17 - 12/31/17** | | | **4,210.60** |
|---|---|---|---|

| 101,054.46 | Annual salary |
|---|---|
| 276.86 | Daily rate for sick and vacation |

|   |   |   |   |   |
|---|---|---|---|---|
| **** Maximum flight attendant pay | 66.26 | | | |
| Purser Pay | 7.50 | | | |
| International pay | 3.75 | | | |
| | 77.51 | 110.5 hours | 8,564.86 | |

| **Bi-monthly pay - 1/1/18 - 3/1/18** | | | **4,282.43** |
|---|---|---|---|

| 102,778.26 | Annual salary |
|---|---|
| 281.58 | Daily rate for sick and vacation |

==Stepped in as President on 3/2/18==

|   |   |   |   |   |
|---|---|---|---|---|
| **** Maximum flight attendant pay | 66.26 | | | |
| Purser Pay | 7.50 | | | |
| International pay | 3.75 | | | |
| | 77.51 | 116 hours | 8,991.16 | |

| **Bi-monthly pay - 3/2/18 - 3/31/18** | | | **4,495.58** |
|---|---|---|---|

| 107,893.92 | Annual salary |
|---|---|
| 295.60 | Daily rate for sick and vacation |

* Pay rates effective 4/1/16
** Pay rates effective 1/1/17 - 5/1/17
*** Pay rates effective 5/2/17 - 12/31/17 (1.6% increase)
**** Pay rates effective 1/1/18 - 3/31/18

CONFIDENTIAL - SUBJECT TO PROTECTIVE ORDER

APPENDIX 7

| | | | B | | | | | |
|---|---|---|---|---|---|---|---|---|
| **National Officer:** | **Nena Martin** | | | | | | | |
| | | | Annual | Daily amount | Eligible | | | |
| | | | Salary | (divide by 365) | Days to pay | Payment | | |
| **Profit Sharing - 2016** | | | | | | 2,541.90 | *(paid 3/10/17)* | |
| **Vacation Pay - 2017** | | | | | | | | |
| | | $ | 96,241.20 | 263.67 | 14 | 3,691.38 | *(paid 3/31/2017)* | |
| **Sick Pay - 2017** | | | | | | | | |
| | | $ | 96,241.20 | 263.67 | 12 | 3,164.04 | *(paid 3/31/2017)* | |
| **Retro Pay** | | | | | | 875.16 | *(paid 6/1/17)* | |
| **Triple Play Grand Slam** | | | | | | 300.00 | *(paid 7/6/17)* | |
| **Grand Slam** | | | | | | 150.00 | *(paid 1/25/18)* | |
| **Profit Sharing - 2017** | | | | | | 2,373.70 | *(paid 3/9/18)* | |
| **Vacation Pay - 2018** | | | | | | | | |
| | | $ | 131,844.90 | 361.22 | 14 | 5,057.08 | *(paid 3/29/2018)* | |
| **Sick Pay - 2018** | | | | | | | | |
| | | $ | 131,844.90 | 361.22 | 12 | 4,334.64 | *(paid 3/29/2018)* | |
| **Vacation Pay - 2017 - (adjustment paid in 2018)** | | | | | | 520.94 | | |
| **Sick Pay - 2017 - (adjustment paid in 2018)** | | | | | | 439.80 | | |
| | | | | | | 960.74 | *(paid 3/29/18)* | |
| **End of Term Payout - 2018** | | | | | | | | |
| | | $ | 118,046.02 | 323.41 | 60 | 19,404.60 | *(paid 6/29/2018)* | |
| **Profit Sharing - 2018** | | | | | | 1,279.64 | *(paid 3/8/19)* | |

CONFIDENTIAL - SUBJECT TO PROTECTIVE ORDER

APPENDIX 8

|  |  |  | C |  |  |  |  |  |  |  |
|---|---|---|---|---|---|---|---|---|---|---|
| **National Officer:** | **Nena Martin** |  |  | **Overpayment Calculation** |  |  |  |  |  |  |
|  |  |  | Annual | Daily amount | Eligible |  |  |  |  |  |
|  |  |  | Salary | (divide by 365) | Days to pay | Payment |  |  |  |  |
| **Vacation Pay - 2018** |  |  |  |  |  |  |  |  |  |  |
|  | Original amount - paid in error (a) |  | $ 131,844.90 | 361.22 | 14 | $ 5,057.08 | (paid 3/29/2018) |  |  |  |
|  | Correct calculation amount |  | $ 101,510.74 | 278.11 | 14 | $ 3,893.54 |  |  |  |  |
|  |  |  |  |  | Overpayment | $ 1,163.54 | $ 1,163.54 |  |  |  |
| **Sick Pay - 2018** |  |  |  |  |  |  |  |  |  |  |
|  | Original amount - paid in error (a) |  | $ 131,844.90 | 361.22 | 12 | $ 4,334.64 | (paid 3/29/2018) |  |  |  |
|  | Correct calculation amount |  | $ 101,510.74 | 278.11 | 12 | $ 3,337.32 |  |  |  |  |
|  |  |  |  |  | Overpayment | $ 997.32 | $ 997.32 |  |  |  |
| **End of term payout - 2018** |  |  |  |  |  |  |  |  |  |  |
|  | Original amount - paid in error (a) |  | $ 118,046.02 | 323.41 | 60 | $ 19,404.60 | (paid 6/29/2018) |  |  |  |
|  | Correct calculation amount |  | $ 107,893.92 | 295.60 | 60 | $ 17,736.00 |  |  |  |  |
|  |  |  |  |  | Overpayment | $ 1,668.60 | $ 1,668.60 |  |  |  |
| **Vacation Pay - 2017 (adjustment paid in 2018....all paid in error)** |  |  |  |  | Overpayment | $ 520.94 | $ 520.94 | (paid 3/29/2018) |  |  |
| **Sick Pay - 2017 (adjustment paid in 2018....all paid in error)** |  |  |  |  | Overpayment | $ 439.80 | $ 439.80 | (paid 3/29/2018) |  |  |
|  |  |  |  |  | Overpayment subtotal | | $ 4,790.20 | ** |  |  |
|  |  | Add 2018 profit-sharing contribution paid (3/8/2019) on excess amount above ** | | | | | $ 67.06 | (based on 1.4%) |  |  |
|  |  |  | **Total overpayment - due to APFA** | | | | **$ 4,857.26** |  |  |  |
| (a) - included union pay (MEA/SAF) |  |  |  |  |  |  |  |  |  |  |

CONFIDENTIAL - SUBJECT TO PROTECTIVE ORDER

| | | | | A | | | |
|---|---|---|---|---|---|---|---|

## Bob Ross - National President Pay

116 hours paid monthly at the highest purser pay including international overide, per the policy manual.

| * | Maximum flight attendant pay | 60.13 | | |
|---|---|---|---|---|
| | Purser Pay | 7.50 | | |
| | International pay | 3.75 | | |
| | | 71.38 | 116 hours | 8,280.08 |

| Bi-monthly pay 4/1/16 - 12/31/16 | 4,140.04 |
|---|---|

| ** | Maximum flight attendant pay | 61.33 | | |
|---|---|---|---|---|
| | Purser Pay | 7.50 | | |
| | International pay | 3.75 | | |
| | | 72.58 | 116 hours | 8,419.28 |

| Bi-monthly pay - 1/1/17 - 5/1/17 | 4,209.64 |
|---|---|

| 101,031.36 | Annual salary |
|---|---|
| 276.80 | Daily rate for sick and vacation |

| *** | Maximum flight attendant pay | 64.96 | | | - |
|---|---|---|---|---|---|
| | Purser Pay | 7.50 | | | |
| | International pay | 3.75 | | | |
| | | 76.21 | 116 hours | 8,840.36 | |

| Bi-monthly pay - 5/2/17 - 12/31/17 | 4,420.18 |
|---|---|

| 106,084.32 | Annual salary |
|---|---|
| 290.64 | Daily rate for sick and vacation |

| **** | Maximum flight attendant pay | 66.26 | | |
|---|---|---|---|---|
| | Purser Pay | 7.50 | | |
| | International pay | 3.75 | | |
| | | 77.51 | 116 hours | 8,991.16 |

| Bi-monthly pay - 1/1/18 - 7/31/18 | 4,495.58 |
|---|---|

| 107,893.92 | Annual salary |
|---|---|
| 295.60 | Daily rate for sick and vacation |

| * | Pay rates effective 4/1/16 |
| ** | Pay rates effective 1/1/17 - 5/1/17 |
| *** | Pay rates effective 5/2/17 - 12/31/17 (1.6% increase) |
| **** | Pay rates effective 1/1/18 - 7/31/18 |

CONFIDENTIAL - SUBJECT TO PROTECTIVE ORDER

| | | | B | | | |
|---|---|---|---|---|---|---|
| **National Officer:** | Bob Ross | | | | | |
| | | Annual Salary | Daily amount (divide by 365) | Eligible Days to pay | Payment | |
| **Profit Sharing - 2016** | | | | | 2,652.22 | (paid 3/10/17) |
| **Vacation Pay - 2017** | | | | | | |
| | | $ 101,031.36 | 276.80 | 14 | 3,875.20 | (paid 3/31/17) |
| **Sick Pay - 2017** | | | | | | |
| | | $ 101,031.36 | 276.80 | 12 | 3,321.60 | (paid 3/31/17) |
| **Retro - Wage Arbitration Award 1.6%** | | | | | 918.72 | (paid 6/1/17) |
| **Triple Play Grand Slam** | | | | | 300.00 | (paid 7/6/17) |
| **Grand slam** | | | | | 150.00 | (paid 1/25/18) |
| (Additional $50 grand slam paid on 2/15/18 salary check) | | | | | | |
| **2017 Profit Sharing** | | | | | 2,458.19 | (paid 3/9/18) |
| **Vacation & Sick Pay - 2017 - (adjustment paid in 2018)** | | | | | 968.76 | (paid 3/29/2018) |
| **Vacation Pay - 2017 (remaining unused days per agreement)** | | | | | | |
| | | $ 114,632.67 | 314.06 | 17 | 5,339.02 | (paid 3/29/2018) |
| **Vacation Pay - 2018 (remaining unused days per agreement)** | | | | | | |
| | | $ 122,121.70 | 334.58 | 29 | 9,702.82 | (paid 3/29/2018) |
| | | (Paid in two checks in the amount of $4,851.41 each) | | | | |
| **Sick Pay - 2018** | | | | | | |
| | | $ 122,121.69 | 334.58 | 12 | 4,014.96 | (paid 3/29/2018) |
| **End of Term Payout - 2017 (January 1 - December 31, 2017)** | | | | | | |
| | | $ 118,046.02 | 334.58 | 35 | 11,710.30 | (paid 3/29/2018) |
| | | (Paid in two checks in the amount of $3,903.43 each and one for $3,903.44) | | | | |
| **End of Term Payout - 2018 (January 1 - July 31, 2018)** | | | | | | |
| | | $ 118,046.02 | 334.58 | 20.44 | 6,838.82 | (paid 3/29/2018) |
| | | (Paid in two checks in the amount of $3,419.41 each) | | | | |
| **Profit sharing 2018** | | | | | 1,403.99 | (paid 3/8/19) |

CONFIDENTIAL - SUBJECT TO PROTECTIVE ORDER

APPENDIX 11

CONFIDENTIAL - SUBJECT TO PROTECTIVE ORDER

|  | | C | | | | | |
|---|---|---|---|---|---|---|---|
| **National Officer:** | **Bob Ross** | | **Overpayment Calculation** | | | | |
| | | Annual | Daily amount | Eligible | | | |
| | | Salary | (divide by 365) | Days to pay | Payment | | |
| **Vacation Pay - 2017** | | | | | | | |
| | Original amount | $ 101,031.36 | 276.80 | 14 | $ 3,875.20 | OK (paid 3/31/17) | |
| | | | | Overpayment | $ - | $ - | |
| **Sick Pay - 2017** | | | | | | | |
| | Original amount | $ 101,031.36 | 276.80 | 12 | $ 3,321.60 | OK (paid 3/31/17) | |
| | | | | Overpayment | $ - | $ - | |
| **Vacation & Sick Pay - 2017 - (adjustment paid in 2018….all paid in error)** | | | | Overpayment | $ 968.76 | $ 968.76 | |
| **Vacation Pay - 2017 (remaining unused days per agreement)** | | | | | | | |
| | Original amount - paid in error (a) | $ 114,632.67 | 314.06 | 17 | $ 5,339.02 | (paid 3/29/2018) | |
| | Correct calculation amount | $ 101,031.36 | 276.80 | 17 | $ 4,705.60 | | |
| | | | | Overpayment | $ 633.42 | $ 633.42 | |
| **Vacation Pay - 2018 (remaining unused days per agreement)** | | | | | | | |
| | Original amount - paid in error (a) | $ 122,121.70 | 334.58 | 29 | $ 9,702.82 | (paid 3/29/2018) | |
| | Correct calculation amount | $ 107,893.92 | 295.60 | 29 | $ 8,572.40 | | |
| | | | | Overpayment | $ 1,130.42 | $ 1,130.42 | |
| **Sick Pay - 2018** | | | | | | | |
| | Original amount - paid in error (a) | $ 122,121.69 | 334.58 | 12 | $ 4,014.96 | (paid 3/29/2018) | |
| | Correct calculation amount | $ 107,893.92 | 295.60 | 12 | $ 3,547.20 | | |
| | | | | Overpayment | $ 467.76 | $ 467.76 | |
| **End of term payout - 2017 (January 1 - December 31, 2017)** | | | | | | | |
| | Original amount - paid in error (a) | $ 118,046.02 | 334.58 | 35 | $ 11,710.30 | (paid 3/29/2018) | |
| | Correct calculation amount | $ 107,893.92 | 295.60 | 35 | $ 10,346.00 | | |
| | | | | Overpayment | $ 1,364.30 | $ 1,364.30 | |
| **End of Term Payout - 2018 (January 1 - July 31, 2018)** | | | | | | | |
| | Original amount - paid in error (a) | $ 118,046.02 | 334.58 | 20.44 | $ 6,838.82 | (paid 3/29/2018) | |
| | Correct calculation amount | $ 107,893.92 | 295.60 | 20.44 | $ 6,042.06 | | |
| | | | | Overpayment | $ 796.75 | $ 796.75 | |
| | | | | Overpayment subtotal | | $ 5,361.41 | ** |
| | **Add 2018 profit-sharing contribution paid (3/8/2019) on excess amount above **** | | | | | $ 75.06 | (based on 1.4%) |
| | | **Total overpayment - due to APFA** | | | | $ 5,436.47 | |

| A |
|---|

## Eugenio Vargas - National Treasurer Pay

105 hours paid monthly at the highest purser pay including international overide, per the policy manual.

| | | | | |
|---|---|---|---|---|
| * | Maximum flight attendant pay | 60.13 | | |
| | Purser Pay | 7.50 | | |
| | International pay | 3.75 | | |
| | | 71.38 | 105 hours | 7,494.90 |

| | |
|---|---|
| Bi-monthly pay 4/1/16 - 12/31/16 | 3,747.45 |

| | | | | |
|---|---|---|---|---|
| ** | Maximum flight attendant pay | 61.33 | | |
| | Purser Pay | 7.50 | | |
| | International pay | 3.75 | | |
| | | 72.58 | 105 hours | 7,620.90 |

| | |
|---|---|
| Bi-monthly pay - 1/1/17 - 5/1/17 | 3,810.45 |

| | |
|---|---|
| 91,450.80 | Annual salary |
| 250.55 | Daily rate for sick and vacation |

| | | | | |
|---|---|---|---|---|
| *** | Maximum flight attendant pay | 64.96 | | |
| | Purser Pay | 7.50 | | |
| | International pay | 3.75 | | |
| | | 76.21 | 105 hours | 8,002.05 |

| | |
|---|---|
| Bi-monthly pay - 5/2/17 - 12/31/17 | 4,001.03 |

| | |
|---|---|
| 96,024.60 | Annual salary |
| 263.08 | Daily rate for sick and vacation |

| | | | | |
|---|---|---|---|---|
| **** | Maximum flight attendant pay | 66.26 | | |
| | Purser Pay | 7.50 | | |
| | International pay | 3.75 | | |
| | | 77.51 | 105 hours | 8,138.55 |

| | |
|---|---|
| Bi-monthly pay - 1/1/18 - 3/31/18 | 4,069.28 |

| | |
|---|---|
| 97,662.60 | Annual salary |
| 267.57 | Daily rate for sick and vacation |

| | |
|---|---|
| * | Pay rates effective 4/1/16 |
| ** | Pay rates effective 1/1/17 - 5/1/17 |
| *** | Pay rates effective 5/2/17 - 12/31/17 (1.6% increase) |
| **** | Pay rates effective 1/1/18 - 3/31/18 |

CONFIDENTIAL - SUBJECT TO PROTECTIVE ORDER

| | | | Annual Salary | Daily amount (divide by 365) | Eligible Days to pay | Payment | |
|---|---|---|---|---|---|---|---|
| | | | | | | **B** | |
| **National Officer:** | | **Eugenio Vargas** | | | | | |
| **Profit Sharing - 2016** | | | | | | 2,435.07 | *(paid 3/10/17)* |
| **Vacation Pay - 2017** | | | | | | | |
| | | | $ 91,450.80 | 250.55 | 14 | 3,507.70 | *(paid 3/31/2017)* |
| **Sick Pay - 2017** | | | | | | | |
| | | | $ 91,450.80 | 250.55 | 12 | 3,006.60 | *(paid 3/31/2017)* |
| **Retro** | | | | | | 831.60 | *(paid 6/1/17)* |
| | | | | | | $ 150.00 | *(paid 1/25/18)* |
| **Profit Sharing 2017** | | | | | | 2,269.76 | *(paid 3/9/18)* |
| **Vacation Pay - 2018** | | | | | | | |
| | | | $ 113,021.02 | 309.65 | 14 | 4,335.10 | *(paid 3/29/2018)* |
| **Sick Pay - 2018** | | | | | | | |
| | | | $ 113,021.02 | 309.65 | 12 | 3,715.80 | *(paid 3/29/2018)* |
| **Vacation Pay - 2017 - (adjustment paid in 2018)** | | | | | | 523.46 | |
| **Sick Pay - 2017 - (adjustment paid in 2018)** | | | | | | 448.68 | |
| | | | | | | 972.14 | *(paid 3/29/2018)* |
| **End of Term Payout - 2018** | | | | | | | |
| | | | $ 111,317.70 | 304.98 | 54 | 16,468.92 | *(paid 6/29/2018)* |
| **Profit Sharing - 2018** | | | | | | 1,141.03 | *(paid 3/8/19)* |

CONFIDENTIAL - SUBJECT TO PROTECTIVE ORDER

APPENDIX 14

| | | | C | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|---|
| **National Officer:** | **Eugenio Vargas** | | | **Overpayment Calculation** | | | | | | |
| | | | Annual | Daily amount | Eligible | | | | | |
| | | | Salary | (divide by 365) | Days to pay | Payment | | | | |
| **Vacation Pay - 2018** | | | | | | | | | | |
| | Original amount - paid in error (a) | | $ 113,021.02 | 309.65 | 14 | $ 4,335.10 | *(paid 3/29/2018)* | | | |
| | Correct calculation amount | | $ 97,662.72 | 267.57 | 14 | $ 3,745.98 | | | | |
| | | | | | Overpayment | $ 589.12 | | $ 589.12 | | |
| | | | | | | | | | | |
| **Sick Pay - 2018** | | | | | | | | | | |
| | Original amount - paid in error (a) | | $ 113,021.02 | 309.65 | 12 | $ 3,715.80 | *(paid 3/29/2018)* | | | |
| | Correct calculation amount | | $ 97,662.72 | 267.57 | 12 | $ 3,210.84 | | | | |
| | | | | | Overpayment | $ 504.96 | | $ 504.96 | | |
| | | | | | | | | | | |
| **End of term payout - 2018** | | | | | | | | | | |
| | Original amount - paid in error (a) | | $ 111,317.70 | 304.98 | 54 | $ 16,468.92 | *(paid 6/29/2018)* | | | |
| | Correct calculation amount | | $ 97,662.60 | 267.57 | 54 | $ 14,448.78 | | | | |
| | | | | | Overpayment | $ 2,020.14 | | $ 2,020.14 | | |
| | | | | | | | | | | |
| **Vacation Pay - 2017 (adjustment paid in 2018....all paid in error)** | | | | | Overpayment | $ 523.46 | | $ 523.46 | *(paid 3/29/2018)* | |
| **Sick Pay - 2017 (adjustment paid in 2018....all paid in error)** | | | | | Overpayment | $ 448.68 | | $ 448.68 | *(paid 3/29/2018)* | |
| | | | | | | | | | | |
| | | | | | Overpayment subtotal | | | $ 4,086.36 | ** | |
| | | | | | | | | | | |
| | | Add 2018 profit-sharing contribution paid (3/8/2019) on excess amount above ** | | | | | | $ 57.21 | *(based on 1.4%)* | |
| | | | | | | | | | | |
| | | **Total overpayment - due to APFA** | | | | | | $ 4,143.57 | | |
| | | | | | | | | | | |
| (a) - included union pay (MEA/SAF) | | | | | | | | | | |

CONFIDENTIAL - SUBJECT TO PROTECTIVE ORDER

APPENDIX 15

## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF TEXAS
## FT.WORTH DIVISION

| | | |
|---|---|---|
| **ROBERT (BOB) ROSS** | § | |
| **Plaintiff,** | § | |
| | § | |
| | § | |
| **V.** | § | |
| | § | |
| **MCGAUGHEY, REBER AND** | § | |
| **ASSOCIATES, INC., ASSOCIATION** | § | |
| **OF PROFESSIONAL FLIGHT** | § | **Case No. _____** |
| **ATTENDANTS, JULIE HEDRICK,** | § | |
| **AND ERIK HARRIS** | § | |
| **Defendants.** | § | |

## AFFIDAVIT OF NENA MARTIN IN SUPPORT OF PLAINTIFF'S ORIGINAL COMPLAINT AND MOTION TO VACATE

BEFORE ME, the undersigned authority, on this day personally appeared Nena Martin, who being by me first duly sworn, did state:

1. "I am employed as a Flight Attendant working with American Airlines, Inc. and I served on the Board of Directors for the Association of Professional Flight Attendants, between April 2011 to January 2021. I am of sound mind and body to make this affidavit and have personal knowledge of the following facts:

   a. I attended the Board of Director's meetings on October 27, 2020, and October 28, 2020, in which evidence from an accounting firm hired by APFA was presented off the record. Erik Harris presented spreadsheets he stated were the results of an accounting review that showed Robert "Bob" Ross owed for an overpayment made under his Transition Agreement in the amount of $5,436.47.

<u>**Exhibit B**</u>

I was present at this meeting and reviewed all documents submitted and can attest to the true and correct findings of the Board of Directors at this time.

b. I have not seen the Confidential Memorandum dated October 22, 2020, from Wood, Stephens & O'Neil, L.L.P ("Confidential Memorandum") and the Board of Directors were not presented this Confidential Memorandum at any formal APFA Board of Directors meeting or discussion with which I participated.

c. I received an email from Erik Harris on November 25, 2020, with a letter attached. A true and correct copy of that letter is attached hereto and marked Exhibit B-1. This information was presented to me on or about October 27, 2020, with the other Board of Directors while discussing it off the record. No formal vote was ever made, no formal record ever taken. It was decided that APFA General Counsel, Margo Nikitas, would call and discuss the accounts with Mr. Ross to review the spreadsheet.

d. I also attended the APFA Executive Committee meeting on December 1, 2020, where the Executive Committee reviewed the charges filed by Melissa Chinery-Burns and Sandra Lee against Robert "Bob" Ross. At this Executive Committee meeting, I had the opportunity to hear all arguments made against Robert Ross prior to the Executive Committed voting on whether the charges were timely, specific, and valid. The Confidential Memorandum dated October 22, 2020, from Wood, Stephens & O'Neil, L.L.P was never presented to the Executive Committee for review and consideration prior to voting on the charges."

FURTHER AFFIANT SAYETH NOT.

**Nena Martin**

SWORN AND SUBSCRIBED TO before me on this ⅛ day of April 2022.

Notary Public, State of Missouri

Jennifer D. Schuler
Comm. Exp. 10/07/2024
NOTARY PUBLIC
NOTARY SEAL
#20861406
St. Charles County
STATE OF MISSOURI

<u>**Exhibit B**</u>

3 of 2

**From:** Erik Harris <eharris ███████>
**Sent:** Wednesday, November 25, 2020 9:58 AM
**To:** Base Presidents <BasePresidents ██████>; Executive Committee <ExecutiveCommittee ██████g>
**Cc:** Margot Nikitas <MNikitas ██████>
**Subject:** Bob Ross' Overpayment

Hi all-

The attached letter was sent to Bob Ross yesterday in regards to the Overpayment of wages. I gave him a deadline of January 1, 2021 to cure the debt owed to APFA or to make payment arrangements.

As always, I will keep you all posted on the progress of collecting these funds.

Thanks,

Erik

--

# Erik Harris *Pronouns: he, him, his*

National Treasurer
Association of Professional Flight Attendants
██████████████

*The content of this email is intended solely for the recipient(s).*
*It is not to be shared, forwarded or posted without the author's written consent.*

# Exhibit B-1



**Association of Professional Flight Attendants**

Representing the **Flight Attendants** of AmericanAirlines

November 24, 2020

**Via Email and Return Receipt Certified Mail #7019 1120 0000 0179 3144**

Mr. Bob Ross
4701 Hayloft Ct
El Dorado Hills, CA 95762

**RE: Overpayment of Wages**

Dear Mr. Ross:

I am sending this letter to follow-up on our telephone conversation on November 10, 2020. During our call, we discussed the finding of the APFA Board of Directors that you were overpaid in the amount of $5,436.47 in 2018. The Board's finding was based on the results of a review from an independent accounting firm which determined that the formula used to determine the daily rate for your sick and vacation payout was incorrect. (See Schedule C, enclosed).

On or before January 1, 2021, please remit payment (via check, money order, cashier's check, or credit card) to APFA in full or contact me to discuss payment arrangements.

Please contact me at 817.540.0108 or eharris⬚⬚⬚⬚⬚ with any questions or concerns. Thank you for your prompt cooperation.

Sincerely,

Erik Harris
National Treasurer

Enclosure

CC: APFA Board of Directors
APFA Executive Committee
Margot Nikitas, General Counsel

**Exhibit B-1**





A

**Bob Ross - National President Pay**

116 hours paid monthly at the highest purser pay including international overide, per the policy manual.

| | | | | |
|---|---|---|---|---|
| * Maximum flight attendant pay | | 60.13 | | |
| Purser Pay | | 7.50 | | |
| International pay | | 3.75 | | |
| | | 71.38 | 116 hours | 8,280.08 |

| Bi-monthly pay 4/1/16 - 12/31/16 | | | | 4,140.04 |
|---|---|---|---|---|

| | | | | |
|---|---|---|---|---|
| ** Maximum flight attendant pay | | 61.33 | | |
| Purser Pay | | 7.50 | | |
| International pay | | 3.75 | | |
| | | 72.58 | 116 hours | 8,419.28 |

| Bi-monthly pay - 1/1/17 - 5/1/17 | | | | 4,209.64 |
|---|---|---|---|---|
| | 101,031.36 | Annual salary | | |
| | 276.80 | Daily rate for sick and vacation | | |

| | | | | |
|---|---|---|---|---|
| *** Maximum flight attendant pay | | 64.96 | | |
| Purser Pay | | 7.50 | | |
| International pay | | 3.75 | | |
| | | 76.21 | 116 hours | 8,840.36 |

| Bi-monthly pay - 5/2/17 - 12/31/17 | | | | 4,420.18 |
|---|---|---|---|---|
| | 106,084.32 | Annual salary | | |
| | 290.64 | Daily rate for sick and vacation | | |

| | | | | |
|---|---|---|---|---|
| **** Maximum flight attendant pay | | 66.26 | | |
| Purser Pay | | 7.50 | | |
| International pay | | 3.75 | | |
| | | 77.51 | 116 hours | 8,991.16 |

| Bi-monthly pay - 1/1/18 - 7/31/18 | | | | 4,495.58 |
|---|---|---|---|---|
| | 107,893.92 | Annual salary | | |
| | 295.60 | Daily rate for sick and vacation | | |

\* Pay rates effective 4/1/16
\*\* Pay rates effective 1/1/17 - 5/1/17
\*\*\* Pay rates effective 5/2/17 - 12/31/17 (1.6% Increase)
\*\*\*\* Pay rates effective 1/1/18 - 7/31/18

# Exhibit B-1

# Exhibit B-1

| National Officer: | Bob Ross | | | | |
|---|---|---|---|---|---|
| | Annual Salary | Daily amount (divide by 365) | Eligible Days to pay | Payment | |
| Profit Sharing - 2016 | | | | 2,652.22 | *(paid 3/10/17)* |
| Vacation Pay - 2017 | $ 101,031.36 | 276.80 | 14 | 3,875.20 | *(paid 3/31/17)* |
| Sick Pay - 2017 | $ 101,031.36 | 276.80 | 12 | 3,321.60 | *(paid 3/31/17)* |
| Retro - Wage Arbitration Award 1.6% | | | | 918.72 | *(paid 6/1/17)* |
| Triple Play Grand Slam | | | | 300.00 | *(paid 7/6/17)* |
| Grand slam (Additional $50 grand slam paid on 2/15/18 salary check) | | | | 150.00 | *(paid 1/25/18)* |
| 2071 Profit Sharing | | | | 2,458.19 | *(paid 3/9/18)* |
| Vacation & Sick Pay - 2017 - (adjustment paid in 2018) | | | | 968.76 | *(paid 3/29/2018)* |
| Vacation Pay - 2017 (remaining unused days per agreement) | $ 114,632.67 | 314.06 | 17 | 5,339.02 | *(paid 3/29/2018)* |
| Vacation Pay - 2018 (remaining unused days per agreement) | $ 122,121.70 (Paid in two checks in the amount of $4,851.41 each) | 334.58 | 29 | 9,702.82 | *(paid 3/29/2018)* |
| Sick Pay - 2018 | $ 122,121.69 | 334.58 | 12 | 4,014.96 | *(paid 3/29/2018)* |
| End of Term Payout - 2017 (January 1 - December 31, 2017) | $ 118,046.02 (Paid in two checks in the amount of $3,903.43 each and one for $3,903.44) | 334.58 | 35 | 11,710.30 | *(paid 3/29/2018)* |
| End of Term Payout - 2018 (January 1 - July 31, 2018) | $ 118,046.02 (Paid in two checks in the amount of $3,419.41 each) | 334.58 | 20.44 | 6,838.82 | *(paid 3/29/2018)* |
| Profit sharing 2018 | | | | 1,403.59 | *(paid 3/8/19)* |

**National Officer: Bob Ross** — **Overpayment Calculation**

| | Annual Salary | Daily amount (divide by 365) | Eligible Days to pay | Payment | |
|---|---|---|---|---|---|
| **Vacation Pay - 2017** | | | | | |
| Original amount | $ 101,031.36 | 276.80 | 14 | $ 3,875.20 | OK (paid 3/31/17) |
| Overpayment | | | | $ - | $ - |
| **Sick Pay - 2017** | | | | | |
| Original amount | $ 101,031.36 | 276.80 | 12 | $ 3,321.60 | OK (paid 3/31/17) |
| Overpayment | | | | $ - | $ - |
| **Vacation & Sick Pay - 2017 - (adjustment paid in 2018....all paid in error)** | | | Overpayment | $ 968.76 | $ 968.76 |
| **Vacation Pay - 2017 (remaining unused days per agreement)** | | | | | |
| Original amount - paid in error (a) | $ 114,632.67 | 314.06 | 17 | $ 5,339.02 | (paid 3/29/2018) |
| Correct calculation amount | $ 101,031.36 | 276.80 | 17 | $ 4,705.60 | |
| Overpayment | | | Overpayment | $ 633.42 | $ 633.42 |
| **Vacation Pay - 2018 (remaining unused days per agreement)** | | | | | |
| Original amount - paid in error (a) | $ 122,121.70 | 334.58 | 29 | $ 9,702.82 | (paid 3/29/2018) |
| Correct calculation amount | $ 107,893.92 | 295.60 | 29 | $ 8,572.40 | |
| Overpayment | | | Overpayment | $ 1,130.42 | $ 1,130.42 |
| **Sick Pay - 2018** | | | | | |
| Original amount - paid in error (a) | $ 122,121.69 | 334.58 | 12 | $ 4,014.96 | (paid 3/29/2018) |
| Correct calculation amount | $ 107,893.92 | 295.60 | 12 | $ 3,547.20 | |
| Overpayment | | | Overpayment | $ 467.76 | $ 467.76 |
| **End of term payout - 2017 (January 1 - December 31, 2017)** | | | | | |
| Original amount - paid in error (a) | $ 118,046.02 | 334.58 | 35 | $ 11,710.30 | (paid 3/29/2018) |
| Correct calculation amount | $ 107,893.92 | 295.60 | 35 | $ 10,346.00 | |
| Overpayment | | | Overpayment | $ 1,364.30 | $ 1,364.30 |

**Exhibit B-1**

APPENDIX 23

**Exhibit B-1**

| End of term payout - 2018 (January 1 - July 31, 2018) | | | | | | |
|---|---|---|---|---|---|---|
| Original amount - paid in error (a) | $ | 118,046.02 | 334.58 | 20.44 | $ | 6,838.82 (paid 3/29/2018) |
| Correct calculation amount | $ | 107,893.92 | 295.60 | 20.44 | $ | 6,042.06 |
| | | | Overpayment | | $ | 796.75 |
| | | | | | | |
| | | | | | $ | 796.75 |
| | | | Overpayment subtotal | | $ | 5,361.41 ** |
| | | | | | | |
| Add 2018 profit-sharing contribution paid (3/8/2019) on excess amount above ** | | | | | $ | 75.06 (based on 1.4%) |
| | | | | | | |
| | | Total overpayment - due to APFA | | | $ | 5,436.47 |
| | | | | | | |
| | | | | | | |
| (a) - included union pay (MEA/SAF) | | | | | | |

NO. JP03-22-DC00017757

NO. _____

| | | |
|---|---|---|
| **DIVERSIFIED CREDIT SYSTEMS,** | § | IN THE JUSTICE OF THE PEACE |
| **ASSIGNEE FOR THE "ASSOCIATION** | § | COURT |
| **OF PROFESSIONAL FLIGHT** | § | |
| **ATTENDANTS"** | § | |
| **Plaintiff,** | § | |
| | § | |
| **V.** | § | NO. 3 |
| | § | |
| **ROBERT (BOB) ROSS** | § | |
| **Defendant.** | § | TARRANT COUNTY, TEXAS |

## PLAINTIFF'S ORIGINAL PETITION

**TO THE HONORABLE JUDGE OF SAID COURT:**

**NOW COMES** Diversified Credit Systems, Assignee of a contract (Agreement) from the Association of Professional Flight Attendants, hereinafter called Plaintiff, complaining of and about Robert (Bob) Ross, hereinafter called Defendant, and for cause of action shows unto the Court the following:

### DISCOVERY CONTROL PLAN LEVEL

1.    Plaintiff intends that discovery be conducted under Discovery Level 3.

### PARTIES AND SERVICE

2.    Plaintiff, Diversified Credit Systems (a D/B/A of McGaughey, Reber and Associates, Inc.), Assignee for the "Association of Professional Flight Attendants", is a business entity operating in the State of Texas and whose address is P.O. Box 3424, Longview, TX 75606.

3.    Diversified Credit Systems, Assignee of the Association of Professional Flight

APPENDIX 25

Attendants has not been issued a driver's license. Diversified Credit Systems, Assignee of the Association of Professional Flight Attendants has not been issued a social security number.

4.      Defendant Robert (Bob) Ross, an Individual who is a nonresident of Texas, may be served with process at his home at the following address: 4701 Hayloft Court, El Dorado Hills, CA 95762. Service of said Defendant as described above can be effected by certified mail, return receipt requested.

### JURISDICTION AND VENUE

5.      The subject matter in controversy is within the jurisdictional limits of this court.

6.      Plaintiff seeks:

a.      only monetary relief of $10,000.00 or less, excluding interest, and attorney fees and costs.

7.      This court has jurisdiction over Defendant Robert (Bob) Ross, because said Defendant at the time he purposefully availed himself of the privilege of conducting activities in the state of Texas was a Texas Resident and resided in Tarrant County, Texas, Defendant executed the attached Transition Agreement (hereinafter referred to as the "contractual Agreement" or "Agreement") with the Board of Directors for the "Association of Professional Flight Attendants", who thereafter assigned the contractual Agreement to Plaintiff to collect certain sums due and owing pursuant to the Agreement.

8.      Plaintiff would also show that the cause of action arose from or relates to the contacts of Defendant Robert (Bob) Ross to the state of Texas, thereby conferring specific jurisdiction with respect to said Defendant.

9.      Plaintiff would further show that the Agreement was to be performed in Tarrant Texas.

APPENDIX 26

10.     Venue in Tarrant County is permissive in this cause under Section 15.002(a)(3) of the Texas Civil Practice and Remedies Code because this county was the principal residence of Robert (Bob) Ross, Defendant at the time he signed the Agreement. Defendant resided in Southlake, Tarrant County, Texas at the time he executed the Agreement, and therefore, Venue is property in Justice of the Peace, Precinct 3, Tarrant County, Texas.

## FACTUAL ALLEGATIONS

11.     On or about March 1, 2018, the Association of Professional Flight Attendants (hereafter referred to as "AFPA") entered into a written contract with Robert (Bob) Ross, providing that Defendant would receive certain funds listed in the contract. A copy of the contract is attached as Exhibit "A" and incorporated by reference and for all purposes.

12.     The Contract has been assigned to the Plaintiff, Diversified Credit Systems, for all purposes by Assignor AFPA, but primarily for the purpose of collection of the amounts owed Plaintiff.

## BREACH OF CONTRACT

13.     Plaintiff incorporates by reference the allegations set forth above as if the same were fully set forth herein.

14.     Plaintiff's Assignor, APFA has met all of its obligations under the Transition Agreement (Contract) and all sums due Defendant were fully paid and accepted by Defendant.

15.     All contractual obligations of the Association of Professional Flight Attendants have been fully performed.

16.     Defendant has failed to perform his contractual obligations, specifically, an accounting was performed by the Certified Public Accounting firm of Wood, Stephens & O'Neil. A copy of that firms audit showed that Defendant had been paid in excess of the sums due him

APPENDIX 27

under the Agreement in the sum of $5,436.47. The firms Audit report is attached as Exhibit "B" and attached for all purposes.

17.     The APFA made demand on Defendant's to reimburse Plaintiff for the overpayments. A copy of the accounting and Memorandum from the accountant is attached as Exhibit "B" and incorporated for all purposes herein. Defendant has been provided the accounting and the Accounting firms report, but Defendant has failed to reimburse APFA for the overpayments.

18.     Documentation and demand has been provided Defendant on multiple occasions, including from APFA, Assignee, Diversified Credit Systems and the undersigned Attorney.

## DAMAGES

19.     Plaintiff has sustained damages within the Court's jurisdictional limits of this Court, and as a result of the actions and/or omissions of Defendant described hereinabove, including, but not limited to:

Actual or economic damages for $5,436.47.

## OTHER RELIEF REQUESTED

## ATTORNEY'S FEES

20.     Request is made for all costs and reasonable and necessary attorney's fees incurred by or on behalf of Plaintiff herein, including all fees necessary in the event of an appeal of this cause to a County Court at Law, Court of Appeals and the Supreme Court of Texas, as the Court deems equitable and just, as provided by Chapter 38 of the Texas Civil Practice and Remedies Code.

## ALTERNATIVE ALLEGATIONS

21.     Pursuant to Rules 47 and 48, Texas Rules of Civil Procedure and the rules of

APPENDIX 28

pleadings, allegations in this petition are made in the alternative.

## PRAYER

**WHEREFORE, PREMISES CONSIDERED**, Plaintiff, Diversified Credit Systems, Assignee of the Association of Professional Flight Attendants, respectfully prays that the Defendant be cited to appear and answer herein, and that upon a final hearing of the cause, judgment be entered for the Plaintiff against Defendant for damages requested hereinabove in an amount within the jurisdictional limits of the Court, together with prejudgment and postjudgment interest at the maximum rate allowed by law, attorney's fees, costs of court, and such other and further relief to which the Plaintiff may be entitled at law or in equity, whether pled or unpled.

Respectfully submitted,

*/S/ Michael R. Rake*

**Michael R. Rake, Attorney at Law, PLLC**
**State Bar # 16487600**
P.O. Box 1556, Lake Dallas, TX 75065
Tel. & Fax: 940-498-2103
E-mail: mrake1@mrakeattorney.com

**Attorney for:**
Diversified Credit Systems, Assignee of the Association of Professional Flight Attendants



A CERTIFIED COPY
JUSTICE OF THE PEACE
PRECINCT THREE
TARRANT COUNTY, TEXAS
BY: HM          APPENDIX 29

## TRANSITION AGREEMENT

This TRANSITION AGREEMENT (hereinafter referred to as the "Agreement") is entered into between President ROBERT ROSS (hereinafter referred to as "ROSS"), and the ASSOCIATION OF PROFESSIONAL FLIGHT ATTENDANTS, through its Voting Board of Directors and on behalf of any and all of its officers, directors, employees, agents, members, and attorneys, in their official and individual capacities, together with their successors both jointly and severally (hereinafter collectively and individually referred to as "APFA").

WHEREAS, President ROSS and APFA, through its Voting Board of Directors, find it mutually beneficial and in the best interests of the membership to enter into this Transition Agreement; and

WHEREAS, President ROSS has previously announced his intention not to seek re-election for APFA President, and as such the parties have agreed on the terms of this Agreement.

NOW THEREFORE, in consideration of the mutual covenants contained in this Agreement, President ROSS and APFA (hereinafter collectively referred to as "the Parties"), intending to be legally bound, do hereby stipulate and agree as follows:

1. ROSS hereby voluntarily and irrevocably resigns from his position as the National President of APFA effective at the close of the 2018 APFA Convention, and agrees to announce his resignation by the close as well.

2. ROSS will have access through the close of business on March 9, 2018 to his APFA office, files, and computer to finalize his affairs. Starting upon the announcement of the resignation, all emails, telephonic calls, correspondence and affairs regarding or directed to the APFA National President shall be immediately routed to the successor APFA National President.

3. APFA agrees that ROSS will continue to receive from APFA his current full salary and benefits, including full insurance coverage, through July 31, 2018.

4. APFA agrees to pay ROSS all of his accrued and unused sick and accrued and unused vacation time, from April 1, 2016 through July 31, 2018.

5. APFA agrees to pay Ross, upon his request, a one-time lump sum in the total amount of ten thousand dollars ($10,000.00), which represents ROSS's moving expenses. ROSS shall present the moving expenses to APFA for

EXHIBIT
"A"

payment through 2019.

6. APFA and ROSS will each prepare a communication regarding ROSS's resignation. APFA shall disseminate said communications simultaneously upon the announcement of the resignation. Each statement shall be mutually agreed upon by both Parties prior to its distribution. Further, the Parties will mutually agree on talking points that shall be used for responses to inquiries from APFA members, the press, and the general public for use, beginning with the announcement.

7. The Parties agree that the existence, terms, and content of this Agreement are completely confidential. ROSS agrees not to disclose the existence, terms, or content of this Agreement to any third party, except to his spouse, accountant, financial advisors, or attorney. APFA agrees not to disclose the existence, terms, or content of this Agreement, except to the signatories to this Agreement, and to any APFA officers, employees, accountants or attorneys who have an explicit need to know of this Agreement in order to effectuate its terms. The Parties shall be responsible for ensuring in writing that the confidentiality provisions of this Agreement are fully explained and adhered to by anyone to whom permitted disclosures are made pursuant to this paragraph. The Parties agree that they will respond to all inquiries regarding Ross' transition with APFA in accordance with the communications and talking points prepared pursuant to numbered paragraph 6 of this Agreement.

8. ROSS agrees not to make, orally or in writing, any statements disparaging APFA and/or the Board of Directors, whether or not such statements legally constitute libel or slander, and whether such statements are made to the media, to other individuals, or otherwise. Likewise, APFA's Board of Directors, and its officers, employees and agents who are aware of this Agreement pursuant to the confidentiality provisions of numbered paragraph 7 of this Agreement, agree not to make, orally or in writing, any statements disparaging ROSS or his immediate family, whether or not such statements legally constitute libel or slander, and whether such statements are made to the media, to other individuals, or otherwise.

March 1, 2018:1.0

9. The current APFA National Vice-President will be included in all discussions with the APFA Board of Directors regarding the filling of the APFA National Vice-President position.

10. The Parties and signatories to this Agreement have carefully read and understand this Agreement and acknowledge that no party has made any representations other than those contained herein.

11. The Parties agree that this Agreement constitutes their final and complete understanding with respect to the subject matter hereof and supersedes all prior or contemporaneous negotiations, promises, agreements or representations concerning any matters directly, indirectly, or collaterally related to the subject matter of this Agreement. This Agreement may be executed in counterparts, each of which shall constitute an original, and all of which together shall constitute one and the same Agreement. Electronic and facsimile copies shall constitute originals for all purposes, including enforcement.

12. The Parties agree that this Agreement cannot be amended or modified except by express written consent of the Parties hereto.

13. The Parties agree to submit any and all disputes regarding the validity or enforcement of this Agreement to a mutually chosen arbitrator whose decision shall be binding on both Parties. The expenses of the arbitrator shall be borne by APFA. Venue shall be by agreement of the parties.

14. If any provision, or any part thereof, in this Agreement is found to be invalid, such determination shall not affect the validity of any other provision(s) or part(s) of this Agreement.

15. The terms and conditions of this Agreement shall be binding upon the Parties' successors and assigns.

IN WITNESS WHEREOF, APFA and President ROSS have executed this agreement in _Charlotte, NC_ on the date(s) indicated below.

BY PRESIDENT ROBERT ROSS:

_____
Robert Ross

___3/1/18___
Date

**BY APFA (THROUGH ITS VOTING BOARD OF DIRECTORS):**

_(signature)_

Amy Milenkovic- BOS

Date 3-1-18

_(signature)_

Wanda Sarnacki - CLT

Date 3-1-2018

_(signature)_

Robert Valenta- DCA-AA

Date 3|1|18

_(signature)_

John Pennel - DCA-US

Date 3/1/18

_(signature)_

Maureen Walsh Martin –DFW

Date 3|1|18

_(blank)_

John Nikides – LAX

Date 3/1/18

_(signature)_

Raymond Lewis – LGA

Date 3/1/18

_(signature)_

Randy Trautman– MIA

Date 3/1/2018

_(signature)_

Susan Wroble –ORD

Date 3|1|18

_(signature)_

Kim Kaswinkel – PHL

Date 3|1|18

_(signature)_

Mischel Babi – PHX

Date 3|1|18

_(signature)_

Louise Sullivan – RDU

Date 3|1|18

_(signature)_

Jennifer Welpott – SFO

Date 3|1|18

_(signature)_

Matt Foust – STL

Date 3/1/18

March 1, 2018:1.0

# Wood, Stephens & O'Neil, L.L.P.
## Certified Public Accountants

6300 Ridglea Place, Suite 318
Fort Worth, TX 76116
Tele. 817-377-1700
Fax 817-377-1870

## CONFIDENTIAL MEMORANDUM

MEMO TO: APFA Board of Directors and the Executive Committee

FROM: Hal O'Neil, CPA, Pam Bush
SUBJECT: Review of officer disbursements and the Bob Ross transition agreement
DATE: October 22, 2020

The current APFA officers, in consultation with the APFA staff attorney and outside counsel, requested that our firm review specific former officer expense reimbursements and payroll disbursements, as well as the payments arising from the Bob Ross confidential transition agreement. This informal engagement is substantially less in scope than an audit engagement, the objective of which would be the expression of an opinion regarding these specific disbursements. Accordingly, we do not express an opinion or any form of assurance regarding these disbursements. Our task under this informal engagement, was as follows:

1. To review the backup for the former officers' salary disbursement amounts from 2016 - 2018 and to determine these base salaries were calculated correctly and in compliance with the guidelines and pay rates stipulated in the APFA policy manual. Please see the enclosed schedule A for each officer.

2. To prepare an overpayment schedule of the accrued and unused sick, and accrued and unused vacation time payments made to Bob Ross in 2018, similar to the overpayment schedules we prepared previously for the other three officers. Please see the enclosed schedules B and C for each officer. These overpayment schedules for the other officers were previously provided to the Board of Directors. Please note the Bob Ross confidential transition agreement states that he will be paid all of his accrued and unused sick, and accrued and unused vacation time. This agreement doesn't specify that the payments be made in accordance with the policy manual guidelines. Consequently, these payments appear appropriate and in compliance with the transition agreement. This agreement also specifies reimbursement payments to him of up to $10,000 in actual moving expenses. His moving expense reimbursement payments did not exceed this amount.

3. To assist the APFA accounting department staff in reviewing and organizing the various requested documents, as set forth in the flight attendants Chinery and Lee financial document request.

Please contact us should the Board of Directors or the Executive Committee have questions regarding our limited engagement.

Sincerely,

*Hal O'Neil, CPA*

EXHIBIT
" *B* "

| | | | C | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|---|
| **National Officer:** | **Bob Ross** | | | **Overpayment Calculation** | | | | | | |
| | | | | | | | | | | |
| | | | Annual | Daily amount | Eligible | | | | | |
| | | | Salary | (divide by 365) | Days to pay | Payment | | | | |
| Vacation Pay - 2017 | | | | | | | | | | |
| | Original amount | | $ 101,031.36 | 276.80 | 14 | $ 3,875.20 | OK *(paid 3/31/17)* | | | |
| | | | | | Overpayment | $ - | $ - | | | |
| | | | | | | | | | | |
| Sick Pay - 2017 | | | | | | | | | | |
| | Original amount | | $ 101,031.36 | 276.80 | 12 | $ 3,321.60 | OK *(paid 3/31/17)* | | | |
| | | | | | Overpayment | $ - | $ - | | | |
| | | | | | | | | | | |
| Vacation & Sick Pay - 2017 - (adjustment paid in 2018....all paid in error) | | | | | Overpayment | $ 968.76 | $ 968.76 | | | |
| Vacation Pay - 2017 (remaining unused days per agreement) | | | | | | | | | | |
| | Original amount - paid in error (a) | | $ 114,632.67 | 314.06 | 17 | $ 5,339.02 | *(paid 3/29/2018)* | | | |
| | Correct calculation amount | | $ 101,031.36 | 276.80 | 17 | $ 4,705.60 | | | | |
| | | | | | Overpayment | $ 633.42 | $ 633.42 | | | |
| | | | | | | | | | | |
| Vacation Pay - 2018 (remaining unused days per agreement) | | | | | | | | | | |
| | Original amount - paid in error (a) | | $ 122,121.70 | 334.58 | 29 | $ 9,702.82 | *(paid 3/29/2018)* | | | |
| | Correct calculation amount | | $ 107,893.92 | 295.60 | 29 | $ 8,572.40 | | | | |
| | | | | | Overpayment | $ 1,130.42 | $ 1,130.42 | | | |
| | | | | | | | | | | |
| Sick Pay - 2018 | | | | | | | | | | |
| | Original amount - paid in error (a) | | $ 122,121.69 | 334.58 | 12 | $ 4,014.96 | *(paid 3/29/2018)* | | | |
| | Correct calculation amount | | $ 107,893.92 | 295.60 | 12 | $ 3,547.20 | | | | |
| | | | | | Overpayment | $ 467.76 | $ 467.76 | | | |
| | | | | | | | | | | |
| End of term payout - 2017 (January 1 - December 31, 2017) | | | | | | | | | | |
| | Original amount - paid in error (a) | | $ 118,046.02 | 334.58 | 35 | $ 11,710.30 | *(paid 3/29/2018)* | | | |
| | Correct calculation amount | | $ 107,893.92 | 295.60 | 35 | $ 10,346.00 | | | | |
| | | | | | Overpayment | $ 1,364.30 | $ 1,364.30 | | | |
| | | | | | | | | | | |
| End of Term Payout - 2018 (January 1 - July 31, 2018) | | | | | | | | | | |
| | Original amount - paid in error (a) | | $ 118,046.02 | 334.58 | 20.44 | $ 6,838.82 | *(paid 3/29/2018)* | | | |
| | Correct calculation amount | | $ 107,893.92 | 295.60 | 20.44 | $ 6,042.06 | | | | |
| | | | | | Overpayment | $ 796.75 | $ 796.75 | | | |
| | | | | | | | | | | |
| | | | | | Overpayment subtotal | | $ 5,361.41 | ** | | |
| | Add 2018 profit-sharing contribution paid (3/8/2019) on excess amount above ** | | | | | | $ 75.06 | *(based on 1.4%)* | | |
| | | | | | | | | | | |
| | | | **Total overpayment - due to APFA** | | | | $ 5,436.47 | | | |



# THE

# CONSTITUTION

### OF THE

# ASSOCIATION

### OF

# PROFESSIONAL

# FLIGHT

# ATTENDANTS

*As amended by the APFA Membership*
JUNE 18, 2014

# ARTICLE II

## *MEMBERSHIP*

### Section 1. ELIGIBILITY FOR MEMBERSHIP:

A. Any person in the craft and class of Flight Attendant at an airline at which the APFA is the recognized Bargaining Agent for the Flight Attendant employee group at that airline shall be eligible to join and maintain membership in the APFA as hereinafter provided.

B. A Flight Attendant who accepts a paid position with the employer outside the craft and class of Flight Attendant shall no longer be eligible for membership in the APFA. If the person returns to the position of Flight Attendant, he or she shall be eligible to rejoin the union, upon payment of APFA's re-initiation fee.

### Section 2. OBLIGATIONS OF MEMBERS:

Members of the Association do accept and agree to abide by this Constitution of the APFA as it is in force or as it may be altered, added to, deleted from or amended in accordance with the provisions of this Constitution. Ignorance of this Constitution will not be considered a proper excuse for any violation of the provisions contained herein. Inherent in the rights, privileges, duties and responsibilities of membership in the APFA is the obligation to responsibly exercise these rights, privileges, duties and responsibilities.

### Section 3. BILL OF RIGHTS OF MEMBERS:

A. All members of the APFA shall have the right of free speech, freedom of assembly and freedom to dissent.

B. All members of the APFA shall have access to all administrative and financial reports and records except as provided in Section 5.B(1) of this Article II.

C. All members of the APFA shall have the right to individual privacy.

D. All members of the APFA shall have the right to due process and equal representation.

E. All members of the APFA shall have full equality of rights and shall not be discriminated against because of national origin, race, religion, creed, age, disability, sex, sexual orientation or gender identity.

### Section 4. CLASSIFICATION OF MEMBERSHIP:
– ACTIVE:

## Section 3.    BOARD OF DIRECTORS:

A.  The Board of Directors is authorized and empowered to take any and all lawful action consistent with this Constitution to safeguard and protect the APFA, and the rights, privileges, duties and responsibilities of the officers, representatives and members of the APFA. The Board of Directors is authorized to interpret this Constitution and to establish, prescribe and adopt such other policies which may be consistent with this Constitution as required for the direction and management of the affairs of the APFA.

B.  Organization
    (1) The Board of Directors shall consist of the National President, National Vice President, National Secretary, National Treasurer, and each Base President.
    (2) The Voting Board of Directors shall consist of each Base President.
        a.  The National President, National Vice President, National Secretary and National Treasurer shall have a voice but no vote at a Board of Directors meeting, except that:
        b.  when all voting members are present, and when a vote on an issue by the voting members results in a tie, with no abstentions, the National President must cast the deciding vote.
    (3) The Delegate(s) shall be those Base Presidents (or in their absence, the Vice Presidents) who have been elected by the membership of their bases, or duly elected by virtue of running unopposed, to serve as delegates to the Annual or Special Convention(s) with the authority to elect or remove Ad Hoc Members of the Executive Committee.

C.  Annual Training:  The Board of Directors shall participate in an annual training session.

D.  Annual Convention:  The Board of Directors shall convene once a year as the Annual Convention of the APFA on a date and at a location determined by the National President. The Annual Convention shall be held no earlier than ninety (90) days and no later than fifteen (15) days prior to the expiration of the current fiscal year.

E.  Special Meetings/Special Conventions:  The Board of Directors may convene for special meetings or special conventions.
    (1) A Special Meeting or a Special Convention may be called by the National President or by four (4) members of the Executive Committee, or by a

or Special Convention(s), Delegates may remove Ad Hoc Members and may nominate and elect Ad Hoc Members to fill a vacancy for the balance of the unexpired term.

## Section 4.   EXECUTIVE COMMITTEE:

A. The Executive Committee shall act as the agent for and on behalf of the Voting Board of Directors, and shall interpret this Constitution, subject to the approval of the Board of Directors.

B. Organization:  The Executive Committee shall consist of the National President, National Vice President, National Secretary, National Treasurer and five (5) Ad Hoc Members.

C. Quarterly Meetings:  The Executive Committee shall convene for the transaction of business at least once each quarter on a date and at a location determined by the National President.

D. Special Meetings:   The Executive Committee may convene for special meetings.

   (1) A Special Meeting of the Executive Committee may be called by the National President or by four (4) members of the Executive Committee by request to the National Secretary.

   (2) The Special Meeting must convene within seven (7) days following receipt by the National Secretary of such request.

E. Quorum:  In order to conduct the business of the APFA, including business conducted by Teleconference Meeting, a quorum or more must be present.  Seven (7) members of the Executive Committee shall constitute a quorum.

F. Agenda: There shall be no restrictions on business conducted at any meeting of the Executive Committee provided however, that no business shall be acted upon without:

   (1) three (3) days notice of the agenda in writing to the Executive Committee prior to such meeting, or

   (2) approval by a majority of the members of the Executive Committee who are present at the meeting.

G. All issues shall be decided by five (5) or more members of the Executive Committee voting in the affirmative except as provided for in this Constitution.

H. Each member of the Executive Committee shall be entitled to:

   (1) one (1) vote;

M. All business conducted by a Teleconference Meeting shall become a part of the permanent record of the APFA.

N. Any business conducted by a Teleconference Meeting is subject to reconsideration at the next meeting of the Executive Committee or Board of Directors, as appropriate.

## Section 6. OFFICERS:

A. Definitions: The National Officers shall be the National President, National Vice President, National Secretary and National Treasurer.

B. Duties of the National President shall include but not be limited to the following:

(1) The National President shall be the chief executive officer of the APFA, and shall conduct the affairs of the APFA in accordance with this Constitution and the resolutions and policy decisions of the Board of Directors and/or the Executive Committee.

(2) The National President shall sign any agreements, supervise the activities of the APFA and carry out any duties the Board of Directors and/or the Executive Committee may request, in accordance with this Constitution.

(3) The National President shall convene any convention or meeting of the Board of Directors and the Executive Committee. S/he must convene the Board to review any proposed Collective Bargaining Agreement between the APFA and AAL.

(4) The National President shall convene any meeting of the OAL Operation Advisory Panel. S/he must convene the Panel to review any proposed Collective Bargaining Agreement between the APFA and an airline other than AAL whose Flight Attendant employees are represented by the APFA.

(5) The National President shall act as Chairperson for the Board of Directors, the Executive Committee, the Negotiating Committee and the OAL Operation Advisory Panel. The National President shall oversee all other national committees, unless otherwise provided for in this Constitution or by resolution or policy of the Board of Directors or the Executive Committee.

(6) The National President shall recommend to the Executive Committee all changes in employment and staff requirements and, subject to the approval of the Executive Committee, fix compensation for all agents and employees of the APFA. The National

President shall be responsible for the employment, supervision and discharge of all agents and employees of the APFA.

(7) The National President may address an Annual Report to the membership.

(8) The National President shall nominate, and the Executive Committee shall confirm or reject, individual active members in good standing to serve as National Chairs.

(9) The National President shall appoint Negotiating Committee members in accordance with Article X, Section 5, A(1)b of this Constitution.

(10) The National President shall have the authority to hire, retain or employ general counsel and/or other legal counsel for the APFA, subject to the approval of the Executive Committee.

(11) The National President shall direct and coordinate legislative and political initiatives and any lobbying efforts on behalf of the Association to further the objectives of the APFA.

C. Duties of the National Vice President shall include but not be limited to the following:

(1) The National Vice President shall assist the National President in the discharge of all duties. In the absence of the National President, or should a vacancy occur in the office of National President, the National Vice President shall perform the duties of the National President.

(2) The primary responsibility of the National Vice President shall be to oversee the grievance and arbitration process provided for in the Railway Labor Act and the Collective Bargaining Agreement(s) entered into between the APFA and employers.

(3) The National Vice President shall serve as the APFA's permanent Chairperson of the Flight Attendant System Board(s) of Adjustment.

(4) The National Vice President shall coordinate activities of the System Board(s) of Adjustment with other departments within the APFA.

(5) The National Vice President shall nominate, and the Executive Committee shall confirm or reject, individual active members in good standing to serve as Regional Representatives.

(6) The National Vice President shall determine the specific base assignments of each Region and assign and coordinate the activities of the members appointed to serve as Regional Representatives.

(7) The National Vice President shall be authorized to hire, retain and employ legal counsel as may be required to provide members with representation in the grievance and arbitration process, subject to the approval of the Executive Committee.

(8) The National Vice President shall ensure the training and continuing education of all representatives involved in the grievance and arbitration process.

(9) The National Vice President shall coordinate and chair a Grievance Review Committee to oversee the disposition of grievances.

D. Duties of the National Secretary shall include but not be limited to the following:

(1) The National Secretary shall be responsible for all administrative records of the Association.

(2) The National Secretary shall cause to be kept an administrative record of all officers, representatives and appointees.

(3) The National Secretary shall notify the Board of Directors, the Executive Committee and the OAL Operation Advisory Panel of any convention or meeting.

(4) The National Secretary shall cause to be kept a record of all proceedings at any convention or meeting of the Board of Directors, or at any meeting of the Executive Committee and the OAL Operation Advisory Panel.

(5) The National Secretary shall submit a written report of all meetings of the Executive Committee and the OAL Operation Advisory Panel to the Board of Directors within fifteen (15) days following such meeting.

(6) The National Secretary shall oversee the National Balloting Committee.

(7) The National Secretary shall assist the National President in the preparation of any Annual Report to the members of the APFA.

(8) The National Secretary shall administer Article VII procedures.

(9) The National Secretary shall update and ensure distribution of the APFA Policy Manual.

(10) The National Secretary shall assist in establishing regular training and continuing education programs for representatives of the APFA, and shall maintain the APFA training records of all representatives.

(11) The National Secretary shall ensure that training and reference materials and Association publications and manuals are maintained.

(12) The National Secretary shall be responsible for the library of the Association.

(13) The National Secretary shall establish and maintain lines of communication between members of the Executive Committee, Base Representatives and all administrative departments and committees.

(14) The National Secretary shall assist the National Treasurer in the discharge of all duties.  Should there be a temporary absence in the office of the National Treasurer; the National Secretary may perform the duties of the National Treasurer.

E.  Duties of the National Treasurer shall include but not be limited to the following:

(1) The National Treasurer shall be responsible for the care and custody of the funds and securities of the APFA, receiving all dues, fees and special assessments assigned to the APFA.

(2) The National Treasurer shall be responsible for all financial records of the APFA.

(3) The National Treasurer shall cause to be kept a record of the APFA's membership so as to show at all times the number of members in each membership status or classification, their respective places of residence, their post office addresses, their base locations and the date when each person became a member of the APFA and/or changed membership status or classification.

(4) The National Treasurer shall cause to be kept an individual record of all dues and assessments for each member.

(5) The National Treasurer shall oversee the APFA Budget Committee and shall assist in the preparation of the annual budget.

(6) The National Treasurer shall submit the annual budget to the Board of Directors for approval at the Annual Convention.

(7) The National Treasurer shall advise the Board of Directors and the Executive Committee of any significant change in the financial standing of the APFA.

(8) The National Treasurer shall submit a monthly financial report to the Board of Directors and to the Executive Committee as provided for in Article IV, Section 4.C of this Constitution.

(9) The National Treasurer shall submit a quarterly financial review to the Board of Directors and to the Executive Committee as provided for in Article IV, Section 4.D of this Constitution.

(10) The National Treasurer shall submit with his/her signature all Federal and State Reports required by law.

(11) The National Treasurer shall oversee and coordinate ongoing computerization of the APFA headquarters files, records and systems.

(12) The National Treasurer shall oversee the daily activities of the APFA headquarters office staff.

(13) The National Treasurer shall coordinate the headquarters office staff to ensure assistance is provided to administrative, committee and support personnel.

(14) The National Treasurer shall assist the National Secretary in the discharge of all duties. Should there be a temporary absence in the office of the National Secretary; the National Treasurer may perform the duties of the National Secretary.

## Section 7. BASE COUNCILS / BASE REPRESENTATIVES:

A. Organization: The Base Council shall consist of the Base President, Vice President, and Base Council Representatives (BCRs). When a base contains both an American Airlines Operation and one or more OAL Operations (as defined in Article I, Section 7,K,2 of this Constitution), the Base Council shall also include an OAL Operation Advisory Panel Representative (APR). The members of a Base Council hold positions with the APFA as Base Representatives.

B. Base Representatives shall hold such positions only at the base where they are stationed.

C. The Base President and Vice President shall be elected by the membership of the base at large.

D. Base Council Representatives (BCRs) shall be elected by the membership of the American Airlines base at which they are stationed. BCRs shall hold such positions only at the base at which they are stationed.

(1) Each base shall be entitled to one BCR for each one hundred (100) members or fraction thereof who are stationed at the base.

E. The Advisory Panel Representative (APR) shall be elected by the membership of the OAL Operation base at which he/she is stationed. The APR shall hold such position only from the OAL Operation base at which he/she is stationed.

# ARTICLE VII
## HEARINGS AND DISCIPLINARY PROCEDURES

**Section 1.** GROUNDS FOR CHARGES:

Any member is subject to fine, suspension or expulsion, or suspension from or removal from office, for any of the following acts:

A. Failure to pay dues, assessments or penalties levied by the Association;

B. Advocating, or working toward, the displacement of the APFA as bargaining representative (providing that advocating, or working toward an affiliation, merger or federation of the APFA pursuant to Article XII of this Constitution shall not be grounds for discipline);

C. Willfully acting as a strike breaker during any work stoppage duly authorized by the Association;

   (1) Notwithstanding Section 1.C, above (which provides as a grounds for charges willfully acting as a strike breaker during any work stoppage duly authorized by the Association) APFA shall not process any charge of willfully acting as a strike breaker during the November 1993 strike against American Airlines.

D. Willful violation of a Flight Attendant's Collective Bargaining Agreement;

E. Theft or embezzlement of Association monies or property;

F. Willful violation of an express Article of this Constitution, or of a proper and express written resolution or policy of the Board of Directors or the Executive Committee;

G. Willfully acting in a manner that causes the Association to violate its legal obligations; or

H. Willfully bringing charges without reasonable basis against another member, officer or representative of the Association, should such charges be dismissed for any reason by the Article VII Arbitrator designated herein, or should such charges not be sustained by the Article VII Arbitrator.

**Section 2.** FILING OF CHARGES:

A. A charge may be filed by any member in good standing. All charges shall be filed with the National Secretary and shall be proffered in writing and shall be specific as to the alleged act(s) and/or the Article(s) of this Constitution

allegedly violated which constitute the basis of the charge(s).

B. The National Secretary shall cause a copy of the charges to be served upon the accused and the accuser within seven (7) days following receipt of the charges. Such notification shall be by registered mail, return receipt requested to their last known addresses, and shall furnish the accused and the accuser a description of all relevant procedures.

C. The National Secretary shall send a copy of all charges to the Executive Committee and to the Board of Directors within seven (7) days following his/her receipt of the charges.

D. Time Limits:

(1) Charges based on Section 1.A through Section 1.F of this Article VII must be filed within sixty (60) days after the accuser becomes aware, or reasonably should have become aware, of the alleged offense.

(2) Charges based on Section 1.G of this Article VII may not be filed unless and until it has been determined, in a separate legal proceeding (such as a lawsuit), that the Association has violated its legal obligations, or unless and until the Association settles a legal proceeding brought against it by furnishing substantial relief to an opposing party. Charges based on Section 1.G above must be filed within sixty (60) days after the accuser becomes aware, or reasonably should have become aware, of the completion or settlement of the legal proceeding.

(3) Charges based on Section 1.H of this Article VII must be filed within sixty (60) days following the Article VII Arbitrator's decision which gives rise to such charge(s).

E. The accused and accuser may be represented during Article VII proceedings by any individual; however, the APFA will not compensate either party for attorney's fees.

## Section 3.  REVIEW OF CHARGES:

At the first regularly scheduled meeting of the Executive Committee following receipt of charges by the National Secretary, the Executive Committee shall review the charges for timeliness, specificity and validity.

A. Should the charges be determined to be timely, specific and valid, such charges shall then be forwarded by the National Secretary via registered mail, return receipt requested to the Article VII Arbitrator designated herein

within seven (7) days following such Executive Committee meeting.

B. Charges deemed untimely by the Executive Committee will be dismissed without appeal.

C. Charges deemed non-specific by the Executive Committee shall be referred back to the accuser. The accuser may resubmit, one time only, such charges to the National Secretary for review by the Executive Committee at its next regularly scheduled meeting without affecting the time limits of Section 2.D of this Article VII.

D. Charges may be deemed invalid and dismissed if the Executive Committee determines that the charges address conduct protected by this Constitution and/or by law (including the LMRDA Bill of Rights). Charges may also be deemed invalid and dismissed if they fail to state a proper claim under Section 1 of this Article VII. Should such charges be dismissed as invalid, the accuser may, within seven (7) days following receipt of notification of dismissal by the Executive Committee, appeal to the Article VII Arbitrator designated herein. If the Article VII Arbitrator determines that the charges are valid, s/he shall so advise the National Secretary, the accused and the accuser, and the charges will be processed in accordance with this Article VII.

## Section 4. SUSPENSION FROM OFFICE:

A. If charges are filed against a national officer or elected representative based on Section 1.B, Section 1.C or Section 1.E of this Article VII, the Board of Directors may determine at any time during the pendency of the charges that the alleged conduct giving rise to the charges threatens the APFA's vital interests. The Voting Board of Directors may then, by two-thirds (2/3) vote, suspend the accused's authority as national officer or elected representative until the threat is removed or the Article VII Arbitrator designated herein resolves the charges, whichever occurs sooner.

B. A national officer or elected representative suspended pursuant to this section shall be entitled, upon demand, to an expedited resolution of the charges, with a decision rendered within thirty (30) days following the Board of Directors Meeting where the officer or elected representative was suspended.

C. If the charges are filed by or against a member of the Executive Committee or the Board of Directors, such member must appoint an alternate member of the Association to participate in the review of the charges as

provided in Section 3 of this Article VII and, when necessary, to participate in the vote regarding the suspension of the member of the Executive Committee or Board of Directors as provided in this Section 4.

## Section 5. APPOINTMENT OF THE ARTICLE VII ARBITRATOR:

A. The Board of Directors shall appoint an arbitrator to resolve all charges filed under this Article VII. The Article VII Arbitrator, once appointed, shall serve until s/he resigns or until the Board of Directors determines to appoint a new Article VII Arbitrator.

B. The Board of Directors may also appoint one or more alternate Article VII Arbitrators who shall have the authority to hear and decide particular charges when the Article VII Arbitrator is not available.

C. C. The Article VII Arbitrator and any alternate Article VII Arbitrator(s) shall be a person expert in labor law who is a neutral (such as an academic or professional labor arbitrator), who has experience as a neutral in adjudicating internal labor organization disputes, and who has no other prior or current involvement with the APFA.

## Section 6. JURISDICTION AND AUTHORITY OF THE ARTICLE VII ARBITRATOR:

A. The Article VII Arbitrator shall have power to resolve all charges referred to him/her during his/her tenure.

B. The administrative procedures for handling Article VII charges shall be included in the APFA Policy Manual. The Article VII Arbitrator may from time to time propose changes in these administrative procedures, and such changes shall become effective and included in the Policy Manual if they are approved by the Board of Directors. The administrative procedures to be adopted shall be in general compliance with American Arbitration Association rules where practicable, but may not conflict in any respect with the provisions of this Constitution.

C. The Article VII Arbitrator may, on his/her own motion or upon motion filed by the accused, declare that charges are untimely or do not allege a violation cognizable as charges under this Article VII and thus are dismissed without the need for hearing.

D. The Article VII Arbitrator may, on his/her own motion, or upon motion filed by the accused, determine that charges are not sufficiently specific and that they will be dismissed unless the accuser amends them to provide sufficient specificity.


# Challenges to an Arbitration Award

The American Arbitration Association® (AAA®) is an administrative organization with no authority to modify, vacate, or re-open a previously awarded arbitration. As a result, the AAA's role in the arbitration process generally ends at the time that the award is transmitted to the parties. If a party to an arbitration wishes to challenge an award for any reason, they need to make an application to a court except in the rare case where the parties' agreement provides for some type of appellate proceeding within the arbitration. Therefore, the AAA would be unable to respond to or consider requests to vacate or to re-open a previously awarded arbitration.

Under federal and state laws, there are limited grounds on which a court may overturn an arbitration award, which include the following:

- the award was procured by corruption, fraud, or undue means;

- there was evident partiality or corruption in the arbitrators;

- arbitrators were guilty of misconduct in refusing to postpone the hearing, upon sufficient cause shown, or in refusing to hear evidence pertinent and material to the controversy; or of any other misbehavior by which the rights of any party have been prejudiced; or

- the arbitrators exceeded their powers, or so imperfectly executed them that a mutual, final, and definite award upon the subject matter submitted was not made.

Neither the AAA nor any arbitrator will be involved in any post-hearing proceedings in a court to enforce or challenge an arbitration award. The AAA rules provide that neither the AAA nor the arbitrator are proper parties to litigation involving an arbitration proceeding or award. In addition, parties to arbitration under AAA rules may not call the arbitrator, the AAA, or AAA employees as a witness in any litigation or any other proceeding relating to the arbitration. Similarly, the arbitrator, the AAA and AAA employees are not competent to testify as witnesses in any such proceeding.

We encourage you to review the information provided at _Find an Attorney or Other Legal Representation_ to find an attorney or other legal representation to represent you in an arbitration or if you wish to hire an attorney to challenge or confirm an arbitration award.

V-41

I was employed at APFA from August 15, 1996, to November 2018.  I retired 4 months after Eugenio Vargas left office because when the new administration came in the work environment became hostile not only with the staff and an Officer.

I was a staff member, specifically I was the Office Coordinator at the time that I retired. One of my many responsibilities was the inventory of furniture. I was very thorough at what I did and had good job performance.

Regarding the furniture in Gabby Harty's apartment. I clearly remember Gabby vacated her apartment and resigned early due to personal reasons. When the lease was almost up Rachael Early (another staff member) and I went to her apartment and took photographs of all the furniture. Rachael was the employee who had the keys. When the lease was over Mike Trapp, Rosemary Cooper's brother (who is an Executive Secretary) picked up the furniture.  I completed the inventory, entered that information into the Office Coordinator computer.

Some of Gabby's furniture was taken to consignment at Kiss it Goodbye and the items they wouldn't take were donated.

I would like to discuss what I know about the items on the attached inventory sheet.

Regarding Shane Staple's items. Shane moved out about the time the administration changed hands.  He provided an inventory sheet. I entered the information into my system.

About Chuck Ransdale's furniture.  Chuck was another representative who left his position early.  I recall there still being time on his lease, so we had another representative move into his apartment. She stayed there for the duration of the lease.  All his furnishings stayed in the apartment for use by her. She stayed in that apartment beyond Eugenio Vargas' term so the inventory of those items would be the responsibility of the Treasurer that came after Eugenio.

I would also like to explain how I did my inventory.  There was a file cabinet with hanging file folders.  Each Officer and representative had a hanging file with and inventory sheet when they came into office. When Eugenio came into office he required each rep to fill out the inventory and return it to me per the Policy Manual. I looked over them. Then I would sign off that it was received. During his

1



administration we started scanning these documents and saving them electronically.

After I retired my Coordinator files were left accessible to other staff members and new Officers, some who, as I said were extremely hostile and vindictive. It is very well within the realm of possibility my work product was taken or modified by them.

The dynamics of the office environment and the stress it created were the very reasons for my early and sudden retirement. I couldn't handle that stress in my life anymore.

Due to dangers associated with COVID and my fears of retaliation I could not attend this hearing in person. I respectfully request you accept this sworn statement.

Thank you.

LaDonna Casey

*LaDonna Casey*

State of Texas
County of Parker
Sworn to and subscribed before me on the
8th day of Sept, 2021
[Type text here]

Notary Signature
My Commission Expires 05/21/2022

SHELBI ELIZABETH WILSON
Notary Public, State of Texas
Comm. Expires 05-21-2022
Notary ID 131676070

Association of Professional Flight Attendants
Depreciation Schedule
FYE March 31, 2017

| Vendor | G/L Acct 1246 - FURN & FIXTURES - FIELD (ACCUM DEPR 1346) Description | Purchase Date | Cost |
|---|---|---|---|
| **Shane Staples/Comm** | | | |
| Ashley Furniture | Sofa/Loveseat/Media Chest/Cocktail Table/End Table King Bed/King Mattress | 05/16 | 4,099.32 |
| | Exchanged Loveseat for Chair | 06/16 | (136.08) |
| | Current Balance | | 3,963.24 |
| **Gaby Harty/Health** | | | |
| Ashley Furniture | Sofa/Loveseat/Cocktail Table/End Table King Bed/King Mattress | 06/16 | 3,266.91 |
| **Chuck Ransdale/Health** | | | |
| Ashley Furniture | Chest/Nightstand/Queen Bed/Queen Mattress | 06/16 | 1,398.76 |
| TOTALS | | | 8,628.91 |

La Donna Casey

State of Texas
County of Parker
Sworn to and subscribed before me on the
8th day of Sept, 2021

Sheli Eli Wil
Notary Signature
My Commission Expires 05/21/2022

SHELBI ELIZABETH WILSON
Notary Public, State of Texas
Comm. Expires 05-21-2022
Notary ID 131576070



**Association of Professional**
**Flight Attendants**
APFA
Representing the Flight Attendants of AmericanAirlines

September 24, 2019

**VIA Return Receipt, Certified Mail #7018 0680 0001 3478 7912**

Mr. Eugenio Vargas
1616 Brookhaven Cir
Bedford, TX 76022

RE: Article VII Charges

Dear Eugenio:

In accordance with Article VII of the APFA Constitution this letter is to inform you that the enclosed charges have been filed against you in your capacity as APFA National Treasurer by Melissa Chinery and Sandra Lee. Enclosed is a copy of the charges which were received on September 19, 2019.

I am also enclosing a copy of Article VII of the APFA Constitution and Section 17 of the APFA Policy Manual. These documents describe APFA's Article VII procedures.

Sincerely,



Lisabeth Hillman
APFA National Secretary

Cc: Melissa Chinery
Sandra Lee
APFA Board of Directors
APFA Executive Committee
Article VII File

Type text here



**Liz Marko**

| | |
|---|---|
| **From:** | Lisabeth Hillman |
| **Sent:** | Monday, September 23, 2019 2:28 PM |
| **To:** | Liz Marko |
| **Subject:** | Art VII charges Original |

**From:** melchinery█████ <melchinery(█████
**Sent:** Thursday, September 19, 2019 8:18:51 PM
**To:** Lisabeth Hillman <secretary@█████
**Cc:** Lori Bassani <president@█████; John Fennel <prdcau█████>; Pauline Toms <prsfo█████; Randy Trautman <prmia@█████; Michael Truan <prdfw@█████; Liz Geiss <vp@█████; Craig Gunter <treasurer@█████; Nena Martin <prstl@█████; Robert Norvell <prlga@█████; Amy Milenkovic <prbos@█████; Louise Sullivan <prrdui@█████; Scott Hazelwood <prclt@█████; Susan Wroble <prord@█████; Kim Kaswinkel <prphl@█████; Mischel Babi <prphx█████; John Nikides <prlax@█████>
**Subject:** Article VII Charges

In accordance with Article VII.2.A. of the APFA Constitution, please consider this document our formal filing of Article VII charges and other policy violations against former National Officers: Nena Martin, Vice President; Marcy Dunaway, Secretary; and Eugenio Vargas, also known as Eduardo Vargas, Treasurer, relating to:

• Violation of Article VII.1.E: Theft or Embezzlement of Association monies or property.
• Violation of Section 5 of the Trip Removal and Expense policy: Policy Statement, which reads:

  Financial policies herein are structured to diminish any financial penalty that a member may incur as a result of providing Union services to Flight Attendants. It is not the intent of this policy for any individual to experience financial gain.

• Violation of Policy Manual language regarding the deliberate change of the formula used to reimburse officers for Sick and Vacation payout as well as profit sharing payout.
• Violation of Article VII 1.G. : Willfully acting in a manner that causes the Association to violate its legal obligations

1

The above National Officers financially benefitted by directing the accounting staff to change the formula of the sick, vacation and profit sharing payouts by including MEA (Meal Expense Allowance) and SAF (Special Assignment Fee) monies. It is not the past practice of the institution to include MEA and SAF in these calculations. It is explained fully to all officers upon being elected to office how to claim expenses and the intent of these expenses. It is also referenced in great detail in Section 5 of the Policy Manual entitled Trip removal and Expense policy. SAF is explained in Section E.1. Intent of the SAF:

• (a) The intent of the Special Assignment Fee is to offer payment to representatives for the days that they conduct APFA business in excess of their normal scheduled bid line. Amounts paid under this arrangement are reportable as wages on the representative's W2 and are subject to withholding and payment of employment taxes.
MEA is similarly explained in Section F, 1-5 in the policy manual.
The violation of Article VII 1.G. is cited because the APFA is governed under the Labor Management Reporting and Disclosure Act of 1959 (LMRDA). Under Title V: Safeguards for Labor Organizations it states:
• Fiduciary Responsibility of Officers of Labor Organizations: (29 U.S.C . 501)
  (c) Any person who embezzles, steals, or unlawfully and willfully abstracts or converts to his own use, or the use of another, any of the moneys, funds, securities, property, or other assets of a labor organization of which he is and officer, or by which he is employed, directly or indirectly, shall be fined not more than $10,000 or imprisoned for not more than 5 years, or both.
Violations of the LMRDA could bring consequences to the APFA as an entity including but not limited to Trusteeship of the organization.

As these charges await adjudication, the APFA Board of Directors is reminded of their responsibility under the APFA Constitution, Article III.3.L.21, "suspend officers or representatives pursuant Article VII", and Article III.3.L.22, "take any and all appropriate action deemed necessary by the Board and in accordance with this Constitution to promote the welfare of the members of the APFA...". Nena Martin is presently serving as the STL President and is in

charge of that Base Budget. Due to the fact that it has been established that she has benefitted financially and has to pay back monies to the APFA, it would follow that she be removed from her position due to a violation of trust while these charges are being reviewed.

The relief sought is the removal of these individual from any office they may presently hold, review any accounting of monies and reports to determine the amount they need to pay back to the APFA is accurate, with interest, and that they be considered members in bad standing and barred from any future Union work permanently.

Melissa Chinery
PHX

Sandra Lee
LAX

Sent from AOL Mobile Mail
Get the new AOL app: mail.mobile.aol.com

Sent from AOL Mobile Mail
Get the new AOL app: mail.mobile.aol.com

APPENDIX 56

# APFA
## EXECUTIVE COMMITTEE MEETING
### 3Q19 EC MEETING
December 5-7, 2019
APFA Unity Pays Conference Room

| Resolution Tally Sheet | | 
|---|---|
| Resolution #: | 61 |
| Maker: | Hillman |
| Second: | Seelye |
| Date: | 12/05/2019 |
| Time: | 6:46 p.m. |

Resolution Name: Chinery-Lee v Vargas - Timely

| YES | = | Yes | ABS | = | Abstain | PXY | = | Proxy Vote |
|---|---|---|---|---|---|---|---|---|
| NO | = | No | N/A | = | Absent | REC | = | Recuse |
| PASS | = | Pass | | | | | | |

COMMENTS:

| | Watson | Price | Conners | Seelye | Hancock | Treasurer | Secretary | Vice President | President |
|---|---|---|---|---|---|---|---|---|---|
| YES | ☐ | ☐ | ☐ | ☐ | ☐ | ☐ | ☐ | ☐ | ☐ |
| NO | ☒ | ☒ | ☒ | ☒ | ☒ | ☒ | ☒ | ☒ | ☒ |
| PASS | ☐ | ☐ | ☐ | ☐ | ☐ | ☐ | ☐ | ☐ | ☐ |
| ABS | ☐ | ☐ | ☐ | ☐ | ☐ | ☐ | ☐ | ☐ | ☐ |
| N/A | ☐ | ☐ | ☐ | ☐ | ☐ | ☐ | ☐ | ☐ | ☐ |
| PXY | ☐ | ☐ | ☐ | ☐ | ☐ | ☐ | ☐ | ☐ | ☐ |
| REC | ☐ | ☐ | ☐ | ☐ | ☐ | ☐ | ☐ | ☐ | ☐ |

YES: 0    NO: 9    ABSTAIN: 0    ABSENT: 0

Status: Passed ☐    Failed ☒    Tabled ☐    Withdrawn ☐    Show of Hands ☐

**WHEREAS,** on September 19, 2019, Melissa Chinery and Sandra Lee filed charges against Eugenio Vargas under Article VII of the APFA Constitution; and

**WHEREAS,** Article VII, Section 3 of the APFA Constitution provides that the Executive Committee shall review Article VII charges for timeliness; and

**WHEREAS,** the Executive Committee has conducted that review.

**BE IT THEREFORE RESOLVED,** that Melissa Chinery's and Sandra Lee's September 19, 2019 charges against Eugenio Vargas are timely.



**Association of Professional Flight Attendants**
Representing the Flight Attendants of American Airlines

November 24, 2020

**VIA Return Receipt, Certified Mail #7019 1120 0000 0179 3120**

Eugenio Vargas
1616 Brookhaven Cir
Bedford, TX 76022

RE: Article VII Charges

Dear Eugenio:

In accordance with Article VII of the APFA Constitution this letter is to inform you that the enclosed revised charges have been filed against you by Melissa Chinery and Sandra Lee. Enclosed is a copy of the charges which were received on November 24, 2020.

I am also enclosing a copy of Article VII of the APFA Constitution and Section 17 of the APFA Policy Manual. These documents describe APFA's Article VII procedures.

Sincerely,

Josh Black
APFA National Secretary

Cc:    Melissa Chinery
       Sandra Lee
       APFA Board of Directors
       APFA Executive Committee
       Article VII File




| | |
|---|---|
| **From:** | melchinery |
| **Sent:** | Friday, November 20, 2020 10:47 AM |
| **To:** | National Secretary |
| **Cc:** | National President; National Vice President; National Treasurer; hussar.michelle@ ███ sel27995 |
| **Subject:** | Vargas Charges |

Please consider this the formal filing of internal charges in accordance with Article VII 2. A. of the APFA Constitution and other Policy Manual violations against former Treasurer Eugenio Vargas.

After years of being denied the ability to view the underlying financial documentation of the Bob Ross administration, we were finally permitted to see specific documents that prove a plethora of violations of the APFA policy Manual as well as Constitutional violations. Our ability to see these documents started on September 24, 2020. However, after 16 hours over two days, we still have not seen half of documentation requested. Due to a lack of access to available dates to continue our investigation, we are forced to file on what has been uncovered due to time limits.

In addition to the specific sections of the Constitution and Bylaws, Vargas violated the following general duties.

Article VII Section 1.F:

Willful violation of an express Article of this Constitution, or of a proper and express written resolution or policy of the Board of Directors or Policy Manual.

Article II Section 2: Obligations of members:

Members of the Association do accept and agree to abide by this Constitution of the APFA as it is in force or as it may be altered, added to, deleted from or amended in accordance with the provisions of this Constitution. Ignorance of this Constitution will not be considered a proper excuse for any violation of the provisions contained herein. Inherent in the rights, privileges, duties and responsibilities of membership in the APFA is the obligation to responsibly exercise these rights, privileges, duties and responsibilities.

Article I Section 7: Definitions (for clarification of the above violations)

E. "Duty" means an obligation of performance, care, or observance which rests upon a person in any position or fiduciary capacity with or as a member of the APFA.
M: "Privilege" means a benefit or advantage enjoyed by a person in any position or fiduciary capacity with or as a member of the APFA.
O. "Responsibility:" means an obligation to answer for a duty to act or failure to act by a person in any position or fiduciary capacity with or as a member of the APFA.
Q. "Rights" means those powers and/or privileges inherent to a person in any position or fiduciary capacity with or as a member of the APFA.

**Violation: Credit Card Expenses**

As is dictated by Federal law as well as APFA policy, the credit card is to be used for business expenses, not for personal use. Mr. Vargas charged a rental car for the week at a cost of almost $700 when he was on vacation in Madrid, Spain. It was confirmed by the present National Treasurer that Mr. Vargas was indeed on vacation when the charges occurred on August 11, 2016. He also charged meals on at least two other trips to Madrid.

These purchases violate:

Policy Manual Section 5 G: Business related expenses: Actual out-of- pocket expenses incurred by a member in conducting APFA business will be reimbursed to the extent provided in this policy. In all cases, receipts must be submitted to verify the expense and to substantiate reimbursement. Expense reimbursement is not intended to be for the personal profit of the APFA member, but to compensate him /her for actual expenses and losses, and is exclusive of other applicable reimbursement provisions in this policy.

Article VII Section 1.F: Willful violation of an express Article of this Constitution, or of a proper and express written resolution or policy of the Board of Directors or Policy Manual.

**Violation: Meal Expenses**
The following is another large subsection of abuse involving the SAF/MEA sections of Section 5: Trip Removal and Expense Policy. The intent of the policy is outlined in the policy statement. Policy Manual Section 5: Trip removal and Expense Policy: .....Financial policies herein are structured to diminish any financial penalty that a member may incur as a result of providing Union services to Flight Attendants. It is not the intent of this policy for any individual to experience financial gain.

As stated earlier, Treasurer Vargas used the APFA credit card for his own personal use. In the brief time we were allowed to look over the APFA credit card statements, we uncovered many meals charged by Vargas that did not meet the requirements of the meal provisions of the APFA policy manual. Vargas charged meals where he was the only identified person or the other participants were also being paid MEA. The policy is clear that meals may only be reimbursed on rare and limited occasions when entertaining outside guests and in no instance when all participants are already receiving meal expenses. This is to prevent double dipping by having APFA pay MEA for meal expenses and then also pay for a representative's meals. This violates Section 5.F:

5. Business Related Expenses:
    a. Representatives are authorized to pay for and to be reimbursed for the meal, snack, or beverage of a guest(s) or other business associate(s) on those occasions when the representative would reasonably be considered the host of an authorized APFA function or meeting.

    1. Discretion and good judgment should be used when exercising this privilege and when incurring such legitimate and necessary Business-Related Expense. Abuse, as determined by the Executive Committee, may lead to the limitation and revocation of this privilege.
    2. In no case may an individual who is otherwise receiving an APFA MEA in any manner be considered the "guest" for the purposes of this provision.

**Violation of Duties as Treasurer.**

2

As National Treasurer Vargas had a duty to safeguard APFA funds and to ensure proper procedures were in place. Vargas failed to ensure proper oversight of credit cards for the national officers. In addition, Vargas allowed the National Officers to receive thousands of dollars in overpayments for sick and vacation payouts. While other National Officers were instructed to repay the funds, Vargas claimed Bob Ross had not been overpaid. Our recent review of the financials uncovered Ross was indeed overpaid thousands of dollars for sick and vacation payouts.

Additionally, former President Bob Ross received a "buyout" from the APFA Board of Directors, and was compensated for leaving office. Vargas failed to properly oversee Ross' payments and allowed Ross to receive payment for MEA, SAF and Maintaining an Office Outside Residence all of which are not part of basic salary.

Finally, thousands of dollars of furniture, including furniture purchased by Vargas, is unaccounted for. As Treasurer Vargas had an obligation under the APFA constitution and federal labor law to safeguard union property. On one receipt dated 5/18/16 under Vargas's union credit card charges we found a purchase for $8733.89 at Ashley furniture. There is no record or inventory of that furniture nor can the furniture be located. The APFA policy manual requires that the National Treasurer inventory equipment and monitor the transfer of equipment between representatives. This was never done

The Treasurer has the responsibility to safeguard the funds of the APFA union members as outlined in Article III Section 6.E. of the APFA Constitution: Duties of the Treasurer: The Treasurer shall be responsible for the care and custody of the funds and securities of the APFA.

**Remedy**
The relief sought is:

1. An independent forensic audit must be accomplished to verify how much was fraudulently siphoned from the APFA payroll, and Mr. Vargas must pay this money back.
2. Mr. Vargas must be considered a member in bad standing and barred from representing American Airlines Flight Attendants for a period of 10 years.
3. There must be changes to the Policy Manual so that this amount of financial malfeasance is not allowed to happen again.
4. There must be a separate body of trained individuals that do not hold regular positions with the APFA that can oversee the annual audit.
5. Any and All Other Relief deemed necessary.

Melissa Chinery LAX
Sandra Lee  LAX


Sent from AOL Mobile Mail
Get the new AOL app: mail.mobile.aol.com

3



**Association of Professional Flight Attendants**

*Representing the Flight Attendants of American Airlines*

December 8, 2020

Eugenio Vargas
1616 Brookhaven Cir
Bedford, TX 76022

RE: Article VII Charges

Dear Mr. Vargas:

In accordance with Article VII, Section 3 of the APFA Constitution, at its meeting on December 1, 2020, the APFA Executive Committee reviewed the Article VII Charges filed against you by Melissa Chinery and Sandra Lee. The Executive Committee found them to be timely, specific, and valid. Enclosed are copies of the Resolutions of the Executive Committee regarding those charges.

Therefore, per Article VII, Section 3.A, I have forwarded the enclosed Charges to the Article VII Arbitrator.

Section 17.S of the Policy Manual sets forth the policy regarding communications with the Arbitrator.

Please contact me via email if you have any questions.

Sincerely,

Josh Black
APFA National Secretary

Cc:     Melissa Chinery
        Sandra Lee
        APFA Board of Directors
        APFA Executive Committee
        Article VII File

# APFA

## EXECUTIVE COMMITTEE MEETING

### 3Q20 EC MEETING
**December 1-2, 2020**
**APFA Unity Pays Conference Room**
**Euless, TX**

| Resolution Tally Sheet | |
|---|---|
| **Resolution #:** | 9 |
| **Maker:** | Black |
| **Second:** | Watson |
| **Date:** | 12/01/2020 |
| **Time:** | 2:02 p.m. |

**Resolution Name: Chinery-Lee v Vargas - Valid**

| | | | |
|---|---|---|---|
| YES = Yes | ABS = Abstain | PXY = Proxy Vote |
| NO = No | N/A = Absent | REC = Recuse |
| PASS = Pass | | |

COMMENTS:

| | Watson | Gluth | Conners | Seelye | Hancock | Treasurer | Secretary | Vice President | President |
|---|---|---|---|---|---|---|---|---|---|
| **YES** | ☒ | ☒ | ☒ | ☒ | ☒ | ☒ | ☒ | ☒ | ☒ |
| **NO** | ☐ | ☐ | ☐ | ☐ | ☐ | ☐ | ☐ | ☐ | ☐ |
| **PASS** | ☐ | ☐ | ☐ | ☐ | ☐ | ☐ | ☐ | ☐ | ☐ |
| **ABS** | ☐ | ☐ | ☐ | ☐ | ☐ | ☐ | ☐ | ☐ | ☐ |
| **N/A** | ☐ | ☐ | ☐ | ☐ | ☐ | ☐ | ☐ | ☐ | ☐ |
| **PXY** | ☐ | ☐ | ☐ | ☐ | ☐ | ☐ | ☐ | ☐ | ☐ |
| **REC** | ☐ | ☐ | ☐ | ☐ | ☐ | ☐ | ☐ | ☐ | ☐ |

YES: 9    NO: 0    ABSTAIN: 0    ABSENT: 0

**Status:** *Passed* ☒    *Failed* ☐    *Tabled* ☐    *Withdrawn* ☐    *Show of Hands* ☐

**WHEREAS**, on November 20, 2020, Melissa Chinery and Sandra Lee filed charges against Eugenio Vargas under Article VII of the APFA Constitution; and

**WHEREAS**, Article VII, Section 3 of the APFA Constitution provides that the Executive Committee shall review Article VII charges for validity, and

**WHEREAS**, the Executive Committee has conducted that review.

**BE IT THEREFORE RESOLVED**, that Melissa Chinery's and Sandra Lee's November 20, 2020 charges against Eugenio Vargas are valid.

**APPENDIX 63**

# APFA
## EXECUTIVE COMMITTEE MEETING

### 3Q20 EC MEETING
#### December 1-2, 2020
#### APFA Unity Pays Conference Room
#### Euless, TX

| Resolution Tally Sheet | | |
|---|---|---|
| **Resolution #:** | 8 | |
| **Maker:** | Black | |
| **Second:** | Watson | |
| **Date:** | 12/01/2020 | |
| **Time:** | 2:00 p.m. | |

**Resolution Name: Chinery-Lee v Vargas - Specific**

| YES | = | Yes | ABS | = | Abstain | PXY | = | Proxy Vote |
|---|---|---|---|---|---|---|---|---|
| NO | = | No | N/A | = | Absent | REC | = | Recuse |
| PASS | = | Pass | | | | | | |

COMMENTS:

| | Watson | Gluth | Conners | Seelye | Hancock | Treasurer | Secretary | Vice President | President |
|---|---|---|---|---|---|---|---|---|---|
| YES | ☒ | ☒ | ☒ | ☒ | ☒ | ☒ | ☒ | ☒ | ☒ |
| NO | ☐ | ☐ | ☐ | ☐ | ☐ | ☐ | ☐ | ☐ | ☐ |
| PASS | ☐ | ☐ | ☐ | ☐ | ☐ | ☐ | ☐ | ☐ | ☐ |
| ABS | ☐ | ☐ | ☐ | ☐ | ☐ | ☐ | ☐ | ☐ | ☐ |
| N/A | ☐ | ☐ | ☐ | ☐ | ☐ | ☐ | ☐ | ☐ | ☐ |
| PXY | ☐ | ☐ | ☐ | ☐ | ☐ | ☐ | ☐ | ☐ | ☐ |
| REC | ☐ | ☐ | ☐ | ☐ | ☐ | ☐ | ☐ | ☐ | ☐ |

**YES:** 9    **NO:** 0    **ABSTAIN:** 0    **ABSENT:** 0

**Status:** *Passed* ☒    *Failed* ☐    *Tabled* ☐    *Withdrawn* ☐    *Show of Hands* ☐

**WHEREAS**, on November 20, 2020, Melissa Chinery and Sandra Lee filed charges against Eugenio Vargas under Article VII of the APFA Constitution; and

**WHEREAS**, Article VII, Section 3 of the APFA Constitution provides that the Executive Committee shall review Article VII charges for specificity, and

**WHEREAS**, the Executive Committee has conducted that review.

**BE IT THEREFORE RESOLVED**, that Melissa Chinery's and Sandra Lee's November 20, 2020 charges against Eugenio Vargas are specific.

**APPENDIX 64**

# APFA

## EXECUTIVE COMMITTEE MEETING

### 3Q20 EC MEETING
December 1-2, 2020
APFA Unity Pays Conference Room
Euless, TX

| Resolution Tally Sheet | | |
|---|---|---|
| Resolution #: | 7 |
| Maker: | Black |
| Second: | Seelye |
| Date: | 12/01/2020 |
| Time: | 1:57 p.m. |

**Resolution Name: Chinery-Lee v Vargas - Timely**

| | | | | | | |
|---|---|---|---|---|---|---|
| YES | = | Yes | ABS | = | Abstain | PXY = Proxy Vote |
| NO | = | No | N/A | = | Absent | REC = Recuse |
| PASS | = | Pass | | | | |

COMMENTS:

| | Watson | Gluth | Conners | Seelye | Hancock | Treasurer | Secretary | Vice President | President |
|---|---|---|---|---|---|---|---|---|---|
| YES | ☒ | ☒ | ☒ | ☒ | ☒ | ☒ | ☒ | ☒ | ☒ |
| NO | ☐ | ☐ | ☐ | ☐ | ☐ | ☐ | ☐ | ☐ | ☐ |
| PASS | ☐ | ☐ | ☐ | ☐ | ☐ | ☐ | ☐ | ☐ | ☐ |
| ABS | ☐ | ☐ | ☐ | ☐ | ☐ | ☐ | ☐ | ☐ | ☐ |
| N/A | ☐ | ☐ | ☐ | ☐ | ☐ | ☐ | ☐ | ☐ | ☐ |
| PXY | ☐ | ☐ | ☐ | ☐ | ☐ | ☐ | ☐ | ☐ | ☐ |
| REC | ☐ | ☐ | ☐ | ☐ | ☐ | ☐ | ☐ | ☐ | ☐ |

**YES:** 9    **NO:** 0    **ABSTAIN:** 0    **ABSENT:** 0

**Status:** Passed ☒   Failed ☐   Tabled ☐   Withdrawn ☐   Show of Hands ☐

**WHEREAS**, on November 20, 2020, Melissa Chinery and Sandra Lee filed charges against Eugenio Vargas under Article VII of the APFA Constitution; and

**WHEREAS**, Article VII, Section 3 of the APFA Constitution provides that the Executive Committee shall review Article VII charges for timeliness, and

**WHEREAS**, the Executive Committee has conducted that review.

**BE IT THEREFORE RESOLVED**, that Melissa Chinery's and Sandra Lee's November 20, 2020 charges against Eugenio Vargas are timely.

**APPENDIX 65**

These pointless charges continue to cost me my own personal time, energy, resources, and emotional strain to prove my innocence when my time should be focused on my wife and children in the middle of a pandemic.



**Checks and Balances**

To: treasurer (treasurer@apfa.org)
Cc: Hussar Michelle (Hussar.Michelle@dol.gov), secreta ry (secretary@apfa.org), Sbender (Sbender@apfa.org), presidents (presidents@apfa.org), vp (vp@apfa.org)

**See Less**                    July 31, 2019 at 12:09 PM

**(no subject)**

Dear Craig.

Today marks 3 weeks since both Sandra and I have came to the National office and were shown all the checks for the previous National Officers. We would like our valid questions regarding what they were for, how much the overpayment was, and when will it be paid back, answered. It is very concerning that both Sandra and I have had to write so many times to get valid questions regarding our money answered. These checks were paid out over a year ago, I would think getting miscalculated membership money repaid would be a top priority.

Thank you in advance for your assistance with this matter.

Sincerely.

Melissa Chinery

placed with collections on January 21, 2021 which has been 50 days ago from today. As of today no payment has been made.

50 days in collection and not a cent repaid!

#payupBobRoss



👍 Like        💬 Comment        📨 Send

😮😮 26