## Margot Nikitas

| | |
|---|---|
| **From:** | Erik Harris |
| **Sent:** | Wednesday, April 20, 2022 6:19 PM |
| **To:** | Margot Nikitas; Officers |
| **Subject:** | FW: Memo for the Board and EC |
| **Attachments:** | APFA - Board and EC memo.pdf; APFA - Vargas schedules A - C.pdf; APFA - Dunaway schedules A - C.pdf; APFA - Martin schedules A - C.pdf; APFA - Ross schedules A - C.pdf |

| | |
|---|---|
| **Follow Up Flag:** | Follow up |
| **Flag Status:** | Flagged |

--
# Erik Harris *Pronouns: he, him, his*
National Treasurer
**Association of Professional Flight Attendants**
Office 817.540.0108x 8231 | Email eharris@apfa.org
*The content of this email is intended solely for the recipient(s).*
*It is not to be shared, forwarded or posted without the author's written consent.*



**From:** Hal O'Neil <oneil@███████████
**Date:** Thursday, October 22, 2020 at 12:11 PM
**To:** Erik Harris <eharris@███████████
**Cc:** Pam Bush <pbush@█████████████
**Subject:** Memo for the Board and EC

Erik.....attached is the Board and EC Memo for your review.  Also are the attached schedules for each officer.  Please get back to me if this memo looks OK.

Thanks, Hal

Hal O'Neil, CPA
Wood, Stephens & O'Neil, L.L.P.
6300 Ridglea Place, Suite #318
Fort Worth, TX  76116

**Direct line - 817-886-3428**
Firm tele. - 817-377-1700 *(my extension #601)*
Firm fax - 817-377-1870

*Important/confidential: This communication and any files or documents attached to it are intended only for the use of the person(s) or entity to which it is addressed; consequently, it may contain information which is privileged and confidential.  If you are not the intended recipient(s) of this communication, you are hereby notified that the copying, distribution or other use of this communication is strictly prohibited.  If you have received this communication by mistake, please notify the sender immediately by electronic mail and destroy all forms of this communication (electronic or paper). Thank you.*

1
CONFIDENTIAL - SUBJECT TO PROTECTIVE ORDER
**APPENDIX P. 1**

*Any tax advice contained in this communication (including any attachments) is not intended or written to be used, and cannot be used, by the recipient for the purpose of avoiding tax penalties that may be imposed or promoting, marketing or recommending to another party any transaction or tax-related matter(s).*

CONFIDENTIAL - SUBJECT TO PROTECTIVE ORDER

APPENDIX P. 2

# Wood, Stephens & O'Neil, L.L.P.

**Certified Public Accountants**

6300 Ridglea Place, Suite 318
Fort Worth, TX  76116
Tele. 817-377-1700
Fax 817-377-1870

---

## CONFIDENTIAL MEMORANDUM

| | |
|---|---|
| MEMO TO: | APFA Board of Directors and the Executive Committee |
| FROM: | Hal O'Neil, CPA, Pam Bush |
| SUBJECT: | Review of officer disbursements and the Bob Ross transition agreement |
| DATE: | October 22, 2020 |

The current APFA officers, in consultation with the APFA staff attorney and outside counsel, requested that our firm review specific former officer expense reimbursements and payroll disbursements, as well as the payments arising from the Bob Ross confidential transition agreement.  This informal engagement is substantially less in scope than an audit engagement, the objective of which would be the expression of an opinion regarding these specific disbursements.  Accordingly, we do not express an opinion or any form of assurance regarding these disbursements. Our task under this informal engagement, was as follows:

1. To review the backup for the former officers' salary disbursement amounts from 2016 - 2018 and to determine these base salaries were calculated correctly and in compliance with the guidelines and pay rates stipulated in the APFA policy manual.  Please see the enclosed schedule A for each officer.

2. To prepare an overpayment schedule of the accrued and unused sick, and accrued and unused vacation time payments made to Bob Ross in 2018, similar to the overpayment schedules we prepared previously for the other three officers. Please see the enclosed schedules B and C for each officer.  These overpayment schedules for the other officers were previously provided to the Board of Directors.  Please note the Bob Ross confidential transition agreement states that he will be paid all of his accrued and unused sick, and accrued and unused vacation time.  This agreement doesn't specify that the payments be made in accordance with the policy manual guidelines. Consequently, these payments appear appropriate and in compliance with the transition agreement.  This agreement also specifies reimbursement payments to him of up to $10,000 in actual moving expenses. His moving expense reimbursement payments did not exceed this amount.

3. To assist the APFA accounting department staff in reviewing and organizing the various requested documents, as set forth in the flight attendants Chinery and Lee financial document request.

Please contact us should the Board of Directors or the Executive Committee have questions regarding our limited engagement.

Sincerely,

*Hal O'Neil, CPA*

CONFIDENTIAL - SUBJECT TO PROTECTIVE ORDER

APPENDIX P. 3



A

## Marcy Dunaway - National Secretary Pay

105 hours paid monthly at the highest purser pay including international overide, per the policy manual.

| | | | | |
|---|---|---|---|---|
| * | Maximum flight attendant pay | 60.13 | | |
| | Purser Pay | 7.50 | | |
| | International pay | 3.75 | | |
| | | 71.38 | 105 hours | 7,494.90 |

| Bi-monthly pay 4/1/16 - 12/31/16 | 3,747.45 |
|---|---|

| | | | | |
|---|---|---|---|---|
| ** | Maximum flight attendant pay | 61.33 | | |
| | Purser Pay | 7.50 | | |
| | International pay | 3.75 | | |
| | | 72.58 | 105 hours | 7,620.90 |

| Bi-monthly pay - 1/1/17 - 5/1/17 | 3,810.45 |
|---|---|

| 91,450.80 | Annual salary |
|---|---|
| 250.55 | Daily rate for sick and vacation |

| | | | | |
|---|---|---|---|---|
| *** | Maximum flight attendant pay | 64.96 | | |
| | Purser Pay | 7.50 | | |
| | International pay | 3.75 | | |
| | | 76.21 | 105 hours | 8,002.05 |

| Bi-monthly pay - 5/2/17 - 12/31/17 | 4,001.03 |
|---|---|

| 96,024.60 | Annual salary |
|---|---|
| 263.08 | Daily rate for sick and vacation |

| | | | | |
|---|---|---|---|---|
| **** | Maximum flight attendant pay | 66.26 | | |
| | Purser Pay | 7.50 | | |
| | International pay | 3.75 | | |
| | | 77.51 | 105 hours | 8,138.55 |

| Bi-monthly pay - 1/1/18 - 3/31/18 | 4,069.28 |
|---|---|

| 97,662.60 | Annual salary |
|---|---|
| 267.57 | Daily rate for sick and vacation |

| | | |
|---|---|---|
| * | Pay rates effective 4/1/16 | |
| ** | Pay rates effective 1/1/17 - 5/1/17 | |
| *** | Pay rates effective 5/2/17 - 12/31/17 (1.6% increase) | |
| **** | Pay rates effective 1/1/18 - 3/31/18 | |

CONFIDENTIAL - SUBJECT TO PROTECTIVE ORDER
APPENDIX P. 4

CONFIDENTIAL - SUBJECT TO PROTECTIVE ORDER

**National Officer:** Marcy Dunaway

**B**

| | Annual Salary | Daily amount (divide by 365) | Eligible Days to pay | Payment | |
|---|---|---|---|---|---|
| Profit Sharing - 2016 | | | | 2,424.86 | *(paid 3/10/17)* |
| Vacation Pay - 2017 | $ 91,450.80 | 250.55 | 14 | 3,507.70 | *(paid 3/31/2017)* |
| Sick Pay - 2017 | $ 91,450.80 | 250.55 | 12 | 3,006.60 | *(paid 3/31/2017)* |
| Retro | | | | 831.60 | *(paid 6/1/17)* |
| Triple Grand Slam | | | | 300.00 | *(paid 7/6/17)* |
| Grand Slam | | | | 150.00 | *(paid 1/25/18)* |
| Profit Sharing - 2018 | | | | 2,270.35 | *(paid 3/9/18)* |
| Vacation Pay - 2018 | $ 112,659.36 | 308.66 | 14 | 4,321.24 | *(paid 3/29/2018)* |
| Sick Pay - 2018 | $ 112,659.36 | 308.66 | 12 | 3,703.92 | *(paid 3/29/2018)* |
| Vacation Pay - 2017 - (adjustment paid in 2018) | | | | 513.10 | |
| Sick Pay - 2017 - (adjustment paid in 2018) | | | | 439.80 | |
| | | | | 952.90 | *(paid 3/29/2018)* |
| End of Term Payout - 2018 | $ 110,926.06 | 303.91 | 60 | 18,234.60 | *(paid 6/29/2018)* |
| Profit Sharing - 2018 | | | | 1,199.47 | *(paid 3/8/19)* |

**APPENDIX P. 5**

CONFIDENTIAL - SUBJECT TO PROTECTIVE ORDER

**National Officer:** Marcy Dunaway    C

## Overpayment Calculation

| | Annual Salary | Daily amount (divide by 365) | Eligible Days to pay | Payment | |
|---|---|---|---|---|---|
| **Vacation Pay - 2018** | | | | | |
| Original amount - paid in error (a) | $ 112,659.36 | 308.66 | 14 | $ 4,321.24 | (paid 3/29/2018) |
| Correct calculation amount | $ 97,662.72 | 267.57 | 14 | $ 3,745.98 | |
| Overpayment | | | | $ 575.26 | $ 575.26 |
| **Sick Pay - 2018** | | | | | |
| Original amount - paid in error (a) | $ 112,659.36 | 308.66 | 12 | $ 3,703.92 | (paid 3/29/2018) |
| Correct calculation amount | $ 97,662.72 | 267.57 | 12 | $ 3,210.84 | |
| Overpayment | | | | $ 493.08 | $ 493.08 |
| **End of term payout - 2018** | | | | | |
| Original amount - paid in error (a) | $ 110,926.06 | 303.91 | 60 | $ 18,234.60 | (paid 6/29/2018) |
| Correct calculation amount | $ 97,662.60 | 267.57 | 60 | $ 16,054.20 | |
| Overpayment | | | | $ 2,180.40 | $ 2,180.40 |
| Vacation Pay - 2017 - (adjustment paid in 2018....all paid in error) | | | Overpayment | $ 513.10 | $ 513.10 (paid 3/29/2018) |
| Sick Pay - 2017 - (adjustment paid in 2018....all paid in error) | | | Overpayment | $ 439.80 | $ 439.80 (paid 3/29/2018) |
| | | | Overpayment subtotal | | $ 4,201.64 ** |
| Add 2018 profit-sharing contribution paid (3/8/2019) on excess amount above ** | | | | | $ 58.82 (based on 1.4%) |
| **Total overpayment - due to APFA** | | | | | $ 4,260.46 |

(a) - included union pay (MEA/SAF)

**APPENDIX P. 6**



**Nena Martin - National Vice President Pay**
**National President Pay (3/2/18)**

110.5 hours paid monthly at the highest purser pay including international overide, per the policy manual.

| | | | | |
|---|---|---:|---|---:|
| * | Maximum flight attendant pay | 60.13 | | |
| | Purser Pay | 7.50 | | |
| | International pay | 3.75 | | |
| | | 71.38 | 110.5 hours | 7,887.49 |

| Bi-monthly pay 4/1/16 - 12/31/16 | 3,943.75 |
|---|---:|

| | | | | |
|---|---|---:|---|---:|
| ** | Maximum flight attendant pay | 61.33 | | |
| | Purser Pay | 7.50 | | |
| | International pay | 3.75 | | |
| | | 72.58 | 110.5 hours | 8,020.09 |

| Bi-monthly pay - 1/1/17 - 5/1/17 | 4,010.05 |
|---|---:|

| 96,241.08 | Annual salary |
|---:|---|
| 263.67 | Daily rate for sick and vacation |

| | | | | |
|---|---|---:|---|---:|
| *** | Maximum flight attendant pay | 64.96 | | |
| | Purser Pay | 7.50 | | |
| | International pay | 3.75 | | |
| | | 76.21 | 110.5 hours | 8,421.21 |

| Bi-monthly pay - 5/2/17 - 12/31/17 | 4,210.60 |
|---|---:|

| 101,054.46 | Annual salary |
|---:|---|
| 276.86 | Daily rate for sick and vacation |

| | | | | |
|---|---|---:|---|---:|
| **** | Maximum flight attendant pay | 66.26 | | |
| | Purser Pay | 7.50 | | |
| | International pay | 3.75 | | |
| | | 77.51 | 110.5 hours | 8,564.86 |

| Bi-monthly pay - 1/1/18 - 3/1/18 | 4,282.43 |
|---|---:|

| 102,778.26 | Annual salary |
|---:|---|
| 281.58 | Daily rate for sick and vacation |

==Stepped in as President on 3/2/18==

| | | | | |
|---|---|---:|---|---:|
| **** | Maximum flight attendant pay | 66.26 | | |
| | Purser Pay | 7.50 | | |
| | International pay | 3.75 | | |
| | | 77.51 | 116 hours | 8,991.16 |

| Bi-monthly pay - 3/2/18 - 3/31/18 | 4,495.58 |
|---|---:|

| 107,893.92 | Annual salary |
|---:|---|
| 295.60 | Daily rate for sick and vacation |

| * | Pay rates effective 4/1/16 |
|---|---|
| ** | Pay rates effective 1/1/17 - 5/1/17 |
| *** | Pay rates effective 5/2/17 - 12/31/17 (1.6% increase) |
| **** | Pay rates effective 1/1/18 - 3/31/18 |

CONFIDENTIAL - SUBJECT TO PROTECTIVE ORDER

CONFIDENTIAL   SUBJECT TO PROTECTIVE ORDER

**National Officer: Nena Martin**

**B**

| | Annual Salary | Daily amount (divide by 365) | Eligible Days to pay | Payment | |
|---|---|---|---|---|---|
| Profit Sharing - 2016 | | | | 2,541.90 | *(paid 3/10/17)* |
| Vacation Pay - 2017 | $ 96,241.20 | 263.67 | 14 | 3,691.38 | *(paid 3/31/2017)* |
| Sick Pay - 2017 | $ 96,241.20 | 263.67 | 12 | 3,164.04 | *(paid 3/31/2017)* |
| Retro Pay | | | | 875.16 | *(paid 6/1/17)* |
| Triple Play Grand Slam | | | | 300.00 | *(paid 7/6/17)* |
| Grand Slam | | | | 150.00 | *(paid 1/25/18)* |
| Profit Sharing - 2017 | | | | 2,373.70 | *(paid 3/9/18)* |
| Vacation Pay - 2018 | $ 131,844.90 | 361.22 | 14 | 5,057.08 | *(paid 3/29/2018)* |
| Sick Pay - 2018 | $ 131,844.90 | 361.22 | 12 | 4,334.64 | *(paid 3/29/2018)* |
| Vacation Pay - 2017 - (adjustment paid in 2018) | | | | 520.94 | |
| Sick Pay - 2017 - (adjustment paid in 2018) | | | | 439.80 | |
| | | | | 960.74 | *(paid 3/29/18)* |
| End of Term Payout - 2018 | $ 118,046.02 | 323.41 | 60 | 19,404.60 | *(paid 6/29/2018)* |
| Profit Sharing - 2018 | | | | 1,279.64 | *(paid 3/8/19)* |

CONFIDENTIAL - SUBJECT TO PROTECTIVE ORDER

| National Officer: | Nena Martin | C | | **Overpayment Calculation** | | | |
|---|---|---|---|---|---|---|---|
| | | | Annual Salary | Daily amount (divide by 365) | Eligible Days to pay | Payment | |
| **Vacation Pay - 2018** | | | | | | | |
| Original amount - paid in error (a) | | | $ 131,844.90 | 361.22 | 14 | $ 5,057.08 | *(paid 3/29/2018)* |
| Correct calculation amount | | | $ 101,510.74 | 278.11 | 14 | $ 3,893.54 | |
| | | | | | Overpayment | $ 1,163.54 | $ 1,163.54 |
| **Sick Pay - 2018** | | | | | | | |
| Original amount - paid in error (a) | | | $ 131,844.90 | 361.22 | 12 | $ 4,334.64 | *(paid 3/29/2018)* |
| Correct calculation amount | | | $ 101,510.74 | 278.11 | 12 | $ 3,337.32 | |
| | | | | | Overpayment | $ 997.32 | $ 997.32 |
| **End of term payout - 2018** | | | | | | | |
| Original amount - paid in error (a) | | | $ 118,046.02 | 323.41 | 60 | $ 19,404.60 | *(paid 6/29/2018)* |
| Correct calculation amount | | | $ 107,893.92 | 295.60 | 60 | $ 17,736.00 | |
| | | | | | Overpayment | $ 1,668.60 | $ 1,668.60 |
| Vacation Pay - 2017 - (adjustment paid in 2018....all paid in error) | | | | | Overpayment | $ 520.94 | $ 520.94 *(paid 3/29/2018)* |
| Sick Pay - 2017 - (adjustment paid in 2018....all paid in error) | | | | | Overpayment | $ 439.80 | $ 439.80 *(paid 3/29/2018)* |
| | | | | | Overpayment subtotal | | $ 4,790.20 ** |
| | Add 2018 profit-sharing contribution paid (3/8/2019) on excess amount above ** | | | | | | $ 67.06 *(based on 1.4%)* |
| | **Total overpayment - due to APFA** | | | | | | $ 4,857.26 |

(a) - included union pay (MEA/SAF)

**APPENDIX P. 9**

A

## Bob Ross - National President Pay

116 hours paid monthly at the highest purser pay including international overide, per the policy manual.

| | | | | |
|---|---|---|---|---|
| * | Maximum flight attendant pay | 60.13 | | |
| | Purser Pay | 7.50 | | |
| | International pay | 3.75 | | |
| | | 71.38 | 116 hours | 8,280.08 |

| Bi-monthly pay 4/1/16 - 12/31/16 | 4,140.04 |
|---|---|

| | | | | |
|---|---|---|---|---|
| ** | Maximum flight attendant pay | 61.33 | | |
| | Purser Pay | 7.50 | | |
| | International pay | 3.75 | | |
| | | 72.58 | 116 hours | 8,419.28 |

| Bi-monthly pay - 1/1/17 - 5/1/17 | 4,209.64 |
|---|---|

| 101,031.36 | Annual salary |
|---|---|
| 276.80 | Daily rate for sick and vacation |

| | | | | |
|---|---|---|---|---|
| *** | Maximum flight attendant pay | 64.96 | | |
| | Purser Pay | 7.50 | | |
| | International pay | 3.75 | | |
| | | 76.21 | 116 hours | 8,840.36 |

| Bi-monthly pay - 5/2/17 - 12/31/17 | 4,420.18 |
|---|---|

| 106,084.32 | Annual salary |
|---|---|
| 290.64 | Daily rate for sick and vacation |

| | | | | |
|---|---|---|---|---|
| **** | Maximum flight attendant pay | 66.26 | | |
| | Purser Pay | 7.50 | | |
| | International pay | 3.75 | | |
| | | 77.51 | 116 hours | 8,991.16 |

| Bi-monthly pay - 1/1/18 - 7/31/18 | 4,495.58 |
|---|---|

| 107,893.92 | Annual salary |
|---|---|
| 295.60 | Daily rate for sick and vacation |

| | |
|---|---|
| * | Pay rates effective 4/1/16 |
| ** | Pay rates effective 1/1/17 - 5/1/17 |
| *** | Pay rates effective 5/2/17 - 12/31/17 (1.6% increase) |
| **** | Pay rates effective 1/1/18 - 7/31/18 |

CONFIDENTIAL - SUBJECT TO PROTECTIVE ORDER

APPENDIX P. 10

CONFIDENTIAL - SUBJECT TO PROTECTIVE ORDER

**National Officer:** Bob Ross

B

| | Annual Salary | Daily amount (divide by 365) | Eligible Days to pay | Payment | |
|---|---|---|---|---|---|
| Profit Sharing - 2016 | | | | 2,652.22 | *(paid 3/10/17)* |
| Vacation Pay - 2017 | $ 101,031.36 | 276.80 | 14 | 3,875.20 | *(paid 3/31/17)* |
| Sick Pay - 2017 | $ 101,031.36 | 276.80 | 12 | 3,321.60 | *(paid 3/31/17)* |
| Retro - Wage Arbitration Award 1.6% | | | | 918.72 | *(paid 6/1/17)* |
| Triple Play Grand Slam | | | | 300.00 | *(paid 7/6/17)* |
| Grand slam | | | | 150.00 | *(paid 1/25/18)* |
| (Additional $50 grand slam paid on 2/15/18 salary check) | | | | | |
| 2017 Profit Sharing | | | | 2,458.19 | *(paid 3/9/18)* |
| Vacation & Sick Pay - 2017 - (adjustment paid in 2018) | | | | 968.76 | *(paid 3/29/2018)* |
| Vacation Pay - 2017 (remaining unused days per agreement) | $ 114,632.67 | 314.06 | 17 | 5,339.02 | *(paid 3/29/2018)* |
| Vacation Pay - 2018 (remaining unused days per agreement) | $ 122,121.70 | 334.58 | 29 | 9,702.82 | *(paid 3/29/2018)* |
| (Paid in two checks in the amount of $4,851.41 each) | | | | | |
| Sick Pay - 2018 | $ 122,121.69 | 334.58 | 12 | 4,014.96 | *(paid 3/29/2018)* |
| End of Term Payout - 2017 (January 1 - December 31, 2017) | $ 118,046.02 | 334.58 | 35 | 11,710.30 | *(paid 3/29/2018)* |
| (Paid in two checks in the amount of $3,903.43 each and one for $3,903.44) | | | | | |
| End of Term Payout - 2018 (January 1 - July 31, 2018) | $ 118,046.02 | 334.58 | 20.44 | 6,838.82 | *(paid 3/29/2018)* |
| (Paid in two checks in the amount of $3,419.41 each) | | | | | |
| Profit sharing 2018 | | | | 1,403.99 | *(paid 3/6/19)* |

**APPENDIX P. 11**

CONFIDENTIAL – SUBJECT TO PROTECTIVE ORDER

| National Officer: Bob Ross | C | Overpayment Calculation | | | | |
|---|---|---|---|---|---|---|
| | | Annual Salary | Daily amount (divide by 365) | Eligible Days to pay | Payment | |
| **Vacation Pay - 2017** | | | | | | |
| Original amount | | $ 101,031.36 | 276.80 | 14 | $ 3,875.20 | OK *(paid 3/31/17)* |
| Overpayment | | | | | $ - | $ - |
| **Sick Pay - 2017** | | | | | | |
| Original amount | | $ 101,031.36 | 276.80 | 12 | $ 3,321.60 | OK *(paid 3/31/17)* |
| Overpayment | | | | | $ - | $ - |
| **Vacation & Sick Pay - 2017 - (adjustment paid in 2018...all paid in error)** | | | | | | |
| Overpayment | | | | | $ 968.76 | $ 968.76 |
| **Vacation Pay - 2017 (remaining unused days per agreement)** | | | | | | |
| Original amount - paid in error (a) | | $ 114,632.67 | 314.06 | 17 | $ 5,339.02 | *(paid 3/29/2018)* |
| Correct calculation amount | | $ 101,031.36 | 276.80 | 17 | $ 4,705.60 | |
| Overpayment | | | | | $ 633.42 | $ 633.42 |
| **Vacation Pay - 2018 (remaining unused days per agreement)** | | | | | | |
| Original amount - paid in error (a) | | $ 122,121.70 | 334.58 | 29 | $ 9,702.82 | *(paid 3/29/2018)* |
| Correct calculation amount | | $ 107,893.92 | 295.60 | 29 | $ 8,572.40 | |
| Overpayment | | | | | $ 1,130.42 | $ 1,130.42 |
| **Sick Pay - 2018** | | | | | | |
| Original amount - paid in error (a) | | $ 122,121.69 | 334.58 | 12 | $ 4,014.96 | *(paid 3/29/2018)* |
| Correct calculation amount | | $ 107,893.92 | 295.60 | 12 | $ 3,547.20 | |
| Overpayment | | | | | $ 467.76 | $ 467.76 |
| **End of term payout - 2017 (January 1 - December 31, 2017)** | | | | | | |
| Original amount - paid in error (a) | | $ 118,046.02 | 334.58 | 35 | $ 11,710.30 | *(paid 3/29/2018)* |
| Correct calculation amount | | $ 107,893.92 | 295.60 | 35 | $ 10,346.00 | |
| Overpayment | | | | | $ 1,364.30 | $ 1,364.30 |
| **End Term Payout - 2018 (January 1 - July 31, 2018)** | | | | | | |
| Original amount - paid in error (a) | | $ 118,046.02 | 334.58 | 20.44 | $ 6,838.82 | *(paid 3/29/2018)* |
| Correct calculation amount | | $ 107,893.92 | 295.60 | 20.44 | $ 6,042.06 | |
| Overpayment | | | | | $ 796.75 | $ 796.75 |
| | | | | Overpayment subtotal | | $ 5,361.41 ** |
| Add 2018 profit-sharing contribution paid (3/8/2019) on excess amount above ** | | | | | $ 75.06 | *(based on 1.4%)* |
| | | Total overpayment - due to APFA | | | | $ 5,436.47 |

**APPENDIX P. 12**



## Eugenio Vargas - National Treasurer Pay

105 hours paid monthly at the highest purser pay including international overide, per the policy manual.

| | | | | |
|---|---|---|---|---|
| * | Maximum flight attendant pay | 60.13 | | |
| | Purser Pay | 7.50 | | |
| | International pay | 3.75 | | |
| | | 71.38 | 105 hours | 7,494.90 |

| | |
|---|---|
| Bi-monthly pay 4/1/16 - 12/31/16 | 3,747.45 |

| | | | | |
|---|---|---|---|---|
| ** | Maximum flight attendant pay | 61.33 | | |
| | Purser Pay | 7.50 | | |
| | International pay | 3.75 | | |
| | | 72.58 | 105 hours | 7,620.90 |

| | |
|---|---|
| Bi-monthly pay - 1/1/17 - 5/1/17 | 3,810.45 |

| | |
|---|---|
| 91,450.80 | Annual salary |
| 250.55 | Daily rate for sick and vacation |

| | | | | |
|---|---|---|---|---|
| *** | Maximum flight attendant pay | 64.96 | | |
| | Purser Pay | 7.50 | | |
| | International pay | 3.75 | | |
| | | 76.21 | 105 hours | 8,002.05 |

| | |
|---|---|
| Bi-monthly pay - 5/2/17 - 12/31/17 | 4,001.03 |

| | |
|---|---|
| 96,024.60 | Annual salary |
| 263.08 | Daily rate for sick and vacation |

| | | | | |
|---|---|---|---|---|
| **** | Maximum flight attendant pay | 66.26 | | |
| | Purser Pay | 7.50 | | |
| | International pay | 3.75 | | |
| | | 77.51 | 105 hours | 8,138.55 |

| | |
|---|---|
| Bi-monthly pay - 1/1/18 - 3/31/18 | 4,069.28 |

| | |
|---|---|
| 97,662.60 | Annual salary |
| 267.57 | Daily rate for sick and vacation |

| | |
|---|---|
| * | Pay rates effective 4/1/16 |
| ** | Pay rates effective 1/1/17 - 5/1/17 |
| *** | Pay rates effective 5/2/17 - 12/31/17 (1.6% increase) |
| **** | Pay rates effective 1/1/18 - 3/31/18 |

CONFIDENTIAL - SUBJECT TO PROTECTIVE ORDER

**National Officer:** Eugenio Vargas   **B**

| | Annual Salary | Daily amount (divide by 365) | Eligible Days to pay | Payment | |
|---|---|---|---|---|---|
| Profit Sharing - 2016 | | | | 2,435.07 | (paid 3/10/17) |
| Vacation Pay - 2017 | $ 91,450.80 | 250.55 | 14 | 3,507.70 | (paid 3/31/2017) |
| Sick Pay - 2017 | $ 91,450.80 | 250.55 | 12 | 3,006.60 | (paid 3/31/2017) |
| Retro | | | | 831.60 | (paid 6/1/17) |
| | | | | $ 150.00 | (paid 1/25/18) |
| Profit Sharing 2017 | | | | 2,269.76 | (paid 3/9/18) |
| Vacation Pay - 2018 | $ 113,021.02 | 309.65 | 14 | 4,335.10 | (paid 3/29/2018) |
| Sick Pay - 2018 | $ 113,021.02 | 309.65 | 12 | 3,715.80 | (paid 3/29/2018) |
| Vacation Pay - 2017 - (adjustment paid in 2018) | | | | 523.46 | |
| Sick Pay - 2017 - (adjustment paid in 2018) | | | | 448.68 | |
| End of Term Payout - 2018 | | | | 972.14 | (paid 3/29/2018) |
| | $ 111,317.70 | 304.98 | 54 | 16,468.92 | (paid 6/29/2018) |
| Profit Sharing - 2018 | | | | 1,141.03 | (paid 3/8/19) |

CONFIDENTIAL - SUBJECT TO PROTECTIVE ORDER

**APPENDIX P. 14**

CONFIDENTIAL - SUBJECT TO PROTECTIVE ORDER

**National Officer:** Eugenio Vargas

C

## Overpayment Calculation

| | Annual Salary | Daily amount (divide by 365) | Eligible Days to pay | Payment | | |
|---|---|---|---|---|---|---|
| **Vacation Pay - 2018** | | | | | | |
| Original amount - paid in error (a) | $ 113,021.02 | 309.65 | 14 | $ 4,335.10 | | |
| Correct calculation amount | $ 97,662.72 | 267.57 | 14 | $ 3,745.98 | | |
| | | | Overpayment | $ 589.12 | $ 589.12 | (paid 3/29/2018) |
| **Sick Pay - 2018** | | | | | | |
| Original amount - paid in error (a) | $ 113,021.02 | 309.65 | 12 | $ 3,715.80 | | |
| Correct calculation amount | $ 97,662.72 | 267.57 | 12 | $ 3,210.84 | | |
| | | | Overpayment | $ 504.96 | $ 504.96 | (paid 3/29/2018) |
| **End of term payout - 2018** | | | | | | |
| Original amount - paid in error (a) | $ 111,317.70 | 304.98 | 54 | $ 16,468.92 | | |
| Correct calculation amount | $ 97,662.60 | 267.57 | 54 | $ 14,448.78 | | |
| | | | Overpayment | $ 2,020.14 | $ 2,020.14 | (paid 6/29/2018) |
| Vacation Pay - 2017 - (adjustment paid in 2018....all paid in error) | | | Overpayment | $ 523.46 | $ 523.46 | (paid 3/29/2018) |
| Sick Pay - 2017 - (adjustment paid in 2018....all paid in error) | | | Overpayment | $ 448.68 | $ 448.68 | (paid 3/29/2018) |
| | | | Overpayment subtotal | | $ 4,086.36 | ** |
| Add 2018 profit-sharing contribution paid (3/8/2019) on excess amount above ** | | | | | $ 57.21 | (based on 1.4%) |
| **Total overpayment - due to APFA** | | | | | $ 4,143.57 | |

(a) - included union pay (MEA/SAF)

**APPENDIX P. 15**

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
FT.WORTH DIVISION

| | | |
|---|---|---|
| ROBERT (BOB) ROSS | § | |
| Plaintiff, | § | |
| | § | |
| | § | |
| V. | § | |
| | § | |
| MCGAUGHEY, REBER AND | § | |
| ASSOCIATES, INC., ASSOCIATION | § | |
| OF PROFESSIONAL FLIGHT | § | Case No. _____ |
| ATTENDANTS, JULIE HEDRICK, | § | |
| AND ERIK HARRIS | § | |
| Defendants. | § | |

**AFFIDAVIT OF NENA MARTIN IN SUPPORT OF PLAINTIFF'S ORIGINAL
COMPLAINT AND MOTION TO VACATE**

BEFORE ME, the undersigned authority, on this day personally appeared Nena Martin, who being

by me first duly sworn, did state:

1.  "I am employed as a Flight Attendant working with American Airlines, Inc. and I

    served on the Board of Directors for the Association of Professional Flight

    Attendants, between April 2011 to January 2021.  I am of sound mind and body to

    make this affidavit and have personal knowledge of the following facts:

    a.  I attended the Board of Director's meetings on October 27, 2020, and October

        28, 2020, in which evidence from an accounting firm hired by APFA was

        presented off the record.  Erik Harris presented spreadsheets he stated were the

        results of an accounting review that showed Robert "Bob" Ross owed for an

        overpayment made under his Transition Agreement in the amount of $5,436.47.

<u>**Exhibit B**</u>                                    1 of 2

I was present at this meeting and reviewed all documents submitted and can attest to the true and correct findings of the Board of Directors at this time.

b.  I have not seen the Confidential Memorandum dated October 22, 2020, from Wood, Stephens & O'Neil, L.L.P ("Confidential Memorandum") and the Board of Directors were not presented this Confidential Memorandum at any formal APFA Board of Directors meeting or discussion with which I participated.

c.  I received an email from Erik Harris on November 25, 2020, with a letter attached. A true and correct copy of that letter is attached hereto and marked Exhibit B-1. This information was presented to me on or about October 27, 2020, with the other Board of Directors while discussing it off the record. No formal vote was ever made, no formal record ever taken. It was decided that APFA General Counsel, Margo Nikitas, would call and discuss the accounts with Mr. Ross to review the spreadsheet.

d.  I also attended the APFA Executive Committee meeting on December 1, 2020, where the Executive Committee reviewed the charges filed by Melissa Chinery-Burns and Sandra Lee against Robert "Bob" Ross.   At this Executive Committee meeting, I had the opportunity to hear all arguments made against Robert Ross prior to the Executive Committed voting on whether the charges were timely, specific, and valid.  The Confidential Memorandum dated October 22, 2020, from Wood, Stephens & O'Neil, L.L.P was never presented to the Executive Committee for review and consideration prior to voting on the charges."

FURTHER AFFIANT SAYETH NOT.

**Nena Martin**

SWORN AND SUBSCRIBED TO before me on this 18 day of April 2022.

Notary Public, State of Missouri

Jennifer D. Schuler
Comm. EXP. 10/07/2024
NOTARY
PUBLIC
NOTARY
SEAL
#20861406
St. Charles County
STATE OF MISSOURI

<u>Exhibit B</u>

3 of 2

**From:** Erik Harris <eharris ███████>
**Sent:** Wednesday, November 25, 2020 9:58 AM
**To:** Base Presidents <BasePresidents████████>; Executive Committee <ExecutiveCommittee███████ g>
**Cc:** Margot Nikitas <MNikitas██████████>
**Subject:** Bob Ross' Overpayment

Hi all-

The attached letter was sent to Bob Ross yesterday in regards to the Overpayment of wages. I gave him a deadline of January 1, 2021 to cure the debt owed to APFA or to make payment arrangements.

As always, I will keep you all posted on the progress of collecting these funds.

Thanks,

Erik

--

# Erik Harris *Pronouns: he, him, his*

National Treasurer
Association of Professional Flight Attendants
██████████████████████████

*The content of this email is intended solely for the recipient(s).*
*It is not to be shared, forwarded or posted without the author's written consent.*

## Exhibit B-1

**Association of Professional Flight Attendants**

Representing the **Flight Attendants** of American Airlines

November 24, 2020

**Via Email and Return Receipt Certified Mail #7019 1120 0000 0179 3144**

Mr. Bob Ross
4701 Hayloft Ct
El Dorado Hills, CA  95762

**RE:   Overpayment of Wages**

Dear Mr. Ross:

I am sending this letter to follow-up on our telephone conversation on November 10, 2020. During our call, we discussed the finding of the APFA Board of Directors that you were overpaid in the amount of $5,436.47 in 2018. The Board's finding was based on the results of a review from an independent accounting firm which determined that the formula used to determine the daily rate for your sick and vacation payout was incorrect.  (See Schedule C, enclosed).

On or before January 1, 2021, please remit payment (via check, money order, cashier's check, or credit card) to APFA in full or contact me to discuss payment arrangements.

Please contact me at 817.540.0108 or eharris ⸱⸱⸱⸱⸱⸱  with any questions or concerns.  Thank you for your prompt cooperation.

Sincerely,

Erik Harris
National Treasurer

Enclosure

CC:   APFA Board of Directors
APFA Executive Committee
Margot Nikitas, General Counsel

**Exhibit B-1**

A

**Bob Ross - National President Pay**

116 hours paid monthly at the highest purser pay including international overide, per the policy manual.

| | | | | |
|---|---|---|---|---|
| * Maximum flight attendant pay | | 60.13 | | |
| Purser Pay | | 7.50 | | |
| International pay | | 3.75 | | |
| | | 71.38 | 116 hours | 8,280.08 |

| Bi-monthly pay 4/1/16 - 12/31/16 | | | | 4,140.04 |
|---|---|---|---|---|

| | | | | |
|---|---|---|---|---|
| ** Maximum flight attendant pay | | 61.33 | | |
| Purser Pay | | 7.50 | | |
| International pay | | 3.75 | | |
| | | 72.58 | 116 hours | 8,419.28 |

| Bi-monthly pay - 1/1/17 - 5/1/17 | | | | 4,209.64 |
|---|---|---|---|---|
| | 101,031.36 | Annual salary | | |
| | 276.80 | Daily rate for sick and vacation | | |

| | | | | |
|---|---|---|---|---|
| *** Maximum flight attendant pay | | 64.96 | | |
| Purser Pay | | 7.50 | | |
| International pay | | 3.75 | | |
| | | 76.21 | 116 hours | 8,840.36 |

| Bi-monthly pay - 5/2/17 - 12/31/17 | | | | 4,420.18 |
|---|---|---|---|---|
| | 106,084.32 | Annual salary | | |
| | 290.64 | Daily rate for sick and vacation | | |

| | | | | |
|---|---|---|---|---|
| **** Maximum flight attendant pay | | 66.26 | | |
| Purser Pay | | 7.50 | | |
| International pay | | 3.75 | | |
| | | 77.51 | 116 hours | 8,991.16 |

| Bi-monthly pay - 1/1/18 - 7/31/18 | | | | 4,495.58 |
|---|---|---|---|---|
| | 107,893.92 | Annual salary | | |
| | 295.60 | Daily rate for sick and vacation | | |

* Pay rates effective 4/1/16
** Pay rates effective 1/1/17 - 5/1/17
*** Pay rates effective 5/2/17 - 12/31/17 (1.6% Increase)
**** Pay rates effective 1/1/18 - 7/31/18

# Exhibit B-1

| National Officer: | Bob Ross | | | | | |
|---|---|---|---|---|---|---|
| | | | **B** | | | |
| | | Annual Salary | Daily amount (divide by 365) | Eligible Days to pay | Payment | |
| Profit Sharing - 2016 | | | | | 2,652.22 | (paid 3/10/17) |
| Vacation Pay - 2017 | | $ 101,031.36 | 276.80 | 14 | 3,875.20 | (paid 3/31/17) |
| Sick Pay - 2017 | | $ 101,031.36 | 276.80 | 12 | 3,321.60 | (paid 3/31/17) |
| Retro - Wage Arbitration Award 1.6% | | | | | 918.72 | (paid 6/7/17) |
| Triple Play Grand Slam | | | | | 300.00 | (paid 7/6/17) |
| Grand slam | (Additional $50 grand slam paid on 2/15/18 salary check) | | | | 150.00 | (paid 1/25/18) |
| 2071 Profit Sharing | | | | | 2,458.19 | (paid 3/9/18) |
| Vacation & Sick Pay - 2017 - (adjustment paid in 2018) | | | | | 968.76 | (paid 3/29/2018) |
| Vacation Pay - 2017 (remaining unused days per agreement) | | $ 114,632.67 | 314.06 | 17 | 5,339.02 | (paid 3/29/2018) |
| Vacation Pay - 2018 (remaining unused days per agreement) | | $ 122,121.70 | 334.58 | 29 | 9,702.82 | (paid 3/29/2018) |
| | (Paid in two checks in the amount of $4,851.41 each) | | | | | |
| Sick Pay - 2018 | | $ 122,121.69 | 334.58 | 12 | 4,014.96 | (paid 3/29/2018) |
| End of Term Payout - 2017 (January 1 - December 31, 2017) | | $ 118,046.02 | 334.58 | 35 | 11,710.30 | (paid 3/29/2018) |
| | (Paid in two checks in the amount of $3,903.43 each and one for $3,903.44) | | | | | |
| End of Term Payout - 2018 (January 1 - July 31, 2018) | | $ 118,046.02 | 334.58 | 20.44 | 6,838.82 | (paid 3/29/2018) |
| | (Paid in two checks in the amount of $3,419.41 each) | | | | | |
| Profit sharing 2018 | | | | | 1,403.59 | (paid 3/8/19) |

| National Officer: | Bob Ross | | | Overpayment Calculation | | |
|---|---|---|---|---|---|---|
| | | Annual Salary | Daily amount (divide by 365) | Eligible Days to pay | Payment | |
| **Vacation Pay - 2017** | | | | | | |
| Original amount | | $ 101,031.36 | 276.80 | 14 | $ 3,875.20 | OK (paid 3/31/17) |
| | | | | Overpayment | $ - | $ - |
| **Sick Pay - 2017** | | | | | | |
| Original amount | | $ 101,031.36 | 276.80 | 12 | $ 3,321.60 | OK (paid 3/31/17) |
| | | | | Overpayment | $ - | $ - |
| Vacation & Sick Pay - 2017 - (adjustment paid in 2018....all paid in error) | | | | Overpayment | $ 968.76 | $ 968.76 |
| **Vacation Pay - 2017 (remaining unused days per agreement)** | | | | | | |
| Original amount - paid in error (a) | | $ 114,632.67 | 314.06 | 17 | $ 5,339.02 | (paid 3/29/2018) |
| Correct calculation amount | | $ 101,031.36 | 276.80 | 17 | $ 4,705.60 | |
| | | | | Overpayment | $ 633.42 | $ 633.42 |
| **Vacation Pay - 2018 (remaining unused days per agreement)** | | | | | | |
| Original amount - paid in error (a) | | $ 122,121.70 | 334.58 | 29 | $ 9,702.82 | (paid 3/29/2018) |
| Correct calculation amount | | $ 107,893.92 | 295.60 | 29 | $ 8,572.40 | |
| | | | | Overpayment | $ 1,130.42 | $ 1,130.42 |
| **Sick Pay - 2018** | | | | | | |
| Original amount - paid in error (a) | | $ 122,121.69 | 334.58 | 12 | $ 4,014.96 | (paid 3/29/2018) |
| Correct calculation amount | | $ 107,893.92 | 295.60 | 12 | $ 3,547.20 | |
| | | | | Overpayment | $ 467.76 | $ 467.76 |
| **End of term payout - 2017 (January 1 - December 31, 2017)** | | | | | | |
| Original amount - paid in error (a) | | $ 118,046.02 | 334.58 | 35 | $ 11,710.30 | (paid 3/29/2018) |
| Correct calculation amount | | $ 107,893.92 | 295.60 | 35 | $ 10,346.00 | |
| | | | | Overpayment | $ 1,364.30 | $ 1,364.30 |

**Exhibit B-1**

| End of term payout - 2018 (January 1 - July 31, 2018) | | | | | |
|---|---|---|---|---|---|
| Original amount - paid in error (a) | $ | 118,046.02 | 334.58 | $ | 6,838.82 | (paid 3/29/2018) |
| Correct calculation amount | $ | 107,893.92 | 295.60 | $ | 6,042.06 |
| | | | Overpayment | $ | 796.75 | $ | 796.75 |
| | | | | | |
| | | | Overpayment subtotal | | | $ | 5,361.41 | ** |
| | | | | | |
| Add 2018 profit-sharing contribution paid (3/8/2019) on excess amount above ** | | | | $ | 75.06 | (based on 1.4%) |
| | | | | | |
| | | Total overpayment - due to APFA | | | $ | 5,436.47 |
| | | | | | |
| | | | | | |
| (a) - included union pay (MEA/SAF) | | | | | |



# THE

# CONSTITUTION

## OF THE

# ASSOCIATION

## OF

# PROFESSIONAL

# FLIGHT

# ATTENDANTS

*As amended by the APFA Membership*
JUNE 18, 2014

# ARTICLE VII
## HEARINGS AND DISCIPLINARY PROCEDURES

### Section 1. GROUNDS FOR CHARGES:

Any member is subject to fine, suspension or expulsion, or suspension from or removal from office, for any of the following acts:

A. Failure to pay dues, assessments or penalties levied by the Association;

B. Advocating, or working toward, the displacement of the APFA as bargaining representative (providing that advocating, or working toward an affiliation, merger or federation of the APFA pursuant to Article XII of this Constitution shall not be grounds for discipline);

C. Willfully acting as a strike breaker during any work stoppage duly authorized by the Association;

   (1) Notwithstanding Section 1.C, above (which provides as a grounds for charges willfully acting as a strike breaker during any work stoppage duly authorized by the Association) APFA shall not process any charge of willfully acting as a strike breaker during the November 1993 strike against American Airlines.

D. Willful violation of a Flight Attendant's Collective Bargaining Agreement;

E. Theft or embezzlement of Association monies or property;

F. Willful violation of an express Article of this Constitution, or of a proper and express written resolution or policy of the Board of Directors or the Executive Committee;

G. Willfully acting in a manner that causes the Association to violate its legal obligations; or

H. Willfully bringing charges without reasonable basis against another member, officer or representative of the Association, should such charges be dismissed for any reason by the Article VII Arbitrator designated herein, or should such charges not be sustained by the Article VII Arbitrator.

### Section 2. FILING OF CHARGES:

A. A charge may be filed by any member in good standing. All charges shall be filed with the National Secretary and shall be proffered in writing and shall be specific as to the alleged act(s) and/or the Article(s) of this Constitution

allegedly violated which constitute the basis of the charge(s).

B. The National Secretary shall cause a copy of the charges to be served upon the accused and the accuser within seven (7) days following receipt of the charges. Such notification shall be by registered mail, return receipt requested to their last known addresses, and shall furnish the accused and the accuser a description of all relevant procedures.

C. The National Secretary shall send a copy of all charges to the Executive Committee and to the Board of Directors within seven (7) days following his/her receipt of the charges.

D. Time Limits:

   (1) Charges based on Section 1.A through Section 1.F of this Article VII must be filed within sixty (60) days after the accuser becomes aware, or reasonably should have become aware, of the alleged offense.

   (2) Charges based on Section 1.G of this Article VII may not be filed unless and until it has been determined, in a separate legal proceeding (such as a lawsuit), that the Association has violated its legal obligations, or unless and until the Association settles a legal proceeding brought against it by furnishing substantial relief to an opposing party. Charges based on Section 1.G above must be filed within sixty (60) days after the accuser becomes aware, or reasonably should have become aware, of the completion or settlement of the legal proceeding.

   (3) Charges based on Section 1.H of this Article VII must be filed within sixty (60) days following the Article VII Arbitrator's decision which gives rise to such charge(s).

E. The accused and accuser may be represented during Article VII proceedings by any individual; however, the APFA will not compensate either party for attorney's fees.

## Section 3.   REVIEW OF CHARGES:

At the first regularly scheduled meeting of the Executive Committee following receipt of charges by the National Secretary, the Executive Committee shall review the charges for timeliness, specificity and validity.

A. Should the charges be determined to be timely, specific and valid, such charges shall then be forwarded by the National Secretary via registered mail, return receipt requested to the Article VII Arbitrator designated herein

within seven (7) days following such Executive
Committee meeting.

B. Charges deemed untimely by the Executive Committee
will be dismissed without appeal.

C. Charges deemed non-specific by the Executive
Committee shall be referred back to the accuser.  The
accuser may resubmit, one time only, such charges to
the National Secretary for review by the Executive
Committee at its next regularly scheduled meeting
without affecting the time limits of Section 2.D of this
Article VII.

D. Charges may be deemed invalid and dismissed if the
Executive Committee determines that the charges
address conduct protected by this Constitution and/or by
law (including the LMRDA Bill of Rights).  Charges may
also be deemed invalid and dismissed if they fail to state
a proper claim under Section 1 of this Article VII.  Should
such charges be dismissed as invalid, the accuser may,
within seven (7) days following receipt of notification of
dismissal by the Executive Committee, appeal to the
Article VII Arbitrator designated herein.  If the Article VII
Arbitrator determines that the charges are valid, s/he
shall so advise the National Secretary, the accused and
the accuser, and the charges will be processed in
accordance with this Article VII.

## Section 4.   SUSPENSION FROM OFFICE:

A. If charges are filed against a national officer or elected
representative based on Section 1.B, Section 1.C or
Section 1.E of this Article VII, the Board of Directors may
determine at any time during the pendency of the
charges that the alleged conduct giving rise to the
charges threatens the APFA's vital interests.  The Voting
Board of Directors may then, by two-thirds (2/3) vote,
suspend the accused's authority as national officer or
elected representative until the threat is removed or the
Article VII Arbitrator designated herein resolves the
charges, whichever occurs sooner.

B. A national officer or elected representative suspended
pursuant to this section shall be entitled, upon demand,
to an expedited resolution of the charges, with a decision
rendered within thirty (30) days following the Board of
Directors Meeting where the officer or elected
representative was suspended.

C. If the charges are filed by or against a member of the
Executive Committee or the Board of Directors, such
member must appoint an alternate member of the
Association to participate in the review of the charges as

provided in Section 3 of this Article VII and, when necessary, to participate in the vote regarding the suspension of the member of the Executive Committee or Board of Directors as provided in this Section 4.

## Section 5. APPOINTMENT OF
### THE ARTICLE VII ARBITRATOR:

A. The Board of Directors shall appoint an arbitrator to resolve all charges filed under this Article VII.  The Article VII Arbitrator, once appointed, shall serve until s/he resigns or until the Board of Directors determines to appoint a new Article VII Arbitrator.

B. The Board of Directors may also appoint one or more alternate Article VII Arbitrators who shall have the authority to hear and decide particular charges when the Article VII Arbitrator is not available.

C. C. The Article VII Arbitrator and any alternate Article VII Arbitrator(s) shall be a person expert in labor law who is a neutral (such as an academic or professional labor arbitrator), who has experience as a neutral in adjudicating internal labor organization disputes, and who has no other prior or current involvement with the APFA.

## Section 6. JURISDICTION AND AUTHORITY OF
### THE ARTICLE VII ARBITRATOR:

A. The Article VII Arbitrator shall have power to resolve all charges referred to him/her during his/her tenure.

B. The administrative procedures for handling Article VII charges shall be included in the APFA Policy Manual. The Article VII Arbitrator may from time to time propose changes in these administrative procedures, and such changes shall become effective and included in the Policy Manual if they are approved by the Board of Directors.  The administrative procedures to be adopted shall be in general compliance with American Arbitration Association rules where practicable, but may not conflict in any respect with the provisions of this Constitution.

C. The Article VII Arbitrator may, on his/her own motion or upon motion filed by the accused, declare that charges are untimely or do not allege a violation cognizable as charges under this Article VII and thus are dismissed without the need for hearing.

D. The Article VII Arbitrator may, on his/her own motion, or upon motion filed by the accused, determine that charges are not sufficiently specific and that they will be dismissed unless the accuser amends them to provide sufficient specificity.

E. The accused may move for summary dismissal of the charges on the ground that the accuser does not have evidence sufficient to sustain the charges and thus there is no need for a full hearing.  On receipt of such a motion, the Article VII Arbitrator shall afford the accuser an opportunity to identify evidence that would sustain the charges.  If the Article VII Arbitrator concludes, following that opportunity, that the accuser does not have evidence sufficient to sustain the charges, the Article VII Arbitrator may grant summary dismissal of the charges.

F. If at any time during the pendency of the charges, the Article VII Arbitrator determines (whether on his/her own motion or the motion of the accused) that the conduct furnishing the basis for the charges is protected by this Constitution and/or by law (including the LMRDA Bill of Rights), the Article VII Arbitrator shall have the authority to dismiss the charges addressed to such protected conduct.

G. No ex-parte communication may be had with the Article VII Arbitrator either by the accused, the accuser or by the APFA, or any member of the APFA except with respect to scheduling, location and like administrative matters.

H. The decision of the Article VII Arbitrator shall be final and binding upon the accused and the accuser.

## Section 7.   COSTS:

A. Initial costs of the Article VII proceedings shall be borne by the APFA in accordance with the provisions of Article V of this Constitution.

B. In the event a charge is dismissed by the Article VII Arbitrator, or in the event the Article VII Arbitrator does not sustain a charge, up to one-half (1/2) of the fees and expenses of the Article VII Arbitrator and all administrative costs to the APFA relative to that charge may be levied against the accuser by the APFA upon completion of charge proceedings brought under Section 1.H of this Article VII.

C. In the event the Article VII Arbitrator sustains a charge, costs of the proceedings shall be paid by the APFA and may be offset by a fine levied against the accused in an amount determined by the Arbitrator, if a fine was requested by the accuser.

D. In the event that it becomes necessary to enforce an Article VII Arbitration award through judicial proceedings, attorney's fees for those judicial proceedings may be paid or reimbursed by the APFA to the appropriate party seeking such enforcement.

## Section 8.   INTERNAL REMEDIES:

Members, officers and representatives shall exhaust internal remedies under this Article VII for a period not to exceed four months prior to taking any legal action against members, officers or representatives of the APFA with respect to matters cognizable as charges under this Article VII.

**APPENDIX P. 31**

FILED
1/14/2022 11:48 AM
Justice of the Peace, Precinct 3
Tarrant County

JP03-22-DC00017757

NO. _____

| | | |
|---|---|---|
| **DIVERSIFIED CREDIT SYSTEMS,** | § | IN THE JUSTICE OF THE PEACE |
| **ASSIGNEE FOR THE "ASSOCIATION** | § | COURT |
| **OF PROFESSIONAL FLIGHT** | § | |
| **ATTENDANTS"** | § | |
| **Plaintiff,** | § | |
| | § | |
| **V.** | § | NO. 3 |
| | § | |
| **ROBERT (BOB) ROSS** | § | |
| **Defendant.** | § | TARRANT COUNTY, TEXAS |

## PLAINTIFF'S ORIGINAL PETITION

### TO THE HONORABLE JUDGE OF SAID COURT:

**NOW COMES** Diversified Credit Systems, Assignee of a contract (Agreement) from the Association of Professional Flight Attendants, hereinafter called Plaintiff, complaining of and about Robert (Bob) Ross, hereinafter called Defendant, and for cause of action shows unto the Court the following:

### DISCOVERY CONTROL PLAN LEVEL

1.  Plaintiff intends that discovery be conducted under Discovery Level 3.

### PARTIES AND SERVICE

2.  Plaintiff, Diversified Credit Systems (a D/B/A of McGaughey, Reber and Associates, Inc.), Assignee for the "Association of Professional Flight Attendants", is a business entity operating in the State of Texas and whose address is P.O. Box 3424, Longview, TX 75606.

3.  Diversified Credit Systems, Assignee of the Association of Professional Flight

Page 1 of 5

APPENDIX P. 32

Attendants has not been issued a driver's license. Diversified Credit Systems, Assignee of the Association of Professional Flight Attendants has not been issued a social security number.

4.      Defendant Robert (Bob) Ross, an Individual who is a nonresident of Texas, may be served with process at his home at the following address:  4701 Hayloft Court, El Dorado Hills, CA 95762. Service of said Defendant as described above can be effected by certified mail, return receipt requested.

## JURISDICTION AND VENUE

5.      The subject matter in controversy is within the jurisdictional limits of this court.

6.      Plaintiff seeks:

       a.      only monetary relief of $10,000.00 or less, excluding interest, and attorney fees and costs.

7.      This court has jurisdiction over Defendant Robert (Bob) Ross, because said Defendant at the time he purposefully availed himself of the privilege of conducting activities in the state of Texas was a Texas Resident and resided in Tarrant County, Texas,   Defendant executed the attached Transition Agreement (hereinafter referred to as the "contractual Agreement" or "Agreement") with the Board of Directors for the "Association of Professional Flight Attendants", who thereafter assigned the contractual Agreement to Plaintiff to collect certain sums due and owing pursuant to the Agreement.

8.      Plaintiff would also show that the cause of action arose from or relates to the contacts of Defendant Robert (Bob) Ross to the state of Texas, thereby conferring specific jurisdiction with respect to said Defendant.

9.      Plaintiff would further show that the Agreement was to be performed in Tarrant Texas.

APPENDIX P. 33

10.    Venue in Tarrant County is permissive in this cause under Section 15.002(a)(3) of the Texas Civil Practice and Remedies Code because this county was the  principal residence of Robert (Bob) Ross, Defendant at the time he signed the Agreement.   Defendant resided in Southlake, Tarrant County, Texas at the time he executed the Agreement, and therefore, Venue is property in Justice of the Peace, Precinct 3, Tarrant County, Texas.

## FACTUAL ALLEGATIONS

11.    On or about March 1, 2018, the Association of Professional Flight Attendants (hereafter referred to as "AFPA") entered into a written contract with Robert (Bob) Ross, providing that Defendant would receive certain funds listed in the contract.   A copy of the contract is attached as Exhibit "A" and incorporated by reference and for all purposes.

12.    The Contract has been assigned to the Plaintiff, Diversified Credit Systems, for all purposes by Assignor AFPA, but primarily for the purpose of collection of the amounts owed Plaintiff.

## BREACH OF CONTRACT

13.    Plaintiff incorporates by reference the allegations set forth above as if the same were fully set forth herein.

14.    Plaintiff's Assignor, APFA has met all of its obligations under the Transition Agreement (Contract) and all sums due Defendant were fully paid and accepted by Defendant.

15.    All contractual obligations of the Association of Professional Flight Attendants have been fully performed.

16.    Defendant has failed to perform his contractual obligations, specifically, an accounting was performed by the Certified Public Accounting firm of Wood, Stephens & O'Neil. A copy of that firms audit showed that Defendant had been paid in excess of the sums due him

under the Agreement in the sum of $5,436.47. The firms Audit report is attached as Exhibit "B" and attached for all purposes.

17.     The APFA made demand on Defendant's to reimburse Plaintiff for the overpayments. A copy of the accounting and Memorandum from the accountant is attached as Exhibit "B" and incorporated for all purposes herein. Defendant has been provided the accounting and the Accounting firms report, but Defendant has failed to reimburse APFA for the overpayments.

18.     Documentation and demand has been provided Defendant on multiple occasions, including from APFA, Assignee, Diversified Credit Systems and the undersigned Attorney.

### DAMAGES

19.     Plaintiff has sustained damages within the Court's jurisdictional limits of this Court, and as a result of the actions and/or omissions of Defendant described hereinabove, including, but not limited to:

Actual or economic damages for $5,436.47.

### OTHER RELIEF REQUESTED

### ATTORNEY'S FEES

20.     Request is made for all costs and reasonable and necessary attorney's fees incurred by or on behalf of Plaintiff herein, including all fees necessary in the event of an appeal of this cause to a County Court at Law, Court of Appeals and the Supreme Court of Texas, as the Court deems equitable and just, as provided by Chapter 38 of the Texas Civil Practice and Remedies Code.

### ALTERNATIVE ALLEGATIONS

21.     Pursuant to Rules 47 and 48, Texas Rules of Civil Procedure and the rules of

APPENDIX P. 35

pleadings, allegations in this petition are made in the alternative.

## PRAYER

**WHEREFORE, PREMISES CONSIDERED,** Plaintiff, Diversified Credit Systems, Assignee of the Association of Professional Flight Attendants, respectfully prays that the Defendant be cited to appear and answer herein, and that upon a final hearing of the cause, judgment be entered for the Plaintiff against Defendant for damages requested hereinabove in an amount within the jurisdictional limits of the Court, together with prejudgment and postjudgment interest at the maximum rate allowed by law, attorney's fees, costs of court, and such other and further relief to which the Plaintiff may be entitled at law or in equity, whether pled or unpled.

Respectfully submitted,

*/S/ Michael R. Rake*

**Michael R. Rake, Attorney at Law, PLLC**
**State Bar # 16487600**
P.O. Box 1556, Lake Dallas, TX 75065
Tel. & Fax: 940-498-2103
E-mail: mrake1@mrakeattorney.com

**Attorney for:**
Diversified Credit Systems, Assignee of the Association of Professional Flight Attendants



A CERTIFIED COPY
JUSTICE OF THE PEACE
PRECINCT THREE
TARRANT COUNTY, TEXAS
BY: HM

**APPENDIX P. 36**

## TRANSITION AGREEMENT

This TRANSITION AGREEMENT (hereinafter referred to as the "Agreement") is entered into between President ROBERT ROSS (hereinafter referred to as "ROSS"), and the ASSOCIATION OF PROFESSIONAL FLIGHT ATTENDANTS, through its Voting Board of Directors and on behalf of any and all of its officers, directors, employees, agents, members, and attorneys, in their official and individual capacities, together with their successors both jointly and severally (hereinafter collectively and individually referred to as "APFA").

WHEREAS, President ROSS and APFA, through its Voting Board of Directors, find it mutually beneficial and in the best interests of the membership to enter into this Transition Agreement; and

WHEREAS, President ROSS has previously announced his intention not to seek re-election for APFA President, and as such the parties have agreed on the terms of this Agreement.

NOW THEREFORE, In consideration of the mutual covenants contained in this Agreement, President ROSS and APFA (hereinafter collectively referred to as "the Parties"), intending to be legally bound, do hereby stipulate and agree as follows:

1. ROSS hereby voluntarily and irrevocably resigns from his position as the National President of APFA effective at the close of the 2018 APFA Convention, and agrees to announce his resignation by the close as well.

2. ROSS will have access through the close of business on March 9, 2018 to his APFA office, files, and computer to finalize his affairs. Starting upon the announcement of the resignation, all emails, telephonic calls, correspondence and affairs regarding or directed to the APFA National President shall be immediately routed to the successor APFA National President.

3. APFA agrees that ROSS will continue to receive from APFA his current full salary and benefits, including full insurance coverage, through July 31, 2018.

4. APFA agrees to pay ROSS all of his accrued and unused sick and accrued and unused vacation time, from April 1, 2016 through July 31, 2018.

5. APFA agrees to pay Ross, upon his request, a one-time lump sum in the total amount of ten thousand dollars ($10,000.00), which represents ROSS's moving expenses. ROSS shall present the moving expenses to APFA for

EXHIBIT
"A"

payment through 2019.

6.    APFA and ROSS will each prepare a communication regarding ROSS's resignation.   APFA shall disseminate said communications simultaneously upon the announcement of the resignation. Each statement shall be mutually agreed upon by both Parties prior to its distribution. Further, the Parties will mutually agree on talking points that shall be used for responses to inquiries from APFA members, the press, and the general public for use, beginning with the announcement.

7.    The Parties agree that the existence, terms, and content of this Agreement are completely confidential   ROSS agrees not to disclose the existence, terms, or content of this Agreement to any third party, except to his spouse, accountant, financial advisors, or attorney. APFA agrees not to disclose the existence, terms, or content of this Agreement, except to the signatories to this Agreement, and to any APFA officers, employees, accountants or attorneys who have an explicit need to know of this Agreement in order to effectuate its terms. The Parties shall be responsible for ensuring in writing that the confidentiality provisions of this Agreement are fully explained and adhered to by anyone to whom permitted disclosures are made pursuant to this paragraph. The Parties agree that they will respond to all inquiries regarding Ross' transition with APFA in accordance with the communications and talking points prepared pursuant to numbered paragraph 6 of this Agreement.

8.    ROSS agrees not to make, orally or in writing, any statements disparaging APFA and/or the Board of Directors, whether or not such statements legally constitute libel or slander, and whether such statements are made to the media, to other individuals, or otherwise.  Likewise, APFA's Board of Directors, and its officers, employees and agents who are aware of this Agreement pursuant to the confidentiality provisions of numbered paragraph 7 of this Agreement, agree not to make, orally or in writing, any statements disparaging ROSS or his immediate family, whether or not such statements legally constitute libel or slander, and whether such statements are made to the media, to other individuals, or otherwise.

March 1, 2018:1.0

9.  The current APFA National Vice-President will be included in all discussions with the APFA Board of Directors regarding the filling of the APFA National Vice-President position.

10. The Parties and signatories to this Agreement have carefully read and understand this Agreement and acknowledge that no party has made any representations other than those contained herein.

11. The Parties agree that this Agreement constitutes their final and complete understanding with respect to the subject matter hereof and supersedes all prior or contemporaneous negotiations, promises, agreements or representations concerning any matters directly, indirectly, or collaterally related to the subject matter of this Agreement. This Agreement may be executed in counterparts, each of which shall constitute an original, and all of which together shall constitute one and the same Agreement. Electronic and facsimile copies shall constitute originals for all purposes, including enforcement.

12. The Parties agree that this Agreement cannot be amended or modified except by express written consent of the Parties hereto.

13. The Parties agree to submit any and all disputes regarding the validity or enforcement of this Agreement to a mutually chosen arbitrator whose decision shall be binding on both Parties. The expenses of the arbitrator shall be borne by APFA.  Venue shall be by agreement of the parties.

14. If any provision, or any part thereof, in this Agreement is found to be invalid, such determination shall not affect the validity of any other provision(s) or part(s) of this Agreement.

15. The terms and conditions of this Agreement shall be binding upon the Parties' successors and assigns.

IN WITNESS WHEREOF, APFA and President ROSS have executed this agreement in _Charlotte, NC_ on the date(s) indicated below.

BY PRESIDENT ROBERT ROSS:

_____        _____3/1/18_____
Robert Ross                                         Date

March 1, 2018:1.0

APPENDIX P. 39

**BY APFA (THROUGH ITS VOTING BOARD OF DIRECTORS):**

Amy Milenkovic- BOS

Date   3-1-18

Wanda Sarnacki - CLT

Date   3-1-2018

Robert Valenta- DCA-AA

Date   3/1/18

John Pennel - DCA-US

Date   3/1/18

Maureen Walsh Martin –DFW

Date   3/1/18

John Nikides – LAX

Date   3/1/18

Raymond Lewis – LGA

Date   3/1/18

Randy Trautman– MIA

Date   3/1/2018

Susan Wroble –ORD

Date   3/1/18

Kim Kaswinkel – PHL

Date   3/1/18

Mischel Babi – PHX

Date   3/1/18

Louise Sullivan – RDU

Date   3/1/18

Jennifer Welpott – SFO

Date   3/1/18

Matt Foust – STL

Date   3/1/18

March 1, 2018:1.0

# Wood, Stephens & O'Neil, L.L.P.

**Certified Public Accountants**

6300 Ridglea Place, Suite 318
Fort Worth, TX 76116
Tele. 817-377-1700
Fax 817-377-1870

## CONFIDENTIAL MEMORANDUM

MEMO TO:     APFA Board of Directors and the Executive Committee

FROM:        Hal O'Neil, CPA, Pam Bush
SUBJECT:     Review of officer disbursements and the Bob Ross transition agreement
DATE:        October 22, 2020

The current APFA officers, in consultation with the APFA staff attorney and outside counsel, requested that our firm review specific former officer expense reimbursements and payroll disbursements, as well as the payments arising from the Bob Ross confidential transition agreement. This informal engagement is substantially less in scope than an audit engagement, the objective of which would be the expression of an opinion regarding these specific disbursements. Accordingly, we do not express an opinion or any form of assurance regarding these disbursements. Our task under this informal engagement, was as follows:

1. To review the backup for the former officers' salary disbursement amounts from 2016 - 2018 and to determine these base salaries were calculated correctly and in compliance with the guidelines and pay rates stipulated in the APFA policy manual. Please see the enclosed schedule A for each officer.

2. To prepare an overpayment schedule of the accrued and unused sick, and accrued and unused vacation time payments made to Bob Ross in 2018, similar to the overpayment schedules we prepared previously for the other three officers. Please see the enclosed schedules B and C for each officer. These overpayment schedules for the other officers were previously provided to the Board of Directors. Please note the Bob Ross confidential transition agreement states that he will be paid all of his accrued and unused sick, and accrued and unused vacation time. This agreement doesn't specify that the payments be made in accordance with the policy manual guidelines. Consequently, these payments appear appropriate and in compliance with the transition agreement. This agreement also specifies reimbursement payments to him of up to $10,000 in actual moving expenses. His moving expense reimbursement payments did not exceed this amount.

3. To assist the APFA accounting department staff in reviewing and organizing the various requested documents, as set forth in the flight attendants Chinery and Lee financial document request.

Please contact us should the Board of Directors or the Executive Committee have questions regarding our limited engagement.

Sincerely,

*Hal O'Neil, CPA*



EXHIBIT
"B"

| | | C | | | | | | |
|---|---|---|---|---|---|---|---|---|
| **National Officer:** | **Bob Ross** | | **Overpayment Calculation** | | | | | |
| | | | Annual | Daily amount | Eligible | | | |
| | | | Salary | (divide by 365) | Days to pay | Payment | | |
| **Vacation Pay - 2017** | | | | | | | | |
| | Original amount | | $ 101,031.36 | 276.80 | 14 | $ 3,875.20 | OK (paid 3/31/17) | |
| | | | | | Overpayment | $ - | $ - | |
| | | | | | | | | |
| **Sick Pay - 2017** | | | | | | | | |
| | Original amount | | $ 101,031.36 | 276.80 | 12 | $ 3,321.60 | OK (paid 3/31/17) | |
| | | | | | Overpayment | $ - | $ - | |
| | | | | | | | | |
| **Vacation & Sick Pay - 2017 - (adjustment paid in 2018....all paid in error)** | | | | | Overpayment | $ 968.76 | $ 968.76 | |
| **Vacation Pay - 2017 (remaining unused days per agreement)** | | | | | | | | |
| | Original amount - paid in error (a) | | $ 114,632.67 | 314.06 | 17 | $ 5,339.02 | (paid 3/29/2018) | |
| | Correct calculation amount | | $ 101,031.36 | 276.80 | 17 | $ 4,705.60 | | |
| | | | | | Overpayment | $ 633.42 | $ 633.42 | |
| | | | | | | | | |
| **Vacation Pay - 2018 (remaining unused days per agreement)** | | | | | | | | |
| | Original amount - paid in error (a) | | $ 122,121.70 | 334.58 | 29 | $ 9,702.82 | (paid 3/29/2018) | |
| | Correct calculation amount | | $ 107,893.92 | 295.60 | 29 | $ 8,572.40 | | |
| | | | | | Overpayment | $ 1,130.42 | $ 1,130.42 | |
| | | | | | | | | |
| **Sick Pay - 2018** | | | | | | | | |
| | Original amount - paid in error (a) | | $ 122,121.69 | 334.58 | 12 | $ 4,014.96 | (paid 3/29/2018) | |
| | Correct calculation amount | | $ 107,893.92 | 295.60 | 12 | $ 3,547.20 | | |
| | | | | | Overpayment | $ 467.76 | $ 467.76 | |
| | | | | | | | | |
| **End of term payout - 2017 (January 1 - December 31, 2017)** | | | | | | | | |
| | Original amount - paid in error (a) | | $ 118,046.02 | 334.58 | 35 | $ 11,710.30 | (paid 3/29/2018) | |
| | Correct calculation amount | | $ 107,893.92 | 295.60 | 35 | $ 10,346.00 | | |
| | | | | | Overpayment | $ 1,364.30 | $ 1,364.30 | |
| | | | | | | | | |
| **End of Term Payout - 2018 (January 1 - July 31, 2018)** | | | | | | | | |
| | Original amount - paid in error (a) | | $ 118,046.02 | 334.58 | 20.44 | $ 6,838.82 | (paid 3/29/2018) | |
| | Correct calculation amount | | $ 107,893.92 | 295.60 | 20.44 | $ 6,042.06 | | |
| | | | | | Overpayment | $ 796.75 | $ 796.75 | |
| | | | | | | | | |
| | | | | | Overpayment subtotal | | $ 5,361.41 | ** |
| | | | | | | | | |
| | | Add 2018 profit-sharing contribution paid (3/8/2019) on excess amount above ** | | | | | $ 75.06 | (based on 1.4%) |
| | | | | | | | | |
| | | | | **Total overpayment - due to APFA** | | | $ 5,436.47 | |

**Association of Professional Flight Attendants**

Representing the Flight Attendants of American Airlines

December 8, 2020

Eugenio Vargas
1616 Brookhaven Cir
Bedford, TX 76022

RE: Article VII Charges

Dear Mr. Vargas:

In accordance with Article VII, Section 3 of the APFA Constitution, at its meeting on December 1, 2020, the APFA Executive Committee reviewed the Article VII Charges filed against you by Melissa Chinery and Sandra Lee. The Executive Committee found them to be timely, specific, and valid. Enclosed are copies of the Resolutions of the Executive Committee regarding those charges.

Therefore, per Article VII, Section 3.A, I have forwarded the enclosed Charges to the Article VII Arbitrator.

Section 17.S of the Policy Manual sets forth the policy regarding communications with the Arbitrator.

Please contact me via email if you have any questions.

Sincerely,

Josh Black
APFA National Secretary

Cc:    Melissa Chinery
       Sandra Lee
       APFA Board of Directors
       APFA Executive Committee
       Article VII File

# APFA
## EXECUTIVE COMMITTEE MEETING

### 3Q20 EC MEETING
#### December 1-2, 2020
#### APFA Unity Pays Conference Room
#### Euless, TX

| Resolution Tally Sheet | |
|---|---|
| Resolution #: | 9 |
| Maker: | Black |
| Second: | Watson |
| Date: | 12/01/2020 |
| Time: | 2:02 p.m. |

**Resolution Name: Chinery-Lee v Vargas - Valid**

| YES | = | Yes | ABS | = | Abstain | PXY | = | Proxy Vote |
|---|---|---|---|---|---|---|---|---|
| NO | = | No | N/A | = | Absent | REC | = | Recuse |
| PASS | = | Pass | | | | | | |

COMMENTS:

|  | Watson | Gluth | Conners | Seelye | Hancock | Treasurer | Secretary | Vice President | President |
|---|---|---|---|---|---|---|---|---|---|
| YES | ☒ | ☒ | ☒ | ☒ | ☒ | ☒ | ☒ | ☒ | ☒ |
| NO | ☐ | ☐ | ☐ | ☐ | ☐ | ☐ | ☐ | ☐ | ☐ |
| PASS | ☐ | ☐ | ☐ | ☐ | ☐ | ☐ | ☐ | ☐ | ☐ |
| ABS | ☐ | ☐ | ☐ | ☐ | ☐ | ☐ | ☐ | ☐ | ☐ |
| N/A | ☐ | ☐ | ☐ | ☐ | ☐ | ☐ | ☐ | ☐ | ☐ |
| PXY | ☐ | ☐ | ☐ | ☐ | ☐ | ☐ | ☐ | ☐ | ☐ |
| REC | ☐ | ☐ | ☐ | ☐ | ☐ | ☐ | ☐ | ☐ | ☐ |

YES: 9     NO: 0     ABSTAIN: 0     ABSENT: 0

Status: Passed ☒     Failed ☐     Tabled ☐     Withdrawn ☐     Show of Hands ☐

**WHEREAS**, on November 20, 2020, Melissa Chinery and Sandra Lee filed charges against Eugenio Vargas under Article VII of the APFA Constitution; and

**WHEREAS**, Article VII, Section 3 of the APFA Constitution provides that the Executive Committee shall review Article VII charges for validity, and

**WHEREAS**, the Executive Committee has conducted that review.

**BE IT THEREFORE RESOLVED**, that Melissa Chinery's and Sandra Lee's November 20, 2020 charges against Eugenio Vargas are valid.

# APFA
## EXECUTIVE COMMITTEE MEETING

### 3Q20 EC MEETING
December 1-2, 2020
APFA Unity Pays Conference Room
Euless, TX

| Resolution Tally Sheet | | |
|---|---|---|
| Resolution #: | 8 |
| Maker: | Black |
| Second: | Watson |
| Date: | 12/01/2020 |
| Time: | 2:00 p.m. |

**Resolution Name: Chinery-Lee v Vargas - Specific**

| YES | = | Yes | ABS | = | Abstain | PXY | = | Proxy Vote |
|---|---|---|---|---|---|---|---|---|
| NO | = | No | N/A | = | Absent | REC | = | Recuse |
| PASS | = | Pass | | | | | | |

COMMENTS:

| | Watson | Gluth | Conners | Seelye | Hancock | Treasurer | Secretary | Vice President | President |
|---|---|---|---|---|---|---|---|---|---|
| YES | ☒ | ☒ | ☒ | ☒ | ☒ | ☒ | ☒ | ☒ | ☒ |
| NO | ☐ | ☐ | ☐ | ☐ | ☐ | ☐ | ☐ | ☐ | ☐ |
| PASS | ☐ | ☐ | ☐ | ☐ | ☐ | ☐ | ☐ | ☐ | ☐ |
| ABS | ☐ | ☐ | ☐ | ☐ | ☐ | ☐ | ☐ | ☐ | ☐ |
| N/A | ☐ | ☐ | ☐ | ☐ | ☐ | ☐ | ☐ | ☐ | ☐ |
| PXY | ☐ | ☐ | ☐ | ☐ | ☐ | ☐ | ☐ | ☐ | ☐ |
| REC | ☐ | ☐ | ☐ | ☐ | ☐ | ☐ | ☐ | ☐ | ☐ |

YES: 9    NO: 0    ABSTAIN: 0    ABSENT: 0

Status: Passed ☒   Failed ☐   Tabled ☐   Withdrawn ☐   Show of Hands ☐

**WHEREAS**, on November 20, 2020, Melissa Chinery and Sandra Lee filed charges against Eugenio Vargas under Article VII of the APFA Constitution; and

**WHEREAS**, Article VII, Section 3 of the APFA Constitution provides that the Executive Committee shall review Article VII charges for specificity, and

**WHEREAS**, the Executive Committee has conducted that review.

**BE IT THEREFORE RESOLVED**, that Melissa Chinery's and Sandra Lee's November 20, 2020 charges against Eugenio Vargas are specific.

# APFA

## EXECUTIVE COMMITTEE MEETING

### 3Q20 EC MEETING
#### December 1-2, 2020
#### APFA Unity Pays Conference Room
#### Euless, TX

| Resolution Tally Sheet | | |
|---|---|---|
| Resolution #: | 7 |
| Maker: | Black |
| Second: | Seelye |
| Date: | 12/01/2020 |
| Time: | 1:57 p.m. |

**Resolution Name: Chinery-Lee v Vargas - Timely**

| | | | |
|---|---|---|---|
| YES = Yes | ABS = Abstain | PXY = Proxy Vote |
| NO = No | N/A = Absent | REC = Recuse |
| PASS = Pass | | |

COMMENTS:

| | Watson | Gluth | Conners | Seelye | Hancock | Treasurer | Secretary | Vice President | President |
|---|---|---|---|---|---|---|---|---|---|
| YES | ☒ | ☒ | ☒ | ☒ | ☒ | ☒ | ☒ | ☒ | ☒ |
| NO | ☐ | ☐ | ☐ | ☐ | ☐ | ☐ | ☐ | ☐ | ☐ |
| PASS | ☐ | ☐ | ☐ | ☐ | ☐ | ☐ | ☐ | ☐ | ☐ |
| ABS | ☐ | ☐ | ☐ | ☐ | ☐ | ☐ | ☐ | ☐ | ☐ |
| N/A | ☐ | ☐ | ☐ | ☐ | ☐ | ☐ | ☐ | ☐ | ☐ |
| PXY | ☐ | ☐ | ☐ | ☐ | ☐ | ☐ | ☐ | ☐ | ☐ |
| REC | ☐ | ☐ | ☐ | ☐ | ☐ | ☐ | ☐ | ☐ | ☐ |

| YES: | 9 | NO: | 0 | ABSTAIN: | 0 | ABSENT: | 0 |
|---|---|---|---|---|---|---|---|

Status: Passed ☒   Failed ☐   Tabled ☐   Withdrawn ☐   Show of Hands ☐

**WHEREAS**, on November 20, 2020, Melissa Chinery and Sandra Lee filed charges against Eugenio Vargas under Article VII of the APFA Constitution; and

**WHEREAS**, Article VII, Section 3 of the APFA Constitution provides that the Executive Committee shall review Article VII charges for timeliness, and

**WHEREAS**, the Executive Committee has conducted that review.

**BE IT THEREFORE RESOLVED**, that Melissa Chinery's and Sandra Lee's November 20, 2020 charges against Eugenio Vargas are timely.

---

*EC Resolution #7*          *December 1-2, 2020*          *Page 1 of 1*

Melissa Chinery   9/14/2021

Page 221

```
 1              THE ARBITRATOR:  Please have a seat.
 2   State your name, your position for the record.
 3              MR. HARRIS:  My name's Erik Harris and
 4   I'm the APFA Treasurer.
 5                     ERIK HARRIS,
 6   having been first duly sworn, testified as follows:
 7                  DIRECT EXAMINATION
 8   BY MS. LEE:
 9        Q.   Hi, Erik.
10        A.   Hello.
11        Q.   Okay.  I'll start with the obvious.  What is
12   your name?
13        A.   Erik Harris.
14        Q.   Where are you employed, Erik?
15        A.   I'm employed for APFA right now, but also an
16   American Airlines Flight Attendant.
17        Q.   Okay.  What is your position at APFA?
18        A.   National Treasurer.
19        Q.   How long have you been employed at APFA?
20        A.   Since April 2020.  April 1st.  Employed at
21   APFA.
22        Q.   At American Airlines?
23        A.   American since May 2014, yes.
24        Q.   Okay.  Did you hold any positions with APFA
25   during your career, other positions?
```

```
 1      A.   Yes.

 2      Q.   Could you tell us about those?

 3      A.   Okay.  Started contract and scheduling

 4  representative.  I was a health department rep, IOD

 5  department rep, safety and security department rep, a

 6  BCR Philadelphia, budget committee member, and national

 7  contract chair.  I might have forgot something.

 8      Q.   In your role as National Treasurer, have you

 9  been responsible for responding to requests to see

10  financial information?

11      A.   Primarily, yes.

12      Q.   I've got to back up.  To your knowledge, has

13  an incoming Officer who has chosen to relocate to DFW

14  or Dallas been able to purchase outgoing furniture?

15      A.   Incoming --

16      Q.   The furniture of an outgoing Officer per

17  policy?

18      A.   Would the incoming be able to purchase that?

19      Q.   Would the incoming -- incoming Officer who has

20  chosen to relocate, not living --

21      A.   Oh, relocate --

22      Q.   -- in corporate --

23      A.   -- okay.

24      Q.   -- housing --

25      A.   Okay.  That's the requirements.
```

```
 1        Q.   Okay.  Not living in corporate housing,
 2   they've chosen to relocate, has that incoming Officer
 3   or have they ever been able to purchase the furniture
 4   of an outgoing Officer per policy, do you know?
 5        A.   I don't know.  I've not since my -- since me
 6   being here, that hasn't happened.
 7        Q.   Okay.  Okay.  Okay.  We'll move on.  I'm going
 8   to reask this question.  In your role as National
 9   Treasurer, have you been responsible for responding to
10   requests to see financial information?
11        A.   Yes.
12        Q.   Did you see requests for -- from Melissa and
13   myself?
14        A.   Yes.
15        Q.   To come down and see financial records?
16        A.   Yes.
17        Q.   And did you set up times for us to see the
18   information?
19        A.   Yes.
20        Q.   Approximately how many times did we come down
21   to review the information?
22        A.   I would say since we -- since I came into the
23   office --
24        Q.   Approximately?
25        A.   -- five to 10.
```

Melissa Chinery   9/14/2021

Page 224

```
 1       Q.    Five to 10?

 2       A.    Yeah.

 3       Q.    So you've been present with both Melissa and

 4   myself when we came down?

 5       A.    The majority, yes.

 6       Q.    Okay.  If you weren't present, who was

 7   present?

 8       A.    The assistant to the Treasurer, Robert

 9   (unintelligible).

10       Q.    Who was Treasurer before you took office?

11       A.    Craig Gunter.

12       Q.    And before him?

13       A.    Eugenio Vargas.

14       Q.    When you came into office, how would you

15   describe the state of the Union financial records?

16       A.    They were very bad.

17       Q.    Could you elaborate?

18       A.    The -- there were pay loss bills behind.

19   There was a lot of overspending and just -- just not

20   very well kept books in general.

21       Q.    Do you think the financial records that you

22   were supposed to keep for what we think is five years,

23   were they there?  Did you have an opportunity to look?

24       A.    I didn't look thoroughly, but I -- when I did

25   look, there were a lot of things missing or not -- not
```

Melissa Chinery   9/14/2021

Page 225

```
 1    there --
 2        Q.   Okay.
 3        A.   -- were not kept well.
 4        Q.   We'll get further into that.  What is the
 5    obligation for Union Officers to substantiate credit
 6    card, their credit card spending?
 7        A.   There's -- well, I'll say prior to this year,
 8    the only requirement or obligation was that the OL --
 9    OLMS and the requirement was to provide receipts and
10    substantiate credit card purchases and document those
11    items.
12        Q.   How do you document them?  How do you document
13    it?  I came over with a credit card, how would I
14    document it --
15        A.   It was done --
16        Q.   -- for a receipt?
17        A.   -- different ways.  Are you talking about for
18    me?
19        Q.   For any of the Officers.
20        A.   Oh.  Just they were provided to the
21    Treasurer's office, the receipts along with the credit
22    card statements.
23        Q.   Is there documentation required on the
24    receipt?
25        A.   Document -- say that again.
```

Melissa Chinery   9/14/2021

Page 337

1  locate and provide those documents?

2      A.   Yes.

3      Q.   Can you explain the steps taken to ensure what

4  documents -- which documents you had or you have?

5      A.   Well, the subpoenas, there were quite a few.

6  Once we received each -- each requested item, we

7  located them, whether they were in APFA headquarters

8  physically or kept in our document storage, our

9  corporate records storage downtown, and then we'd

10 retrieve them and scan them, organize them, label them,

11 and send them over.

12     Q.   So you're speaking specifically of documents

13 that we requested?

14     A.   That you requested, yes.

15     Q.   Okay.  So this is in response to the subpoena.

16 Are these documents maintained as business records for

17 the Union?

18     A.   Yes.

19     Q.   Talking about my subpoenas, were these

20 compiled from physical copies from your record, the

21 things that we received?

22     A.   Yes.

23     Q.   Okay.  I'm going to present to you some

24 exhibits, so -- and the black book I think it's one --

25 the one that says -- the one you -- yeah, the one -- it

1        MS. CHINERY:   I'm getting you one.

2        THE ARBITRATOR:   Okay.  Go ahead.

3    Q.   (BY MS. LEE)   Okay.  So the documents that

4  we're going to present right now, you've already agreed

5  are business records for the Union and were compiled

6  from physical -- physical copies of your records.  So

7  move to Exhibit 1.

8    A.   Okay.

9    Q.   Can you talk about that?

10   A.   This is a credit card statement.

11   Q.   Okay.

12   A.   Or corporate card statement.

13   Q.   And then the -- okay.  I want you to flip to

14  the weekly activity report.

15   A.   Weekly, okay.

16   Q.   Okay.  Could you talk about that, what they're

17  supposed to fill out and what it's supposed to look

18  like?

19   A.   This is a weekly report that every rep fills

20  out to substantiate payment of MEA, SAF stipends.

21  There's one for each week and it's basically a time

22  sheet.

23   Q.   Okay.  We're going to move on to -- we're

24  going to move on to number 2 in that same book.

25   A.   Okay.  Is it -- okay.  Now, is it CL 2?

# Melissa Chinery's February 23, 2022 Wedding to
## AFA In-House Counsel Joe Burns



**APFA Member - Melissa Chinery (Charging Party Against Plaintiff) and Joe Burns (AFA In-House Counsel) Photos of Wedding held on February 23, 2022--2 months prior to the Ross Award and 1 month before the Vargas Award was issued.**

**From the Left:**
**Larry Salas - APFA National**
**Vice-President Josh Black -**
**APFA National Secretary Erik**
**Harris - APFA National**
**Treasurer**

## Melissa Chinery's February 23, 2022 Wedding to
## AFA In-House Counsel Joe Burns





**Larry Salas - APFA Current
Vice-President**

## Melissa Chinery's February 23, 2022 Wedding to
## AFA In-House Counsel Joe Burns





**APFA National
Secretary - Josh Black**



**APFA National Treasurer
- Erik Harris**

# Melissa Chinery's February 23, 2022 Wedding to
## AFA In-House Counsel Joe Burns



Melissa Chinery-Burns at her wedding in Hawaii on February 2022 - months prior to Ross and Vargas Awards being issued.

On the Left: John Nikides - Board of Director and Base President for APFA

On the Right: Rick Cangy - Former Board of Director for AFA

# Melissa Chinery's February 23, 2022 Wedding to AFA In-House Counsel Joe Burns

## Melissa's Post



Joe Burns and 48 others          3 Comments

APFA Member - Melissa  Chinery-Burns  (Charging Party against Plaintiff) and Joe Burn - AFA In-House Counsel with Sara Nelson - International President of AFA.



Sarah Nelson - International President of AFA

<u>In the Matter of Arbitration Between</u>

|  |  |  |
|---|---|---|
| | ) | |
| Melissa Chinery | ) | **RE: Article VII Charges** |
| Sandra Lee | ) | **Violations of APFA Constitution** |
| | ) | **and APFA Policy Manual** |
|     **APFA Charging Party Members** | ) | |
|       **(Plaintiff)** | ) | |
| | ) | |
| **And** | ) | |
| | ) | |
| **Eugenio Vargas, Former APFA** | ) | |
| **National Treasurer** | ) | |
| | ) | |
|     **APFA Charged Party Member** | ) | |
|       **(Defendant)** | ) | |
| | ) | |

**Before:**                   **Alternate Article VII Arbitrator Ruben R. Armendariz**

**Place and Dates of Hearing:**      **The Westin Irving Convention Center at Las Colinas, 400 West Las Colinas Boulevard, located in the City of Irving, Texas.**

                                        **September 14, 15 and 16, 2021**

**Appearances:**

      **For Charging Party Members:**     **Melissa Chinery, Representative**
                                          **Sandra Lee, Representative**
                                          **Heather Olenjack, Representative**

      **For Charged Party Member:**       **Heidi Morgan, Representative**
                                          **Nena Martin, Representative**
                                          **Eugenio Vargas, Former National Treasurer**

### INTRODUCTION

This is an Article VII Hearing that was heard at the Westin Irving Convention Center at Las Colinas, Irving, Texas on September 14, 15 and 16, 2021. The arbitration hearing was transcribed by Carson Reporting & Associates.

Charging Party Melissa Chinery and Sandra Lee, will be hereinafter referred to as the "Plaintiff." Charged Party Eugenio Vargas, will be hereinafter referred to as the "Defendant."

Plaintiff presented for testimony Former Treasurer and Retired Flight Attendant Cathy Lukensmeyer, Business Owner Michael Trapp, Former Boston Base President and Flight Attendant Jennifer McCauley, DFW Base President and Flight Attendant Michael Truan, Flight Attendant Heather Olenjack, Los Angeles Base President and Flight Attendant John Nikides, Flight Attendant and National Treasurer Erik Harris, Flight Attendant Christopher Thedford, Flight Attendant Debbie Hoover, Flight Attendant and National Secretary Josh Black, Flight Attendant Sandra Lee and Flight Attendant Melissa Chinery.

Defendant presented for testimony Former Base Council Representative and Flight Attendant Shane Staples, Flight Attendant Chuck Ransdale, Budget Committee person Yvonne Johnston, Former National Treasurer Craig Gunter, Former APFA President Marcus Gluth, Former Board of Director and Miami Base President Randy Trautman and Former National Treasurer Eugenio Vargas

All of these witnesses were afforded full opportunity to be heard, to be examined, and to be cross-examined. The parties were allowed to introduce evidence on the issues. Based on the entire record, my observation of the witnesses, examination of the evidence, exhibits presented, post-hearing briefs[1] submitted, and arguments presented therein, this arbitrator makes the following findings and renders the following Discussion, Opinion, and Award.

### THE ISSUES

The issues presented in the Article VII grievance and heard in this proceeding are described as follows:

**The Plaintiff**

Plaintiff submits the issue to be determined by the Article VII arbitrator is stated as follows:

Whether Eugenio Vargas, the Charged Party herein violated the terms of the APFA Constitution and Policy Manual by;

---

[1] The parties agreed to submit post-hearing briefs by e-mail to arbruben@gmail.com on November 16, 2021 and requested an extended to December 31, 2021 and was granted. The post-hearing briefs were timely emailed and received, thus, the arbitrator finds the record in this matter closed on December 31, 2021.

(1) Violating the Meal Expense Policy?

(2) Failing to maintain an inventory thereby violating Article III, Section 6.E. of the APFA Constitution by failing to maintain union assets?

(3) Allowing himself and his fellow National Officers to receive inflated sick and vacation payouts when they were not entitled to such?

(4) Allowing the payment to former National President Bob Ross thousands of dollars in Meal Expenses Allowance (MEA) and SAF when he was no longer working for APFA?

(5) Violating the credit card policy by charging a rental car and meals for a trip to Spain?

(6) And, if so, what should be the appropriate remedy?

**The Defendant**

Defendant submits the only issue to be determined by the Article VII arbitrator is stated as follows;

(1) Whether Former APFA National Treasurer Eugenio Vargas committed the following act(s) was "**WILLFUL**" violation of an expressed Article of the APFA Policy Manual, the APFA Constitution, or of a proper and express written resolution or policy of the Board of Directors or Executive Committee of the APFA Constitution, as it is set forth in Article VII, Section 1.F.

(2) And if not, what is the appropriate remedy?

### *THE FACTS*

It is undisputed the  charges herein arose from an internal filing of an Article VII grievance filed by Plaintiff Members Melissa Chinery and Sandra Lee against Defendant Member Eugenio Vargas, Former National Treasurer.

Plaintiff alleged Former National Treasurer Eugenio Vargas violated the detailed language of the APFA expense policy by charging thousands of dollars of unauthorized meals to his APFA credit card. Vargas charged meals in his city of residence, Dallas Fort Worth (DFW), when he had no right to meals in his home location, double-dipped when he was receiving per diem out of base, and claimed actual meals while receiving Guaranteed Meal Allowance. Vargas further violated his responsibilities as treasurer by routinely authorizing inappropriate payments to other APFA officers who were committing similar violations of the meal expense policy.

Plaintiff alleged Former National Treasurer Eugenio Vargas failed to maintain an inventory and violated Article III Section 6.E. of the APFA Constitution by failing to maintain union assets. Vargas failed to maintain an inventory of furniture and failed to safeguard union assets as required by the APFA Constitution. Vargas failed to safeguard tens of thousands of dollars of furniture left by his and prior administrations. The evidence will show Vargas misappropriated tens of thousands

the National Treasurer for the independent auditor's audit. If not, an adverse inference may be drawn.

**Remedy**

Vargas is to repay APFA for the following:

1. If after the Independent Auditors audit is completed and he/she determines that Vargas had used the APFA credit card for his own personal use on meals during his tenure as National Treasurer, Vargas is hereby Ordered to repay APFA for all meals he charged to the APFA credit card.
2. Vargas is prohibited from serving in any APFA National Officer position or Regional Officer position for life.
3. Vargas is hereby fined and Ordered to repay the APFA for half of the Arbitrator's Fee for this arbitration.
4. The arbitrator shall retain jurisdiction for 90-days over any issue involving this remedy only. Moreover, if the Independent Auditor determines any monies are due from Vargas, that will be the amount to be assessed or due and the BOD or EC shall Order said repayment from Vargas.

**AWARD**

The grievance is sustained in part and dismissed in part as stated above.

**Issued in San Antonio, Texas, the 18th day of February, 2022.**

Ruben R. Armendariz, Arbitrator

# APFA

## ANNUAL BOARD OF DIRECTORS CONVENTION



## March 8-10, 2022

*Westin Irving Convention Center at Las Colinas*

| | Resolution Information |
|---|---|
| **Resolution #:** | 10 |
| **Resolution Name:** | Chinery-Lee v Vargas Arbitration Remedy |
| **Status:** | Pass |
| **Maker:** | Hedrick |
| **Second:** | Nikides |
| **Date:** | 03/10/2022 |
| **Time:** | 2:55 p.m. |
| **Affects PM:** | ☐ |
| **Comments:** | |

| | BOS Milenkovic | CLT Hazlewood | DCA Pennel | DFW De Roxtra | LAX Nikides | LGA Santana | MIA Trautman | ORD Wroble | PHL Kaswinkel | PHX Agee | SFO Ross | Pres Hedrick |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| **YES** | ☒ | ☒ | ☒ | ☒ | ☒ | ☒ | ☒ | ☒ | ☒ | ☐ | | ☐ |
| **NO** | ☐ | ☐ | ☐ | ☐ | ☐ | ☐ | ☐ | ☐ | ☐ | ☐ | ☒ | ☐ |
| **ABS** | ☐ | ☐ | ☐ | ☐ | ☐ | ☐ | ☐ | ☐ | ☐ | ☐ | ☐ | ☐ |
| **N/A** | ☐ | ☐ | ☐ | ☐ | ☐ | ☐ | ☐ | ☐ | ☐ | ☐ | ☐ | ☐ |

**Yes:** 10 **No:** 1 **Abstain:** 0 **Absent:** 0 **Show of Hands:** ☐

**WHEREAS**, APFA Constitution, Article VII provides APFA members a mechanism to hold their representatives accountable through internal hearing procedures facilitated by a neutral third-party arbitrator; and

**WHEREAS**, two such members, Melissa Chinery & Sandra Lee, filed Article VII Charges against previous APFA National Treasurer, Eugenio Vargas, on November 24, 2020; and

**WHEREAS**, these Article VII charges were referred to the designated Article VII Arbitrator, Ruben Armendariz, in accordance with APFA Constitution Article VII, Section 3; and

**WHEREAS**, the Chinery-Lee v Vargas charges were heard on September 14-16, 2021 in Irving, Texas; and

**WHEREAS**, Arbitrator Armendariz rendered a decision in the matter of Chinery-Lee v Vargas on February 18, 2022; and

**WHEREAS**, the remedy states:

"Vargas is to repay APFA for the following:

1. If after the Independent Auditors audit is completed and he/she determines that Vargas had used the APFA credit card for his own personal use on meals during his

**APFA**
BOARD OF DIRECTORS MEETING

tenure as National Treasurer, Vargas is hereby Ordered to repay APFA for all meals he charged to the APFA credit card.

2. Vargas is prohibited from serving in any APFA National Officer position or Regional Officer position for life.

3. Vargas is hereby fined and ordered to repay the APFA for half of the Arbitrator's Fee for this arbitration.

4. The arbitrator shall retain jurisdiction for 90-days over any issue involving this remedy only. Moreover, if the Independent Auditor determines any monies are due from Vargas, that will be the amount to be assessed or due and the BOD or EC shall Order said repayment from Vargas."

; and

**WHEREAS**, the APFA Board of Directors is authorized and empowered to take any and all lawful action consistent with the Constitution to safeguard and protect the APFA, and the rights, privileges, duties and responsibilities of the officers, representatives and members of the APFA.

**BE IT THEREFORE RESOLVED**, the APFA affirms the APFA Article VII Arbitrator's decision and remedy and hereby sanctions the following actions:

1. The APFA Board of Directors hereby orders APFA National Treasurer, Erik Harris, to retain an independent auditor to investigate if Vargas had used the APFA credit card for his own personal use on meals during his tenure as National Treasurer. Within 30 days of completion, the results of this investigation shall be remitted to the Board of Directors for review. After this review, the APFA Board of Directors shall order Eugenio Vargas to repay APFA for any monies deemed owed by the independent auditor.

2. The APFA Board of Directors hereby orders the NBC to maintain a record of the Chinery-Lee v Vargas Article VII award to ensure Eugenio Vargas name is removed from any Willingness-to-Serve that he may submit for life.

3. The APFA Board of Directors hereby orders Eugenio Vargas to repay APFA $8,623.17 for the Article VII Arbitrator's fees. The National Treasurer shall be charged with collecting from Vargas consistent with the APFA Constitution, Policy Manual, and any applicable Federal, State, and local laws.

4. Notwithstanding, should any further fees be incurred by the Article VII Arbitrator as it relates to the issuance and implementation of the remedy, fifty percent (50%) of such fees shall be remitted to Eugenio Vargas for repayment.

(https://www.apfa.org/)

Account (/my-account/) | Log In (/account/login/)

Search here...



## 3.24.22 – APFA Receives Article VII Arbitration Awards



**Thursday, March 24, 2022**

On March 19th, Arbitrator Ruben R. Armendariz issued a decision in Article VII charges brought under the APFA Constitution and Policy Manual against former APFA National President Bob Ross. Arbitrator Armendariz barred Ross from serving in any APFA position for life, ordered Ross to resign as San Francisco Base President, ordered Ross to repay APFA a substantial sum of money, and ordered an independent audit of certain expenses.

This decision follows a February 18th, 2022 decision that barred former APFA National Treasurer Eugenio Vargas from holding any APFA position for life and fined him half the cost of the arbitration, among other remedies.

Arbitrator Armendariz also ordered sweeping changes in the APFA financial policy, which requires training on allowable expenses, and instructed APFA to create a separate body of trained forensic accountants. This ruling demonstrates that this organization has spent years operating

**APPENDIX P. 65**

without proper financial controls. We have attached the decisions below and encourage all members to educate themselves on these issues.

These charges were brought by APFA members Melissa Chinery and Sandra Lee under Article VII of the APFA Constitution. We thank them for bringing these issues forward. The fact that we are in this place illustrates the need for more reform. You deserve to have your dues money spent according to the strictest financial standards. The dues dollars that allow our union to operate and provide our paychecks are your dollars, and we have a fiduciary responsibility to safeguard union finances.

When our administration took office, we supported financial transparency and committed to upholding the language that members have the right to review the financial information of the union under Article III of the APFA Constitution and federal labor law. Previously, this union has prevented members from reviewing all financial documents. Following prior legal advice, members were only allowed to view monthly financial reports and the LM-2 reports (our annual Department of Labor filing). We believe our past outside attorneys and advisors guided us improperly. We will continue to ensure members are not kept in the dark about dues spending.

To view the Chinery-Lee v Ross Arbitration Award, please click **here** (https://mcusercontent.com/1450c9c25bd3b5096022a9f71/files/7488c141-524c-97d2-1cd8-53b497ea5173/22_Corrected_Decision_Robert_Ross_1.pdf).

To view the Chinery-Lee v Vargas Arbitration Award, please click **here** (https://mcusercontent.com/1450c9c25bd3b5096022a9f71/files/2eb32bb3-8897-24c5-50a7-e8be520735c0/22_Decision_Eugenio_Vargas.pdf).

**Next Steps: Ensuring Financial Transparency and Accountability at APFA**

These decisions are a wake-up call for our entire union. As an independent union, we have no parent body to scrutinize our actions and must hold ourselves to the strictest standards. In the coming months, we will be reviewing the APFA Policy Manual to further reform APFA's financial policies. We will fully cooperate with Arbitrator Armendariz's decisions and will draw on the expertise of legal and financial experts.

Financial accountability and transparency have been a priority for our administration. We have taken several steps to ensure that APFA is handling your dues dollars responsibly, including:

- Increasing membership visibility into our financial reports, including audits, LM-2 filings, monthly financial reports, expense and mileage reports, credit card statements, signed contracts and agreements, and payroll registers.

**APPENDIX P. 66**

Case 4:22-cv-00430-Y   Document 56-1   Filed 11/09/22   Page 67 of 71   PageID 3049

- PA/AR removals (flat rate of 5 hours per day) used for all known meetings (such as Board of Director's Meetings and Executive Committee Meetings). PA/AR days are pre-planned absences placed onto a union Representative's schedule before PBS processes and count towards the Representative's PBS award max (**Policy Manual 5.C.1.g** (https://www.apfa.org/members/)).

- Enforcement of the Financial Reform Initiative resolutions passed at the March 2021 APFA Annual Convention, which included the following updates to the APFA Policy Manual:

  - **Resolution #8- APFA Issued Credit Cards** (https://mcusercontent.com/1450c9c25bd3b5096022a9f71/files/33410129-1e48-4d7f-9286-9085e19b3a86/2021_Conv_08_APFA_Issued_Credit_Cards.01.pdf) creates a new section 5.L in the Policy Manual and limits APFA credit card usage to National Officers. It also requires accountability by ensuring that another National Officer has to sign off on charges, requires strict documentation of all charges, and implements twice-yearly reviews of credit card activity by the Budget Committee. At least one (1) random audit will be performed by the Budget Committee every six (6) months to ensure proper spending, and training on the policy will be required by all incoming National Officers.

  - **Resolution #9- APFA Apartments** (https://mcusercontent.com/1450c9c25bd3b5096022a9f71/files/c4308b62-2a91-4601-ad04-cfb5a33d7e1a/2021_Conv_09_APFA_Apartments.01.pdf) puts more stringent guidelines on spending and inventory for APFA provided apartments. The Budget Committee shall maintain a table of the approved costs for purchasing new or replacement items. It adds a new inventory system to track all items belonging to APFA.

  - **Resolution #10- Business Related Meals** (https://mcusercontent.com/1450c9c25bd3b5096022a9f71/files/ce5361e7-6fd8-4da8-8b5c-17d7420fab2d/2021_Conv_10_Business_Related_Meals.01.pdf) adds policy for group meals to ensure compliance with the Labor-Management Reporting and Disclosure Act of 1959 (LMRDA) regarding meals purchased using an APFA credit card. All meal charges must be accompanied by a written explanation of the specific union business conducted during the meal and the full names and titles of all attendees.

  - **Resolution #11- Rental Car Policy & APFA Provided Transportation** (https://mcusercontent.com/1450c9c25bd3b5096022a9f71/files/3f9e49a6-7fe8-421b-aaed-2a21da0f9494/2021_Conv_11_Rental_Car_Polilcy_APFA_Provided_Transportion.01.pdf) adds language that any APFA Representative on union business in DFW should make every effort to utilize APFA-owned vehicles before using a taxi, rental cars, or other paid forms of transportation. This resolution also revises, further defines, and olicy Manual Section 5.H.4 by limiting rental car usage by incoming

**APPENDIX P. 67**

National Officers to thirty (30) days, except in extenuating circumstances and only upon approval from the APFA Executive Committee.

- ○ **Resolution #12- National Officer Relocation** (https://mcusercontent.com/1450c9c25bd3b5096022a9f71/files/f2c34cd8-f670-44fd-b288-741a6b9fac5f/2021_Conv_12_National_Officer_Relocation.01.pdf) updates the amount allowed for a National Officer to move to DFW. Instead of offering $10,000 round trip for a move to DFW, the Budget Committee shall maintain a table of approved relocation costs. Relocation reimbursement may be provided in accordance with the table.This resolution also limits the time in which a National Officer must decide to move to DFW or take an APFA provided apartment. This change allows the National Officer three (3) months from the election date to make their decision. This resolution also limits the amount of time a National Officer may reside in a hotel while deciding to move to DFW or take an APFA apartment. If a National Officer elects to live in an APFA apartment while in DFW, they will not be paid moving expenses if they suddenly change their mind and decide to relocate to DFW.

- ○ **Resolution #13- Collection of Non-Dues Related Monies Owed by APFA Representatives** (https://mcusercontent.com/1450c9c25bd3b5096022a9f71/files/82664914-049c-4ad0-92a7-580d909aa465/2021_Conv_13_Collection_of_Funds_from_APFA_Representatives.01.pdf) adds a new section to the APFA Policy Manual, Section 7.J. It states that Representatives owing non-dues related monies to APFA will receive written notification from the National Treasurer and ensures payment or a payment plan within thirty (30) days of receipt of such notification. If no payment is received, the monies will be sent to a collection agency.

- ○ **Resolution #14- Resignation or Recall of a National Officer** (https://mcusercontent.com/1450c9c25bd3b5096022a9f71/files/901dadb6-fdd1-4990-bd05-b639a67cb8d1/2021_Conv_14_Resignation_or_Recall_of_a_National_Officer.01.pdf) adds new language. Before this resolution, APFA had no written policy or procedure outlining pay and benefits for a resigning or recalled National Officer. This resolution adds a new Section 6.E to the APFA Policy Manual outlining the pay and benefits for a resigning or recalled National Officer and will remove the possibility of any future National Officer exit agreements.

**APPENDIX P. 68**

We will continue to review policies that have been in place for many years and make the changes necessary to ensure APFA is compliant with the Office of Labor-Management Standards (OLMS), the Labor-Management Reporting and Disclosure Act of 1959 (LMRDA), and the Internal Revenue Service (IRS) standards for labor unions.

In Solidarity,

*Julie*

**Julie Hedrick**
*APFA National President*

---

*Posted in Hotlines - 2022 (https://www.apfa.org/category/hotline-archives/hotlines-2022/) and tagged National President (https://www.apfa.org/tag/national-president/)*

1004 West Euless Boulevard
Euless, Texas 76040

Phone: (817) 540-0108 (tel:817-540-0108)
Fax: (817) 540-2077 (tel:817-540-2077)

**Headquarters**
M-F: 9:00AM - 5:00PM (CT)

**APFA Phone Reps**
M-F: 7:00AM - 7:00PM (CT)

**After-Hours Live Chat**
M-F: 3:00PM - 11:00 PM (CT)
Sat-Sun: 9:00AM - 5:00PM (CT)

## APFA Events

**2022 Fall Board of Directors Meeting (https://www.apfa.org/event/2022-fall-board-of-directors-meeting/)**

**APPENDIX P. 69**

**October 25 @ 9:00 am - October 27 @ 5:00 pm**

### Employee Number

95108

### Password

•••••••

Log In

Register (https://www.apfa.org/account/register-reset-password/)

(https://www.facebook.com/APFAunity) 

(https://twitter.com/APFAunity) 

(http://www.linkedin.com/company/association-for-professional-flight-attendants) 

(http://www.youtube.com/user/AAflightattendants)

(https://www.instagram.com/apfaunity)

Site Map (/sitemap/)
Privacy Policy (https://www.apfa.org/privacy-policy/)
Terms of Use (/terms-of-use/)
Jobs (/jobs/)

Wings Foundation
(http://www.wingsfoundation.com/)
Airline Ambassadors (http://www.airlineamb.org/)
UNICEF/Change for Good
(http://www.unicefusa.org/campaigns/changeforgood/)
APA (http://www.alliedpilots.org/)

**APPENDIX P. 70**

TWU (http://www.twu.org/)/IAM
(https://www.goiam.org/)
CWA (https://www.cwa-union.org/)-IBT
(https://teamster.org/)

© 2022 APFA | Powered by Beaver Builder (http://www.wpbeaverbuilder.com/?utm_medium=bb-pro&utm_source=bb-
theme&utm_campaign=theme-footer)



**APPENDIX P. 71**