**IN THE UNITED STATES DISTRICT COURT FOR THE NORTHERN DISTRICT OF TEXAS FORT WORTH DIVISION**

| | | |
|---|---|---|
| EUGENIO VARGAS, | § § § | |
| Plaintiff/Counterclaim Defendant, | § § § | Civil Action No. 4:22-cv-430-Y Judge Terry R. Means |
| v. | § § § | |
| ASSOCIATION OF PROFESSIONAL FLIGHT ATTENDANTS, *et al.*, | § § § | |
| Defendants/Counterclaim Plaintiff. | § | |

---

**APPENDIX IN SUPPORT OF PLAINTIFF'S BRIEF IN SUPPORT OF MOTION TO COMPEL DEFENDANTS' PRODUCTION OF DOCUMENTS AND BRIEF IN SUPPORT**

---

Plaintiff Eugenio Vargas, pursuant to Local Rules 7.1(i) and § C of this Court's Case Management Requirements, submits this appendix of non-published cases cited in, and in support of "PLAINTIFF'S MOTION TO COMPEL DEFENDANTS' PRODUCTION OF DOCUMENTS AND BRIEF IN SUPPORT:"

| Item | Description | Pgs. |
|:---:|:---|:---:|
| 1 | Supporting Documents Referenced in Brief | 1-30 |
| | **NON-PUBLISHED CASES** | |
| 2 | Dennis v. U.S., 3:16-cv-3148-G-BN (N.D. Tex. Oct. 23, 2017) | 31-53 |
| 3 | McGowan v. SMU, 3:18-CV-141-N (N. D. Tex. May 6, 2020) | 54-59 |
| 4 | OrthoAccel Tech., Inc. v. Propel Orthodontics, LLC, 4:16-cv-00350-ALM (E.D Tex. Apr. 4, 2017). | 60-65 |

Respectfully submitted,
K.D. PHILLIPS LAW FIRM, PLLC

By:  /s/  Kerri  Phillips
      Kerri Phillips
      Texas  Bar  No.  24065906
      Phone: (972) 327-5800
      Email: kerri@KDphillipslaw.com

      6010 W. Spring Creek Parkway
      Plano, Texas 75024
      Fax: (940) 400-0089
      For Service of Filings:
      notice@KDphillipslaw.com

      **ATTORNEY FOR PLAINTIFF**

## CERTIFICATE OF SERVICE

    I certify that the true and correct copy of this document was sent to all counsel of record, hereunder listed via ECF Filing **on this the 5th  day of September 2023.**

                           /s/  Kerri Phillips
                           Kerri Phillips, Esq.

Jeffrey Bartos
Guerrieri, Bartos, & Roma, P.C.
1900 M Street, NW, Suite 700
Washington, DC 20036
Tel: (202) 624-7400; Fax: (202) 624-7420
Email: jbartos@geclaw.com

Charlette Matts
In-House Counsel for APFA
1004 West Euless Blvd
Euless, TX 76040
Tel: (682) 301-8454
Cmatts@apfa.org

James Sanford
4803 Gaston Avenue
Dallas, TX 75249-1020
Tel: (214) 800-5111;
Fax: (214) 838-0001
Email jim@gillespiesanford.com
Email: joe@gillespiesanford.com

| | |
|---|---|
| **From:** | Jeff Bartos |
| **To:** | Kerri Phillips |
| **Cc:** | Charlette Matts; James Sanford; Joe Gillespie |
| **Subject:** | Vargas - Requests for Production to APFA |
| **Date:** | Friday, September 1, 2023 9:30:27 AM |
| **Attachments:** | APFA 1 -99 - Vargas 1st RFP #2 and 3.pdf |

Kerri,

Following up on our discussion and subsequent emails, attached please find documents numbered APFA1-99 which are responsive to items number 2 and 2 of Mr. Vargas's original Requests for Production.   APFA maintains its original objections to these requests.

The original Requests for Production also included a request for various insurance policies. These have all been produced to you by IMA in response to your subpoena to them.

Jeff

*Jeffrey A Bartos*
*Guerrieri Bartos & Roma PC*
*1900 M Street, NW*
*Suite 700*
*Washington, DC  20036*
*202-624-7400*

*www.geclaw.com*

APP 1

**Kerri Phillips**

| | |
|---|---|
| **From:** | Stephanie Lewis |
| **Sent:** | Friday, July 29, 2022 9:30 PM |
| **To:** | Sanford R. Denison; Margot Nikitas; Bill Osborne |
| **Cc:** | Heather Abreu; Kerri Phillips |
| **Subject:** | Vargas v APFA - Request for Production of Documents - First Amended Set |
| **Attachments:** | Vargas.Amended 1st RFP to APFA.pdf |

Hello,
Please see the attached amended request for production of documents in the Vargas matter. Feel free to contact Mrs. Phillips or Ms. Abreu with any questions you have.
Thank you,
Stephanie



**Stephanie L. Lewis**
Sr. Litigation and Corporate
Paralegal /
Director of Legal Management
KD Phillips Law Firm, PLLC

**Phone:** 972-327-5800 Ext.
1005
**Fax:** 940-400-0089
**Email:**
Stephanie@KDphillipslaw.com

5700 Tennyson Parkway
Suite 300
Plano, TX 75024

**www.KDphillipslaw.com**

1

APP 2

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT
FORT WORTH DIVISION

| | | |
|---|---|---|
| EUGENIO VARGAS, | § | |
| | § | |
| Plaintiff/Counterclaim Defendant, | § | |
| | § | |
| | § | |
| v. | § | Civil Action No. 4:22-cv-00430 |
| | § | |
| | § | |
| ASSOCIATION OF PROFESSIONAL | § | |
| FLIGHT ATTENDANTS, JULIE | § | |
| HEDRICK, AND ERIK HARRIS, | § | |
| | § | |
| Defendants/Counterclaim Plaintiffs. | § | |

<u>PLAINTIFF'S/COUNTERCLAIM DEFENDANT'S FIRST AMENDED FIRST
REQUEST FOR PRODUCTION TO DEFENDANTS/COUNTERCLAIM
PLAINTIFFS</u>

**TO:**   Defendants/Counterclaim Plaintiffs, by and through is attorney of record, via email.

Pursuant to Fed. R. Civ. P. 34, the Plaintiff/Counterclaim Defendant requests Defendants/Counterclaim Plaintiffs to produce and permit inspection and copying of the documents listed in this request.  The inspection and performance of related acts shall be made at a site agreed upon by the parties, within 30 days of service of this request.  Plaintiff/Counterclaim Defendants requests that documents be produced on all electronic and magnetic data that is reasonably available to Defendants/Counterclaim Plaintiffs.  The originals of such documents are to be produced in *electronic format* to the KD Phillips Law Firm, PLLC, *5700 Tennyson*

*Parkway, Suite 300, Plano, Texas 75024 or via email to notice@kdphillipslaw.com*, on

or before the 30th day from and after the date of your receipt of this request.

You are obligated to serve a written response to this Request for Production of

Documents which shall state with respect to each item or category of item, that

inspection or other requested action will be permitted as requested, and you are

obligated to comply with that request unless a written objection is made to any

particular item stating specific reasons why discovery should not be allowed.

## INSTRUCTIONS

1.    Answer each request for documents separately by listing the documents and
by describing them as defined below.  If documents produced in response to this
request are numbered for production, in each response provide both the information
that identifies the document and the document's number.

2.    For a document that no longer exists or that cannot be located, identify the
document, state how and when it passed out of existence, or when it could no longer
be located, and the reasons for the disappearance.  Also, identify each person having
knowledge about the disposition or loss of the document, and identify any other
document evidencing the lost document's existence or any facts about the lost
document.

     a.    When identifying the document, you must state the following:

        (1)    The nature of the document (e.g., letter, handwritten note).

        (2)    The title or heading that appears on the document.

        (3)    The date of the document and the date of each addendum,
supplement, or other addition or change.

        (4)    The identity of the author and of the signer of the document, and
of the person on whose behalf or at whose request or direction the
document was prepared or delivered.

     b.    When identifying the person, you must state the following:

        (1)    The full name.

(2)     The present or last known residential address and residential telephone number.

(3)     The present or last known office address and office telephone number.

(4)     The present occupation, job title, employer, and employer's address.

B. Definitions

The following definitions shall have the following meanings, unless the context requires otherwise:

1.      "Plaintiff/Counterclaim Defendants" or "Defendants/Counterclaim Plaintiffs," as well as a party's full or abbreviated name or a pronoun referring to a party, means the party, and where applicable, the party's agents, representatives, officers, directors, employees, partners, corporate agents, subsidiaries, affiliates, or any other person acting in concert with the party or under the party's control, whether directly or indirectly, including any attorney.

2.      "You" or "your" means Defendants/Counterclaim Plaintiffs, its successors, predecessors, divisions, subsidiaries, present and former officers, agents, employees, and all other persons acting on behalf of Defendants, or its successors, predecessors, divisions, and subsidiaries.

3.      The term "document(s)" means all written, typed, or printed matters, and all magnetic, electronic, or other recordings, records or documentation of any kind or description in your actual possession custody, or control, including those in the possession, custody, or control of any and all present or former directors, officers, employees, consultants, accountants, attorneys or other agents, whether or not prepared by any one of  the Defendants/Counterclaim Plaintiffs or not, that constitute or contain matters relevant to the subject matter of the action.

4.      "Possession, custody, or control" of an item means that the person either has physical possession of the item or has a right to possession equal or superior to that of the person who has physical possession of the item.

5.      "Person" means any natural person, corporation, firm, association, partnership, joint venture, proprietorship, governmental body, or any other organization, business, or legal entity, and all predecessors or successors in interest.

6.      "Ross Administration" means any person supporting Robert "Bob" Ross's elected position as National President or Base President, including but not limited to Eugenio Vargas and Nena Martin.

7.      "Wood, Stephens & O'Neil, L.L.P." means and all employees, independent contractors, certified public accountants, partners, bookkeepers, associates, staff members, predecessors, assigns, or affiliates of Wood, Stephens & O'Neil, L.L.P.

**UNLESS OTHERWISE STATED, THE APPLICABLE TIME PERIOD FOR THE REQUESTS IS FROM APRIL 1, 2020 UNTIL THE DATE OF PREPARATION OF YOUR RESPONSES.**

[Intentionally left blank]

## DOCUMENTS TO BE PRODUCED

1.      All documents, including but not limited to policy documents, insurance contracts, addendums, exclusions, conditions, and declarations pages that afford liability insurance to either APFA, or any one of the current or former officers, board members, or any authorized agents, or employees acting on behalf of APFA for purposes of protection in compliance with Labor Management Reporting and Disclosure Act 502(a).

**Response:**

2.      All documents, correspondence, and communications between the accounting firm of Wood, Stephens & O'Neil, L.L.P. and any APFA official, whether current or former, elected or appointed; or any APFA counsel, whether in-house or outside counsel, concerning the Ross Administration.

**Response:**

3.      All communications between any APFA officials, whether current or former, elected or appointed; or any APFA counsel, whether in-house or outside counsel, which disseminated any communications or documentation from Wood, Stephens & O'Neil, L.L.P. concerning the Ross Administration.

**Response:**

Respectfully submitted,
KD PHILLIPS LAW FIRM, PLLC

By:  */s/ Kerri Phillips*
      Kerri Phillips, Esq.
      Texas Bar No. 24065906
      Phone: (972) 327-5800
      Email: kerri@KDphillipslaw.com
      5700 Tennyson Parkway, Suite 300
      Plano, Texas 75024
      Fax: (940) 400-0089
      For Service of Filings:
      notice@KDphillipslaw.com
      **ATTORNEY FOR**
      **PLAINTIFF/COUNTERCLAIM**
      **DEFENDANT**

<u>CERTIFICATE OF SERVICE</u>

**I HEREBY CERTIFY** that on this 29th day of July 2022, a true and correct copy of the foregoing instrument was served upon Defendants/Counterclaim Plaintiff's' attorneys via email to the following persons:

Sandford R. Denison        denison@baabdenison.com

Margot A. Nikitas          MNikitas@apfa.org

William W. Osborne         b.osborne@osbornelaw.com


*/s/  Kerri Phillips*
Kerri Phillips, Esq.

**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
FORT WORTH DIVISION**

| | | |
|---|---|---|
| EUGENIO VARGAS, | § | |
| | § | |
| Plaintiff/Counterclaim Defendant, | § | |
| | § | |
| v. | § | Civil Action No. 4:22-cv-00430-Y |
| | § | |
| ASSOCIATION OF PROFESSIONAL | § | |
| FLIGHT ATTENDANTS, JULIE | § | |
| HEDRICK, AND ERIK HARRIS, | § | |
| | § | |
| Defendants/Counterclaim Plaintiffs. | § | |

**UNION DEFENDANTS' OBJECTIONS/RESPONSES TO
"PLAINTIFF'S/COUNTERCLAIM DEFENDANT'S FIRST AMENDED
FIRST REQUEST FOR PRODUCTION TO
DEFENDANTS/COUNTERCLAIM  PLAINTIFFS"**

TO:   Plaintiff/Counterclaim Defendant, by and through his attorney(s) of record Kerri Phillips and Heather Abreu, K.D. Phillips Law Firm, PLLC, 5700 Tennyson Parkway, Suite 300, Plano, Texas 75024, via email addressed to kerri@KDphillipslaw.com and Heather@KDphillipslaw.com.

Pursuant to Fed. R. Civ. P. 34, Defendants Julie Hedrick, Erik Harris and

Defendant/Counterclaim Plaintiff Association of Professional Flight Attendants ("APFA")

(collectively, "Union Defendants"), by their undersigned counsel, without waiving their

objection that all discovery in this case should be stayed pending the Court's ruling on the Union

Defendants' motion to dismiss for lack of subject matter jurisdiction (doc. 24), see *Landry v*

*ALPA*, 901 F2d 404, 435-36 (5th Cir 1990), submit the following objections/responses to

"PLAINTIFF'S/COUNTERCLAIM DEFENDANT'S FIRST AMENDED FIRST REQUEST

FOR PRODUCTION TO DEFENDANTS/COUNTERCLAIM  PLAINTIFFS" ("Requests")

*UNION DEFENDANTS' OBJECTIONS TO PLAINTIFF'S "FIRST AMENDED FIRST REQUEST FOR PRODUCTION" OF DOCUMENTS TO THE UNION UPON DEFENDANTS - Page 1*

APP 10

which were served on the Union Defendants by Plaintiff/Counterclaim Defendant Eugenio

Vargas ("Vargas") on July 29, 2022 by email:

## OBJECTIONS TO DISCOVERY

Pending before the Court, and now ripe for decision, is the Union Defendants' Motion to

Dismiss Plaintiff's Claims for Relief (doc. 24) ("Motion"), which seeks dismissal of all of

Plaintiff's claims due to lack of subject matter jurisdiction pursuant to Fed.R.Civ.P., Rules

12(b)(1) and 12(b)(6). Because, for the reasons set forth in the Union Defendants' Motion and

fully incorporated herein, the Court lacks subject matter jurisdiction over Vargas's claims and

causes of action asserted against the Union Defendants in this case, the Union Defendants hereby

object to this discovery and hereby invoke the following in support of said objection:

Fed.R.Civ.P., Rule 1 directs that the Rules "should be construed and administered to

secure the just, speedy, and inexpensive determination of every action and proceeding." This

discovery -- served by Plaintiff despite the fact that it does not seek discovery of information

going to the threshold issue of subject matter jurisdiction or of information otherwise relevant to

any claim of defense of the parties  – subjects the Union Defendants to unjust, delayed and

unnecessarily expensive discovery in contravention of Rule 1. The Union Defendants, therefore,

object to these discovery requests.

Fed.R.Civ.P., Rule 26(c) provides that "[t]he court may, for good cause, issue an order to

protect a party or person from annoyance, embarrassment, oppression, or undue burden or

expense, including ... specifying terms, including time and place, for the disclosure or

discovery[.]". This discovery -- served by Plaintiff despite the fact that it does not seek discovery

of information going to the threshold issue of subject matter jurisdiction or of information

otherwise relevant to any claim of defense of the parties – subjects the Union Defendants to

*UNION DEFENDANTS' OBJECTIONS TO PLAINTIFF'S "FIRST AMENDED FIRST REQUEST FOR PRODUCTION" OF DOCUMENTS TO THE UNION UPON DEFENDANTS - Page 2*

APP 11

undue burden and expense in contravention of Rule 26(c).  The Union Defendants, therefore, object to these discovery requests.

For these reasons all discovery in this case should be stayed pending the Court's ruling on the Union Defendants' motion to dismiss for lack of subject matter jurisdiction over Vargas' claims and causes of action. See *Landry v ALPA*, 901 F2d 404, 435-36 (5th Cir 1990),

## GENERAL OBJECTIONS TO DISCOVERY REQUESTS

The Union Defendants generally object to the Requests on the grounds that that the Court lacks subject matter jurisdiction over Vargas's claims and causes of action asserted against the Union Defendants in this case and that pending the Court's ruling on the Union Defendants' motion to dismiss pursuant to Rule 12(b)(1) for lack of subject matter jurisdiction (doc. 24) all discovery in this case should be stayed. See *Landry v ALPA*, 901 F2d 404, 435-36 (5th Cir 1990).

The Union Defendants object to Vargas's "Definitions" and "Instructions" as overbroad and burdensome and to the extent they seek to impose burdens greater than those imposed by the Federal Rules of Civil Procedure. The Union Defendants do not agree to be bound by said "Definitions" and "Instructions" or any burdens they attempt to impose in this respect.

The Union Defendants object to Vargas's Requests (including Vargas's "Definitions" and "Instructions") to the extent that they seek or purport to require the disclosure of documents protected from discovery, in whole or in part, by the attorney-client privilege, the attorney work-product doctrine, or any other applicable privilege, protection or limitation provided by law, and no objection/response thereto is intended to waive any such privilege, protection or limitation that the Union Defendants are entitled to assert.

*UNION DEFENDANTS' OBJECTIONS TO PLAINTIFF'S "FIRST AMENDED FIRST REQUEST FOR PRODUCTION" OF DOCUMENTS TO THE UNION UPON DEFENDANTS - Page 3*

APP 12

The Union Defendants object to Vargas's Requests (including Vargas's "Definitions" and "Instructions") to the extent they are not limited as to a time period relevant to this litigation and therefore seek documents not relevant to any claims or defenses of the parties to this lawsuit and/or are not reasonably calculated to lead to the discovery of admissible evidence.

The Union Defendants object to Vargas's Requests (including Vargas's "Definitions" and "Instructions") to the extent they seek or purport to require the disclosure of documents which are already in the possession of Vargas.

The Union Defendants object to Vargas's Requests (including Vargas's "Definitions" and "Instructions") to the extent that they are overly broad and/or unduly burdensome, seek information not relevant to any claims or defenses of the parties to this action, seek information not reasonably calculated to lead to discovery of admissible evidence, are unduly harassing and oppressive under all the circumstances, and/or otherwise exceed the scope of discovery under applicable Federal and Local Rules.

The Union Defendants object to Vargas's Requests (including Vargas's "Definitions," and "Instructions") to the extent that they would require the Union Defendants to undertake the unduly burdensome task of searching for and reviewing each and every record or document that may be in either the APFA's and/or the individual Union Officer Defendants  possession or control.

No objection/response to a Request may be taken as an admission or concession that the Request or information sought by the Request is relevant, that the Union Defendants accept or admit the existence of any evidence, fact, document or thing set forth in or assumed by any such Request, or that any information contained in these objections/responses constitute admissible

*UNION DEFENDANTS' OBJECTIONS TO PLAINTIFF'S "FIRST AMENDED FIRST REQUEST FOR PRODUCTION" OF DOCUMENTS TO THE UNION UPON DEFENDANTS - Page 4*

APP 13

evidence.  The fact that the Union Defendants object/respond to any particular Request shall not be construed as a waiver of all or part of any other objection that the Union Defendants have made or may make to any of the Requests.

These objections/responses are made solely for the purpose of this action and are not for use in any other action or proceeding, among the parties to this action or otherwise.  The Union Defendants apply Vargas's definition of terms set forth in the Requests solely for the purpose of objecting and/or responding to Vargas's Requests, and no objection/response to a Request may be taken as an admission or concession that such definitions of terms are accurate or have legal significance in this or any other matter.

These objections and reservations apply to and are incorporated by reference in the Union Defendants' objection/response to each and every Request regardless of whether the Union Defendants specifically refer to them in connection with any specific Request.  The identification of objections to specific Requests below does not indicate a waiver of general objections listed here and not specifically enumerated below.

*UNION DEFENDANTS' OBJECTIONS TO PLAINTIFF'S "FIRST AMENDED FIRST REQUEST FOR PRODUCTION" OF DOCUMENTS TO THE UNION UPON DEFENDANTS - Page 5*

APP 14

**REQUEST FOR PRODUCTION No. 1:**

1.      All documents, including but not limited to policy documents, insurance contracts, addendums, exclusions, conditions, and declarations pages that afford liability insurance to either APFA, or any one of the current or former officers, board members, or any authorized agents, or employees acting on behalf of APFA for purposes of protection in compliance with Labor Management Reporting and Disclosure Act 502(a).

**OBJECTION/RESPONSE**:

The Union Defendants object on the basis of Fed.R.Civ.P., Rules 1 and 26(c), as set forth above and fully incorporated herein.

The Union Defendants further object to this request because it seeks documents that "afford" or are "for purposes of protection." Such a request is vague, ambiguous, overly broad, multifarious and not reasonably focused or tailored to lead to the discovery of information relevant to any claim or defense of the parties.

The Union Defendants further object to this request to the extent it seeks discovery of documents protected by the attorney-client privilege, trial preparation privilege, and/or work product doctrine.

The Union Defendants further object to this request as it seeks discovery of documents and materials which are not relevant to any claim or defense of the parties with respect to, or in connection with, the enforcement of the Arbitrator's Decision and Order and/or any claim within the Court's subject matter jurisdiction.

*UNION DEFENDANTS' OBJECTIONS TO PLAINTIFF'S "FIRST AMENDED FIRST REQUEST FOR PRODUCTION" OF DOCUMENTS TO THE UNION UPON DEFENDANTS - Page 6*

APP 15

**REQUEST FOR PRODUCTION No. 2:**

2.      All documents, correspondence, and communications between the accounting firm of Wood, Stephens & O'Neil, L.L.P. and any APFA official, whether current or former, elected or appointed; or any APFA counsel, whether in-house or outside counsel, concerning the Ross Administration.

**OBJECTION/RESPONSE**:

The Union Defendants object on the basis of Fed.R.Civ.P., Rules 1 and 26(c), as set forth above and fully incorporated herein.

The Union Defendants further object to this request because it seeks documents "concerning the Ross Administration." Such a request is vague, ambiguous, overly broad and not reasonably focused or tailored to lead to the discovery of information relevant to any claim or defense of the parties.

The Union Defendants further object to this request to the extent it seeks discovery of documents protected by the attorney-client privilege, trial preparation privilege, and/or work product doctrine.

The Union Defendants further object to this request as it seeks discovery of documents and materials which are not relevant to any claim or defense of the parties in that, and to the extent that, they relate to matters within the exclusive jurisdiction of the Arbitrator, to matters which go the merits of the Arbitrator's Decision and Order, and to matters which are otherwise irrelevant to the enforcement of the Arbitrator's Decision and Order and/or to any claim within the Court's subject matter jurisdiction.

*UNION DEFENDANTS' OBJECTIONS TO PLAINTIFF'S "FIRST AMENDED FIRST REQUEST FOR PRODUCTION" OF DOCUMENTS TO THE UNION UPON DEFENDANTS - Page 7*

APP 16

**REQUEST FOR PRODUCTION No. 3:**

3.     All communications between any APFA officials, whether current or former, elected or appointed; or any APFA counsel, whether in-house or outside counsel, which disseminated any communications or documentation from Wood, Stephens & O'Neil, L.L.P. concerning the Ross Administration.

**OBJECTION/RESPONSE**:

The Union Defendants object on the basis of Fed.R.Civ.P., Rules 1 and 26(c), as set forth above and fully incorporated herein.

The Union Defendants further object to this request because it seeks documents "concerning the Ross Administration." Such a request is vague, ambiguous, overly broad and not reasonably focused or tailored to lead to the discovery of information relevant to any claim or defense of the parties.

The Union Defendants further object to this request to the extent it seeks discovery of documents protected by the attorney-client privilege, trial preparation privilege, and/or work product doctrine.

The Union Defendants further objects to this request as it seeks discovery of documents and materials which are not relevant to any claim or defense of the parties in that, and to the extent that, they relate to matters within the exclusive jurisdiction of the Arbitrator, to matters which go to the merits of the Arbitrator's Decision and Order, and to matters which are otherwise irrelevant to the enforcement of the Arbitrator's Decision and Order and/or to any claim within the Court's subject matter jurisdiction.

*UNION DEFENDANTS' OBJECTIONS TO PLAINTIFF'S "FIRST AMENDED FIRST REQUEST FOR PRODUCTION" OF DOCUMENTS TO THE UNION UPON DEFENDANTS - Page 8*

APP 17

Date: August 26, 2022                    Respectfully Submitted,

                                          _/s/ Sanford R. Denison_____
                                          SANFORD R. DENISON
                                          Tex. Bar No. 05655560
                                          Baab & Denison, LLP
                                          6301 Gaston Ave., Suite 550
                                          Dallas, TX  75214
                                          Tel.: (214) 637-0750
                                          Fax.: (214) 637-0730
                                          Email: denison@baabdenison.com

                                          WILLIAM W. OSBORNE JR.*
                                          D.C. Bar No. 912089
                                          Osborne Law Offices P.C.
                                          5335 Wisconsin Avenue N.W., Suite 440
                                          Washington, D.C. 20015
                                          Tel.: (202) 243-3200
                                          Fax: (202) 686-2977
                                          Email: b.osborne@osbornelaw.com

                                          *Counsel for Defendant Counterclaim Plaintiff*
                                          *Association of Professional Flight Attendants, and*
                                          *Defendants Julie Hedrick and Erik Harris*

                                          *Admitted *Pro Hac Vice*

### CERTIFICATE OF SERVICE

I certify that on this 26th day of August 2022 a true and correct copy of the foregoing document was served on the below listed counsel of record for Plaintiff/Counterclaim Defendant Vargas by a means permitted by Rule 5(b)(2) of the Federal Rules of Civil Procedure ("F.R.C.P.").

KERRI PHILLIPS
HEATHER ABREU
K.D. Phillips Law Firm, PLLC
5700 Tennyson Parkway, Suite 300
Plano, Texas 75024
Phone: (972) 327-5800
Fax: (940) 400-0089
Email: kerri@KDphillipslaw.com
Email: Heather@KDphillipslaw.com

                                          _/s/ Sanford R. Denison_____
                                          SANFORD R. DENISON

*UNION DEFENDANTS' OBJECTIONS TO PLAINTIFF'S "FIRST AMENDED FIRST REQUEST FOR PRODUCTION" OF DOCUMENTS TO THE UNION UPON DEFENDANTS - Page 9*

| | |
|---|---|
| **From:** | Jeff Bartos |
| **To:** | Kerri Phillips |
| **Cc:** | James Sanford; Charlette Matts |
| **Subject:** | RE: Ross v. APFA et al; Vargas v. APFA et al |
| **Date:** | Wednesday, August 30, 2023 10:40:43 AM |
| **Attachments:** | image001.png |

Kerri,

Just following up on the discovery related questions in your email.

In relation to the outstanding Vargas RFP, we have agreed to produce APFA's documents related to Mr. O'Neil's evaluation of the overpayments made to Mr. Ross, Mr. Vargas, Ms. Martin and Ms. Dunaway, and I hope to have those to you by Friday of this week. Pursuant to your offer to narrow the scope of the RFP, we will also agree to provide the audit conducted just after Mr. Ross left office as well.

We do not withdraw our objections to the O'Neil subpoena as written. If you narrow the scope of the subpoena to track what you have offered with respect to the Vargas RFP, we may be able to resolve that dispute as well.

Jeff

---

**From:** Kerri Phillips <Kerri@KDphillipslaw.com>
**Sent:** Saturday, August 26, 2023 4:28 PM
**To:** Jeff Bartos <jbartos@geclaw.com>
**Cc:** James Sanford <jim@gillespiesanford.com>; Charlette Matts <cmatts@apfa.org>
**Subject:** RE: Ross v. APFA et al; Vargas v. APFA et al

Jeff,
1. Will you withdraw your objections on the Subpoena served to Hal O'Neal on the Ross case?
2. We are not amenable to Ms. Washington as a mediator. I've reached out to Ms. Fragnoli again as well as Sandra Lauro—another mediator with experience in labor and employment at Burdin Mediations. I'll advise as soon as I hear back from either one. The website is here.
3. Please advise on a date in which your client will produce the documents responsive to the Requests for Production Vargas. This is a pending matter that your clients have had well over a year now to address.
4. The first week is all Mr. Vargas can agree to due to family obligations. I'm not sure that the end of November makes much sense considering the holiday.

   I'm unsure that issues with the mediation necessitate another call. Let's first see whether I can get some dates for Ms. Fragnoli or Ms. Lauro.

Thank you,

**Kerri Phillips**
KD Phillips Law Firm, PLLC
**Phone:** 972-327-5800 ext. 1001
**Fax:** 940-400-0089
**Email:** Kerri@KDphillipslaw.com



6010 W. Spring Creek Parkway
Plano, TX 75024
**www.KDphillipslaw.com**

IMPORTANT/CONFIDENTIAL:

IMPORTANT \ CONFIDENTIAL:  This message contains information from the law firm of KD Phillips Law Firm, PLLC that may be subject to the attorney-client privilege or work product doctrine, or may be otherwise confidential and exempt from disclosure under applicable law.  Unless expressly stated otherwise, nothing contained in this message should be construed as a digital or electronic signature, nor is this message intended to reflect an intention to make an agreement by electronic means.  DO NOT COPY OR FORWARD TO UNAUTHORIZED PERSONS.  If you are not the intended recipient or the employee or agent responsible for delivering the message to the intended recipient, you are hereby notified that any dissemination, distribution, copying or forwarding of this communication is strictly prohibited. Unauthorized interception of this message may be in violation of the Electronic Communications Privacy Act, 18 U.S.C. § 2510, et seq.  If you have received this communication in error, please notify us immediately at our telephone number:  (972) 327-5800

IRS Circular 230 Notice:  Unless expressly stated otherwise in the foregoing message, and to ensure compliance with requirements imposed by the IRS, we inform you that any advice contained in this message (including any attachments) is not intended or written to be used, and may not be used by any person, for the purpose of (i) avoiding penalties imposed under the Internal Revenue Code or (ii) promoting, marketing, or recommending to another person any transaction or matter addressed herein, within the meaning of IRS Circular 230.

**From:** Jeff Bartos <jbartos@geclaw.com>
**Sent:** Friday, August 25, 2023 3:56 PM
**To:** Kerri Phillips <Kerri@KDphillipslaw.com>
**Cc:** James Sanford <jim@gillespiesanford.com>; Charlette Matts <cmatts@apfa.org>
**Subject:** Re: Ross v. APFA et al; Vargas v. APFA et al

Ms. Phillips,

Thank you again for the discussion on Wednesday.

Regarding the additional documents you have now produced, we will review and get back to you if there are any questions or issues on the scope of production. I can't agree without review that all issues raised by us have been resolved but do appreciate your effort to move this forward productively.

Regarding the APFA Defendants' production in response to Mr. Vargas's First Amended First Request for Production, we will review the scope of potentially responsive documents in light of your narrowed request and get back to you on the APFA Defendants' position.

Regarding mediation, I think a further conversation would be helpful. Do you have time to talk on Monday?  We are not amenable to Ms. Yurek as mediator. We should have a position regarding Ms. Fragnoli by Monday.  You mentioned having reached out to her; do you know for certain that she has available dates in November?  I would reiterate that we think our proposal of Ms. Washington should be seriously considered and that, according to her website at least, she has November dates.   I also have some concern that the first week of

November may not work for all of the Defendants, so I think a call between us would be helpful.

Thank you,

Jeff

---

**From:** Kerri Phillips <Kerri@KDphillipslaw.com>
**Sent:** Friday, August 25, 2023 2:07 AM
**To:** Jeff Bartos <jbartos@geclaw.com>
**Cc:** James Sanford <jim@gillespiesanford.com>; Charlette Matts <cmatts@apfa.org>
**Subject:** Ross v. APFA et al; Vargas v. APFA et al

Dear Mr. Bartos,

I'm writing to confirm our conversation yesterday, as I understand it. We addressed a number of issues on the table, and I want to make sure we have a clear understanding on all issues.

1. Discovery requests from Bob Ross and Eugenio Vargas – you inquired about damage documents in particular, but those requests for which you have not discovered documents and asked that I indicate which documents were responsive to the requests outlined in the letters attached hereto. As I informed you, it is my contention that FRCP 34 requires that I deliver all documents as maintained in the regular course of business, however in an effort to alleviate some of our discovery disputes I have updated the responses to your requests, and deposited all evidence folders as they stand today. Again, as we are clearly seeking out more information and documents I will be forced to supplement with responsive documents in the future, but as of now, you have all documents we have, as they are in our files. Your letter highlights concerns over the following requests made on Ross and Vargas cases:

   *Ross*

   a. Request 1: Ross_Evidence\011_Discovery Responses
   b. Requests 2 and 4: the clients have no documents to produce that are responsive to this request.
   c. Request 3: See Ross_Evidence\01_Email Correspondence
   d. Request 5: Ross_Evidence\011_Discovery Responses
   e. Request 6: Ross_Evidence\07_Damages
      i. the vacation payout documents
      ii. the Confidential Memo,
      iii. the Story of the Furniture,
      iv. Vargas's Affidavit
      v. Arbitration Transcripts
   f. Request 7: See the Martin Affidavit - Ross_Evidence\04_Affidavits
   g. Request 14: See: Ross_Evidence\010_AFA- APFA Statements
   h. Request 15: See: Ross_Evidence\010_AFA- APFA Statements
   i. Request 17: See Ross_Evidence\01_Email Correspondence
   j. Request 21: Ross_Evidence\03_APFA Hotlines & Public Statements
   k. Request 22: See: Ross_Evidence\07_Damages
   l. Request 23: Ross_Evidence\07_Damages

i.   the vacation payout documents
ii.   the Confidential Memo,
iii.   the Story of the Furniture,
iv.   Vargas's Affidavit
v.   Arbitration Transcripts

m. Request 25: See Ross_Evidence\01_Email Correspondence
n. Request 26: Ross_Evidence\07_Damages
o. Request 27: Ross_Evidence\07_Damages
p. Request 28: Ross_Evidence\07_Damages
q. Request 29: Ross_Evidence\07_Damages
r. Request 30: Ross_Evidence\07_Damages
s. Request 31: Ross_Evidence\07_Damages
t. Request  32 and 33: Ross_Evidence\07_Damages

*Vargas*

a.   Request 2: See: Ross_Evidence\010_AFA- APFA Statements
b.   Request 3: See: Ross_Evidence\010_AFA- APFA Statements
c.   Request 4 and 6:  None exist
d.   Request 11-13: Vargas_Evidence\06_Excluded evidence from Arb; Vargas_Evidence\01_Arbitration
e.   Request 15:  See Above Vargas_Evidence\06_Excluded evidence from Arb; Vargas_Evidence\03_Evidence of Misconduct
f.   Request 16:  Vargas_Evidence\08_Public Statements - APFA Hotlines; Ross_Evidence\06_Ross Social Media Postings
g.   Request 17-19: Ross_Evidence\06_Ross Social Media Postings; Ross_Evidence\01_Email Correspondence; Ross_Evidence\07_Damages; Vargas_Evidence\07_Damages
h.   Request 14: Vargas_Evidence\06_Excluded evidence from Arb

I have updated the document request with these shared folders.  My sincerest hope is that this will allow a bit more cooperation between the parties going forward regarding discovery disputes.

2. Mediation – you requested that we find a mediator who has more experience to increase the potential for settlement at mediation.  I discussed it with my clients, and they are agreeable to the mediator we have proposed, Rachel Yurek, as well as Kathy Fragnoli with Burdin Mediations.  You also expressed concern over conducting a mediation in October rather than November for Mr. Vargas,  He is able to meet for a mediation the first week of November.   Please advise on how you'd like to proceed on this issue.

3. Confidentiality Order –you requested a confidentiality order in place prior to the production of documents.  I stated, again, that I found it difficult to address to this concern whilst misrepresentations from your predecessors maintain on record with this court.  It is my sincerest hope that you reconsider your approach and correct the record in accordance with your duty.

4. You discussed the outstanding discovery requests regarding Hal O'Neil on the Ross case as well as the requests on the Vargas case relating to the documents and communications requested in relation to the Ross Administration.  As you stated, you felt my requests for all documents and communications between APFA and Hal O'Neil regarding the Ross Administration was too broad.  I stated that our contention is that your clients conspired to misrepresent the facts in an effort to abridge my clients' rights as members in good standing.  You stated your concerns of private financial documents going back to 2016, and that you would limit the scope to the transmission

and communications regarding the Confidential Memo.   I offered to restrict it to only those documents and communications relating to the Ross Administration since 2018—after the Ross Administration left office, however you persist in your objection to the scope being too broad, and agree to only produce those documents pertinent to the Confidential Memo and its transmission.

In closing, I'd like to note that as discussed on the phone call; as of the date of this email, your clients have failed to turn over any documents requested whatsoever.  Your clients have objected to the subpoenas I issued for relevant documents in possession of the Arbitrator, the Accounting Firm, and the Insurance company thus far. Furthermore, your clients failed to turn over even a single document in the initial disclosures—including any of the 4 insurance policies currently in place.  Whereas my clients produced a number of documents within the initial filing, the initial disclosures, and now my clients have produced all documents in our possession to date.

It appears resolution has been reached on all issues outstanding—except for one.  The production of those documents and communications between Woods, Stephens and O'Neil accounting firm and any one of your clients.

Please advise if I have misunderstood anything we discussed.

Thank you,



**Kerri Phillips**
KD Phillips Law Firm, PLLC
**Phone:** 972-327-5800 ext. 1001
**Fax:** 940-400-0089
**Email:** Kerri@KDphillipslaw.com

6010 W. Spring Creek Parkway
Plano, TX 75024
**www.KDphillipslaw.com**

IMPORTANT/CONFIDENTIAL:

IMPORTANT \ CONFIDENTIAL:  This message contains information from the law firm of KD Phillips Law Firm, PLLC that may be subject to the attorney-client privilege or work product doctrine, or may be otherwise confidential and exempt from disclosure under applicable law.  Unless expressly stated otherwise, nothing contained in this message should be construed as a digital or electronic signature, nor is this message intended to reflect an intention to make an agreement by electronic means.  DO NOT COPY OR FORWARD TO UNAUTHORIZED PERSONS.  If you are not the intended recipient or the employee or agent responsible for delivering the message to the intended recipient, you are hereby notified that any dissemination, distribution, copying or forwarding of this communication is strictly prohibited. Unauthorized interception of this message may be in violation of the Electronic Communications Privacy Act, 18 U.S.C. § 2510, et seq.  If you have received this communication in error, please notify us immediately at our telephone number:  (972) 327-5800

IRS Circular 230 Notice:  Unless expressly stated otherwise in the foregoing message, and to ensure compliance with requirements imposed by the IRS, we inform you that any advice contained in this message (including any attachments) is not intended or written to be used, and may not be used by any person, for the purpose of (i) avoiding penalties imposed under the Internal Revenue Code or (ii) promoting, marketing, or recommending to another person any transaction or matter addressed herein, within the meaning of IRS Circular 230.

| | |
|---|---|
| **From:** | Jeff Bartos |
| **To:** | Kerri Phillips |
| **Cc:** | Charlette Matts; James Sanford; Stephanie Lewis; Adam Phillips; Hal O"Neil |
| **Subject:** | Re: Ross v. APFA; Vargas v. APFA -- Mediation and Discovery Issues |
| **Date:** | Friday, August 18, 2023 12:46:05 PM |
| **Attachments:** | image001.png |

Thanks Kerri - I will call you then.

Jeff

**From:** Kerri Phillips <Kerri@KDphillipslaw.com>
**Sent:** Friday, August 18, 2023 1:01 PM
**To:** Jeff Bartos <jbartos@geclaw.com>
**Cc:** Charlette Matts <cmatts@apfa.org>; James Sanford <jim@gillespiesanford.com>; Stephanie Lewis <Stephanie@KDphillipslaw.com>; Adam Phillips <Adam@KDphillipslaw.com>; Hal O'Neil <oneil@woodcpafirm.com>
**Subject:** RE: Ross v. APFA; Vargas v. APFA -- Mediation and Discovery Issues

Jeff,
We can speak on Wednesday at noon.  My extension is below.

Thank you,



**Kerri Phillips**

KD Phillips Law Firm, PLLC

**Phone:** 972-327-5800 ext. 1001
**Fax:** 940-400-0089
**Email:** Kerri@KDphillipslaw.com

6010 W. Spring Creek Parkway
Plano, TX 75024

**www.KDphillipslaw.com**

IMPORTANT/CONFIDENTIAL:

IMPORTANT \ CONFIDENTIAL:  This message contains information from the law firm of KD Phillips Law Firm, PLLC that may be subject to the attorney-client privilege or work product doctrine, or may be otherwise confidential and exempt from disclosure under applicable law.  Unless expressly stated otherwise, nothing contained in this message should be construed as a digital or electronic signature, nor is this message intended to reflect an intention to make an agreement by electronic means.  DO NOT COPY OR FORWARD TO UNAUTHORIZED PERSONS.  If you are not the intended recipient or the employee or agent responsible for delivering the message to the intended recipient, you are hereby notified that any dissemination, distribution, copying or forwarding of this communication is strictly prohibited. Unauthorized interception of this message may be in violation of the Electronic Communications Privacy Act, 18 U.S.C. § 2510, et seq.  If you have received this communication in error, please notify us immediately at our telephone number:  (972) 327-5800

IRS Circular 230 Notice:  Unless expressly stated otherwise in the foregoing message, and to ensure compliance with requirements imposed by the IRS, we inform you that any advice contained in this message (including any attachments) is not intended or written to be used, and may not be used by any person, for the purpose of (i) avoiding penalties imposed under the Internal Revenue Code or (ii) promoting, marketing, or recommending to another person any transaction or matter addressed herein, within the meaning of IRS Circular 230.

**From:** Jeff Bartos <jbartos@geclaw.com>
**Sent:** Friday, August 18, 2023 8:59 AM
**To:** Kerri Phillips <Kerri@KDphillipslaw.com>

Cc: Charlette Matts <cmatts@apfa.org>; James Sanford <jim@gillespiesanford.com>; Stephanie Lewis <Stephanie@KDphillipslaw.com>; Adam Phillips <Adam@KDphillipslaw.com>; Hal O'Neil <oneil@woodcpafirm.com>
**Subject:** Re: Ross v. APFA; Vargas v. APFA -- Mediation and Discovery Issues

Kerri,

Would you have time next week for a call regarding discovery issues?

I'd like to discuss what we are looking for in terms of your clients' document production, as well as the Request for Production in *Vargas* that you mention in your email here, and the subpoena you served on Wood, Stephens & O'Neil, LLP last year. Mr. O'Neil advised me of your email demanding immediate production. As you may recall, both Mr. O'Neil and APFA served objections to that subpoena in November 2022.  Given the overlap between the *Vargas* RFP and the O'Neil subpoena, I think it makes sense to discuss both at once and hopefully narrow or even eliminate any dispute.

I've copied Mr. O'Neil on this email as well.

In terms of a call next week, any day except Monday will work for me.

Thank you,

Jeff

---

**From:** Kerri Phillips <Kerri@KDphillipslaw.com>
**Sent:** Thursday, August 17, 2023 3:25 PM
**To:** Jeff Bartos <jbartos@geclaw.com>
**Cc:** Charlette Matts <cmatts@apfa.org>; James Sanford <jim@gillespiesanford.com>; Stephanie Lewis <Stephanie@KDphillipslaw.com>; Adam Phillips <Adam@KDphillipslaw.com>
**Subject:** RE: Ross v. APFA; Vargas v. APFA -- Mediation and Discovery Issues

Jeff,
You have what I have scanned and catalogued that  is responsive to your requests unless there's something I've overlooked.  If you seek something in particular you need to let me know and I'll track it down.  As soon as more comes in I'll bates number and drop them in the shared drive I used to drop the first round of responsive documents.

As to the original responses on Vargas, your client has had a year to gather them, review them, and either turn them over or work towards a settlement if they don't want to turn them over.  You need to let me know where your client stands on this issue.  I'll file a motion to compel next week.

Thank you,

Kerri Phillips



KD Phillips Law Firm, PLLC

**Phone:** 972-327-5800 ext. 1001
**Fax: 940**-400-0089
**Email:** Kerri@KDphillipslaw.com

6010 W. Spring Creek Parkway
Plano, TX 75024

**www.KDphillipslaw.com**

IMPORTANT/CONFIDENTIAL:

IMPORTANT \ CONFIDENTIAL:  This message contains information from the law firm of KD Phillips Law Firm, PLLC that may be subject to the attorney-client privilege or work product doctrine, or may be otherwise confidential and exempt from disclosure under applicable law.  Unless expressly stated otherwise, nothing contained in this message should be construed as a digital or electronic signature, nor is this message intended to reflect an intention to make an agreement by electronic means.  DO NOT COPY OR FORWARD TO UNAUTHORIZED PERSONS.  If you are not the intended recipient or the employee or agent responsible for delivering the message to the intended recipient, you are hereby notified that any dissemination, distribution, copying or forwarding of this communication is strictly prohibited. Unauthorized interception of this message may be in violation of the Electronic Communications Privacy Act, 18 U.S.C. § 2510, et seq.  If you have received this communication in error, please notify us immediately at our telephone number:  (972) 327-5800

IRS Circular 230 Notice:  Unless expressly stated otherwise in the foregoing message, and to ensure compliance with requirements imposed by the IRS, we inform you that any advice contained in this message (including any attachments) is not intended or written to be used, and may not be used by any person, for the purpose of (i) avoiding penalties imposed under the Internal Revenue Code or (ii) promoting, marketing, or recommending to another person any transaction or matter addressed herein, within the meaning of IRS Circular 230.

**From:** Jeff Bartos <jbartos@geclaw.com>
**Sent:** Tuesday, August 15, 2023 9:16 AM
**To:** Kerri Phillips <Kerri@KDphillipslaw.com>
**Cc:** Charlette Matts <cmatts@apfa.org>; James Sanford <jim@gillespiesanford.com>; Stephanie Lewis <Stephanie@KDphillipslaw.com>; Adam Phillips <Adam@KDphillipslaw.com>
**Subject:** Re: Ross v. APFA; Vargas v. APFA -- Mediation and Discovery Issues

Ms. Phillips,

Thank you for the response to my letters, and for the additional information you have provided.

I will send you a separate email regarding mediation.  This email will address the discovery issues.

**Requests for Production.**

1.      I understand your position is that all documents pertaining to the arbitrations; all communications among Mr. Ross, Mr. Vargas and Ms. Martin regarding the Transition Agreement; as well as documents received in response to subpoenas have been produced. Please let me know if my understanding is incorrect.

2.      You suggest that APFA has access to all emails sent or received using your clients' *apfa.org* email addresses, and that therefore they are under no obligation to produce

such documents.   The possibility that APFA might be able to retrieve some documents does not relieve your clients (who have brought these suits to begin with) from their obligation to produce documents in their possession that are responsive to the APFA Defendants' Requests which relate to your clients' factual allegations and legal claims.   If your clients have responsive documents, they are not exempt from producing them simply because the Defendants might also be able to find them.  Please let me know if Mr. Ross and Mr. Vargas are withholding documents on this basis or not.

     3.      You ask that I elaborate if there are documents we seek in particular.  I refer you to the letters, which identify by request number the exact Requests for which no documents have been produced and which APFA could not be expected to have.  These are all documents which post-date the Ross/Vargas administration and include, among other things, all of the elements of claimed damages in this case. If no such documents exist, please advise with reference to the specific Request numbers.   If such documents exist, please produce them and identify by Bates-numbers which documents are responsive to each Request.

     4.      As a final matter regarding the Requests for Production, this is to reiterate that you should indicate for each Request the Bates-numbers of produced documents which are responsive to that particular Request. Conforming with this basic obligation will reduce the issues potentially in dispute and help both of us to efficiently resolve any issues.

**Responses to Plaintiff's Discovery.**

     1.      To my knowledge, your email of August 14 is the first communication to defense counsel regarding the responses to Mr. Vargas's Requests for Production from August 2022.  I will review the issues you raise and get back to you soon.

     2.      Regarding the third-party subpoenas you referenced, APFA does not withdraw its objections.

Thank you for your review and response to these issues,

Jeff

---

**From:** Kerri Phillips <Kerri@KDphillipslaw.com>
**Sent:** Monday, August 14, 2023 11:19 AM
**To:** Jeff Bartos <jbartos@geclaw.com>
**Cc:** Charlette Matts <cmatts@apfa.org>; James Sanford <jim@gillespiesanford.com>; Stephanie Lewis <Stephanie@KDphillipslaw.com>; Adam Phillips <Adam@KDphillipslaw.com>
**Subject:** RE: Ross v. APFA; Vargas v. APFA -- Mediation and Discovery Issues

Mr. Bartos, Ms. Matts, and Mr. Sanford,

I apologize for the delay in my response, but I do want to address your questions as to discovery requests and pose my own as well.  First, as to your claims that my objections are "meritless;" I would like to point out that your clients have failed to produce *any* documents—neither within the initial disclosures  nor to our discovery requests made last July—not to mention your clients' objections to our third-party subpoenas to Woods, Stephens and O'Neil, LLP and Arbitrator Ruben Armendariz.  Consequently, your contentions may hold more merit if your clients attempted any cooperation in the process up to this point.

**Defendants' Requests for Discovery:** As to the documents served on you in response to the discovery requests, you have all documents responsive to your requests in my possession at this point.  My clients continue to accumulate documents, and as stated we will supplement in the future.  Also, many of the documents you seek simply don't exists, for example Nena Martin has provided that which was attached to her affidavit, and there are no documents relevant to communications regarding the Ross Transition Agreement.  I included all documents received in response to any subpoenas served thus far, however supplementation is a requirement to the subpoenas as well as our responses to your requests, as I'm sure you know.   If there are other documents responsive to your request that you seek, they are likely housed on the APFA servers. The officers and union leadership all use apfa.org email addresses, as I'm sure you're aware, and those emails are housed on the APFA servers.

Furthermore, our objections are entirely valid.  Your client, in fact, possess **all** documents pertaining to the arbitration, those events preceding and following it, including communications between parties, and outside of those communications—no other documents have been recovered at this time.

If there are documents you seek in particular, please elaborate so I may be able to find them.   Is there something you seek or have evidence exists that we failed to turn over?  I'd appreciate knowing what specifically you are looking for.  Otherwise, the email addresses used by my clients while in office are housed on your client's servers, and that is most likely where you will need to seek this information.  If it is communications you seek, I imagine this is where you would find them.  Apart from that, you have all communications between the officers that I have related to these payments.  However, if your concern is the pending discovery deadlines, I can discuss with my clients whether they would be agreeable to an agreed motion to extend the scheduling order deadlines.  But as to those documents that your client possess—it is incumbent upon your client to conduct their review to find those documents, not mine.

Finally, as to the request for a stay, we withdraw any request or objection based on a demand for a stay to discovery.

**Plaintiff's Requests for Discovery and Withdraw of Objections to Subpoenas – Conference Requirement:** As to the discovery requests made to your clients inquiring as to the insurance

documents, and the communications about the Confidential Memo and any communications transmitting it to other union members, please advise whether your clients plan to produce _any_ documents.  As of now, our discovery requests were served over a year ago.  I will need to know whether your clients plan to produce _any_ documents, but in particular those relating to the Confidential Memo, as soon as possible.   Otherwise, my clients will be forced to file a motion to compel discovery.   As to the objections to our subpoena requests, I request that you withdraw your objections so that the pertinent documents in possession with Woods, Stephens, and O'Neil, LLP and Arbitrator Armendariz may be produced prior to trial.

**Mediation**: As to the mediation scheduling, I will need to contact my clients and discuss.  Currently they are both travelling out of the country working, but I will be in touch with them as soon as I can and discuss simultaneous mediations for the sake of efficiency.

I will also work to investigate and choose a mediator and get dates on which my clients would be agreeable to mediate these claims.  I will get back with you next week regarding the mediation.

In closing, I will ask you again whether you plan to rectify your clients' misrepresentations before this court or whether your client continues to assert that APFA is a dual union and the individual airline bases as local unions?

Please advise as soon as possible.



**Kerri Phillips**
KD Phillips Law Firm, PLLC

**Phone:** 972-327-5800 ext. 1001
**Fax:** 940-400-0089
**Email:** Kerri@KDphillipslaw.com

6010 W. Spring Creek Parkway
Plano, TX 75024

**www.KDphillipslaw.com**

IMPORTANT/CONFIDENTIAL:

IMPORTANT \ CONFIDENTIAL:  This message contains information from the law firm of KD Phillips Law Firm, PLLC that may be subject to the attorney-client privilege or work product doctrine, or may be otherwise confidential and exempt from disclosure under applicable law.  Unless expressly stated otherwise, nothing contained in this message should be construed as a digital or electronic signature, nor is this message intended to reflect an intention to make an agreement by electronic means.  DO NOT COPY OR FORWARD TO UNAUTHORIZED PERSONS.  If you are not the intended recipient or the employee or agent responsible for delivering the message to the intended recipient, you are hereby notified that any dissemination, distribution, copying or forwarding of this communication is strictly prohibited. Unauthorized interception of this message may be in violation of the Electronic Communications Privacy Act, 18 U.S.C. § 2510, et seq.  If you have received this communication in error, please notify us immediately at our telephone number:  (972) 327-5800

IRS Circular 230 Notice:  Unless expressly stated otherwise in the foregoing message, and to ensure compliance with requirements imposed by the IRS, we inform you that any advice contained in this message (including any attachments) is not intended or written to be used, and may not be used by any person, for the purpose of (i) avoiding penalties imposed under the Internal Revenue Code or (ii) promoting, marketing, or recommending to another person any transaction or matter addressed herein, within the meaning of IRS Circular 230.

**From:** Jeff Bartos <jbartos@geclaw.com>
**Sent:** Friday, August 11, 2023 7:00 AM

**To:** Kerri Phillips <Kerri@KDphillipslaw.com>
**Cc:** Charlette Matts <cmatts@apfa.org>; James Sanford <jim@gillespiesanford.com>
**Subject:** Ross v. APFA; Vargas v. APFA -- Mediation

Ms. Phillips,

The Scheduling Orders in both cases require us to engage in mediation during the month of November, and to agree on a both a mediator and a mediation date by September 1, 2023.

In the interest of efficiency, I hope we can agree to engage in a single mediation for both cases, rather than two separate mediations.

On behalf of the Defendants, we suggest using one of the following neutrals, assuming they are available in November, and would appreciate your thoughts on this list.  We will of course consider any suggestions you may have as well.  Our suggestions are:

- Jeff Kaplan  (https://www.jamsadr.com/kaplan/)
- Cecilia Morgan (https://www.jamsadr.com/morgan/)
- Karen Washington (https://www.nadn.org/karen-washington)

If you could please let us know if any of these three is agreeable to you, or if you have any alternatives to suggest, we would appreciate it.

Thank you,

Jeff

*Jeffrey A Bartos*
*Guerrieri Bartos & Roma PC*
*1900 M Street, NW*
*Suite 700*
*Washington, DC  20036*
*202-624-7400*

*www.geclaw.com*

IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| BARBARA DENNIS, individually, and on behalf of the Estate of JAMES CARTER, | § § § § | |
| Plaintiff, | § § | |
| V. | § § | No. 3:16-cv-3148-G-BN |
| UNITED STATES OF AMERICA, | § § | |
| Defendant. | § § | |

## **MEMORANDUM OPINION AND ORDER**

Defendant United States of America has filed a Motion to Quash or, Alternatively, for Protective Order. *See* Dkt. No. 19 (the "MPO"). Defendant "moves to quash or, alternatively, for protective order from Plaintiff Barbara Dennis's Amended Second Notice of Deposition of a Corporate Representative with subpoenas duces tecum, dated August 8, 2017 pursuant to Federal Rule of Civil Procedure 26(c)." *Id.* at 1.

All discovery matters in this case have been referred to the undersigned United States magistrate judge pursuant to 28 U.S.C. § 636(b) and a standing order of reference from Senior United States District Judge A. Joe Fish. *See* Dkt. No. 5.

Plaintiff Barbara Dennis filed a response, *see* Dkt. Nos. 23 & 24, and Defendant filed a reply, *see* Dkt. No. 27. The Court then denied Ms. Dennis's Motion for Leave to File Sur-Reply Brief [Dkt. No. 28] because "[t]he matters that Plaintiff seeks to address in a sur-reply brief – alleged factual inaccuracies and misstatements of law in

-1-

Defendant's reply – are not the kind of new issues, arguments, legal theories, or evidence presented for the first time in a reply that the responding party, in fairness, must be given an opportunity to address." Dkt. No. 29.

For the reasons and to the extent explained below, the Court GRANTS in part and DENIES in part Defendant United States of America's Motion to Quash or, Alternatively, for Protective Order [Dkt. No. 19].

## Background

In the MPO, Defendant explains that Ms. Dennis

> filed suit against the United States under the Federal Tort Claims Act (FTCA) for alleged negligent medical treatment of James Carter and amended her complaint on March 15, 2017. (Dkts. 1, 14). Dennis asserts Defendant is directly and vicariously liable for alleged negligence related to the care and treatment of Mr. Carter, who was a patient at the Dallas VA Medical Center or the Community Living Center (CLC) for slightly more than a year before he died at the age of 87. (Dkt. 14 at 5-7). Dennis does not allege any particular individual was negligent, but avers Defendant is responsible for the acts of the VA's team of "physicians, doctors, nurses, staff members, technicians, specialists, non-specialists, and/or other personnel" who provided care to Mr. Carter. (Dkt. 14 at 4, 5, 7). Dennis's second amended initial disclosures identify more than eighty (80) VA employees with alleged knowledge of relevant facts in this case. (App'x 45-53).

Dkt. No. 20 at 2.

Defendant opposes Ms. Dennis's noticed Federal Rule of Civil Procedure 30(b)(6) corporate representative deposition because she "seeks a contention deposition, covering an entire year of medical care provided to an 87 year old patient at the VA with a complex medical history involving than 80 employees" and, although Ms. Dennis "revised the topics set forth in the notice, seeking to depose a representative regarding

'facts,'" "Defendant contends that the request to depose a corporate representative regarding (a) 'facts' related to Defendant's legal theories invades the work product privilege, and (b) 'facts' related to the medical care provided by a large number of medical professionals is unduly burdensome." *Id.* at 1 (emphasis removed).

The current notice directs "Defendant Dallas VA Medical Center ... to designate a person or persons to testify on its behalf on the following matters:"Dennis

1.  The facts upon which Defendant bases denials and affirmative defenses stated in its amended answer;
2.  The facts upon with Defendant bases its discovery responses, including its interrogatory answers and document production;
3.  The facts related to the leg injury suffered by Mr. Carter while under the care of the Dallas VA Medical Center including its cause and treatment;
4.  The facts related to the malnutrition that was a factor in Mr. Carter's death at the Dallas VA Medical Center, including its cause and treatment; and
5.  The records and documents requested in Exhibit A to this Notice.

Dkt. 21-4 at 7-8 of 25 (App'x 101-02).

Defendant explains that it "does not object, in theory, to the request to depose a corporate representative to the extent Dennis seeks to identify facts that are outside the knowledge of the individuals who treated Mr. Carter" but "objects to [Ms. Dennis's] request to depose a corporate representative regarding (1) Defendant's legal theories and contentions and (2) facts contained in the entire 10,826 pages of documents produced in this case, including the medical records, administrative documents, and witnesses identified in those documents; (3) facts not included in the medical records regarding the decisions and judgment of the medical professionals identified in the medical records; and (4) facts related to the care provided by multiple medical

-3-

professionals for Mr. Carter's leg injury and malnutrition." Dkt. No. 20 at 12-13.

"Defendant contends [Ms. Dennis] should discover these facts directly from relevant

medical providers who provided care to Mr. Carter, not a representative." *Id.* at 13.

"Thus, Defendant moves to quash the deposition in its entirety. In the

alternative, if Defendant is required to produce a corporate representative, Defendant

moves for a protective order limiting the scope of the deposition [of a corporate

representative to facts contained in the medical records related solely to Mr. Carter's

leg injury and malnutrition], and to stay the deposition until no earlier than 30 days

after the Court rules on this motion." *Id.* at 1-2, 13 (emphasis removed).

More specifically, Defendant asserts that "[t]here is good cause to quash the

deposition, or in the alternative, to issue a protective order limiting the deposition of

a corporate representative" because

- as to Topics 1 and 2 in Plaintiff's Amended Second Notice of Deposition, Ms. "Dennis's request to depose a representative regarding Defendant's affirmative defenses and interrogatory responses is an improper contention deposition";

- as to Topics 3 and 4, Ms. "Dennis's request to depose a representative regarding specific medical conditions is unduly burdensome and not proportional to the needs of the case";

- as to Topic 5, Ms. "Dennis's request to depose a representative regarding the entire record is unduly burdensome and not proportional to the needs of the case";

- as to Topics 3 and 4, Ms. "Dennis fails to establish that she cannot obtain the

information she seeks through other less intrusive means"; and

- as to Topics 1 and 5, Ms. "Dennis cannot require Defendant to marshal its evidence and identify all documents supporting its defenses at a representative's deposition."

*Id.* at ii.

Ms. Dennis responds that "that the deposition sought is proper and necessary, and Defendant has failed to meet its legal burden to show otherwise" and that she "has attempted to discover the facts upon which Defendant allegedly relies to support its positions through written discovery, including interrogatories and requests for production. Defendant, however, has attempted in its responses, to 'hide the ball,' and has failed and refused to disclose the facts upon which it allegedly relies." Dkt. No. 23 at 1-2.

Ms. Dennis adds that, "[s]hould [she] not be permitted to obtain discovery of the facts upon which Defendant purports to rely though the 30(b)(6) deposition that is the subject of Defendant's motion, Plaintiff reserves the right to file a Motion to Compel more straightforward and informative written discovery responses from Defendant." *Id.* at 2.

In reply, Defendant argues that

[t]he Federal Rules of Civil Procedure permit depositions of a corporate representative – but they do not *ipso facto* permit Plaintiff Barbara Dennis to depose a representative on the topics identified in her notice of deposition. Topics 1 and 2 patently state that Dennis seeks to depose a representative on Defendant's affirmative defenses, which invades Defendant's work product privilege. (Dft App'x at 101). Topic 5 states that Dennis seeks to depose a representative on the entire medical file, which

-5-

would require Defendant to marshal all of its evidence to prepare the deponent for deposition. (*Id.* at 102). And finally, Topics 3 and 4 seek to depose a representative regarding medical treatment for two distinct medical conditions, which should be addressed by fact witnesses, who can explain when, where, why, and how they treated Mr. Carter. (*Id.* at 101). Defendant thus seeks to quash the deposition as noticed.

Dkt. No. 27 at 1.

### Legal Standards

"Unless otherwise limited by court order, ... [p]arties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit. Information within this scope of discovery need not be admissible in evidence to be discoverable." FED. R. CIV. P. 26(b)(1); *accord Booth v. City of Dallas*, 312 F.R.D. 427, 433 (N.D. Tex. 2015).

"Under Rule 26(b)(1), discoverable matter must be both relevant and proportional to the needs of the case – which are related but distinct requirements." *Samsung Electronics Am., Inc. v. Chung*, ___ F.R.D. ___, No. 3:15-cr-2108-D, 2017 WL 2832621, at *25 (N.D. Tex. June 26, 2017). "To be relevant under Rule 26(b)(1), a document or information need not, by itself, prove or disprove a claim or defense or have strong probative force or value. If it were otherwise, it would make little sense for Rule 26(b)(1) to direct courts to consider whether discovery that is relevant to any

-6-

party's claim or defense is also important in resolving the issues." *Id.* at *26.

The party resisting discovery must show specifically how each discovery request is not relevant or otherwise objectionable. *See McLeod, Alexander, Powel & Apffel, P.C. v. Quarles*, 894 F.2d 1482, 1485 (5th Cir. 1990). A party resisting discovery must show how the requested discovery is overly broad, unduly burdensome, or oppressive by submitting affidavits or offering evidence revealing the nature of the burden. *See Merrill v. Waffle House, Inc.*, 227 F.R.D. 475, 477 (N.D. Tex. 2005); *see also S.E.C. v. Brady*, 238 F.R.D. 429, 437 (N.D. Tex. 2006) ("A party asserting undue burden typically must present an affidavit or other evidentiary proof of the time or expense involved in responding to the discovery request."). "Failing to do so, as a general matter, makes such an unsupported objection nothing more than unsustainable boilerplate." *Heller v. City of Dallas*, 303 F.R.D. 466, 490 (N.D. Tex. 2014)

For the reasons the Court has previously explained, the amendments to Rule 26 do not alter the burdens imposed on the party resisting discovery discussed above. *See Carr v. State Farm Mutual Automobile Insurance Company*, 312 F.R.D. 459, 463-69 (N.D. Tex. 2015). Rather, just as was the case before the December 1, 2015 amendments, under Rules 26(b)(1) and 26(b)(2)(C)(iii), a court can – and must – limit proposed discovery that it determines is not proportional to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit – and the court must do

-7-

so even in the absence of a motion. *See Crosby v. La. Health Serv. & Indem. Co.*, 647 F.3d 258, 264 (5th Cir. 2011). Thus, as amended, Rule 26(b)(2)© provides that, "[o]n motion or on its own, the court must limit the frequency or extent of discovery otherwise allowed by these rules or by local rule if it determines that: (I) the discovery sought is unreasonably cumulative or duplicative, or can be obtained from some other source that is more convenient, less burdensome, or less expensive; (ii) the party seeking discovery has had ample opportunity to obtain the information by discovery in the action; or (iii) the proposed discovery is outside the scope permitted by Rule 26(b)(1)." FED. R. CIV. P. 26(b)(2)©.

But a party seeking to resist discovery on these grounds still bears the burden of making a specific objection and showing that any discovery request that is relevant to any party's claim or defense fails the proportionality calculation mandated by Rule 26(b) by coming forward with specific information to address – insofar as that information is available to it – the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit. *Accord First Am. Bankcard, Inc. v. Smart Bus. Tech., Inc.*, No. CV 15-638, 2017 WL 2267149, at *1 (E.D. La. May 24, 2017) ("In this instance, defendant has offered nothing more than a boilerplate proportionality objection, without providing any information concerning burden or expense that the court would expect to be within defendant's own knowledge.").

-8-

The party seeking discovery, to prevail on a motion for protective order, may well need to make its own showing of many or all of the proportionality factors, including the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, and the importance of the discovery in resolving the issues, in opposition to the resisting party's showing.

And the party seeking discovery is required to comply with Rule 26(b)(1)'s proportionality limits on discovery requests; is also subject to Federal Rule of Civil Procedure 26(g)(1)'s requirement to certify "that to the best of the person's knowledge, information, and belief formed after a reasonable inquiry: ... (B) with respect to a discovery request..., it is: (I) consistent with these rules and warranted by existing law or by a nonfrivolous argument for extending, modifying, or reversing existing law, or for establishing new law; (ii) not interposed for any improper purpose, such as to harass, cause unnecessary delay, or needlessly increase the cost of litigation; and (iii) neither unreasonable nor unduly burdensome or expensive, considering the needs of the case, prior discovery in the case, the amount in controversy, and the importance of the issues at stake in the action"; and faces Rule 26(g)(3) sanctions "[i]f a certification violates this rule without substantial justification." FED. R. CIV. P. 26(g)(1)(B), 26(g)(3); *see generally Heller*, 303 F.R.D. at 475-77, 493-95.

As amended effective December 1, 2015, Federal Rule of Civil Procedure 26(c)(1) authorizes protective orders, for good cause shown, "to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense, including one or

more of the following: (A) forbidding the disclosure or discovery; (B) specifying terms, including time and place or allocation of expenses, for the disclosure or discovery; © prescribing a discovery method other than the one selected by the party seeking discovery; (D) forbidding inquiry into certain matters, or limiting the scope of disclosure or discovery to certain matters; (E) designating the persons who may be present while the discovery is conducted; (F) requiring that a deposition be sealed and opened only on court order; (G) requiring that a trade secret or other confidential research, development, or commercial information not be revealed or be revealed only in a specified way; and (H) requiring that the parties simultaneously file specified documents or information in sealed envelopes, to be opened as the court directs." Fed. R. Civ. P. 26(c)(1); *see also Talon Transaction Technologies, Inc. v. StoneEagle Servs. Inc.*, No. 3:13-cv-902-P, 2014 WL 6819846, at *3 (N.D. Tex. Dec. 4, 2014) (explaining that, "'[w]hen a Rule 30(b)(6) deposition notice references multiple topics, the party named in the deposition notice must either move for a protective order regarding each topic or designate a person to testify regarding each topic'"; that "[f]ailing to appear and testify as to designated topics for a Rule 30(b)(6) deposition 'is not excused on the ground that the discovery sought was objectionable, unless the party failing to act has a pending motion for a protective order under Rule 26©'"; and that "a pending motion for protective order only protects a party from designating a witness to appear and testify as to the particular topics addressed in the pending motion" (quoting *Ferko v. Nat'l Ass'n for Stock Car Auto Racing, Inc.*, 218 F.R.D. 125, 142 (E.D. Tex. 2003); Fed. R. Civ. P. 37(d)(2))).

"[T]he burden is upon [the party seeking the protective order] to show the necessity of its issuance, which contemplates a particular and specific demonstration of fact as distinguished from stereotyped and conclusory statements." *In re Terra Int'l,* 134 F.3d 302, 306 (5th Cir. 1998) (citation omitted). A protective order is warranted in those instances in which the party seeking it demonstrates good cause and a specific need for protection. *See Landry v. Air Line Pilots Ass'n*, 901 F.2d 404, 435 (5th Cir. 1990). And the United States Court of Appeals for the Fifth Circuit recently explained that "[t]he federal courts have superimposed a somewhat demanding balancing of interests approach to the Rule. Under the balancing standard, the district judge must compare the hardship to the party against whom discovery is sought against the probative value of the information to the other party. Courts also weigh relevant public interests in this analysis." *Cazorla v. Koch Foods of Mississippi, L.L.C.*, 838 F.3d 540, 555 (5th Cir. 2016) (footnotes and internal quotation marks omitted).

The Court has broad discretion in determining whether to grant a motion for a protective order. *See Harris v. Amoco Prod. Co.,* 768 F.2d 669, 684 (5th Cir. 1985). "The trial court is in the best position to weigh fairly the competing needs and interests of parties affected by discovery." *Seattle Times Co. v. Rhinehart,* 467 U.S. 20, 36 (1984).

The amendments to Rule 26(b) do not alter the basic allocation of the burden on the party resisting discovery to – in order to prevail on its motion for protective order – specifically object and show that the requested discovery does not fall within Rule 26(b)(1)'s scope of relevance (as now amended) or fails the required proportionality calculation or is otherwise objectionable. *See McLeod*, 894 F.2d at 1485; *Heller*, 303

-11-

F.R.D. at 483-93.

Federal Rule of Civil Procedure 26(c)(3) provides that, in connection with a motion under Rule 26© for a protective order, Federal Rule of Civil Procedure "37(a)(5) applies to the award of expenses." FED. R. CIV. P. 26(c)(3).

Federal Rule of Civil Procedure 37(a)(5)(A) provides that, if a motion to compel is granted, or if the requested discovery is provided after the motion was filed, "the court must, after giving an opportunity to be heard, require the party ... whose conduct necessitated the motion, the party or attorney advising that conduct, or both to pay the movant's reasonable expenses incurred in making the motion, including attorney's fees," except that "the court must not order this payment if: (I) the movant filed the motion before attempting in good faith to obtain the disclosure or discovery without court action; (ii) the opposing party's nondisclosure, response, or objection was substantially justified; or (iii) other circumstances make an award of expenses unjust." FED. R. CIV. P. 37(a)(5)(A); *accord Washington v. M. Hanna Const. Inc.*, 299 F. App'x 399, 402 (5th Cir. 2008).

Federal Rule of Civil Procedure 37(a)(5)(B)-© further provides in pertinent part that, "[i]f the motion is denied, the court may issue any protective order authorized under Rule 26© and must, after giving an opportunity to be heard, require the movant, the attorney filing the motion, or both to pay the party ... who opposed the motion its reasonable expenses incurred in opposing the motion, including attorney's fees," "[b]ut the court must not order this payment if the motion was substantially justified or other circumstances make an award of expenses unjust," and that, "[i]f the motion is granted

in part and denied in part, the court may issue any protective order authorized under Rule 26© and may, after giving an opportunity to be heard, apportion the reasonable expenses for the motion." FED. R. CIV. P. 37(a)(5)(B)-©; *accord De Angelis v. City of El Paso*, 265 F. App'x 390, 398 (5th Cir. 2008).

"[A] motion is 'substantially justified' if there is a genuine dispute, or if reasonable people could differ as to [the appropriateness of the contested action]." *De Angelis*, 265 F. App'x at 398 (internal quotation marks omitted); *see also Heller*, 303 F.R.D. at 477 ("The United States Supreme Court has defined 'substantially justified' to mean 'justified in substance or in the main – that is, justified to a degree that could satisfy a reasonable person.' 'Substantial justification' entails a 'reasonable basis in both law and fact,' such that 'there is a genuine dispute ... or if reasonable people could differ [as to the appropriateness of the contested action].'" (citations omitted)).

The United States Court of Appeals for the Fifth Circuit has explained in this context of a Federal Rule of Civil Procedure 30(b)(6) deposition of a corporate representative:

> Rule 30(b)(6) is designed "to avoid the possibility that several officers and managing agents might be deposed in turn, with each disclaiming personal knowledge of facts that are clearly known to persons within the organization and thus to the organization itself." Therefore, the deponent "'must make a conscientious good-faith endeavor to designate the persons having knowledge of the matters sought by [the party noticing the deposition] and to prepare those persons in order that they can answer fully, completely, unevasively, the questions posed ... as to the relevant subject matters.'" "[T]he duty to present and prepare a Rule 30(b)(6) designee goes beyond matters personally known to that designee or to matters in which that designee was personally involved." The deponent must prepare the designee to the extent matters are reasonably available, whether from documents, past employees, or other

-13-

sources.

> "Obviously it is not literally possible to take the deposition of a corporation; instead, ... the information sought must be obtained from natural persons who can speak for the corporation." Thus, a rule 30(b)(6) designee does not give his personal opinions, but presents the corporation's "position" on the topic. When a corporation produces an employee pursuant to a rule 30(b)(6) notice, it represents that the employee has the authority to speak on behalf of the corporation with respect to the areas within the notice of deposition. This extends not only to facts, but also to subjective beliefs and opinions. If it becomes obvious that the deposition representative designated by the corporation is deficient, the corporation is obligated to provide a substitute.
>
> We agree with BRA that Cajun violated rule 30(b)(6) by failing to prepare Grigsby with respect to issues that although not within his personal knowledge, were within the corporate knowledge of the organization, such as whether BRA had presented a warranty claim to Cajun. At the very least, Cajun could have designated another witness with personal or corporate knowledge of the questions asked.
>
> If the designated "agent is not knowledgeable about relevant facts, and the principal has failed to designate an available, knowledgeable, and readily identifiable witness, then the appearance is, for all practical purposes, no appearance at all." *Resolution Trust* [*Corp. v. S. Union Co., Inc.*, 985 F.2d 196, 187 (5th Cir. 1993).] In *Resolution Trust* we affirmed sanctions against a party that possessed documents that plainly identified a witness as having personal knowledge of the subject of the deposition but did not furnish those documents or designate the witness until after it had designated two other witnesses with no personal knowledge.

*Brazos River Auth. v. GE Ionics, Inc.*, 469 F.3d 416, 432-34 (5th Cir. 2006) (footnotes and citations omitted).

Rule 30(b)(6) requires that a party seeking to depose an organization "must describe with reasonable particularity the matters for examination." FED. R. CIV. P. 30(b)(6) ("In its notice or subpoena, a party may name as the deponent a public or private corporation, a partnership, an association, a governmental agency, or other entity and must describe with reasonable particularity the matters for examination.

-14-

The named organization must then designate one or more officers, directors, or managing agents, or designate other persons who consent to testify on its behalf; and it may set out the matters on which each person designated will testify. .... The persons designated must testify about information known or reasonably available to the organization.").

"For Rule 30(b)(6) to effectively function, the requesting party must take care to designate, with painstaking specificity, the particular subject areas that are intended to be questioned, and that are relevant to the issues in dispute. Otherwise, an overly broad Rule 30(b)(6) notice may subject the noticed party to an impossible task. If the noticed organization cannot identify the outer limits of the areas of inquiry noticed, compliant designation is not feasible." *Hartford Fire Ins. Co. V. P & H Cattle Co.*, No. 05-cv-2001, 2009 WL 2951120, at *10 (D. Kan. Sept. 10, 2009).

Finally, once discovery is authorized by rule, stipulation, or court order or because the parties have conferred as Federal Rule of Civil Procedure 26(f) requires, "[u]nless, on motion, the court orders otherwise for the parties' and witnesses' convenience and in the interests of justice: (A) methods of discovery may be used in any sequence; and (B) discovery by one party does not require any other party to delay its discovery." FED. R. CIV. P. 26(d)(2). "Rule 26(d) generally governs the sequencing of discovery unless the Court enters a protective order under Rule 26© or another order governing the sequence of conducting discovery under Federal Rule of Civil Procedure 16(b) or 26(d) or the parties make a stipulation under Federal Rule of Civil Procedure 29. Absent a court order providing otherwise or a binding stipulation, Rule 26(d)(2)(A)

-15-

generally dictates that Plaintiffs may seek information through an interrogatory even if Defendant believes the subject matter would be better explored through a deposition." *Heller*, 303 F.R.D. at 493.

But "Rule 26(d) gives [the] court wide discretion to craft flexible and nuanced terms of discovery." *Cazorla*, 2016 WL 5400401, at *18 (footnote omitted); *accord Celanese Corp. v. Clariant Corp.*, No. 3:14-cv-4165-M, 2015 WL 9269415, at *4 (N.D. Tex. Dec. 21, 2015) ("Regardless of whether North Carolina or Texas law applies to Celanese's claim in this case, to establish the reasonableness of the defense costs that Celanese incurred in the Courtaulds Cases and the Selby Site Litigation, Clariant made clear at oral argument that it primarily wants access to these documents to determine if additional settlement offers or demands were made to Celanese in those cases that might not be reflected in documents already produced, whether Celanese accepted or rejected those demands, and, if any demand was rejected, why Celanese rejected it. As the Court discussed with counsel at oral argument, that information can best be obtained in the first instance by an interrogatory to Celanese asking for precisely that information, which, subject to any proper objections, *see generally Heller v. City of Dallas*, 303 F.R.D. 466 (N.D. Tex. 2014), Celanese would be obligated to pull together into a verified answer by reviewing all sources of responsive information reasonably available to it (including these documents at issue on this motion), and as to which Clariant could then, if appropriate, take a follow-on deposition.").

And, "while, as a general matter, under Rule 26, a party may seek discovery through any permitted method in any sequence, ... 'there's certainly case law where

-16-

there are some kinds of contention interrogatories where courts have felt that, in their discretion, they could say it ought to be a deposition instead, like a 30(b)(6) deposition.'" *Heller*, 303 F.R.D. at 493 (citing *IBP, Inc. v. Mercantile Bank of Topeka*, 179 F.R.D. 316, 321 (D. Kan. 1998) (sustaining objections to contention interrogatories where "[o]ther discovery procedures, such as depositions and production of documents, better address whatever need there be for [any] kind of [requested] secondary detail")).

## Analysis

I.   <u>Deposition topics</u>

A.   Topic 1 – "The facts upon which Defendant bases denials and affirmative defenses stated in its amended answer"

Contention interrogatories often ask for a recitation of the facts on which a claim, defense, allegation, or denial is based. The content or substance of an attorney's evaluation of why or how those facts support a claim or defense may be protected work product. But "a contention interrogatory seeking a description of the 'factual basis' [not privileged communications or work product] [is] precisely the sort contemplated by Fed. R. Civ. P. 33(a)(2)" and is not protected work product. *Ill. Union Ins. Co. v. La. Health Serv. and Indemnity Co.*, Civ. A. No. 16-6604, 2017 WL 2955355, at *2 (E.D. La. Apr. 13, 2017).

The same analysis applies to a Rule 30(b)(6) deposition topic seeking the identification of facts. *See Malibu Consulting Corp. v. Funair Corp.*, Civ. A. No. SA-06-CA-0735 XR, 2007 WL 3995913, at *1 (W.D. Tex. Nov. 14, 2007) ("I agree with the line of cases which holds that a Rule 30(b)(6) deposition which seeks information

-17-

concerning the factual support for allegations found in the complaint, which would be discoverable through contention interrogatories, is outside the protection of the work-product doctrine and is permissible." (footnote omitted)); *accord Waste Mgmt. of La., LLC v. River Birch, Inc.*, Civ. A. No. 11-2405, 2017 WL 2831700, at *3 (E.D.La. June 30, 2017).

Likewise, "while, in general, investigative reports prepared by the party's attorney are protected by the work-product doctrine (which is governed by federal law), a corporate representative cannot be instructed not to answer a question seeking factual information within a designated topic for Rule 30(b)(6) testimony simply because the corporate representative learned the information from an attorney who gathered the information in anticipation of litigation or for trial. The attorney's investigation and the manner in which he or she gathered and organized and analyzed the information and presented it to the corporate representative may itself be protected work product, but the underlying factual information itself remains discoverable through the corporate representative's testimony. Where the deponent is asked only about facts that are responsive to the noticed deposition topics, testifying to the underlying facts and that the deponent learned a fact from the company's attorney – without more – does not impermissibly reveal protected attorney work product, including the attorney's mental processes, impressions, conclusions, opinions, or legal theories." *OrchestrateHR, Inc. v. Trombetta*, No. 3:13-cv-2110-P, 2015 WL 11120526, at *7 (N.D. Tex. July 15, 2015) (citations omitted).

Defendant's work product objection to Topic 1 is not well-taken and overruled.

And the Court cannot accept Defendant's assertion that this testimony must await expert reports. As the Court has previously concluded, "a party cannot avoid discovery – whether by an interrogatory, a Rule 36 request, or Federal Rule of Civil Procedure 30(b)(6) deposition testimony – of its own views on a factual matter in dispute (or perhaps, in fact, not in dispute) simply because its view on that matter may be informed by consulting with its retained experts." *McKinney/Pearl Restaurant Ptrs., L.P. v. Metro. Life Ins. Co.*, ___ F.R.D. ___, No. 3:14-cv-2498-B, 2016 WL 98603, at *15 (N.D. Tex. Jan. 8, 2016). And the Court is not persuaded that the mere possibility that an expert report or expert witness's deposition may later adequately cover the same information is good cause for quashal or a protective order as to the Rule 30(b)(6) topic here.

But, applying Rule 30(b)(6)'s "reasonable particularity" standard, the Court finds that Topic 1's seeking testimony on all "facts upon which Defendant bases denials and affirmative defenses stated in its amended answer" is overly broad because it fails to describe the testimony sought with reasonable particularity to enable Defendant to reasonably identify and marshal the facts as to which it must prepare its corporate representative to testify. That Ms. Dennis may believe that Defendant has not properly or fully responded to other discovery requests seeking the same information does not change the fact that a responding party is entitled to insist that a requesting party comply with Rule 30(b)(6)'s "reasonable particularity" requirement.

The Court therefore GRANTS Defendant's MPO as to Topic 1 in Plaintiff's Amended Second Notice of Deposition and quashes the Amended Second Notice of

Deposition as to Topic 1 and enters a protective order precluding any requirement for Defendant to present a corporate representative as to Topic 1 as currently framed.

      **B.**      **Topic 2 – "The facts upon with Defendant bases its discovery responses, including its interrogatory answers and document production"**

The same analysis applies to Topic 2, which does not improperly seek attorney work product but which runs afoul of Rule 30(b)(6)'s standard because it fails to describe the testimony sought with reasonable particularity.

The Court therefore GRANTS Defendant's MPO as to Topic 2 in Plaintiff's Amended Second Notice of Deposition and quashes the Amended Second Notice of Deposition as to Topic 2 and enters a protective order precluding any requirement for Defendant to present a corporate representative as to Topic 2 as currently framed.

      **C.**      **Topic 3 – "The facts related to the leg injury suffered by Mr. Carter while under the care of the Dallas VA Medical Center including its cause and treatment" – and Topic 4 – "The facts related to the malnutrition that was a factor in Mr. Carter's death at the Dallas VA Medical Center, including its cause and treatment"**

Defendant argues that "[a]sking a representative to testify regarding two specific medical conditions is unduly burdensome for several reasons," including that "[a] representative cannot completely and fully testify regarding facts related to a specific health problem, such as the leg wound or alleged malnutrition" and that "[i]t is impossible for a single representative (or multiple representatives) to explain why a team of internists, medical specialists, nurses, dieticians, and other medical professionals made daily, on-going decisions for an entire year regarding care they provided to a frail 87-year old patient with a complex medical history and multiple

comorbidities." Dkt. No. 20 at 14-15. According to Defendant, "[a]sking a corporate representative to testify on behalf of those who provided care to Mr. Carter is inefficient and less accurate, and therefore, inappropriate and unduly burdensome." Dkt. No. 27 at 5 (emphasis removed).

Ms. Dennis responds that Defendant proposes the far more burdensome approach of deposing the "the roughly eighty (80) medical providers who 'treated' Mr. Carter during his stay at the Dallas VA Medical Center." Dkt. No. 24 at 11. "Not only could this be considered the most intrusive and unduly burdensome means to obtain this information, but would increase the overall costs for both parties exponentially, and create a logistical burden on both parties to coordinate the production of all eighty (80) of these doctors, nurses, and staff for their depositions." *Id.*

Defendant replies that, "[b]ased on the medical records, which Dennis has in her possession, Dennis could identify two or three medical care providers to depose as fact witnesses, who could explain how and why they treated Mr. Carter's leg injury and assessed his nutritional needs, and/or whether they believe Mr. Carter was malnourished," and that "deposing two or three fact witnesses is far less burdensome than requiring a corporate representative to review the medical records, interview treatment providers, and testify on their behalf." Dkt. No. 27 at 5 (emphasis removed; footnote omitted).

Defendant's proposal is too limiting under Rule 30(b)(6), under which Defendant "is expected to create a witness or witnesses with responsive knowledge." *Wilson v. Lakner*, 228 F.R.D. 524, 528 (D. Md. 2005) (emphasis removed). Ms. Dennis is not

limited to deposing as fact witnesses only a few health care professionals involved, nor is she "obliged to depose a string of hospital employees, none of whom is able to speak for the hospital as to how the incident or incidents in question occurred, nor indeed is a 30(b)(6) requesting party limited to conducting her factual inquiry via interrogatories." *Id.* at 529. Under Rule 30(b)(6), Defendant has a duty to present and prepare a Rule 30(b)(6) "designee to the extent matters are reasonably available, whether from documents, past employees, or other sources." *Brazos River Auth.*, 469 F.3d at 433 (internal quotation marks omitted). Preparing this Rule 30(b)(6) designated representative may be time-consuming and burdensome, but the Court does not find that it would be unduly burdensome, particularly in light of the available alternatives that Defendant offers.

The Court therefore OVERRULES Defendants objections and DENIES Defendant's MPO as to Topics 3 and 4 in Plaintiff's Amended Second Notice of Deposition, which the Court finds to be relevant and proportional to the needs of the case.

> D.   Topic 5 – "The records and documents requested in Exhibit A to this Notice"

For the reasons explained as to Topic 1, the Court finds that Topic 5 is overly broad on its fact because asking a corporate representative to testify as to an extensive document production fails to describe the testimony sought with reasonable particularity.

The Court therefore GRANTS Defendant's MPO as to Topic 5 in Plaintiff's

-22-

Amended Second Notice of Deposition and quashes the Amended Second Notice of Deposition as to Topic 5 and enters a protective order precluding any requirement for Defendant to present a corporate representative as to Topic 5 as currently framed.

II.    <u>Interrogatories</u>

Ms. Dennis's response and Defendant's reply include some argument as to the adequacy and sufficiency of Defendants' answers to interrogatories and responses to document requests. But a motion to compel has not yet been filed in compliance with the Court's Standing Order on Discovery [Dkt. No. 6]. The Court will not prematurely delve into the disputes on these discovery requests before a proper motion is filed and briefed.

III.    <u>Award of expenses</u>

Under Rules 26(c)(3) and 37(a)(5), the Court determines that, under all of the circumstances presented here, Ms. Dennis and Defendants should bear their own expenses, including attorneys' fees, in connection with the MPO.

<b>Conclusion</b>

For the reasons and to the extent explained above, the Court GRANTS in part and DENIES in part Defendant United States of America's Motion to Quash or, Alternatively, for Protective Order [Dkt. No. 19].

SO ORDERED.

DATED: October 23, 2017

_____
DAVID L. HORAN
UNITED STATES MAGISTRATE JUDGE

-23-

IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

KELLY MCGOWAN, *et al.*,              §
                                      §
     Plaintiffs,                    §
                                      §
v.                                    §          Civil Action No. 3:18-CV-141-N
                                      §
SOUTHERN METHODIST                    §
UNIVERSITY,                           §
                                      §
     Defendant.                     §

## MEMORANDUM OPINION AND ORDER

This Order addresses Defendant Southern Methodist University's ("SMU") motion to compel [44].  For the following reasons, the Court grants in part and denies in part SMU's motion.

### I. ORIGINS OF THE DISCOVERY DISPUTE

Plaintiffs filed suit against SMU alleging negligence and Title IX violations.  More specifically, Plaintiffs allege that their participation on SMU's women's rowing team led to hip injuries, which affected and continue to affect their abilities to engage in certain activities.  SMU served Plaintiffs with its first set of requests for production and interrogatories, seeking, among other requests, information regarding Plaintiffs' social media activity, their employment information, and a damages calculations.  Plaintiffs objected to these requests.  SMU filed its motion to compel and seeks the Court to order Plaintiffs to provide the requested information.

MEMORANDUM OPINION AND ORDER – PAGE 1

## II. MOTION TO COMPEL LEGAL STANDARD

Federal Rule of Civil Procedure 26 allows parties to "obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case." FED. R. CIV. P. 26(b)(1). A litigant may request the production of documents falling "within the scope of Rule 26(b)" from another party if the documents are in that party's "possession, custody, or control." FED. R. CIV. P. 34(a). To enforce discovery rights, a "party seeking discovery may move for an order compelling an answer, designation, production, or inspection." FED. R. CIV. P. 37(a)(3)(B). The Fifth Circuit requires the party seeking to prevent discovery to specify why the discovery is not relevant or show that it fails the proportionality requirement. *McLeod, Alexander, Powel & Apffel, P.C. v. Quarles*, 894 F.2d 1482, 1485 (5th Cir. 1990). A district court has wide discretion to supervise discovery and must limit discovery if it would be unreasonably cumulative, could be obtained more easily from a different source, or if the burden or expense of the proposed discovery outweighs its potential benefit. *See* FED. R. CIV. P. 26(b)(2)(C).

When evaluating the relevance of a request, courts construe relevance broadly, as a document need not, by itself, prove or disprove a claim or defense or have strong probative force to be relevant. *Samsung Elecs. Am., Inc. v. Yang Kun Chung*, 321 F.R.D. 250, 280 (N.D. Tex. 2017). Relevant information need not be admissible at trial if the discovery appears reasonably calculated to lead to the discovery of admissible evidence. FED. R. CIV. P. 26(b)(1). The Court should "balance the need for discovery by the requesting party and the relevance of the discovery to the case against the harm, prejudice, or burden to the other party." *S.E.C. v. Brady*, 238 F.R.D. 429, 437 (N.D. Tex. 2006).

MEMORANDUM OPINION AND ORDER – PAGE 2

### III.  THE COURT GRANTS IN PART AND DENIES IN PART SMU'S MOTION

First, the Court grants SMU limited access to Plaintiffs' social media accounts. Second, the Court requires Plaintiffs to provide limited employment information, and finally, the Court orders Plaintiffs to provide a damages calculation regarding medical damages.

#### A.  *The Court Grants in Part SMU's Request for Plaintiffs' Social Media Information*

Social media information is usually considered discoverable and "is neither privileged nor protected by any right of privacy." *Gondola v. USMD PPM, LLC*, 223 F. Supp. 3d 575, 591 (N.D. Tex. 2016) (internal quotations and citations omitted).  But courts generally do not endorse an extremely broad request for all social media site content.  *Id.* For instance, "[c]ourts have held that ordering a party to permit access to or produce complete copies of his social networking site accounts would permit his opponent to cast too wide a net and sanction an inquiry into scores of quasi-personal information that would be irrelevant and non-discoverable."  *Id.*

SMU submitted three requests for production, asking Plaintiffs to provide all Facebook, Instagram, and Twitter account information from the date of their enrollment at SMU to the present.  Def. Southern Methodist University's Mot. Compel Pls.' Disc. Resps. Br. Supp. ("SMU's Mot.") 7 [44].  Plaintiffs objected that the requests were overly broad, unduly burdensome, irrelevant, disproportionate, and an invasion of Plaintiffs' privacy. *See* App. Supp. Def. Southern Methodist University's Mot. Compel Pls.' Disc. Resps. ("SMU's App."), Ex. F 28 [45].  But Plaintiffs later provided social media information showing Plaintiffs' engagement in physical activities.  Pls.' Resp. Opp'n Def. Southern

MEMORANDUM OPINION AND ORDER – PAGE 3

Methodist University's Mot. Compel Pl.'s Disc. Resps. Br. Supp. ("Pls.' Resp.") 7–8 [47].

Yet, SMU contends that it is entitled to all social media information because Plaintiffs'

allegations go beyond just the impairment of their abilities to perform physical activities.

SMU's Mot. 8.

The Court determines that Plaintiffs' social media information is discoverable, but

SMU is not entitled to unlimited access to Plaintiffs' social media accounts because the

Court is persuaded that unfettered access is too broad. Thus, to the extent that the Plaintiffs

have yet to do so, the Court requires Plaintiffs to produce posts reflecting Plaintiffs'

physical activities and emotional state, but the Court does not grant SMU unlimited access

to Plaintiffs' social media.

### B.  The Court Grants in Part SMU's Request for Employment Information

SMU requested that each Plaintiff return a "[s]igned authorization attached to this

Request for Production, allowing SMU to obtain your employment records." Pls.' Resp.

8. Plaintiffs objected to the request as overly broad, not relevant, and not proportional to

the case. *Id.* at 9. Plaintiffs contend that they do not seek lost wages and that this

information was an unnecessary intrusion into Plaintiffs' professional lives. *Id.* However,

SMU argues that Plaintiffs' employment information is relevant to Plaintiffs' claims that

SMU's conduct affected their abilities to perform daily activities. SMU's Mot. 17.

The Court grants SMU's request in part. The Court determines that employment

history is relevant, but the Court limits the scope of discoverable information. The Court

orders that Plaintiffs provide SMU with each Plaintiffs' employment history, including

information such as the date of employment, the employer's contact information, and a job

MEMORANDUM OPINION AND ORDER – PAGE 4

description.  But the Court does not grant SMU a blanket release.  If necessary, SMU can seek additional information from each employer.

### C. *The Court Grants in Part SMU's Request for a Damages Calculation*

Finally, the Court grants in part SMU's request for a damages calculation.  Under Federal Rule of Civil Procedure 26, the plaintiff should provide "a computation of each category of damages claimed by the disclosing party."  FED. R. CIV. P. 26(a)(1)(A)(iii).  SMU requested Plaintiffs provide "[a]n itemization and explanation of each category of damages Plaintiffs seek in this case, along with any documents related to or supporting such damages."  SMU's Mot. 3.  Plaintiffs objected to SMU's request as overly broad, unduly burdensome, seeking information that is not relevant, not proportionate to the case, not limited to the proper time, scope, or subject matter, lacking particularity, premature, and protected by privilege. *See* SMU's App., Ex. F 26–27.  Later, Plaintiffs informed SMU that they needed additional discovery, including an expert report, in order to provide a proper damages calculation, and they intend to provide a computation of future care expenses in a supplemental disclosure.  Pls.' Resp. 10–11; SMU's Mot. 5.

The Court determines that SMU is entitled to a limited damages calculation and grants SMU's request with respect to past medical damages only.  The Court orders Plaintiffs to provide a damages calculation regarding past medical damages, and the Court requires Plaintiffs to provide full supplementation as of Plaintiffs' expert designation date.

### CONCLUSION

The Court grants SMU's motion in part.  The Court orders Plaintiffs to provide limited access to their social media accounts and limited employment history.

MEMORANDUM OPINION AND ORDER – PAGE 5

Additionally, the Court requires Plaintiffs to provide a damages calculation regarding medical damages.  The Court orders Plaintiffs to provide the stated discovery within thirty (30) days of this Order.

Signed May 6, 2020.

David C. Godbey
United States District Judge

MEMORANDUM OPINION AND ORDER – PAGE 6

# United States District Court

**EASTERN DISTRICT OF TEXAS**
**SHERMAN DIVISION**

| | | |
|---|---|---|
| ORTHOACCEL TECHNOLOGIES, INC. | § | |
| | § | |
| v. | § | Civil Action No.  4:16-cv-00350-ALM |
| | § | Judge Mazzant |
| PROPEL ORTHODONTICS, LLC | § | |
| | § | |
| | § | |

## MEMORANDUM OPINION AND ORDER

Pending before the Court is Plaintiff OrthoAccel Technologies, Inc.'s Motion to Compel Propel's Financials (Dkt. #317). The Court, having considered the motion and relevant pleadings, finds the motion should be granted in part.

## BACKGROUND

This motion comes before the Court as the parties' latest discovery dispute. On November 17, 2016, the Court ordered both OrthoAccel Technologies, Inc. ("OrthoAccel") and Propel Orthodontics, LLC ("Propel") to produce financial statements for the years 2014, 2015, and 2016 by November 21, 2016. In response, Propel produced a one-page "Statement of Operations" for each year. OrthoAccel, dissatisfied with the information contained in these reports, requested via email and at a meet and confer "detailed financial information from January 2015 to present" including Propel's trial balance, QuickBooks, or other financial accounting statements and reports. OrthoAccel also requested Propel's general ledgers including profit and loss statements ("P&L statements").

Following a meet and confer, Propel produced a single Statement of Operations for March 2016 through January 2017. On March 6, 2017, OrthoAccel again requested Propel's trial balance, QuickBooks, general ledgers, P&L statements, and other financial accounting statements and reports. Propel responded that it had already produced the P&L statements and would provide a

Bates label if OrthoAccel was unable to locate them. On March 19, 2017, Propel designated Greg Braham as its 30(b)(6) corporate representative to testify on Propel's (1) financial statements and the data supporting those statements; (2) total costs by quarter or month for advertising, marketing, or any other sales efforts for the VPro5; and (3) total revenues by month and quarter for sales of the VPro5. OrthoAccel again asked Propel for the Bates label of the P&L statements before Braham's deposition. On the eve of Braham's deposition, Propel instead provided OrthoAccel the Bates label for some of Propel's expenses from March 2016 to January 2017.

Braham's deposition revealed that he exported a P&L statement from QuickBooks, then following a conversation with his counsel, altered the P&L statement to produce a selling general and administrative ("SG&A") report. The SG&A report was created by deleting the revenues, cost of goods sold, and research and development costs from the QuickBooks-generated P&L statement. Braham stated it took only five minutes to produce the P&L statements, and he has created P&L statements for Propel in the past.

On March 22, 2017, OrthoAccel's counsel brought the discovery dispute to the Court's attention. The Court ordered the parties to brief the issue. On March 24, 2017, OrthoAccel filed a Sealed Motion to Compel Propel's Financials (Dkt. #317). On March 29, 2017, Propel filed a response (Dkt. #323).

## LEGAL STANDARD

Under Federal Rule of Civil Procedure 26(b)(1), parties "may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense . . . ." Fed. R. Civ. P. 26(b)(1). Relevance, for the purposes of Rule 26(b)(1), is when the request is reasonably calculated to lead to the discovery of admissible evidence. *Id.*; *Crosby v. La. Health & Indem. Co.*, 647 F.3d 258, 262 (5th Cir. 2011). It is well-established that "control of discovery is committed to

the sound discretion of the trial court." *Freeman v. United States*, 556 F.3d 326, 341 (5th Cir. 2009) (quoting *Williamson v. U.S. Dep't of Agric.*, 815 F.2d 368, 382 (5th Cir. 1987)).

Rule 37 of the Federal Rules of Civil Procedure allows a discovering party, on notice to other parties and all affected persons, to "move for an order compelling disclosure or discovery." Fed. R. Civ. P. 37(a)(1). The moving party bears the burden of showing that the materials and information sought are relevant to the action or will lead to the discovery of admissible evidence. *Export Worldwide, Ltd. v. Knight*, 241 F.R.D. 259, 263 (W.D. Tex. 2006). Once the moving party establishes that the materials requested are within the scope of permissible discovery, the burden shifts to the party resisting discovery to show why the discovery is irrelevant, overly broad, unduly burdensome or oppressive, and thus should not be permitted. *Id.*

Federal Rule of Civil Procedure 34 governs requests for production of documents ("RFPs"), electronically stored information, and tangible things. Rule 34 requires responses to "either state that inspection and related activities will be permitted as requested or state with specificity the grounds for objecting to the request, including the reasons." Fed. R. Civ. P. 34(b)(2)(B). "An objection [to the entire request] must state whether any responsive materials are being withheld on the basis of that objection." *Id.* 34(b)(2)(C). On the other hand, "[a]n objection to part of a request must specify the part and permit inspection of the rest." *Id.*

After responding to each request with specificity, the responding attorney must sign their request, response, or objection certifying that the response is complete and correct to the best of the attorney's knowledge and that any objection is consistent with the rules and warranted by existing law or a nonfrivolous argument for changing the law. Fed. R. Civ. P. 26(g). This rule "simply requires that the attorney make a reasonable inquiry into the factual basis of his response, request, or objection." Fed. R. Civ. P. 26(g) advisory committee note (1983).

The federal rules follow a proportionality standard for discovery. Fed. R. Civ. P. 26(b)(1). Under this requirement, the burden falls on both parties and the court to consider the proportionality of all discovery in resolving discovery disputes. Fed. R. Civ. P. 26(b)(1), advisory committee note (2015). This rule relies on the fact that each party has a unique understanding of the proportionality to bear on the particular issue. *Id.* For example, a party requesting discovery may have little information about the burden or expense of responding. *Id.* "The party claiming undue burden or expense ordinarily has far better information—perhaps the only information— with respect to that part of the determination." *Id.*

## ANALYSIS

OrthoAccel asserts that Propel refuses to produce its full financial statements necessary for OrthoAccel to present its damages claim and defend against Propel's counterclaims. OrthoAccel alleges Propel has mischaracterized the nature and extent of the financials available, and Propel could easily produce the relevant financials without undue expense or burden. OrthoAccel seeks an electronic copy of Propel's QuickBooks file or full and complete monthly P&L statements for each month between January 2014 and January 2017. Propel argues that such an expansive "data dump" request is extraordinary and should be denied. Propel claims that because it is a closely held, small company it does not have complex or audited financials and it produced the only financial statements it possessed. Further, Propel argues that OrthoAccel already has the financial information it needs, and creating P&L reports would be burdensome and duplicative. For the reasons set forth below, the Court finds Propel should produce monthly P&L statements from January 2014 through January 2017.

OrthoAccel seeks Propel's financials to determine the full amount in controversy, to prove its damages under the Lanham Act, and to defend against Propel's damages claims. The Court

finds that the materials and information sought are relevant because they are critical to OrthoAccel's damages analysis. *See Export Worldwide, Ltd.*, 241 F.R.D. at 263. The burden is on Propel to show why the requested financials are irrelevant, overly broad, unduly burdensome or oppressive. *Id.* Propel claims the information sought is irrelevant because the requested financials contain sales information for other products in Propel's line that are not the subject of this litigation. But the Court is not convinced by this argument. Propel should not deprive OrthoAccel of relevant financial information simply because Propel sells multiple products and does not segregate its product lines in its financials. The Protective Order only permits OrthoAccel's attorneys and designated experts to review the financials (Dkt. #79). If the P&L statements incorporate values irrelevant to OrthoAccel's claims or defenses, production would cause Propel no competitive harm.

Propel further claims that OrthoAccel's request to turn over an electronic copy of Propel's QuickBooks program is irrelevant and overly broad because it contains Propel's entire history of financial information for all products sold worldwide. The Court agrees. Unfettered access to the entirety of Propel's QuickBooks program is clearly not proportional to the needs of the case. But this reasoning does not extend to the requested P&L statements for the relevant period. The Court ordered both parties to produce full financials for the years 2014, 2015, and 2016 (Dkt. #165, #166). Producing P&L statements for these years would be neither irrelevant nor overly broad.

Propel finally argues that producing the requested financials would be unduly burdensome and duplicative. This argument is without merit. In response to discovery requests, Propel produced SG&A reports. Mr. Braham testified that these SG&A reports were created by exporting P&L statements from QuickBooks, then altering the P&L statements by removing the cost of

5

goods sold, research and development costs, and revenues (Dkt. #317, Exhibit N at 84–85). Mr. Braham further testified that while Propel does not produce P&L statements on a routine quarterly basis, Propel's management has asked him to produce P&L statements at request in the past (*Id.* at 133–34). Mr. Braham also stated that the QuickBooks program is capable of creating monthly, quarterly, or annual P&L statements (*Id.* at 53). Finally, Mr. Braham testified that it took him only five minutes to export the P&L statements from QuickBooks (*Id*. at 101–02). The Court finds production of these P&L statements appropriate and not unduly burdensome or duplicative.

## CONCLUSION

The Court, having considered the pleadings, finds OrthoAccel has proven that the P&L statements are relevant and proportional to its needs in the case. The Court further finds that Propel has not met its burden in proving the requested P&L statements should not be produced. *See Export Worldwide, Ltd.*, 241 F.R.D. at 263. However, the Court denies OrthoAccel's request for an electronic copy of Propel's entire QuickBooks program because it is an overbroad, disproportional request.

Accordingly, the Court finds Plaintiff OrthoAccel Technologies, Inc.'s Motion to Compel Propel's Financials (Dkt. #317) is **GRANTED** in part.

It is therefore **ORDERED** that Propel produce full monthly P&L statements from January 2014 through January 2017 by 5:00 p.m. on April 6, 2017.

**SIGNED this 4th day of April, 2017.**


AMOS L. MAZZANT
UNITED STATES DISTRICT JUDGE

6

APP 65