IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT
OF TEXAS FORT WORTH DIVISION

| | |
|---|---|
| EUGENIO VARGAS, § | |
|    Plaintiff/Counterclaim Defendant, § | |
| § | |
| § | Civil Action No. 4:22-CV-00430-Y |
| § | |
| v. § | |
| § | |
| § | |
| § | |
| ASSOCIATION OF PROFESSIONAL § | |
| FLIGHT ATTENDANTS, et al. § | |
|    Defendants/Counterclaim Plaintiff. § | |

**RESPONSE IN OPPOSITION TO DEFENDANTS' MOTIONS
TO FILE AMENDED ANSWER AND COUNTERCLAIMS AND BRIEF IN SUPPORT**

Plaintiff/Counterclaim Defendant, Eugenio Vargas ("Vargas") respectfully submits this response and brief in opposition to Defendants' Motion for Leave to file an Amended Answer and Amended Counterclaims and Brief in Support. Plaintiff filed his complaint on May 17, 2022 for violations of his rights as a union member under 29 U.S.C. § 411, and 529 *et seq.* ("LMRDA"), as well as other claims, against the Association of Professional Flight Attendants ("APFA" or the "union"), Julie Hedrick ("Hedrick"), the APFA National President, and Erik Harris ("Harris"), the APFA National Treasurer (hereafter referred to collectively as "Defendants"). (Doc.1). Defendants filed their Answer and Counterclaims on June 13, 2022. (Doc.11). The court granted leave to file Plaintiff's First Amended Complaint September 15, 2022. (Doc. 40)  Defendants filed their amended Answer and Counterclaims on March 8, 2023. (Doc. 79; 76). On August 30, 2023, Defendant filed a Motion for Leave to Amend their Answer and Counterclaims, (Doc. 108). Plaintiff now files his Response in Opposition of Defendants' Motion for Leave to Amend their Answer and Counterclaims.

1

## Facts

Plaintiff, Eugenio Vargas ("Plaintiff") seeks damages alleging unlawful violations of the Labor Management Reporting and Disclosure Act, 29 U.S.C. § 411, and 529 *et seq.* ("LMRDA"), as well as other claims, against the Defendants. APFA is a labor organization covered under the LMRDA, 29 U.S.C. §401 et seq, and 29 U.S.C. § 158, *et seq*. Plaintiff is a member in good standing of APFA as defined under the LMRDA and 29 U.S.C. § 158. On or about January of 2016, Plaintiff ran for office within the APFA national union elections. For clarification, Robert "Bob" Ross was elected National President, Nena Martin elected National Vice-President, Eugenio Vargas ("Vargas" or "Plaintiff") elected National Treasurer, and Marcy Dunaway elected National Secretary ("Ross Administration").[1] The Ross Administration held office from April 1, 2016 to July 1, 2018, with the notable exception of Robert "Bob" Ross who resigned on March 1, 2018 at the behest of the APFA Board of Directors.

Ross negotiated an exit agreement similar to APFA's previous National President, Laura Gladings, in exchange for his resignation from office. In March of 2018, Ross and the APFA Board of Directors signed his exit agreement and he resigned ("Ross Transition Agreement"). Vargas subsequently was shown only a portion of the Ross Transition Agreement, and after consulting with counsel and the APFA accountants, he calculated and authorized the payments to Ross. In 2020, Vargas was charged with violations of the APFA Constitution for those payments calculated and approved under the Ross Transition Agreement. Additional charges were also pursued for credit card expenses previously approved by APFA, the lack of a furniture log on behalf of the union, and vehicle rental charges. A disciplinary hearing was held, and ultimately the union disciplined Plaintiff. Furthermore, Plaintiff was banned from ever holding office for the union in

---

[1] Marcy Dunaway is no longer a member of APFA, as she has retired from American Airlines, Inc. as a flight attendant, and is now employed as a Senior Analyst of American Airlines, Inc.

his lifetime—a disciplinary measure not specifically authorized by the APFA Constitution and never before seen at APFA.

Plaintiff argues this is a deliberate attempt to suppress his speech and affiliation with a political party within the union. The current APFA Administration—who belong to the opposing political faction—misrepresented to the APFA leadership and to the Plaintiff that APFA's accounting firm conducted an "accounting review" where it was determined that Ross owed the union money for alleged overpayments made under the Ross Transition Agreement. The union and the members of the Hedrick Administration argued that Vargas and Ross conspired to inflate the payments Ross received under the Ross Transition Agreement. This "accounting review," rather than an audit, resulted in only graphs that were shown to the APFA Board of Directors and APFA Executive Committee. After Plaintiff's Disciplinary hearing, he discovered that the union withheld a confidential memorandum from the accounting firm written to the APFA Board of Directors that stated that Ross was, in fact, paid properly. The Confidential Memo directly contradicts Defendants' assertions to the APFA leadership. However, this document was concealed from APFA leadership, the Arbitrator conducting the union disciplinary hearings, and the Plaintiff.

Plaintiff was not provided the safeguards against improper disciplinary action guaranteed under the LMRDA. Defendants breached their fiduciary duty among other violations. The result of Defendants' conduct is that Plaintiff was fined, suffered reputational damage, privacy violations, removed from his position on the APFA Board of Directors, and banned from holding any official APFA position for the remainder of his life. Plaintiff seeks damages.

Defendant's original counterclaims included a breach of fiduciary duty under the LMRDA § 501, breach of fiduciary duty under Texas Common Law, and a claim for enforcement of the Arbitration Award. This Court dismissed the breach of fiduciary duty claim under Texas Common

Law as beyond the statute of limitations. (Doc. 70). On August 29, 2023, Plaintiff filed a Second Motion to Dismiss against Defendant's breach of fiduciary duty claim under LMRDA § 501, and Enforcement of the Arbitration Award under 29 U.S.C. § 185(a) claim. (Doc. 107). Defendant, APFA, now seeks leave to amend its counterclaim to eliminate their claim to enforce the Arbitration Award, leaving only Defendant's last claim—breach of fiduciary duty claim under LMRDA § 501.( Doc. 108). Plaintiff opposes Defendant's Motion to Amend based on futility.

## Arguments

Subsequent amendments and supplementation to a party's claims before the court require that the amending party first seek leave of court or obtain the opposing party's written consent before filing another amended complaint, understanding that leave to amend "shall be freely given when justice so requires." Manuel v. Gembala, 7:10-CV-4-FL, slip op. at 3 (E.D.N.C. July 27, 2011); *see* Rule 15, Fed. R. Civ. P. "The court should freely give leave [to amend] when justice so requires." Fed. R. Civ. P. 15(a)(2). Nevertheless, this generous standard is 'tempered by the necessary power of a district court to manage a case.'" Bell v. Dall. Cnty., No. 11-11181 (5th Cir. 2012) (citing Schiller v. Alpert Grp., 342 F.3d 563, 566 (5th Cir. 2003)). "Similarly, '[a] district court may deny a proposed amendment for futility-meaning the amended complaint would fail to state a claim upon which relief could be granted.'" Villarreal v. Wells Fargo Bank, N.A., 814 F.3d 763, 766 (5th Cir. 2016) (citing Stripling v. Jordan Prod. Co., LLC, 234 F.3d 863, 872-73 (5th Cir. 2000)). *See also,* Petty v. Great W. Cas. Co. (5th Cir. 2019).

Leave to amend or supplement should be granted only in the absence of "undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed undue prejudice to the opposing party by virtue of allowance of the amendment, or futility of the amendment." Foman v. Davis, 371 U.S. 178, 182, 83 S. Ct. 227, 9 L. Ed. 2d 222 (1962); see Edwards v. City of Goldsboro, 178 F.3d 231, 242 (4th Cir. 1999).

1. **Business decisions are not a Breach of Fiduciary Duty under LMRDA 501(a)**

Defendant continues to allege charges and expenses that breach the APFA Constitution and Policy form the basis of its claim for breach of fiduciary duty under §501(a). (*See* Doc. 108-1 PAGEID 3717).   This is *not* a breach of fiduciary duty.  The foundation for a breach of fiduciary duty under 29 U.S.C. § 501(a) cannot include those decisions that are business-related per standing law. The 5th Circuit Court held that

> "disagreements over the wisdom or appropriateness of particular administrative . . . decisions are usually not amenable to suit under the LMRDA [referencing suits under § 501(a)]. Indeed, most of these matters are the sort of 'internal union grievances' properly left to be worked out via union democratic processes (as they eventually were here) and not by a federal court sitting as a sort of 'super-review board.'" (Hoffman v. Kramer, 362 F. 3d 308, 322 (5th Cir. 2004) (citing United Food & Commercial Workers Union, Local 1099 v. Southwest Ohio Reg'l Transit Auth.*,* 163 F.3d 341,475 (6th Cir.1998)).

Defendant claims that Plaintiff breached his fiduciary duty because the APFA National President *submitted* charges incurred while conducting business on behalf of the union, and Plaintiff, as APFA's National Treasurer, *approved* those charges.  Now, two years after approval, APFA claims those charges fell outside the scope of recoverable expenses under APFA Policy—this fails to state any claim for recovery.  basis of this claim centers on an allegedly inaccurate business decisions by Plaintiff made while in the execution of his duties as APFA National Officer.

In other words, if Ross, as National President, charged a meal while working on behalf of the union and believes this falls within the scope of the governing rules, he would *submits* his receipt for approval—per the APFA procedures.  Vargas, as National Treasurer, would review that same charge in conjunction with APFA accountants, and if it was subsequently *approved*—per the APFA procedures in place at the time based on the same assessment—then the basis for a breach is a decision in the execution of the National Officer's duties. Without some intentionally subversive behavior by the Plaintiff to benefit himself, so far Defendant's only complaint is that Plaintiff allegedly made the wrong decision in the execution of his duties.

Defendant fails to assert facts that rise to the level of a breach, rather Defendant only complains that Plaintiff's business decisions in the execution of his duties were wrong. Plaintiff complied with APFA procedures in place at the time. (*See* Vargas Aff.; Doc. 86-1). Ross submitted receipts for charges and expenses to the Treasurer, Vargas, who reviewed in conjunction with APFA accountants and either approved of charges as valid, or inquired for additional information about a charge prior to approval. (*See* Vargas Aff.; Doc. 86-1). If a charge was questioned and Vargas continued to object to a particular charge as a valid expense, the Treasurer presented it to a Board of Director member who then either approved or denied the charge as valid. (*See* Vargas Aff.; Doc. 86-1).

Plaintiff did not subvert these procedures to ensure his charges were approved. Plaintiff did not interfere with the normal processes and safeguards in place at the time to financially benefit. Furthermore, the procedures at the time required subsequent review by APFA's in-house accounting department therefore, to rise to the level of a breach, Plaintiff would have to by-pass procedures and submission of the charges altogether as each expense and payment was reviewed by multiple people. All of the expenses incurred and payments made were reviewed and approved according to the procedures in place while Plaintiff was in office. It was only after a competing political party took office—over two years after the charges were originally made—that the union decided to evaluate these business decisions.

**2.   No Federal Jurisdiction exists over APFA's Constitution and Policy.**

Defendant's redrafted and filed its Amended Answer and Counterclaims on March 8, 2023. (Doc. 76). Defendant submitted its proposed First Amended Answer and Counterclaims for this Court's consideration as a *second* attempt to cure the defects in Defendant's claims against Plaintiff. (Doc. 108). The obvious problem with Defendants' second attempt to amend its counterclaims is that APFA continues to argue the Plaintiff breached his fiduciary duty claim under

29 U.S.C. § 501(a) because Plaintiff violated the APFA Constitution and Policy.

The glaring hole in Defendant's amended counterclaim is that there is no federal jurisdiction over APFA's Constitution and Policy. The 5th Circuit court already ruled on this issue under the *exact* same fact pattern with the *exact* same union Constitution and Policy at issue in *this* case. In *Adams-Lundy v. APFA II*, the 5th Circuit held that "a federal court has no jurisdiction to enforce union constitutions and by-laws. . . ." *Adams-Lundy v. A.P.F.A*, 792 F.2d 1368, 1373 (5th Cir. 1986); *See also, McGovern v. New Orleans Clerks Checkers, Local 1497 ILA,* 343 F. Supp. 351, 352 (E.D.La.), *aff'd per curiam,* 463 F.2d 423 (5th Cir. 1972).

This Court recently followed this same *Adams-Lundy II* ruling when TWU brought the same argument that violation of the union constitution was a violation of 29 U.S.C. §501(a) breach of fiduciary duty. This Court held that:

> "'[a] union's violation of its own constitution is not *per se* a violation of the LMRDA.' Rights guaranteed solely by a local union's constitution are contractual rights—not LMRDA rights—and 'a federal court has no jurisdiction to enforce union constitutions and by-laws as such.'" (Martin v. Local 556, Transp. Workers Union of Am., CV No. 3:14-CV-0500-D (N.D. Tex. Sept. 3, 2014) (citing Adams-Lundy II, 792 F.2d at 1373; and McGovern v. New Orleans Clerks & Checkers, Local 1497 ILA, 343 F. Supp. 351, 352 (E.D. La. 1972), *aff'd per curiam,* 463 F.2d 423 (5th Cir. 1972)).

Defendant's breach of fiduciary duty claim under §501(a) is based solely on the APFA Constitution and by-laws in its First Amended Answer and Amended Counterclaims. (Doc. 76). Ergo, the proposed Amended Counterclaims fails to resolve its jurisdictional defect in addition to its failure to state a valid claim for recovery. Defendant's Amended Counterclaim is nothing more than a vain attempt to halt Plaintiff's ability to run for office. However, even more concerning is Defendant's attempt to use the federal courts to enforce its fraudulent Arbitration Award, which bans Plaintiff from holding public office within the union. (*See* Arb Award Doc. 11-1; PG 1). The 5th Circuit denied any jurisdictional basis to enforce APFA's Amended Counterclaim, APFA's Arbitration Award, and APFA's Constitution and APFA's Policy. Regardless of how APFA

reshapes its arguments, the union cannot enforce its Constitution in federal court.[2]

### 3. Public record shows Defendant suffered no loss or damages.

Defendant's damages cited in its Proposed Amended Counterclaims are the same as those cited in Plaintiff's damages ordered in APFA's Arbitration Award. (Doc. 76); (*See* Arb Award Doc. 11-1; PG 1). This shows that the damages incurred are not directly related to the overpayments made, but incurred as a result of APFA's disciplinary procedures.

The independent accounting firm of Woods, Stephens, and O'Neil, L.L.P. conducts annual audits of all expenditures made with APFA funds. The final audit report is submitted to the four National Officers and the APFA Board of Directors for a final review and approval. This annual audit report is used by APFA accounting staff and National Officers to draft the LM-2 Report. The United States Department of Labor requires unions report on the LM-2 Financial Report any loss of union assets or funds each year, even if reimbursed. The LM-2 Financial Report required by 29 U.S.C. § 431 are signed under penalty of perjury by the National Officers of APFA, including any false statements are punishable by one year imprisonment and $10,000 fines. (29 U.S.C. § 439). Any loss of any assets for any reason on behalf of the union, whether reimbursed or not,

---

[2] The Court should note the previous statements made by Defendants' Counsel on record (Vargas Dkt. No. 81) ("Plaintiff's settlement proposals were simply not feasible as they. . . would require the Union Defendants to take actions which. . . would violate the APFA Constitution. . . ."). Defendant's counsel argues it cannot, and will not, settle the claims pending before this Court while its claims persist. Plaintiff failed to receive not even a counteroffer in response to his offers for settlement. APFA contends that it must pursue the Ross Administration. Defendants argue settlement of any kind would violate federal law breach of fiduciary duty and the governing union's rules—even if settlement is in the union membership's best interest—they cannot and will not settle their claims. Consequently, this Court should consider the Ross Administration's position. Plaintiff has no other option, but to exercise his rights to recover for Defendants' misconduct—as well as the rest of the Ross Administration—for the sake of their families, their reputations, and their careers. The Court should also note that APFA continues to pursue Nena Martin and Marcie Dunaway by ordering additional audits of their expenses. This was announced within the last two month, despite these pending claims before this Court. Nena Martin previously won in Arbitration on these exact claims last fall. To date, APFA has not audited any other administration except for the Ross Administration. Most notably, December is when new candidates, like Nena Martin, will announce their intent to run for National Office next year.

*must* be reported to the U.S. Department of Labor.[3] Therefore, if the Ross Administration misappropriated funds, APFA *must* report this loss to the Department of Labor. (29 U.S.C. § 439). A simple review of APFA's LM-2 question 13 shows no reported shortage or loss suffered by the union since 2018—when the Ross Administration filed the LM-2 reporting loss of furniture that was fully reimbursed. The union did not suffer damages by Plaintiff's conduct—it is that simple.

APFA National Treasurer signed the LM-2 stating that the union suffered no loss within the last four years. Furthermore, the only loss reported to the United States Department of Labor includes fraud on an officer's credit card in 2016, and loss of furniture that was reimbursed in 2018.[4] Consequently, all other LM-2s on public record indicate the union suffered no loss of its funds—let alone indicate discovery of any alleged breach of fiduciary duty. Since the LM-2 Reports are filed under oath by the union and signed by the National Officers—the public record shows that the Defendant cannot claim damages as a result of Plaintiff's conduct. If it had, this was required to be reported as a loss on its annual LM-2 filing.

---

[3] The LM-2 Filings require reporting whether or not an annual audit has been conducted under **Question 12.** Under **Section 69,** on the last page of each LM-2 form, APFA cites that the accounting firm that conducted the audit was Woods, Stephens, and O'Neil.
2023 - https://olmsapps.dol.gov/query/orgReport.do?rptId=869753&rptForm=LM2Form
2022 – https://olmsapps.dol.gov/query/orgReport.do?rptId=840723&rptForm=LM2Form
2021 - https://olmsapps.dol.gov/query/orgReport.do?rptId=773865&rptForm=LM2Form
2020 - https://olmsapps.dol.gov/query/orgReport.do?rptId=731533&rptForm=LM2Form
2019 – https://olmsapps.dol.gov/query/orgReport.do?rptId=709508&rptForm=LM2Form
2018 – https://olmsapps.dol.gov/query/orgReport.do?rptId=679829&rptForm=LM2Form
2017 – https://olmsapps.dol.gov/query/orgReport.do?rptId=650505&rptForm=LM2Form
2016 – https://olmsapps.dol.gov/query/orgReport.do?rptId=628943&rptForm=LM2Form
2015 – https://olmsapps.dol.gov/query/orgReport.do?rptId=594782&rptForm=LM2Form

[4] The LM-2 Filings require reporting any misappropriation, shortage, or theft of funds discovered within that year to the U.S. Department of Labor. See **Question 13** on **Pg 1** of the following LM-2 Filings by APFA. The only years theft or shortages were reported were in 2016 and 2018—and in 2018 the Notes under **Section 69** clearly indicate that the loss was for furniture which was fully reimbursed—therefore no damages were suffered if none were reported under the LM-2. Clearly APFA testified as to only a loss in 2018, and that that was fully reimbursed. The LM-2 are signed by the APFA National Officers under penalty of perjury.
2022 - https://olmsapps.dol.gov/query/orgReport.do?rptId=840723&rptForm=LM2Form
2021 - https://olmsapps.dol.gov/query/orgReport.do?rptId=773865&rptForm=LM2Form
2020 - https://olmsapps.dol.gov/query/orgReport.do?rptId=731533&rptForm=LM2Form
2019 – https://olmsapps.dol.gov/query/orgReport.do?rptId=709508&rptForm=LM2Form
2018 – https://olmsapps.dol.gov/query/orgReport.do?rptId=679829&rptForm=LM2Form
2017 – https://olmsapps.dol.gov/query/orgReport.do?rptId=650505&rptForm=LM2Form
2016 – https://olmsapps.dol.gov/query/orgReport.do?rptId=628943&rptForm=LM2Form
2015 – https://olmsapps.dol.gov/query/orgReport.do?rptId=594782&rptForm=LM2Form

CONCLUSION

In conclusion, Defendant failed to state a claim for recovery under LMRDA §501 because—as demonstrated above—the conduct Defendant complains of consists of business decisions which fail to rise to a breach of fiduciary duty, and Defendant testified in the U.S. Department of Labor LM-2 Financial Reports that the union suffered no loss or damage since 2015. Furthermore, the Court has no jurisdiction to enforce the Arbitration Award or a federal breach of fiduciary duty claim based solely on a Union Constitution, as determined by the 5th Circuit Court in the *Adams-Lundy* case. For the reasons stated herein, Plaintiff requests that the Court deny Defendants Motion to Amend Answer and Amend Counterclaim for Relief.

Date: September 13, 2023

Respectfully submitted,

By: /s/ Kerri Phillips
Kerri Phillips, Esq.
Texas Bar No. 24065906
Phone: (972) 327-5800
Email: kerri@kdphillipslaw.com
KD PHILLIPS LAW FIRM, PLLC
6010 West Spring Creek Parkway
Plano, Texas 75024
Fax: (940) 400-0089
For Service of Filings:
notice@kdphillipslaw.com
**ATTORNEY FOR PLAINTIFF**

## CERTIFICATE OF SERVICE

I certify that on this 13th day of September 13, 2023, a true and correct copy of the foregoing document was served on the below listed counsel of record for Plaintiff/Counterclaim Defendant Vargas by a means permitted by Rule 5(b)(2) of the Federal Rules of Civil Procedure ("F.R.C.P.").

By: /s/ Kerri Phillips
Kerri Phillips, Esq.

Jeffrey Bartos
Charlette Matts
James Sanford