**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF TEXAS**
**FORT WORTH DIVISION**

| | | |
|---|---|---|
| EUGENIO VARGAS, | § | |
| | § | |
| | § | |
| Plaintiff/Counterclaim Defendant, | § | Civil Action No. 4:22-cv-430-Y |
| | § | |
| v. | § | Judge Terry R. Means |
| | § | |
| ASSOCIATION OF PROFESSIONAL | § | |
| FLIGHT ATTENDANTS, *et al.*, | § | |
| | § | |
| Defendants/Counterclaim Plaintiff. | § | |

**APFA'S RESPONSE IN OPPOSITION TO**
**PLAINTIFF'S SECOND MOTION TO DISMISS**

## TABLE OF CONTENTS

**Page**

I.    INTRODUCTION…………………………………………………………………….    1

II.   STATEMENT OF THE CASE……………………………………………………...    2

III.  ARGUMENT AND AUTHORITIES……………………………………..............    5

  A. Legal Standard…………………………………………………...……...............    5

  B. The Counterclaim States A Claim Under The LMRDA For
     Breach Of Fiduciary Duty………………………………………………………..    6

  C. Plaintiff's Reliance On *Hoffman v. Kramer* And Section 501(b) Caselaw
     Applying A Heightened Pleadings Requirement
     Is Misplaced…………………………………………………………………..…...    12

  D. Plaintiff's Motion To Dismiss APFA's Counterclaim To Enforce
     The APFA's Constitution Is Moot………………………………….……………    16

IV.   CONCLUSION………………………………………………………...….    16

# TABLE OF AUTHORITIES

**Cases**                                                                              **Page**

*Adams-Lundy v. APFA* (*Adams-Lundy II*),
    792 F.2d 1368 (5th Cir. 1986)……………………………………………..          11

*Adams-Lundy v. APFA* (*Adams-Lundy III*),
    844 F.2d 245 (5th Cir. 1988) …………………………………………...          11-12

*Ashcroft v. Iqbal*,
    556 U.S. 662 (2009)………………………………………………….          5

*Bell Atlantic Corp. v. Twombly*,
    550 U.S. 544 (2007)………………………………………………….          5, 12

*Brink v. DaLesio*,
    667 F.2d 420 (4th Cir. 1981)…………………………………………          9

*Colle v. Brazos Cty., Texas*,
    981 F.2d 237 (5th Cir. 1993)…………………………………………          5

*Collins v. Morgan Stanley Dean Witter*,
    224 F.3d 496 (5th Cir. 2000)……………………………..…………          5

*Gilvin v. Fire*,
    259 F.3d 749 (D.C. Cir. 2001)………………………………………          10-11

*Guzman v. Bevona*,
    90 F.3d 641 (2d Cir. 1996)…………………………………………          9

*Hoffman v. Kramer*,
    362 F.3d 308 (5th Cir. 2004)…………………………………………          *Passim*

*Int'l Union of Elec., Salaried, Mach. & Furniture Workers v. Statham*,
    97 F.3d 1416 (11th Cir. 1996)…………………………………………...          7

*Int'l Union of Operating Engr's, Loc. 150 v. Ward*,
    563 F.3d 276 (7th Cir. 2009)…………………………………………          6, 7

*Isquith v. Middle South Util., Inc.*,
    847 F.2d 186 (5th Cir. 1988)………………………………………….          6

*Kovac v. Wray*,
    363 F. Supp. 3d 721 (N.D. Tex. 2019)………………………………….          6

# TABLE OF AUTHORITIES, *con't*

**Cases**, c*on't*                                                                                          **Page**

*Lormand v. U.S. Unwired, Inc.,*
    565 F.3d 228 (5th Cir. 2009)……………………………………………….          5

*Morrisey v. Curran*,
    650 F.2d 1267 (2d Cir. 1981)………………………………………………          7, 9, 15

*Ray v. Young*,
    753 F.2d 386 (5th Cir. 1985)……………………………………………….          *Passim*

*Stewart v. Int'l Ass'n of Machinists & Aerospace Workers*,
    16 F. Supp. 3d 783 (S.D. Tex. 2014)……………………………………….          *Passim*

*United States v. Goad*,
    490 F.2d 1158 (8th Cir. 1974)………………………………… …........          10

*United States v. Int'l Bhd. of Teamsters*,
    652 F. Supp. 2d 447 (S.D.N.Y. 2009)………………………………………..          9

*United States v. Stockton*,
    788 F.2d 210 (4th Cir. 1986)………………………………………………          10

## Statutory Authority and Other Rules

Labor Management Reporting and Disclosure Act,

    29 U.S.C. § 501(a)………………………………………………………          *Passim*

    29 U.S.C.  § 501(b)………………………………………………….......          *Passim*

Labor Management Relations Act,

    29 U.S.C. § 185…………………………………………………………...          16

Fed. R. Civ. P. 12(b)(1)…………………………………………………………..          4-5

Fed. R. Civ. P. 12(b)(6)…………………………………………………………..          4-5, 13

## I.      INTRODUCTION.

This lawsuit arises out of an internal union arbitration which addressed charges of financial misconduct by Plaintiff Eugenio Vargas during his term as National Treasurer of the Association of Professional Flight Attendants ("APFA" or "Union"). *See* APFA's Counterclaims, Doc. 76 at 17; Doc. 11-1 (Arbitration Award dated Feb. 18, 2022) and Doc. 76 at ¶ 27 (referencing Award); Doc. 39-1 (Supplemental Award dated Aug. 24, 2022); Doc. 46 (taking judicial recognition of Supplemental Award). Plaintiff filed suit challenging the decision of a neutral third-party arbitrator finding him guilty of dereliction in the performance of his fiduciary responsibilities as the APFA National Treasurer resulting in the Union overpaying thousands of dollars in unauthorized compensation to himself and his fellow officers and spending thousands more to finance his own personal expenses. *Id.* In the counterclaim at issue here, APFA seeks, pursuant to Section 501(a) of the Labor-Management Reporting and Disclosure Act ("LMRDA"), 29 U.S.C. § 501(a), to hold Mr. Vargas – who held the keys to the vault in his role as National Treasurer – responsible for violating his fiduciary obligation to the Union and to recover expenses held owed to the Union in accordance with the arbitrator's final and binding determination.

This is Plaintiff's second motion to dismiss. In his first motion Plaintiff argued, among other things, that APFA's Section 501(a) counterclaim should be dismissed based on caselaw applying the heightened pleadings requirements applicable to Section 501(b) claims, specifically arguing that the Union must first prove to the Court "good cause" before proceeding on its claim. Denying that motion, the Court found these 501(b) requirements inapplicable to APFA's counterclaim under Section 501(a). Order, Doc. 70 at ECF 3-4. In this second motion to dismiss, Plaintiff relies on the same legal authority and reasserts a variant of his Section 501(b) argument

despite the Court's prior ruling. For the reasons stated below, Plaintiff's motion to dismiss AFPA's fiduciary duty claim should be denied.

## II.    STATEMENT OF THE CASE.

Pursuant to the APFA Constitution, two rank-and-file Union members filed internal charges against Mr. Vargas alleging a range of financial misconduct during his term as APFA National Treasurer. APFA's Counterclaims, Doc. 76, ¶¶ 5-24 (ECF 19-24-23). A nationally respected arbitrator, Ruben R. Armendariz, served as the impartial arbitrator in the hearing on these charges held in accordance with the procedures outlined in the AFPA's Constitution. *Id.* at ¶¶ 7-27 (ECF 20-24).

After an extensive hearing, Arbitrator Armendariz concluded that Mr. Vargas had, among other things, "attempted to benefit monetarily and thus failed in his fiduciary duty as National Treasurer by willfully changing the formula" for calculation of certain benefits paid to himself and three other National Officers. Award, Doc. 11-1 at ECF 35, 37. In reaching this decision, t Arbitrator Armendariz found that Mr. Vargas "failed in his fiduciary duty as National Treasurer by *willfully* changing the formula for the payouts for [National Officers] Bob Ross, Nena Martin and Marcy Dunaway as well as himself," costing the Union tens of thousands of dollars. *Id.* at ECF 37, 38 (emphasis added) (finding that all of the officers, except for Ross, paid the improper funds back to the Union). Finding merit to the charges that Mr. Vargas had regularly and willfully improperly charged personal meals to the Union, the Arbitrator also ordered an independent audit to determine the exact amount owed for these improper charges. *Id.* at ECF 39. In a supplemental ruling based on an independent financial review, *id.* at ECF 32, he determined that Mr. Vargas had made approximately $14,000 in "[i]nappropriate credit card charges related to meals." Supp. Award, Doc. 39-1 at ECF 2; *see also* Order, Doc. 46 at ECF 1 (taking judicial notice of the supplemental

arbitral decision). Mr. Vargas was ordered to repay that amount, the cost of the independent financial review, and half of the arbitrator's fee and was "prohibited from serving in any APFA National Officer position or Regional Officer position for life." Supp. Award, Doc. 39-1 at ECF 2. While Mr. Vargas did agree to repay APFA for some of his improper expenditures, Doc. 11-1 at ECF 37 (noting that Mr. Vargas had "entered into a payment agreement to repay the overage debt" in one regard), he did not comply with the obligation to repay the Union for other improper expenditures or other costs ordered by the arbitrator. APFA's Counterclaims, Doc. 76 ¶¶ 31, 34 (ECF 25).

In its first Answer in this matter, APFA filed a counterclaim against Mr. Vargas alleging that he had breached his federal fiduciary duty by "paying and accepting payment of monies from APFA while National Treasurer which the arbitrator has found … were overpayments and/or wrongful payments … in violation of the APFA Constitution and Policy Manual, and in refusing to repay" some of the fees incurred by the Union as ordered by the arbitrator. APFA's Counterclaim, Doc. 11 at ECF 29-30. Plaintiff moved to dismiss that counterclaim as barred by the statute of limitations and for failing to meet the "good cause" requirement of 29 U.S.C. § 501(b). Pl.'s First Mot. Dismiss, Doc. 58 at ECF 9, 11-12. In support of his "good cause" argument, Plaintiff relied on the Fifth Circuit's decision in *Hoffman v. Kramer*, 362 F.3d 308 (5th Cir. 2004), involving Section 501(b) of the Act. This Court denied that part of Plaintiff's motion to dismiss, holding that the state statute of limitations did not apply to the federal fiduciary duty claim and that the "good—cause" provision of § 501(b) "is inapplicable to the APFA's claim under section 501(a)." Order, Doc. 70 at ECF 3-4.

Subsequently, Plaintiff filed an Amended Complaint (Doc. 55-1) and APFA reasserted its federal fiduciary duty counterclaim, as well as a claim for "Enforcement of the APFA Constitution

as Interpreted and Applied by the Arbitrator's Decision and Order." APFA's Counterclaims, Doc. 76 at ECF 26. Plaintiff did not move to dismiss within the time for a responsive pleading, *see* Rule 12(b), Fed. R. Civ. P., but instead filed an Answer (Doc. 79). Then, over five months after that counterclaim was filed, Plaintiff filed the present motion to dismiss, premised again on Rule 12(b)(1) and Rule 12(b)(6). Pl.'s Second Mot. to Dismiss, Doc. 107.

While the present motion seeks dismissal of both counterclaims, APFA has since moved for leave to amend its counterclaims and will not be prosecuting the counterclaim based 29 U.S.C. § 185 seeking to enforce the APFA Constitution. APFA's Mot. Amend, Doc. 108. Accordingly, we address only the fiduciary duty counterclaim herein.

With respect to the fiduciary duty counterclaim, Plaintiff again relies on *Hoffman*, 362 F.3d 308, to assert under Rule 12(b)(6) that "APFA fails to state a claim for breach of fiduciary duty," because, in his view, the conduct which gave rise to the counterclaim consisted merely of "business decisions … regarding which expenses incurred fall within the scope of the APFA Policy." Doc. 107 at ECF 10. Plaintiff makes a range of factual assertions to the effect that the "expenses incurred" by him were "not payments made and received by the Ross administration," *id.* at ECF 9; that "expenses and payments made with union funds during the Ross administration followed APFA procedures," *ibid*.; and that various audits and governmental filing not in the record support his characterization of the facts, *id.* at ECF 11-12. Characterizing certain government filings not in the record as "testimony", Plaintiff claims to have been exonerated notwithstanding the findings of the arbitrator. *Ibid.* None of these alleged facts are in the counterclaim.

### III.   ARGUMENT AND AUTHORITIES.

#### A.  Legal Standard.

Plaintiff describes the motion as brought pursuant to both Rule 12(b)(6) and 12(b)(1), Fed. R. Civ. P. However, Plaintiff's principal argument is that APFA has failed to state a viable claim under Section 501 of the Labor-Management Reporting and Disclosure Act ("LMRDA"), which falls squarely within the purview of Rule 12(b)(6) and should be evaluated against that standard. *Stewart v. Int'l Ass'n of Machinists & Aerospace Workers*, 16 F. Supp. 3d 783, 790 (S.D. Tex. 2014) (finding motion to dismiss challenging union's standing to bring an action under Section 501(a) should be considered under Rule 12(b)(6), not Rule 12(b)(1)).

Motions to dismiss under Rule 12(b)(6) "are viewed with disfavor and are rarely granted." *Lormand v. U.S. Unwired, Inc.,* 565 F.3d 228, 232 (5th Cir. 2009). It is well settled that in deciding such motions courts "accept all factual allegations as true" and "draw all reasonable inferences" in the pleader's favor. *Id.*; *see also Hoffman,* 362 F.3d at 318, n.7 (Under Rule 12(b)(6), "[t]he complaint must be liberally construed in favor of the plaintiff, and all facts pleaded in the complaint must be taken as true") (*citing Collins v. Morgan Stanley Dean Witter*, 224 F.3d 496, 498 (5th Cir. 2000)). Dismissal should be rejected so long as the pleading alleges "enough facts to state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

Moreover, in adjudicating a Rule 12(b)(6) motion, a court "may not go outside the pleadings." *Colle v. Brazos Cty., Texas*, 981 F.2d 237, 243 (5th Cir. 1993). A document that is part of the record but not referred to in the challenged pleading and not attached to a motion to dismiss

may not be considered by the court in ruling on a 12(b)(6) motion. *Kovac v. Wray*, 363 F. Supp. 3d 721, 739 (N.D. Tex. 2019). Throughout Plaintiff's motion, he references documents and alleged facts that are neither referenced in nor central to the counterclaim being challenged here.[1] The Court should therefore exclude them from its consideration. *See Isquith v. Middle South Util., Inc.*, 847 F.2d 186, 193 n.3 (5th Cir. 1988).

For the reasons stated below, Plaintiff's second motion to dismiss should be denied.

### B.  The Counterclaim States A Claim Under The LMRDA For Breach Of Fiduciary Duty.

APFA has clearly stated a viable Section 501(a) counterclaim against the Plaintiff.

Section 501 of the LMRDA was enacted to fight fraud and corruption by union officials and to ensure that union funds were being expended in the best interest of the union membership. *Int'l Union of Operating Engr's, Loc. 150 v. Ward*, 563 F.3d 276, 278, 283-89 (7th Cir. 2009) (discussing history of Section 501).

Section 501(a) thus sets forth the federal fiduciary duties of union "officers … and other representatives" who "occupy positions of trust in relation to such organization and its members as a group." 29 U.S.C. § 501(a). Among other specified federal duties, "[e]ach such person" has the duty "to refrain … from holding or acquiring any pecuniary or personal interest which conflicts with the interests of such organization, and to account to the organization for any profit received

---

[1]     For example, Plaintiff references in his Motion a letter from an accounting firm and several of the Union's annual LM-2 filings; makes a range of unsupported factual assertions concerning the alleged propriety of certain expenditures of union funds and who was or was not authorized to approve same; and raises factual challenges as to how the arbitration was conducted. Pl.'s Second Mot. to Dismiss, Doc. 107 at ECF 4-6, 9-11. Notably, none of these documents or factual assertions are referenced in the APFA's counterclaims, nor are they supported by any affidavits or other proper documentation attached to the motion to dismiss. These unsupported factual assertions cannot support dismissal under Rule 12(b)(6). *See Hoffman*, 362 F.3d at 318, n. 7.

by him in whatever capacity in connection with transactions conducted by him or under his direction on behalf of the organization." *Id.*

Under the Act, expenditures of union funds must not only be authorized by the union's "constitution and by-laws and any resolutions of the governing bodies," they must also be for the benefit of the organization. 29 U.S.C. § 501(a). Even if funds are arguably disbursed in accordance with a union's internal procedures, the expenditure is improper under Section 501(a) if it is for the personal benefit of the recipients, rather than for the benefit of the union membership. *See Morrisey v. Curran*, 650 F.2d 1267, 1273-74 (2d Cir. 1981) ("authorization cannot be used to shield the very acts that prompted the legislation, misappropriation and abuse of union funds by officers for their personal benefit."); *see also Ray v. Young*, 753 F.2d 386, 389 (5th Cir. 1985) (quoting same).

It bears emphasis that among a union officer's responsibilities under 501(a) is the duty "to account to the organization." This duty "fairly implies that the union has a specific remedy -- that it may sue an unfaithful officer in federal court for an accounting of ill-gotten gains." *Ward*, 563 F.3d at 287. Accordingly, a union can seek to recover improperly expended funds through a Section 501(a) lawsuit, as is the case here. *See id.* at 289 ("labor organizations have an implied cause of action under § 501(a) to sue in federal court for violation of the fiduciary duties imposed by the statute. The text and structure of the statute as a whole demonstrate Congress' intent to confer upon unions federal rights and a federal remedy"); *Int'l Union of Elec., Salaried, Mach. & Furniture Workers v. Statham*, 97 F.3d 1416, 1421 (11th Cir. 1996) ("section 501(a) was intended to create a federal cause of action that can be asserted by the union on its own behalf"); *see also Stewart*, 16 F. Supp. 3d at 793 (denying motion to dismiss union counterclaims; finding "unions have an implied federal cause of action under Section 501(a) to sue for violations of the fiduciary duties imposed by the statute").

The claims here include breaches of the statutory duty "to refrain … from holding or acquiring any pecuniary or personal interest which conflicts with the interests of [the] … organization," and the duty "to account to the organization for any profit received by him in whatever capacity in connection with transactions conducted by him or under his direction on behalf of the organization." 29 U.S.C. § 501(a). Section 501(a) also requires officers to "to hold [a union's] money and property solely for the benefit of the organization and its members and to … expend the same in accordance with its constitution and bylaws and any resolutions of the governing bodies adopted thereunder." *Id.*

As set forth above and as detailed in the pleadings, we allege that Plaintiff breached these duties (as found in the final and binding arbitration) by misusing his Union position to improperly receive Union funds for his own personal gain and to expend funds for the personal gain of his fellow National Officers at the expense of the APFA's membership in a manner contrary to its governing documents.

Because "Section 501 was adopted primarily to address the problem of corrupt management of funds by union officials" the Fifth Circuit has found that it "must be given its strongest reading in a case involving a union officer's diversion of union funds or property into his own hands." *Ray,* 753 F.2d at 389.

> We wish to stress, however, that we do not use the term "personal benefit" solely in th[e] narrow sense. By way of example only, we think that a union officer benefits, in a way that justifies heightened judicial scrutiny, (1) from the expenditure of union funds to purchase things for his personal use or for his family and friends, (2) by the use of union property for personal purposes; or (3) by receiving reimbursement for expenses not related to union business. We do not think that authorization in cases like these should shield the union officer from liability under Section 501 any more than it should when the union officer receives cash directly from the union treasury.

*Id.* at 390 (citations omitted).[2]

Here, the neutral arbitrator found that Plaintiff misappropriated Union funds for his own personal benefit, at the expense of the membership, and in a manner contrary to the Union's governing documents and procedures. APFA seeks, by its counterclaim, restitution of these funds to the membership. This claim is squarely within the scope of Section 501(a). *See id.*; *Hoffman*, 362 F.3d at 313 ("officials must also account to union membership for any gains they receive in connection with their union office").

The claims at issue here are also "primarily pecuniary in nature." *Hoffman*, 362 F.3d at 316 n.3. They involve funds rightly owed to the Union membership, which were diverted or converted by Plaintiff under color of his Union office and for his own personal gain and for the personal gain of others. Remarkably, Plaintiff's motion discusses and tries to defend, largely through conclusory statements and gratuitous assertions, only one piece of the disputed payments – the $5,436.47 overpayment for sick and vacation leave which he approved to be paid to Ross and which has not been repaid. These same arguments were made to, but rejected by, the arbitrator. Award, Doc. 11-1 at ECF 28-30, 35-38. He also entirely ignores the fact that he admitted that he also had overpaid himself and other officers' similar amounts. *See* Award, Doc. 11-1 at 37 ("Vargas attempted to

---

[2]     *See also Guzman v. Bevona*, 90 F.3d 641, 646 (2d Cir. 1996) (union officer violated the Act by improperly spending nearly $20,000 in union funds "to order surveillance of a loyal but outspoken union member" and that union "authorization" of the improper expense was irrelevant; "Such abuse of union funds directly violates the fiduciary duty imposed on union officers by section 501(a)"); *Morrissey*, 650 F.2d at 1285 (affirming district court's order for an accounting to determine if foreign travel and commuting expenses between New York and Florida were for valid business purpose of union); *Brink v. DaLesio*, 667 F.2d 420, 426 (4th Cir. 1981) (officer must pay difference between excessive rent, under lease he negotiated with friend, and reasonable rent for union offices); *United States v. Int'l Bhd. of Teamsters*, 652 F. Supp. 2d 447, 449 (S.D.N.Y. 2009) (upholding Independent Review Board determination that union president violated his fiduciary duty when he caused the union "to pay for Cleveland Cavalier playoff and season tickets, his wife's travel expenses, and other personal expenses for which there was no union purpose").

benefit monetarily and thus failed in his fiduciary duty as National Treasurer by willfully changing the formula for the payouts for Bob Ross, Nena Martin and Marcy Dunaway as well as himself" without proper authorization.). His claim of innocence here is further belied by the fact that he and the other officers (except Ross) paid the improper amounts back to the Union. Plaintiff admits in his motion to dismiss that these expenditures fell "squarely within [his] duties" as National Treasurer. Pl.'s Second Mot. to Dismiss, Doc. 107 at ECF 10. He cannot escape liability here because some of the improperly expended funds were paid back, particularly because these unauthorized funds were only paid out in the first place because he and his fellow officers failed in their fiduciary duty to the membership. *See United States v. Goad*, 490 F.2d 1158, 1165 (8th Cir. 1974) (finding salary increase for officers "approved" by union president and secretary-treasurer violated Section 501 when the increases "were not approved by the Executive Board" as required by the union's constitution and "effectively were kept secret" until the next election; "The exercise of power by union officials is not unfettered, but checked in the first instance by *proper* approval within its own ranks.") (emphasis added); *United States v. Stockton*, 788 F.2d 210, 217 (4th Cir. 1986) ("The permission of the union is lacking if the appropriation or expenditure is outside the scope of the fiduciary trust placed in the defendant by the union as a whole and outside the scope of the powers of any superior union official on whose permission the defendant has sought to rely."). Moreover, it is not disputed that Ross refused to repay these funds, which were improperly expended under Plaintiff's supervision and, as found by the arbitrator, violated his fiduciary duty to the membership.

As National Treasurer, Plaintiff's fiduciary violations in overpaying himself and friends from Union funds without proper authorization is particularly egregious. *See Gilvin v. Fire*, 259 F.3d 749, 757 n. 9 (D.C. Cir. 2001) (finding union National Secretary-Treasurer "could not

lawfully have signed a check that … violated his fiduciary obligations as Secretary–Treasurer" and citing Section 501(a) "setting forth the fiduciary obligations of the officers of a labor organization with respect to the organization's 'money and property'"). Notably, Plaintiff does not – and cannot – justify the approximately $14,000 in Union funds he was found to have spent on his personal meals in violation of his fiduciary duty as also found by the arbitrator.

Plaintiff also incorrectly asserts that the Section 501(a) claim "rest[s] solely on the basis of Plaintiff's alleged breach of APFA Constitution and APFA Policy" and is therefore not within this Court's jurisdiction under *Adams-Lundy v. APFA,* 792 F.2d 1368 (5th Cir. 1986). Pl.'s Second Mot. to Dismiss, Doc. 107 at ECF 12-13. Plaintiff misunderstands the statute and misreads both the counterclaim and *Adams-Lundy*.

The counterclaim is for breach of the federal fiduciary duty, as defined by the LMRDA. That duty expressly includes the obligation -- enforceable in court -- "to hold [the Union's] money … solely for the benefit of the organization … and to … *expend the same in accordance with its constitution and bylaws* and any resolution of the governing bodies adopted thereunder." 29 U.S.C. § 501(a) (emphasis supplied). Courts thus necessarily look to the Union's Constitution and Policy in resolving a Section 501 claim. *See* 29 U.S.C. § 501(a); *see also Ray*, 753 F.2d at 390 (finding an expense must first be "validly authorized in compliance with the union's constitution, bylaws, and resolutions" to be proper under Section 501).

And *Adams-Lundy* is not to the contrary. That case was before the Court of Appeals three times. The decision relied on by Plaintiff, *Adams-Lundy II*, held that there was no federal jurisdiction to "enforce an arbitration award that is based solely on an internal union constitution." 792 F.2d at 1373. But that was not a ruling under Section 501, which was taken up in the next appellate ruling, *Adams-Lundy v. APFA*, 844 F.2d 245 (5th Cir. 1988) (*Adams-Lundy III*). In that

11

decision, the Court addressed the very point now asserted by Plaintiff and firmly rejected it: "No panel has decided the § 501 issue…. This statement [in *Adams-Lundy II* regarding jurisdiction to enforce a union constitution] … was not a decision on the merits of the § 501 claim." 844 F.2d at 248. Describing the Section 501 claim in that case as founded on allegations that union officers had, among other things, "fail[ed] to expend money in accordance with the union constitution" and "without the authorization of the governing board," the Court in *Adams-Lundy III* denied a motion to dismiss that claim. *Id.* at 248-250. Contrary to Plaintiff's assertions, the fiduciary duty counterclaim here is wholly consistent with *Adams-Lundy*.

Based on the foregoing, the Union has alleged here a "right to relief above the speculative level" as required by *Twombly*, 550 U.S. at 555, and Plaintiff's motion to dismiss should be denied.

### C. Plaintiff's Reliance On *Hoffman v. Kramer* And Section 501(b) Caselaw Applying A Heightened Pleadings Requirement Is Misplaced.

In support of his motion to dismiss, Plaintiff relies heavily – as he did in his first motion to dismiss – on the Fifth Circuit's decision in *Hoffman v. Kramer*, 362 F.3d 308 (5th Cir. 2004). Plaintiff's reliance on *Hoffman*, which arose under Section 501(b) of the LMRDA, not Section 501(a), is wholly misplaced here.

**First**, *Hoffman* did not involve either the specific provisions of Section 501(a) which are involved here, or a motion to dismiss. Rather, *Hoffman* involved review of the district court's ruling denying leave to bring a Section 501(b) derivative suit brought by a union member. Under Section 501(b), *an individual union member* may sue for violations of Section 501(a), but only after first petitioning the court for leave to do so and only after meeting the strict requirements established in Section 501(b), which includes requesting the union "to sue or recover damages or secure an accounting or other appropriate relief." 29 U.S.C. § 501(b). If the union refuses to take action within a reasonable time after being requested to do so, the member may seek leave to file a

derivative lawsuit to recover the improperly expended funds on behalf of the union. Because the member seeks to act in the place of the union in filing such a suit and to avoid harassing litigation, courts will only grant a Section 501(b) plaintiff leave to file a complaint if they can show "good cause." The 501(b) proceeding in *Hoffman*, therefore, involved a Verified Application and a "hearing before the district judge where [plaintiff's] claims were explored and vetted." 362 F.3d at 319. No such verification and vetting process is at issue here.

**Second**, Hoffman did not involve a motion to dismiss but rather the heightened pleading requirements for bringing a claim under Section 501(b), which is more than APFA is required to show for pleading a viable claim under Section 501(a). As made clear by the Fifth Circuit in *Hoffman*, "[t]he standard for determining whether an applicant has stated such a claim [under 501(b)] goes *beyond* the analysis of a motion to dismiss under FED. CIV. P. 12(b)(6)." *Id.* at 318, n. 7 (emphasis added). It bears emphasis here that this Court has already found that Section 501(b) is *not* at issue in this action nor is its heightened pleadings requirements.[3] Order dated Feb. 22, 2023, Doc. 70 at ECF 3 ("given that the counterclaim was filed by the APFA, rather than a member acting after the APFA's refusal to file suit, the good-cause requirement of LMRDA section 501(b) is inapplicable to the APFA's claim under section 501(a)"). Accordingly, Plaintiff's continued reliance on caselaw applying the heightened Section 501(b) pleadings standard here is particularly puzzling and can be seen as nothing but a backdoor effort to reargue claims already rejected by this Court.

---

[3]      Even under that heightened standard, however, for purposes of determining if a complaint can be filed under Section 501(b), "the court must keep in mind … that it is 'inappropriate to consider ... defenses which require the resolution of complex questions of law going to the substance of the case' or '[d]efenses which necessitate the determination of a genuine issue of material fact....'" *Hoffman*, 362 F.3d at 318, n. 7.

13

**Third**, *Hoffman* is further distinguishable because the allegations at issue in *Hoffman* are nothing like the allegations at issue here. The portion of *Hoffman* Plaintiff relies upon dealt with allegations that two union officers, who received full-time salaries from the union, failed to actually work "full-time"; in essence, that they misused union funds by not working hard enough. 362 F.3d at 322. The Fifth Circuit held, not surprisingly, that "the statute cannot be plausibly read to give rise to a cause of action against a union officer whenever there is a disagreement concerning his work schedule and work ethic." *Id.* at 322. There was also no allegation in *Hoffman*, like there is here, that funds were expended without proper authorization and contrary to the Union's governing documents. Further, unlike the present case, defendants in *Hoffman* "are not alleged to have benefitted personally." *Id.* at 323. In contrast, APFA alleges that Plaintiff wrongly took thousands of dollars for his own personal gain and made expenditures for the personal benefit of his fellow officers; these are not mere "administrative" actions like the one at issue in *Hoffman*, but rather a clear breach of his fiduciary duty and abuse of office as envisioned by Section 501. [4] *See Stewart*, 16 F. Supp. 3d at 794 (denying motion to dismiss union's 501(a) counterclaims finding that "[u]nlike the plaintiff in *Hoffman*, the Union has alleged that [counterclaim defendant]

---

[4]      Plaintiff also incorrectly asserts in his Motion that the charges and the arbitrator's jurisdiction were limited to the issue of whether Vargas violated Section 1.F of the APFA Constitution, which prohibits willful violations of the Union's governing documents. Pl.'s Second Mot. to Dismiss, Doc. 107 at ECF 14. However, the grounds for the charges and the arbitrator's decision were much broader and included, among other things, Section 1.E of the APFA Constitution, which addresses "[t]heft or embezzlement of Association monies or property." *See* Award, Doc. 11-1 at ECF 6-7 (discussing various charges); *see also, e.g., id.* at ECF 37 (finding "Vargas attempted to benefit monetarily and thus failed in his fiduciary duty as National Treasurer by willfully changing the formula for the payouts for Bob Ross, Nena Martin and Marcy Dunaway as well as himself"); *id.* at ECF 32 (ordering an audit of Vargas' APFA credit card charges to determine scope of Vargas' failure "in his fiduciary duty as National Treasurer") *and* Supp. Award, Doc. 39-1 at ECF 2 (finding audit revealed Vargas improperly charged approximately $14,000 in personal meals to the Union).

14

converted money that was owed to union members."); *see also Ray*, 753 F.2d at 390 (listing types of claims within scope of Section 501).

**Fourth**, the Court in *Hoffman* recognized and applied the well-settled principle cautioning against judicial interference in internal union affairs. 362 F.3d at 317; *see also Morrisey*, 650 F.2d at 1273-74 ("We have recognized, as have many other courts, that the Act does not give courts a license to interfere broadly in internal union affairs"). Specifically, the Court in *Hoffman* found that the purpose of the heightened pleading requirements of Section 501(b) "is to discourage misuse of litigation" by individual union members "and to minimize judicial interference in the management of labor organizations." 362 F.3d at 314. Accordingly, the Court in *Hoffman* found that "an objectively reasonable decision by union leadership not to pursue" the claim at issue in that case "is entitled to some deference." *Id*. at 317. This judicial deference applied in *Hoffman* weighs in favor of the APFA here, not the Plaintiff. This Court should also apply a similar level of deference in favor of the APFA's internal union process here, including both the underlying arbitration held in accordance with its Constitution as well as its decision to pursue its breach of fiduciary duty claim against a former officer found to have misappropriated union funds for his own personal gain and for the gain of his fellow officers at the expense of the Union's membership.

In summary, this case is nothing like *Hoffman* and Plaintiff's reliance on it in support of his motion to dismiss is unavailing. This case, unlike *Hoffman*, involves a found pattern and practice of misappropriating thousands of dollars in Union funds for Plaintiff's personal gain at the expense of the APFA membership and in violation of Plaintiff's fiduciary duty. We submit that, based on the pleadings and applying all reasonable factual inferences in favor of the APFA, Plaintiff simply cannot meet his burden of establishing that we "can prove no set of facts in support

of [t]his claim which would entitle [us] to relief." *Id.* at 318 n.7. Accordingly, Plaintiff's motion to dismiss should be denied.

> ### D.  Plaintiff's Motion To Dismiss APFA's Counterclaim To Enforce The APFA's Constitution Is Moot.

APFA has moved for leave to amend its counterclaims and will not be prosecuting the 29 U.S.C. § 185(a) counterclaim seeking to enforce the APFA Constitution. APFA's Mot. Amend, Doc. 108. Plaintiff has not opposed the withdrawal of that claim in his response to that motion. Accordingly, Plaintiff's motion to dismiss this claim is moot.

## IV.    CONCLUSION.

For the foregoing reasons, the APFA respectfully submits that Plaintiff's motion to dismiss the counterclaims should be denied.

Dated: September 19, 2023                    Respectfully submitted,


                                             /s/ James D. Sanford
                                             JAMES D. SANFORD
                                             Tex. Bar No. 24051289
                                             Gillespie Sanford LLP
                                             4803 Gaston Ave.
                                             Dallas, TX  75246
                                             Tel.: (214) 800-5111; Fax.: (214) 838-0001
                                             Email: jim@gillespiesanford.com


                                             JEFFREY A. BARTOS (*pro hac vice*)
                                             D.C. Bar No. 435832
                                             Guerrieri, Bartos & Roma, PC
                                             1900 M Street, N.W. Suite 700
                                             Washington, DC 20036
                                             Tel.: (202) 624-7400; Fax: (202) 624-7420
                                             Email: jbartos@geclaw.com

                                             *Counsel for Defendant and Counterclaim Plaintiff Association of Professional Flight Attendants, and Defendants Julie Hedrick and Erik Harris*

16

CHARLETTE L. MATTS (*pro hac vice*)
Tex. Bar No. 24133870
Association of Professional Flight Attendants
1004 W. Euless Blvd.
Euless, TX 76040
Tel.: (682) 301-8454
Email: Cmatts@apfa.org

*Counsel for Defendant and Counterclaim Plaintiff*
*Association of Professional Flight Attendants*

17

## <u>CERTIFICATE OF SERVICE</u>

I certify that on September 19, 2023, a true and correct copy of the foregoing APFA

Response in Opposition to Plaintiff's Second Motion to Dismiss was served upon all persons who

have requested notice and service of pleadings in this case via the Court's ECF system.

KERRI PHILLIPS
K.D. Phillips Law Firm, PLLC
6010 W. Spring Creek Parkway
Plano, TX 75024
Phone: (972) 327-5800
Fax: (940) 400-0089
Email: kerri@KDphillipslaw.com


/s/ *James D. Sanford*
JAMES D. SANFORD