IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
FORT WORTH DIVISION

| | | |
|---|---|---|
| EUGENIO VARGAS, | § § § | |
| Plaintiff/Counterclaim Defendant, | § § | Civil Action No. 4:22-cv-430-Y |
| v. | § § | Judge Terry R. Means |
| ASSOCIATION OF PROFESSIONAL FLIGHT ATTENDANTS, *et al.*, | § § § § | |
| Defendants/Counterclaim Plaintiff. | § § | |

**APFA'S REPLY BRIEF IN FURTHER SUPPORT OF ITS
MOTION FOR LEAVE TO AMEND ANSWER AND COUNTERCLAIM**

**TABLE OF CONTENTS**

FACTUAL AND PROCEDURAL BACKGROUD ..................................................................... 2

ARGUMENT .................................................................................................................................. 4

    1.  The Counterclaim States A Viable LMRDA Breach of Fiduciary Duty Claim .................................................................................................................................. 5

    2.  Plaintiff's Claim That The APFA Constitution And Policy Are Irrelevant To A Section 501(a) Claim Is Misplaced. ........................................................................ 8

CONCLUSION ............................................................................................................................. 10

## TABLE OF AUTHORITIES

**Cases**                                                                                                              **Page(s)**

*Adams-Lundy v. APFA*,
　792 F.2d 1368 (5th Cir. 1986) ...............................................................................8, 9, 10

*Adams-Lundy v. APFA*,
　844 F.2d 245 (5th Cir. 1988) (*Adams-Lundy III*)..................................................................9

*Ashcroft v. Iqbal*,
　556 U.S. 662 (2009)...................................................................................................4

*Bell Atlantic Corp. v. Twombly*,
　550 U.S. 544 (2007).................................................................................................4, 10

*Brink v. DaLesio*,
　667 F.2d 420 (4th Cir. 1981) ......................................................................................7

*Gilvin v. Fire*,
　259 F.3d 749 (D.C. Cir. 2001) ...................................................................................7

*Hoffman v. Kramer*,
　362 F.3d 308 (5th Cir. 2004) ...............................................................................4, 5, 7, 8

*Int'l Union of Operating Engr's, Loc. 150 v. Ward*,
　563 F.3d 276 (7th Cir. 2009) .....................................................................................5

*Isquith v. Middle South Util., Inc.*,
　847 F.2d 186 (5th Cir. 1988) .....................................................................................5

*Lormand v. U.S. Unwired, Inc.*,
　565 F.3d 228 (5th Cir. 2009) .....................................................................................4

*Martin v. Local 556, TWU*,
　2014 WL 4358480, No. 3:14-cv-0500 (N.D. Tex. Sept. 3, 2014) .......................................9, 10

*Mornes v. Valdez*,
　414 F. Supp. 3d 888 (N.D. Tex. 2019) ......................................................................4

*Morrisey v. Curran*,
　650 F.2d 1267 (2d Cir. 1981)....................................................................................6, 7

*Ray v. Young*,
　753 F.2d 386 (5th Cir. 1985) ...............................................................................6, 7, 8, 9

*Rogers v. Buchanan*,
    2014 WL 4449800, No. 3:12-cv-2458 (N.D. Tex. Sept. 9, 2014) ............................................5

*Stewart v. Int'l Ass'n of Machinists & Aerospace Workers*,
    16 F. Supp. 3d 783 (S.D. Tex. 2014) .......................................................................................8

*United States v. Goad*,
    490 F.2d 1158 (8th Cir. 1974) .................................................................................................5

**Statutes**

UNITED STATES CODE
    29 U.S.C. § 185......................................................................................................................4
    29 U.S.C. § 501(a) ........................................................................................................ *passim*

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
FORT WORTH DIVISION

| | | |
|---|---|---|
| EUGENIO VARGAS, § | | |
| § | | |
| Plaintiff/Counterclaim Defendant, § | | Civil Action No. 4:22-cv-430-Y |
| § | | |
| v. § | | Judge Terry R. Means |
| § | | |
| ASSOCIATION OF PROFESSIONAL § | | |
| FLIGHT ATTENDANTS, *et al.*, § | | |
| § | | |
| Defendants/Counterclaim Plaintiff. § | | |

**APFA'S REPLY BRIEF IN FURTHER SUPPORT OF ITS
MOTION FOR LEAVE TO AMEND ANSWER AND COUNTERCLAIM**

The Association of Professional Flight Attendants ("APFA") respectfully submits that Plaintiff has failed to meet his heavy burden of establishing that amendment of APFA's counterclaim, which continues to assert a claim for breach of fiduciary duty that this Court has already held to be appropriately raised, would be futile.

By way of context, this lawsuit arises out of an internal union arbitration addressing charges of financial misconduct by Plaintiff Eugenio Vargas during his term as APFA National Treasurer. Plaintiff filed suit challenging the decision of a neutral third-party arbitrator finding Vargas guilty of dereliction in the performance of his fiduciary responsibilities while in office resulting in the Union overpaying thousands of dollars in unauthorized compensation to himself and his fellow officers. *Id.* In the counterclaim at issue here, APFA seeks, pursuant to 29 U.S.C. § 501(a), to hold Mr. Vargas -- who held the keys to the vault in his role as National Treasurer -- responsible for violating his fiduciary obligation to the Union and to recover expenses owed to the Union in accordance with the arbitrator's final and binding determination. It bears emphasis that the

1

fiduciary claim is already alleged in the current counterclaim, which APFA seeks to simply refine in its proposed amended counterclaim.

Plaintiff's challenge to APFA's fiduciary duty claim falls short in several regards.[1] Procedurally, Plaintiff's opposition raises a litany of new conclusory and unsupported assertions labeled as "facts", which are not found in the operative pleading and therefore may not be considered in the context of this motion. Substantively, his opposition is based on two flawed legal theories: *First*, that the misappropriation of tens of thousands of dollars in Union funds for his personal gain and the gain of his fellow officers and contrary to the APFA's governing documents cannot be a breach of fiduciary duty as a matter of law but are merely unreviewable "business decisions"; and *second*, that despite the plain language of the statute, his violations of the Union's Constitution and Policy cannot be relied on to establish a fiduciary duty claim. Plaintiff is wrong in each respect.

## FACTUAL AND PROCEDURAL BACKGROUND

Pursuant to the APFA Constitution, two rank-and-file Union members filed internal charges against Mr. Vargas alleging a range of financial misconduct during his term as APFA National Treasurer. *See* Counterclaims, Doc. 76, ¶¶ 5-24, 27 (ECF 19-24); Doc. 11-1 (Arbitration Award); Doc. 39-1 (Supplemental Award); Doc. 46 (taking judicial recognition of Supplemental Award). A nationally respected arbitrator, Ruben R. Armendariz, heard the charges in accordance with the APFA's Constitution. Doc. 76 at ¶¶ 7-27 (ECF 20-24).

---

[1] Plaintiff's Opposition is his *third* facial challenge to the merits of APFA's fiduciary counterclaim. His first motion to dismiss this counterclaim was denied (Docs. 58, 70); and his second challenge is in his pending second motion to dismiss (Doc. 107), which raises a variation of the claims previously rejected by this Court and which we have opposed.

After an extensive hearing, Arbitrator Armendariz concluded that Mr. Vargas had, among other things, "attempted to benefit monetarily and thus failed in his fiduciary duty as National Treasurer by willfully changing the formula" for the calculation of certain benefits paid to himself and other officers, costing the Union tens of thousands of dollars. Award, Doc. 11-1 at ECF 37. Finding merit to the charges that Mr. Vargas had regularly charged personal meals to the Union, the Arbitrator also ordered an independent audit to determine the exact amount owed for these charges. *Id.* at ECF 32. In a supplemental ruling following that financial review, he determined that Mr. Vargas had made approximately $14,000 in "[i]nappropriate credit card charges related to meals." Supp. Award, Doc. 39-1 at ECF 2. Mr. Vargas was ordered to repay that amount, the cost of the independent financial review, and half of the arbitrator's fee and was permanently barred from holding the union office. *Id.* While Mr. Vargas did agree to repay APFA for some of his improper expenditures, Doc. 11-1 at ECF 37, he did not comply with the obligation to repay the Union for other improper expenditures or other costs ordered by the arbitrator. APFA's Counterclaims, Doc. at 76 ¶ 32 (ECF 25).

Mr. Vargas sued APFA and two of its officers, seeking, among other things, to vacate the arbitration award. APFA filed a counterclaim (Doc. 11) alleging that Mr. Vargas breached his fiduciary duty under LMRDA Section 501(a) by seeking and accepting payment of monies when National Treasurer in violation of the APFA Constitution and Policy Manual. Plaintiff moved to dismiss the counterclaim (Doc. 58) based on the theory that APFA failed to meet the "good cause" requirement of LMRDA Section 501(b), but this Court rejected this argument, because that requirement "is inapplicable to the APFA's claim under section 501(a)." Doc. 70 at ECF 3-4.

Plaintiff then filed an Amended Complaint (Doc. 55-1) and APFA reasserted its federal fiduciary duty counterclaim, as well as a separate claim for "Enforcement of the APFA Constitution

3

as Interpreted and Applied by the Arbitrator's Decision and Order." Plaintiff filed an Answer (Doc. 79) and then five months later, filed his second motion to dismiss APFA's counterclaims (Doc. 107), which APFA again opposed (Doc. 116). This motion is pending. APFA seeks in its present motion for leave to amend (Doc. 108) to clarify its Section 501 counterclaim and remove the counterclaim based on 29 U.S.C. § 185 (which sought to enforce the APFA Constitution). Plaintiff's only challenge to the motion pertains to the fiduciary duty claim, which Plaintiff contends would be "futile." We address that argument herein.

## ARGUMENT

Leave to amend should be granted freely, but the Court may deny leave if the proposed amendment would be "futile" based on "the same standard of legal sufficiency" applied under Rule 12(b)(6). *Mornes v. Valdez*, 414 F. Supp. 3d 888, 890-91 (N.D. Tex. 2019) (quoting *Stripling v. Jordan Prod. Co., LLC*, 234 F.3d 863, 873 (5th Cir. 2000) Under that standard, courts "accept all factual allegations as true" and "draw all reasonable inferences" in the pleader's favor. *Lormand v. U.S. Unwired, Inc.*, 565 F.3d 228, 232 (5th Cir. 2009); *see also Hoffman v. Kramer,* 362 F.3d 308, 318 n.7 (5th Cir. 2004). Dismissal should be rejected so long as the pleading alleges "enough facts to state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).[2] This Court has found that a "merits-based

---

[2] Throughout Plaintiff's opposition, he references documents and alleged facts that are neither referenced in nor central to the counterclaim being challenged here. For example, Plaintiff references a letter from an accounting firm and several of the Union's annual LM-2 filings; makes a range of unsupported factual assertions concerning the alleged propriety of certain expenditures of union funds and who was or was not authorized to approve same; and raises factual challenges as to how the arbitration was conducted. Pl.'s Opp., Doc. 114 at ECF 2-6, 8-9. These unsupported

4

analysis of a fact intensive defense … is best undertaken in the context of a Rule 56 motion," not a Rule 15 motion. *Rogers v. Buchanan,* 2014 WL 4449800, No. 3:12-cv-2458, at *2 (N.D. Tex. Sept. 9, 2014) (rejecting futility argument) (Appx. p. 12).

Based on the pleadings and applying all reasonable factual inferences in favor of the APFA, Plaintiff simply cannot meet his burden of establishing that the APFA "can prove no set of facts in support of [t]his claim which would entitle [us] to relief." *Hoffman,* 362 F.3d at 318 n.7. Accordingly, Plaintiff's opposition to APFA's motion for leave to amend based on "futility" fails.

1. **The Counterclaim States A Viable LMRDA Breach of Fiduciary Duty Claim.**

APFA has clearly stated a viable Section 501(a) counterclaim against the Plaintiff.

Section 501 of the LMRDA was enacted to fight fraud and corruption by union officials and to ensure that union funds were being expended in the best interest of the union membership. *Int'l Union of Operating Engr's, Loc. 150 v. Ward*, 563 F.3d 276, 278, 283-89 (7th Cir. 2009) (discussing history of Section 501). Section 501(a) thus sets forth the federal fiduciary duties of union "officers … and other representatives" who "occupy positions of trust in relation to such organization and its members as a group." 29 U.S.C. § 501(a). Under the Act, they must "refrain from dealing with such organization as an adverse party … and from holding or acquiring any pecuniary or personal interest which conflicts with the interests of such organization." *Id.*

Expenditures of union funds under Section 501(a) must (1) be authorized by the union's "constitution and by-laws and any resolutions of the governing bodies," and also must (2) be "solely for the benefit of the organization and its members." *Id.*; *see also United States v. Goad*, 490 F.2d 1158, 1165 (8th Cir. 1974) (finding salary increase for officers "approved" by union

---

factual assertions cannot support Plaintiff's futility argument and should be excluded from consideration. *See Isquith v. Middle South Util., Inc.*, 847 F.2d 186, 193 n.3 (5th Cir. 1988).

president and secretary-treasurer violated Section 501 when the increases "were not approved by the Executive Board" as required by the union's constitution). Even if funds are disbursed in accordance with a union's internal procedures, an expenditure is still improper under Section 501(a) if it is for the personal benefit of the recipients, rather than for the benefit of the union membership. *See Ray v. Young*, 753 F.2d 386, 389 (5th Cir. 1985); *Morrisey v. Curran*, 650 F.2d 1267, 1273-74 (2d Cir. 1981).

Because "Section 501 was adopted primarily to address the problem of corrupt management of funds by union officials" the Fifth Circuit has found that it "must be given its strongest reading in a case involving a union officer's diversion of union funds or property into his own hands." *Ray*, 753 F.2d at 389.

> We wish to stress, however, that we do not use the term "personal benefit" solely in th[e] narrow sense. By way of example only, we think that a union officer benefits, in a way that justifies heightened judicial scrutiny, (1) from the expenditure of union funds to purchase things for his personal use or for his family and friends, (2) by the use of union property for personal purposes; or (3) by receiving reimbursement for expenses not related to union business. We do not think that authorization in cases like these should shield the union officer from liability under Section 501 any more than it should when the union officer receives cash directly from the union treasury.

*Id.* at 390 (citations omitted).

Here, the neutral arbitrator found that Plaintiff as National Treasurer breached his fiduciary duty by misappropriating Union funds for his own personal benefit and for the benefit of his fellow officers in a manner contrary to the Union's governing documents and procedures. *See, e.g.,* Award, Doc. 11-1 at 37 ("Vargas attempted to benefit monetarily and thus failed in his fiduciary duty as National Treasurer by willfully changing the formula for the payouts for Bob Ross, Nena Martin and Marcy Dunaway as well as himself" without proper authorization.). This fiduciary violation also includes, as found by the arbitrator, improperly charging the Union approximately

$14,000 in personal expenses. APFA seeks, by its counterclaim, restitution of these misappropriated funds to the membership. This claim is squarely within the scope of Section 501(a).  *See Ray,* 753 F.2d at 389; *Hoffman*, 362 F.3d at 313 ("officials must also account to union membership for any gains they receive in connection with their union office"); *Gilvin v. Fire*, 259 F.3d 749, 757 n. 9 (D.C. Cir. 2001) (National Secretary-Treasurer "could not lawfully have signed a check that … violated his fiduciary obligations"); Order, Doc. 70 at ECF at 3-4 (discussing APFA's right to file a counterclaim under Section 501(a)).[3]

In support of his futility argument, Plaintiff gratuitously characterizes the counterclaim as involving mere "business decisions," which he says cannot support a Section 501(a) claim.  In support, Plaintiff again mistakenly relies, as he did in his first motion to dismiss, on the Fifth Circuit's decision in *Hoffman v. Kramer*, 362 F.3d 308. *Hoffman* is inapposite for several reasons. First, it applied the heightened pleading requirements, including the verified complaint and judicial vetting process, applicable only to derivative claims by union members under Section 501(b), not a direct claim by a union under Section 501(a). This Court has already held that standard, which is more than what is required to survive a motion to dismiss under Rule 12(b)(6), does not apply to the APFA's claim here. Doc. 70 at ECF 3-4; *see also Hoffman*, 362 F.3d at 318 n. 7 ("[t]he standard for determining whether an applicant has stated such a claim [under 501(b)] goes *beyond* the analysis of a motion to dismiss under FED. R. CIV. P. 12(b)(6)." (Emphasis added)).

---

[3]   The APFA claim here in wholly consistent with those recognized in other circuits as well. *See, e.g., Morrissey*, 650 F.2d at 1285 (affirming court order for an accounting to determine if foreign travel and commuting expenses between New York and Florida were for valid business purpose of union); *Brink v. DaLesio*, 667 F.2d 420, 426 (4th Cir. 1981) (officer must pay difference between excessive rent, under lease he negotiated with friend, and reasonable rent for union offices).

Second, the portion of *Hoffman* Plaintiff relies upon dealt with allegations that two union officers, who received full-time salaries from the union, failed to actually work "full-time"; in essence, that they misused union funds by not working hard enough. 362 F.3d at 322. The Fifth Circuit held, not surprisingly, that "the statute cannot be plausibly read to give rise to a cause of action against a union officer whenever there is a disagreement concerning his work schedule and work ethic." *Id.; see also id*. at 323 (noting defendants in *Hoffman* "are not alleged to have benefitted personally"). Such is not the case here. APFA alleges that Plaintiff wrongly took thousands of dollars for his own personal gain and for the gain of his friends; these are not mere "administrative" actions like the one at issue in *Hoffman*, but rather a clear breach of his fiduciary duty and abuse of office envisioned by Section 501.[4] *See Stewart v. Int'l Ass'n of Machinists & Aerospace Workers*, 16 F. Supp. 3d 783, 794 (S.D. Tex. 2014) (denying motion to dismiss union's 501(a) counterclaims where, "[u]nlike the plaintiff in *Hoffman*, the Union has alleged that [counterclaim defendant] converted money that was owed to union members."); *see also Ray*, 753 F.2d at 390 (listing types of claims within scope of Section 501).

2. **Plaintiff's Claim That The APFA Constitution And Policy Are Irrelevant To A Section 501(a) Claim Is Misplaced.**

Plaintiff also incorrectly asserts that the APFA's Section 501(a) claim "is based solely on the APFA Constitution and by-laws" and is therefore not within this Court's jurisdiction under *Adams-Lundy v. APFA,* 792 F.2d 1368 (5th Cir. 1986). Doc. 114 at ECF 7. Plaintiff misunderstands the statute and misreads both the counterclaim and *Adams-Lundy*.

---

[4] The grounds for the charges and the arbitrator's decision were also much broader than simply not adhering to Union policy as Plaintiff suggests and included, among other things, Section 1.E of the APFA Constitution which addresses "[t]heft or embezzlement of Association monies or property." *See* Award, Doc. 11-1 at ECF 6-7 (discussing various charges).

The counterclaim is for breach of the federal fiduciary duty, as defined by the LMRDA. That duty expressly includes the obligation -- enforceable in court -- "to hold [the Union's] money … solely for the benefit of the organization … and to … *expend the same in accordance with its constitution and bylaws* and any resolutions of the governing bodies adopted thereunder." 29 U.S.C. § 501(a) (emphasis supplied). Courts thus necessarily look to the Union's Constitution and Policy in resolving a Section 501 claim. *See Ray*, 753 F.2d at 390 (finding an expense must first be "validly authorized in compliance with the union's constitution, bylaws, and resolutions" under Section 501).

And *Adams-Lundy* is not to the contrary. That case was before the Court of Appeals three times. The decision Plaintiff cites, *Adams-Lundy II*, held that there was no federal jurisdiction to "enforce an arbitration award that is based solely on an internal union constitution." 792 F.2d at 1373. But that was not a ruling under Section 501, which was taken up in the next appellate ruling, *Adams-Lundy v. APFA*, 844 F.2d 245 (5th Cir. 1988) (*Adams-Lundy III*). In that decision, the Court addressed the very point now asserted by Plaintiff and firmly rejected it: "This statement [in *Adams-Lundy II* regarding jurisdiction to enforce a union constitution] … was not a decision on the merits of the § 501 claim." *Id*. at 248. Describing the Section 501 claim in that case as founded on allegations that union officers had, among other things, "fail[ed] to expend money in accordance with the union constitution" and "without the authorization of the governing board," the Court in *Adams-Lundy III* denied a motion to dismiss that claim. *Id.* at 248-250. The fiduciary duty counterclaim here is wholly consistent with *Adams-Lundy*.

In addition to misunderstanding the holding of *Adams-Lundy*, Plaintiff flatly misrepresents the ruling of the district court in *Martin v. Local 556, TWU*, 2014 WL 4358480, No. 3:14-cv-0500 (N.D. Tex. Sept. 3, 2014) (*see* Appendix).

9

Plaintiff asserts that the *Martin* court applied *Adams-Lundy II* to reject a union's "argument that violation of the union constitution was a violation of 29 U.S.C. §501(a) breach of fiduciary duty (sic)." Pls.' Opp., Doc. 114 at ECF 7. *Martin* did not so hold. There was no Section 501 claim by the union in that case. Rather, that case involved a suit by union officers under LMRDA Section 401 challenging internal union discipline, alleging that the union had violated the law's procedural requirements for discipline. In the passage quoted by Plaintiff, the *Martin* court rejected the union officers' claim that they had been denied a statutory "full and fair hearing" when certain procedural provisions of the union constitution had not been followed. The court held in the quoted language only that no LMRDA Title I claim could be made based solely on the alleged violation of the union constitution. *Martin* at *11 (Appx. p. 9). The language quoted by Plaintiff had nothing to do with a Section 501 fiduciary duty claim by anyone, much less by the union (which had raised no such claim against the officers). The only Section 501 claim in that case was by the disciplined officers against the union, and the court in a separate section dismissed that claim for simple "fail[ure] to plead *any* factual allegations relating to the fiduciary duties imposed in § 501." *Id.* at *5 (Appx. p. 4). Plaintiff's claim of a Section 501 "jurisdictional defect" based on *Adams-Lundy,* Doc. 114 at ECF 7, has no support whatsoever.

## **CONCLUSION**

Based on the foregoing, the Union has alleged here a "right to relief above the speculative level" as required by *Twombly*, 550 U.S. at 555, and APFA respectfully requests that the Court grant its motion for leave to file an amended answer and counterclaim.

Dated: September 27, 2023				Respectfully submitted,


 /s/ *James D. Sanford*
JAMES D. SANFORD
Tex. Bar No. 24051289
Gillespie Sanford LLP
4803 Gaston Ave.
Dallas, TX 75246
Tel.: (214) 800-5111; Fax.: (214) 838-0001
Email: jim@gillespiesanford.com


JEFFREY A. BARTOS (*pro hac vice*)
D.C. Bar No. 435832
Guerrieri, Bartos & Roma, PC
1900 M Street, N.W. Suite 700
Washington, DC 20036
Tel.: (202) 624-7400; Fax: (202) 624-7420
Email: jbartos@geclaw.com

*Counsel for Defendant and Counterclaim Plaintiff Association of Professional Flight Attendants, and Defendants Julie Hedrick and Erik Harris*


CHARLETTE L. MATTS (*pro hac vice*)
Tex. Bar No. 24133870
Association of Professional Flight Attendants
1004 W. Euless Blvd.
Euless, TX 76040
Tel.: (682) 301-8454
Email: Cmatts@apfa.org

*Counsel for Defendant and Counterclaim Plaintiff Association of Professional Flight Attendants*

11

## **CERTIFICATE OF SERVICE**

I certify that on September 27, 2023, a true and correct copy of APFA's Reply In Further Support of Its Motion For Leave To Amend Answer And Counterclaim was served upon all persons who have requested notice and service of pleadings in this case via the Court's ECF system.

KERRI PHILLIPS
K.D. Phillips Law Firm, PLLC
6010 W. Spring Creek Parkway
Plano, TX 75024
Phone: (972) 327-5800
Fax: (940) 400-0089
Email: kerri@KDphillipslaw.com

                                           /s/ *James D. Sanford*
                                           JAMES D. SANFORD