IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
FT. WORTH DIVISION

| | |
|---|---|
| EUGENIO VARGAS<br>Plaintiff, Counter-Defendant<br><br>V.<br><br>ASSOCIATION OF PROFESSIONAL FLIGHT ATTENDANTS, JULIE HEDRICK, LARRY SALAS, ERIK HARRIS, JOSH BLACK<br>Defendants. Counter-Plaintiff | Case No. 4:22-CV00430-Y |

**PLAINTIFF'S SECOND AMENDED COMPLAINT**

**NOW COMES** Eugenio Vargas, Plaintiff, in the above-entitled and numbered cause, files this Plaintiff's Proposed Second Amended Complaint, and shows the Court:

**I.**

**INTRODUCTION**

1. This action seeks redress for unlawful union practices of the Labor Management Reporting and Disclosure Act (hereinafter "LMRDA"), U.S.C. §§101(a), 412 and 609, breach of a union constitution under 29 U.S.C. §185, and damages resulting from various torts brought under state law including breach of fiduciary duty, and defamation.

1

## II.

## PARTIES

2. Plaintiff, Eugenio Vargas ("Vargas") was employed with Association of Professional Flight Attendants in the state of Texas and a citizen of Texas during his employment. His current primary residence is in the State of Texas and is 1616 Brookhaven Cir. Bedford, Texas 76022.

3. Defendant, Association of Professional Flight Attendants ("APFA") was the Plaintiff's employer and his labor union, for which he is a member in good standing. It may be served by and through its current National President, Julie Hedrick at APFA headquarters at 1004 W. Euless Blvd, Euless, Texas 76040.

4. Defendant, Julie Hedrick, ("Hedrick") is the National President of APFA and can be served at her place of employment at APFA headquarters 1004 W. Euless Blvd, Euless, Texas 76040.

5. Defendant, Erik Harris ("Harris") is the National Treasurer of APFA and can be served at his place of employment at APFA headquarters 1004 W. Euless Blvd, Euless, Texas 76040.

6. Defendant, Larry Salas ("Salas") is the National Vice-President of APFA and can be served at his place of employment at APFA headquarters located at 1004 W. Euless Blvd, Euless, Texas 76040.

7. Defendant, Josh Black ("Black") is National Secretary of APFA and can be served at his place of employment at APFA headquarters located at 1004 W. Euless Blvd,

Euless, Texas 76040. (Hedrick, Harris, Salas and Black collectively hereinafter referred to as the APFA "National Officers.").

## III.

## JURISDICTION AND VENUE

8. Plaintiff files with this Complaint in the Northern District Federal Court - Fort Worth Division based on Federal Question.

9. Plaintiff brings claims under jurisdiction of this action which is conferred on this court by virtue of the Labor Management Reporting and Disclosure Act, U.S.C. §§101(a)(5) 412 and 609, and breach of a Union Constitution.

10. The amount in controversy is more than $75,000, exclusive of interest and costs.

## IV.

## CONDITIONS PRECEDENT

11. All conditions precedent to Plaintiff's recovery against Defendants have been fully performed.

## V.

## FACTUAL BACKGROUND

12. Bob Ross was elected by the Membership in April of 2016 to serve as National President of the Association of Professional Flight Attendants' Union ("APFA") and opposed any merger between APFA and AFA (a multi-airline flight attendants' union).

13. Vargas was elected National Treasurer shortly after American Airlines and US Airways merged.

14. Vargas was elected to a four-year term, took office in April of 2016 and left office July 1, 2018. He supported the National President—Bob Ross ("Ross")—as he was part of the Ross administration.

15. On or about March of 2019, APFA members Melissa Chinery-Burns ("Chinery-Burns") and Sandra Lee ("Lee") launched an investigation into Ross and his administration, which included Vargas as the APFA National Treasurer. With the assistance of the APFA National Officers, Chinery-Burns and Lee began to scour all financial records from his presidency in search of any impropriety.

16. The APFA National Officers granted Chinery-Burns and Lee access to Ross's and Vargas's private personal financial documents, paystubs, flight schedules, credit card documents, and rental car invoices. Among the disclosure of these documents made to the members included personal documents containing his social security number, Flight Schedules, bank account information, and other personally identifiable information.

17. In September of 2019, charges against Vargas were filed, but found to be untimely. In November of 2020, Chinery-Burns and Lee filed the same charges previously found untimely, including additional charges, against Vargas. Attached hereto and incorporated herein for all purposes is a true and correct copy of the Disciplinary Arbitration Award marked as Appendix 000062- 100.

18. Under the terms of the APFA Policy and Constitution, Ross and those in his administration charged by Chinery-Burns and Lee, could either fight the charges in arbitration or retire their career from American Airlines as flight attendants.

19. The charges brought by Chinery-Burns and Lee against Vargas included charges for having paid Ross under a contract between Ross and APFA for his resignation as National President.

Vargas was charged with "Allowing the payment to former National President Bob Ross thousands of dollars in Meal Expenses Allowance (MEA) and Special Assignment Fee ("SAF") when he was no longer working for APFA." (*See* Arbitration Award, Appendix 000062- 100).

20. That as part of this investigation, APFA hired an independent accounting firm to look into the accounts and confirm how much was overpaid to Ross and the national officers under his administration ("Ross Administration") which found, as a result of their investigation, that Ross was paid correctly *(See* Confidential Memo, Appendix 000101- 102).

21. That this independent accounting review was not produced as part of the arbitration, nor ever produced to the APFA Executive Committee and APFA Board of Directors, while the APFA national officers, Julie Hedrick, National President, Larry Salas, National Vice-President, Erik Harris, National Treasurer, and Josh Black, National Secretary, (collectively "National Officers") cited this review as grounds to pursue charges against Ross and Vargas because the Accounting Firm found he was overpaid, despite its obvious relevance.

22. That the purpose of pursuing charges against Ross, Vargas, and any supporters of the Ross Administration was to target any APFA members that oppose a merger between AFA (a multi-airline flight attendant union) and APFA. The effect of revealing extensive financial records and personal financial information, withholding pertinent documents from the accounting firm, and portraying false facts to Ross and Vargas was to silence these and all members that opposed a merger of APFA with AFA.

## Article VII Arbitration

23. Under Article VII of the APFA Constitution, charges are filed by a member, at the first regularly scheduled meeting of the APFA Executive Committee ("APFA EC"), the EC reviews the charges for its timeliness, specificity, and validity.

24. Charges brought within sixty (60) days from the date that the member knew or should have known those acts that gave rise to the violation are found timely filed. The APFA EC evaluates timeliness based on *all* charges filed. If any one of the charges are filed within sixty (60) days from the date the member knew of the acts that gave rise to the violation, then *all* charges are found timely. If the charges are found to be timely, valid, and specific, the charged party is then served notice and the matter proceeds to arbitration. Furthermore, the arbitration procedures state that the National Secretary shall set the time, place, and location for the hearing.

25. Chinery-Burns and Lee filed charges against Vargas outside the timeframe to meet the timeliness standard. Initially, Chinery-Burns and Lee filed these charges against Vargas in September of 2019. These initial charges were filed for violations relating to over-payments to the officers, including Ross, for the guaranteed monthly compensation for MEA (Meal Expense Allowance) and SAF (Special Assignment Fee). The APFA EC found these charges were untimely and did not proceed to Article VII Arbitration proceedings. Chinery-Burns and Lee filed a second set of charges in November of 2020 for these same charges encompassed in the first set of charges as well as additional charges. These charges were found timely and proceeded to an Art. VII Disciplinary Arbitration.

26. During the Art. VII Disciplinary Arbitration for Vargas, the National Treasurer, Erik Harris, failed to produce all pertinent documents to Vargas pertaining to his charges. This includes Harris's failure to produce the Confidential Memorandum which would have shown that Vargas's payments to Ross under his Transition Agreement were correct despite including the MEA and SAF.

27. Furthermore, the National Officers, in particular the National Treasurer, failed to turn over all pertinent documentation to Vargas. APFA and its National Officers arbitrated charges against Vargas and Ross they had evidence were not valid.

6

28. The Arbitrator in Vargas's arbitration refused to hear evidence, which was pertinent and material to the controversy, and exhibited behavior which prejudiced the respondent.

29. The award was obtained by corruption, fraud, or undue means.

## VII.

## CLAIM:  LABOR MANAGEMENT REPORTING DISCLOSURE ACT VIOLATIONS

28. Plaintiff incorporates all preceding paragraphs above.

29. Under 29 U.S.C. § 412 states that "[a]ny person whose rights secured by the provisions of this title have been infringed by any violation of this title may bring a civil action in a district court of the United States for such relief (including injunctions) as may be appropriate. Any such action against a labor organization shall be brought in the district court of the United States for the district where the alleged violation occurred, or where the principal office of such labor organization is located."

30. 29 U.S.C. § 411 of this act provides that "[n]o member of any labor organization may be fined, suspended, expelled, or otherwise disciplined except for nonpayment of dues by such organization or by any officer thereof unless such member has been (A) served with written specific charges; (B) given a reasonable time to prepare his defense; (C) afforded a full and fair hearing." (29 U.S.C. §411 (a)(5)).

31. This act further provides that "Every member of any labor organization shall have the right to meet and assemble freely with other members; and to express any views, arguments, or opinions; and to express at meetings of the labor organization his views, upon candidates in an election of the labor organization or upon any business properly before the meeting. . . ." (29 U.S.C. §411 (a)(2)).  The APFA

arbitration award found Vargas, breached his fiduciary duty by failing to maintain inventory lists for APFA furniture that he, in fact, did maintain, for calculating and making over-payments under Ross's Transition Agreement with APFA.

32. The APFA Arbitrator disallowed evidence of Vargas's procedures to maintain inventory, then found him guilty of a breach of fiduciary duty for failing to maintain inventory.

33. That insufficient evidence was presented regarding Vargas's alleged violations.

34. That APFA's arbitration proceedings violate the Labor Management Reporting Disclosure Act §101(a)(5) ("LMRDA"), as Plaintiff never received a full and fair hearing before being assessed with a fine or fee.

35. It is a violation of LMRDA §101(a)(5) to deny a member a full and fair hearing on the matter, and yet a charged party is not entitled to compel the evidence needed to be absolved.

36. APFA violated Plaintiff's rights under LMRDA §101(a)(5) in its efforts to conceal the financial documents by the charging party or by the union—a party that should be neutral through this process from the accused member.  It is also a violation of LMRDA §101(a)(5) for union officers to misrepresent the truth to the union's Board of Directors or Executive Committee.

37. LMRDA §529 states "It shall be unlawful for any labor organization, or any officer, agent, shop steward, or other representative of a labor organization, or any employee thereof to fine, suspend, expel, or otherwise discipline any of its members for exercising any rights to which he is entitled under the provision of this Act."

8

This otherwise discipline was in violation for exercising his LMRDA §101(a)(2) right to free speech and assembly or association.

38. Finally, it is a violation of LMRDA §101(a)(2) for the National Officers of a union failed to produce financial documents of a member to another member, pursue charges and hold an arbitration while withholding pertinent documents and misrepresenting the facts to the Board of Directors and the Executive Committee for the purpose of silencing a political faction within the union. This is a direct violation of a union member's right to free speech and assembly, and a violation of his right to due process.

39. Plaintiff suffered damages, including financial, emotional, and reputational damages. Plaintiff suffered a loss of his right to serve in an official capacity with the union. He was never offered the opportunity to receive a full and fair hearing before he was disciplined.

## VIII.

## CLAIM: BREACH OF UNION CONSITUTION

40. Plaintiff incorporates all preceding paragraphs above.

41. Based on the Court's Order issued on February 22, 2023, Docket No. 72 holding that the APFA Constitution is a Collective Bargaining Agreement between the National Union and the local airline bases, Plaintiff hereby updates his causes of action to establish the elements of a breach of duty of fair representation claim under 29 U.S.C. § 185. Plaintiff has exhausted all remedies available under the APFA Constitution as Plaintiff has completed his arbitration.

42. Defendant, APFA, represents Plaintiff in negotiating a collective bargaining agreement within the union.

43. The APFA Const. Art. II §3 (C)-(D) provides that all members shall have the right to individual privacy, due process, and equal representation.

44. In addition to the statutory duty, APFA is required to represent members of the union fairly and honestly. Defendants have a duty to created by federal law, contractual law, and state law. Defendants failed to ensure the disciplinary proceedings were fair and honest by revealing personally identifiable information and concealing pertinent exculpatory documentation, and intimidating witnesses.

45. Furthermore, APFA has a duty to safeguard private personally identifiable information like employee numbers and social security numbers, work schedules, member's primary residence, bank account and routing information, etc. APFA failed to safeguard this information properly by divulging it to third parties upon request.

46. Defendants, APFA, violated Plaintiff's right to privacy when it disclosed his personal information including his protected social security number to union members.

47. Defendants violated this duty by failing to ensure a fair disciplinary hearing with a minimal level of due process and disclosing private information about Plaintiff to third parties.

48. Defendants violated his rights to due process under the APFA Constitution by failing to appear and testify after being subpoenaed to do so.

49. The APFA Constitution Art. VII, Sec. 2 provides that charges must be brought within 60-days after a member knows or should have known of the charges that are filed. APFA denied Plaintiff his due process rights by allowing his charges to move forward and finding them timely filed despite evidence and testimony in the opening statement that these two members began investigations into Ross and Vargas in 2019, well over 12 months prior to filing Article VII charges against him.

50. Plaintiff has been fined, removed from office, and barred from holding union leadership positions ever again.

51. The award was obtained by corruption, fraud, or undue means.

52. Defendants' conduct was intentional and arbitrary, discriminatory, or in bad faith.

## IX.

**CLAIM: COMMON LAW BREACH OF FIDUCIARY DUTY, DEFAMATION, AND FRAUD**

53. Plaintiff incorporates all preceding paragraphs above.

54. Defendants owed Vargas a fiduciary duty as a member in good standing within the union based on federal law and under the APFA Constitution.

55. The National Officers, in-house and outside counsel, and the accounting firm conspired to create false documentation representing that Ross owed a debt that he did not owe. This spreadsheet was fabricated to justify initiating charges and disciplinary proceedings against the Ross Administration, which includes Plaintiff, unjustly. Defendants deliberately concealed documentation, and misrepresented the facts to Plaintiff, to the APFA BOD, and the APFA EC.

11

56. Defendants made material misrepresentations that Ross was overpaid and that this was determined by an accounting firm's review of the payments made to Ross. These misrepresentations were made to the Board of Directors and the Executive Committee prior to the Arbitration. Defendants further misrepresented that Vargas was responsible for these overpayments made to Ross and pursued charges against him on that basis, and that he failed to maintain a ledger or record of the APFA assets.

57. Defendants made these statements knowing that they were not true.

58. Defendants acted with the intent to misrepresent the facts to the Board of Directors, Executive Committee with the intent that these parties would detrimentally rely on these facts to charge and render an arbitration award against Plaintiff.

59. Defendants intimidated, harassed, and retaliated against witnesses called to and willing to testify to facts on behalf of the Plaintiff.

60. The APFA and the National Officers all knew the statements were false at the time they were made as they had all received the Confidential Memo. The National Officers' statements made to the APFA BOD were defamatory and fraudulent.

61. Defendants acted with the intent to injure and discredit or defame Plaintiff to discredit Ross and remove Ross from office. As a result, Plaintiff was charged, and an union disciplinary arbitration award was issued because of Defendants' misrepresentations and fraudulent conduct.

62. Plaintiff has been fined and barred from holding union leadership positions ever again.

63. Defendants' conduct was intentional and made in bad faith.

## CONCLUSION AND PRAYER

WHEREFORE, PREMISES CONSIDERED, Plaintiff hereby prays as follows:

1. For injunctive relief for unlawful collection activity, credit reporting, collection of the union disciplinary award, unlawful labor practices, fraud, injunction on ban from running for office in violation of the federal law, right to privacy and non-disparagement of Plaintiff.

2. That Plaintiff recover a judgment against Defendants, jointly and severally, for monetary damages and violations which resulted in damages of $200,000, all additional court costs and all attorney's fees incurred in this cause or upon appeal;

3. That Plaintiff recover a judgment against Defendants jointly and severally for punitive damages.

4. Such other and further relief, at law or in equity, to which Plaintiff may be justly entitled to receive.

Respectfully submitted,
K.D. PHILLIPS LAW FIRM, PLLC

By: /s/ Kerri Phillips
Kerri Phillips
Texas Bar No. 24065906
Email: kerri@KDphillipslaw.com
6010 W. Spring Creek Parkway
Plano, Texas 75024
Phone: (972) 327-5800
Fax: (940) 400-0089
For Service of Filings:
notice@KDphillipslaw.com
**ATTORNEY FOR PLAINTIFF**