IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
FT. WORTH DIVISION

| | |
|---|---|
| EUGENIO VARGAS<br>Plaintiff, | §<br>§<br>§<br>§<br>§<br>§<br>§ Case No. 4:22-CV00430<br>§ |
| V. | §<br>§ |
| ASSOCIATION OF PROFESSIONAL<br>FLIGHT ATTENDANTS, JULIE<br>HEDRICK, ERIK HARRIS<br>Defendants. | §<br>§<br>§<br>§<br>§<br>§ |

## PLAINTIFF'S AMENDED COMPLAINT

**NOW COMES** Eugenio Vargas, Plaintiff, in the above-entitled and numbered cause, files this Plaintiff's Amended Complaint, and shows the Court:

### I.

### INTRODUCTION

1. This action seeks redress for unlawful union practices of the Labor Management Reporting and Disclosure Act (hereinafter "LMRDA"), U.S.C. §§101(a), 412 and 609, and damages resulting from various torts brought under state law including intentional interference with a contract, breach of a union constitution, defamation.

### II.

### PARTIES

**Exhibit A**

2. Plaintiff, Eugenio Vargas ("Vargas") was employed with Association of Professional Flight Attendants in the state of Texas and a citizen of Texas during his employment. His current primary residence is in the State of Texas and is 1616 Brookhaven Cir. Bedford, Texas 76022.

3. Defendant, Association of Professional Flight Attendants ("APFA") was the Plaintiff's employer and his labor union, for which he is a member in good standing. It may be served by and through its current National President, Julie Hedrick at APFA headquarters at 1004 W. Euless Blvd, Euless, Texas 76040.

4. Defendant, Julie Hedrick, ("Hedrick") is the National President of APFA and can be served at her place of employment at APFA headquarters 1004 W. Euless Blvd, Euless, Texas 76040.

5. Defendant, Erik Harris ("Harris") is the National Treasurer of APFA and can be served at his place of employment at APFA headquarters 1004 W. Euless Blvd, Euless, Texas 76040.

### III.
### JURISDICTION AND VENUE

6. Plaintiff files with this Complaint in the Northern District Federal Court - Fort Worth Division based on Federal Question.

7. Plaintiff brings claims under jurisdiction of this action which is conferred on this court by virtue of the Labor Management Reporting and Disclosure Act, U.S.C. §§101(a)(5) 412 and 609.

8. The amount in controversy is more than $75,000, exclusive of interest and costs.

**Exhibit A**

## IV.

## CONDITIONS PRECEDENT

9. All conditions precedent to Plaintiff's recovery against Defendants have been fully performed.

## V.

## FACTUAL BACKGROUND

10. Bob Ross was elected by the Membership in April of 2016 to serve as National President of the Association of Professional Flight Attendants' Union ("APFA") and opposed any merger between APFA and AFA (a multi-airline flight attendants' union).

11. Vargas was elected National Treasurer shortly after American Airlines and US Airways merged.

12. Vargas was elected to a four-year term, took office in April of 2016. He supported the National President—Bob Ross ("Ross")—as he was part of his administration.

13. On or about March of 2019, APFA members Melissa Chinery-Burns ("Chinery-Burns") and Sandra Lee ("Lee") launched an investigation into Ross and his administration, which included Vargas as the APFA National Treasurer. With the assistance of Harris, the APFA National Treasurer, Chinery-Burns and Lee began to scour all financial records from his presidency in search of any impropriety.

14. That the APFA national officers granted Chinery-Burns and Lee access to Ross and Vargas's private personal financial documents, credit card documents and rental car invoices. Among the disclosure of these documents made to the members included personal documents containing his social security number and bank account information as well as other personally identifiable information.

**Exhibit A**

15. In September of 2019, charges against Vargas were filed, but found to be untimely. In November of 2020, Chinery-Burns and Lee filed the same charges previously found untimely, including additional charges, against Vargas. Attached hereto and incorporated herein for all purposes is a true and correct copy of the Disciplinary Arbitration Award marked as Exhibit A.

16. Under the terms of the APFA Policy and Constitution, Ross and those in his administration charged by Chinery-Burns and Lee, could either fight the charges in arbitration or retire their career from American Airlines as flight attendants.

17. The charges brought by Chinery-Burns and Lee against Vargas included charges for having paid Ross under a contract between Ross and APFA for his resignation as National President. Vargas was charged with "Allowing the payment to former National President Bob Ross thousands of dollars in Meal Expenses Allowance (MEA) and Special Assignment Fee ("SAF") when he was no longer working for APFA." (*See* Arbitration Award, Ex. A).

18. That as part of this investigation, APFA hired an independent accounting firm to look into the accounts and confirm how much was overpaid to Ross and the national officers under his administration, which found, as a result of their investigation, that Ross was paid correctly *(See* "Confidential Memorandum", Ex. B).

19. That this independent accounting review was not produced as part of the arbitration, nor ever produced to the APFA Executive Committee and APFA Board of Directors, while the APFA national officers under the Hedrick Administration cited this review as grounds to pursue charges against Ross and Vargas because the Accounting Firm found he was overpaid, despite its obvious relevance because it was not supportive of the APFA's position.

20. That the purpose of pursuing charges against Ross, Vargas, and any supporters of the Ross Administration was to target any APFA members that oppose a merger between AFA (a multi-

**Exhibit A**

airline flight attendant union) and APFA. The effect of revealing extensive financial records and personal financial information, withholding pertinent documents from the accounting firm, and portraying false facts to Ross and Vargas was to silence these and all members that opposed a merger of APFA with AFA.

### Article VII Arbitration

21. That under Article VII charge is filed by a member, at the first regularly scheduled meeting of the APFA Executive Committee ("APFA EC"), the EC reviews the charges for its timeliness, specificity, and validity.

22. Charges brought within sixty (60) days from the date that the member knew or should have known those acts that gave rise to the violation are found timely filed. The APFA EC evaluates timeliness based on *all* charges filed. If any one of the charges are found to be filed within sixty (60) days from the date the member knew of the acts that gave rise to the violation, then *all* charges are found timely. If the charges are found to be timely, valid, and specific, the charged party is then served notice and the matter proceeds to arbitration. Furthermore, the arbitration procedures state that the National Secretary shall set the time, place, and location for the hearing.

23. Chinery-Burns and Lee filed charges against Vargas outside the timeframe to meet the timeliness standard. Initially, Chinery-Burns and Lee filed these charges against Vargas in September of 2019. These initial charges were filed for violations relating to over-payments to the officers, including Ross, for the guaranteed monthly compensation for MEA (Meal Expense Allowance) and SAF (Special Assignment Fee). The APFA EC found these charges were untimely and did not proceed to Article VII Arbitration proceedings. Chinery-Burns and Lee filed a second set of charges in November of 2020 for these same charges encompassed in the first set of charges as

well as additional charges. These charges were found timely and proceeded to an Art. VII Disciplinary Arbitration.

24. During the Art. VII Disciplinary Arbitration for Vargas, the National Treasurer, Erik Harris, failed to produce all pertinent documents to Vargas pertaining to his charges. This includes Harris's failure to produce the Confidential Memorandum which would have shown that Vargas's payments to Ross under his Transition Agreement were correct despite including the MEA and SAF.

25. Furthermore, Melissa Chinery and Sandra Lee failed to turn over all pertinent documentation to Vargas, and arbitrated charges against Vargas and Ross they had evidence were not valid.

26. The Arbitrator in Vargas's arbitration refused to hear evidence, which was pertinent and material to the controversy, and exhibited behavior which prejudiced the respondent.

27. The award was obtained by corruption, fraud, or undue means.

## VII.

### CLAIM: LABOR MANAGEMENT REPORTING DISCLOSURE ACT VIOLATIONS

28. Plaintiff incorporates all preceding paragraphs above.

29. Under 29 U.S.C. § 412 states that "[a]ny person whose rights secured by the provisions of this title have been infringed by any violation of this title may bring a civil action in a district court of the United States for such relief (including injunctions) as may be appropriate. Any such action against a labor organization shall be brought in the district court of the United States for the district where the alleged violation occurred, or where the principal office of such labor organization is located."

**Exhibit A**

30. 29 U.S.C. § 411 of this act provides that "[n]o member of any labor organization may be fined, suspended, expelled, or otherwise disciplined except for nonpayment of dues by such organization or by any officer thereof unless such member has been (A) served with written specific charges; (B) given a reasonable time to prepare his defense; (C) afforded a full and fair hearing." (29 U.S.C. §411 (a)(5)).

31. This act further provides that "Every member of any labor organization shall have the right to meet and assemble freely with other members; and to express any views, arguments, or opinions; and to express at meetings of the labor organization his views, upon candidates in an election of the labor organization or upon any business properly before the meeting. . . ." (29 U.S.C. §411 (a)(2)). The APFA arbitration award found Vargas, breached his fiduciary duty by failing to maintain inventory lists for APFA furniture that he, in fact, did maintain, for calculating and making over-payments under Ross's Transition Agreement with APFA.

32. The APFA Arbitrator disallowed evidence of Vargas's procedures to maintain inventory, then found him guilty of a breach of fiduciary duty for failing to maintain inventory.

33. That insufficient evidence was presented regarding Vargas's alleged violations.

34. That APFA's arbitration proceedings violate the Labor Management Reporting Disclosure Act §101(a)(5) ("LMRDA"), as Plaintiff never a full and fair hearing before being assessed with a fine or fee.

35. There is no requirement and no means to sanction anyone for failure to comply with a subpoena as long as he or she live outside of 150 miles of the arbitration site. The witnesses in this case are mostly flight attendants—many live outside the Dallas-Fort Worth area, and even outside the state of Texas. Furthermore, the charged

**Exhibit A**

party has no means to compel or demand sanctions against a witness or a party that fails to produce documents from a subpoena.

36. It is a violation of LMRDA §101(a)(5) to not offer a full and fair hearing on the matter, and yet a charged party is not entitled to compel the evidence needed to absolve oneself.

37. APFA violated Plaintiff's rights under LMRDA §101(a)(5) in its efforts to conceal the financial documents by the charging party or by the union—a party that should be neutral through this process from the accused member. It is also a violation of LMRDA §101(a)(5) for union officers to misrepresent the truth to the union's Board of Directors or Executive Committee.

38. LMRDA §529 states " It shall be unlawful for any labor organization, or any officer, agent, shop steward, or other representative of a labor organization, or any employee thereof to fine, suspend, expel, or otherwise discipline any of its members for exercising any rights to which he is entitled under the provision of this Act."

39. Finally, it is a violation of LMRDA §101(a)(2) for the National Officers of a union to produce financial documents of a member to another member, pursue charges and hold an arbitration while withholding pertinent documents and misrepresenting the facts to the Board of Directors and the Executive Committee for the purpose of silencing a political faction within the union. This is a direct violation of a union member's right to free speech and assembly.

40. Damages suffered damages, including financial, emotional, and reputational damages, by Plaintiff. In particular, Plaintiff has been suffered a loss of his right ever serve in an official capacity the union without notice and a fair hearing in compliance with LMRDA §101(a)(5).

## VIII.

## CLAIM: BREACH OF UNION CONSITUTION

41. Plaintiff incorporates all preceding paragraphs above.

42. The APFA Constitution provides in Art. II §3 (C)-(D) provides that all members shall have the right to individual privacy, due process, and equal representation.

43. Defendants violated Plaintiff's due process rights intentionally when it withheld evidence from the accounting firm that its opinion was that he did not owe the debt under his Transition Agreement.

44. APFA further violated due process by misrepresenting the facts to Plaintiff and the union BOD and EC to charge and collect monies and disparage Plaintiff.

45. Defendant, APFA, violated Plaintiff's due process rights in denying him access to documentation Plaintiff subpoenaed and had a duty to disclose as a neutral party required to ensure the fairness of the arbitration proceedings, as it never gave him a copy of the Confidential Memorandum.

46. Defendants, Hedrick and Harris violated Plaintiff's due process by concealing documents that would have exonerated Vargas from the charges in the proceedings. The national officers had a duty to ensure that the procedures were conducted in a fair and equitable manner, to ensure the integrity of the arbitration process, and they failed to uphold their duty and breached Vargas' right to fair proceedings.

47. Defendants, APFA, violated Plaintiff's right to privacy when it disclosed his non-public personal information including his social security number to union members.

## IX.

**CLAIM:  COMMON LAW BREACH OF FIDUCIARY DUTY AND FRAUD**

48. Plaintiff incorporates all preceding paragraphs above.

**Exhibit A**

49. Defendants, APFA, the national officers, in-house and outside counsel for APFA all made statements that were material that Ross was overpaid and Vargas was responsible for the overpayment to Ross.

50. Defendants, APFA, the national officers, in-house and outside counsel for APFA violated their fiduciary duty because they made false statements to Ross, Vargas and third-parties regarding debt that Plaintiff paid to Ross that he was owed under Ross's Transition Agreement.

51. The APFA, the national officers, in-house and outside counsel all knew the statements were false as they were in possession of the Confidential Memorandum and failed to disclose the Confidential Memorandum to the APFA BOD, and APFA EC. The national officers' statements made to the APFA BOD were defamatory and fraudulent. Based on the elected positions both Julie Hedrick and Erik Harris had a duty to disclose this document and explain the results of the review, but issued and informed people that the accounting firm stated the opposite.

52. Defendants, acted with the intent to misrepresent, and cause Plaintiff, the Board, Executive Committee, and the Arbitrator to detrimentally rely on, and therefore charge, and render an arbitration award against Plaintiff. Plaintiff suffered damages

53. In so acting, the National Officers have breached their fiduciary duty to the APFA Board of Directors, the Executive Committee, and the APFA membership—but most importantly to Vargas, a member of APFA in good standing.

54. Defendants did, in fact, breach their fiduciary duty to Vargas as a member in good standing, committed fraud, by causing damages, injuring his reputation, causing

him to terminate his position from APFA leadership and causing great emotional distress to Plaintiff as a result.

## CONCLUSION AND PRAYER

WHEREFORE, PREMISES CONSIDERED, Defendant hereby prays as follows:

i. For injunctive relief for unlawful collection activity, labor practices, fraud, right to privacy and non-disparagement of Plaintiff;

ii. That Plaintiff recover a judgment against Defendants, jointly and severally, for monetary damages and violations which resulted in damages of $50,000, all additional court costs and all attorney's fees incurred in this cause or upon appeal;

iii. That Plaintiff recover a judgment against Defendants jointly and severally for punitive damages;

iv. Such other and further relief, at law or in equity, to which Plaintiff may be justly entitled to receive.

**Exhibit A**

Respectfully submitted,
K.D. PHILLIPS LAW FIRM, PLLC

By: /s/ Kerri Phillips
Kerri Phillips
Texas Bar No. 24065906
Email: kerri@KDphillipslaw.com

By: /s/ Heather Abeu
Heather Abreu*
Texas Bar No. 24122577
Email: heather@KDphillipslaw.com
*Admitted Pro Hac Vice

5700 Tennyson Parkway, Suite 300
Plano, Texas 75024
Phone: (972) 327-5800
Fax: (940) 400-0089
For Service of Filings:
notice@KDphillipslaw.com
**ATTORNEYS FOR PLAINTIFF**

**Exhibit A**