0IN THE UNITED STATES DISTRICT
COURT FOR THE NORTHERN DISTRICT
OF TEXAS FORT WORTH DIVISION

| | | |
|---|---|---|
| EUGENIO VARGAS, | § | |
| | § | |
| | § | Civil Action No. 4:22-cv-430-Y |
| Plaintiff/Counterclaim | § | |
| Defendant, | § | Judge Terry R. Means |
| | § | |
| v. | § | |
| | § | |
| ASSOCIATION OF PROFESSIONAL | § | |
| FLIGHT ATTENDANTS, *et al.*, | § | |
| | § | |
| Defendants/Counterclaim | | |
| Plaintiff. | | |

---

### PLAINTIFF'S BRIEF IN SUPPORT OF AMENDED MOTION TO COMPEL DEFENDANTS' PRODUCTION OF DOCUMENTS

Now comes the Plaintiff, EUGENIO VARGAS (hereinafter "Plaintiff" or "VARGAS"), by and through undersigned counsel, pursuant to Federal Rules of Civil Procedure 34, 37, and Local Rules 5.2, 7.1, 7.2, 53.1, 56.3, 56.6 and files his Brief in Support of his Amended Motion to Compel Defendants Production of Documents from ASSOCIATION OF PROFESSIONAL FLIGHT ATTENDANTS (hereinafter "APFA" or the "Union"), Julie Hedrick ("Hedrick") and Erik Harris ("Harris") (hereinafter collectively referred to as "Defendants"). Specifically, Defendants failed to provide responses to Plaintiff's discovery requests served on July 29, 2022. Despite conferral with Defendants, as detailed below, Defendants failed to provide any documents responsive to Plaintiff's requests for production under the improper objection(s) of *"vague, ambiguous, overly broad, and not reasonably focused or tailored to lead to the discovery of information relevant to any claim or defense of the parties."* (*See* Appendix Pgs. 15-17). Plaintiff seeks information pertinent to the actions taken against the Ross Administration.[1]

---

[1] "The Ross Administration" has previously been, and hereinafter will be, defined as the phrase is commonly known among the APFA membership: the four APFA members that served as National Officers from April 1, 2016 to June

1

Plaintiff is entitled to the documentation requested in his First Amended First Requests For Production as the requested information is proportional to the needs of the case. Thus, Plaintiff seeks an order compelling Defendant to provide all documentation responsive to Plaintiff's First Request for Production No. 1, 2, and 3. In support thereof, Plaintiff states the following:

---

1, 2018—which included Plaintiff, Eugenio Vargas as National Treasurer, Robert "Bob" Ross as National President, Nena Martin as National Vice-President, and Marcy Dunaway as National Secretary. Ms. Dunaway resigned from her position as American Airlines Flight Attendant, and therefore is no longer a member of APFA.

# Contents

Table of Authorities ..................................................................................................3
Introduction and Rule 37(a) Certificate of Conference................................................5
Background...............................................................................................................5
Argument and Authorities. ........................................................................................9
    Defendant Failed to Answer Requests for Production and Has Otherwise Failed to Show How
    Plaintiff's Request is Not Relevant or Otherwise Objectionable .............................................15
CONCLUSION........................................................................................................19
    Local Rule 7.1(b) Conferral and Certificate of Conference ....................................20

# Table of Authorities

**Authorities**

Dennis v. U.S., 3:16-cv-3148-G-BN (N.D. Tex. Oct. 23, 2017)       9

McGowan v. SMU, 3:18-CV-141-N (N. D. Tex. May 6, 2020)    9, 10, 12, 13

McLeod, Alexander, Powel & Apffel, P.C. v. Quarles, 894 F.2d 1482 (5th Cir. 1990)    9

OrthoAccel Tech., Inc. v. Propel Orthodontics, LLC, 4:16-cv-00350-ALM (E.D.    9, 11
    Tex. Apr. 4, 2017).

**Regulations & Statutes**

29 U.S.C. § 501    11

**Court Rules**

Fed. R. Civ. P. 34    1, 10

Fed. R. Civ. P. 34(a)    1, 9

Fed. R. Civ. P. 37    1, 5, 9, 10

Fed. R. Civ. P. 37(a)    5

Fed. R. Civ. P. 37(a)(3)(B)    1, 10

L.R. 5.2                                                                                          1

L.R. 7.1                                                                                          1

L.R. 7.2                                                                                          1

L.R. 53.1                                                                                         1

L.R. 56.3                                                                                         1

L.R. 56.6                                                                                         1

## Introduction and Rule 37(a) Certificate of Conference

The subject matter of this motion relates to a long-existing attempt by Plaintiff to obtain discovery from Defendant. These matters have already been brought to the Court's attention through Plaintiff's Response to Motion to Stay Discovery in the *Ross v. APFA, et al* case. (*See* Doc. Nos. 61, PAGEID 1661-62). This motion is expressly being brought pursuant to Rule 37 as well as the Court's inherent powers. Notice of this motion is being served on Plaintiff's counsel as noted below. The undersigned hereby certifies that he has conferred with counsel for Defendants, most recently on October 15, 2023 in good faith and that every effort has been made to obtain the discovery that forms the basis of this motion without the need for court intervention.

## Background

In his Complaint, Plaintiff alleges his union, and its leaders violated his rights as a union member, among other claims, under federal law through wrongful discipline for his exercise of free speech and association rights, depriving him of due process and a fair hearing, and breached their fiduciary duty to him. Defendants claimed Plaintiff overpaid Robert "Bob" Ross upon his exit from office under his confidential Transition Agreement. Plaintiff was charged by his union and subjected to a disciplinary arbitration hearing that subsequently resulted in an award to the union for $30,963.03.

During the review of the charges by the APFA Board of Directors, and the APFA Executive Committee documents pertinent to the allegations against him were withheld from the APFA leadership. During Plaintiff's disciplinary hearing Defendants intimidated witnesses and withheld exculpatory documents, including a confidential memorandum dated October 22, 2020 from an accounting firm—Woods, Stephens, & O'Neil, L.L.P.—that confirmed Plaintiff did not violate policy by overpaying Robert "Bob" Ross ("Confidential Memo"). The Confidential Memo stated *"these payments appear appropriate and in compliance with the transition*

*agreement."* (Doc. 1-2, PAGEID 52).  Plaintiff did not discover the Confidential Memo existed until after his Arbitration Award was rendered.  He now asserts that withholding this document deprived him of a fair hearing.  He also argues the union wanted to mar his reputation due to his association with the Ross Administration[2] and the threat their popularity poses. [*See* Docs. 1, 76].  The Ross Administration affiliates as a political group within the union in opposition to the political group currently in power.  Plaintiff asserts that Defendants' conduct resulted in an unlawful discipline designed to obstruct his free speech and association rights within the union. Most importantly Plaintiff cannot ever run for office or hold the National Presidential seat— which is the real motivation for the arbitration, as this would mean that Plaintiff could prevent a possible merger of AFA[3] and APFA[4] as the National President.  At issue in this Motion is Defendants' inadequate production of documentation, or a proper objection(s), to Request for Production No. 1,  2 and 3 which seeks the following documents:

> "1. All documents, including but not limited to policy documents, insurance contracts, addendums, exclusions, conditions, and declarations pages that afford liability insurance to either APFA, or any one of the current or former officers, board members, or any authorized agents, or employees acting on behalf of APFA for purposes of protection in compliance with Labor Management Reporting and Disclosure Act 502(a).
>
> 2. All documents, correspondence, and communications between the accounting firm of Wood, Stephens & O'Neil, L.L.P. and any APFA official, whether current or former, elected or appointed; or any APFA counsel, whether in-house or outside counsel, concerning the Ross Administration.
>
> 3.  All communications between any APFA officials, whether current or former, elected or appointed; or any APFA counsel, whether in-house or outside counsel, which disseminated any communications or documentation from Wood, Stephens & O'Neil, L.L.P. concerning the Ross Administration." (See Appendix Pg. 8).

---

[2] Eugenio Vargas served as National Treasurer while Robert "Bob" Ross was National President from April 1, 2016 to July 1, 2018.  The Ross Administration was elected with more than 70% vote of the membership and oppose the Hedrick Administration, currently in office.

[3] Association of Flight Attendants – Competing multi-airline Flight Attendants' union that Plaintiff alleges is attempting a hostile take-over of the Association of Professional Flight Attendants ("APFA"). It is the possibility of a merger between AFA and AFPA that has created a divide between the APFA membership into pro-AFA and anti-AFA factions.  The motivations for discriminatory actions are based on these political agendas of the parties.

[4] Association of Professional Flight Attendants – An Independent National Flight Attendants union with exclusive collective bargaining on behalf of the Flight Attendants for American Airlines, Inc. (see footnote above).

Plaintiff's Request for Production No. 1, 2 and No. 3 requests information that is proportional to the needs of his claims. More specifically, documents identifying other APFA leadership, or members, who knew of the Confidential Memo or any other documentation that absolved Plaintiff of any wrong doing. The requests seek documents and/or communications that expose those with any notice of any exculpatory documents concealed from the Plaintiff. It would also indicate Defendants' intentions, feelings, and ultimate goals in relation to their actions toward the Ross Administration.

On July 29, 2022, Plaintiff served his First Amended First Request for Production on Defendants. On August 26, 2022, Defendants' Counsel produced responses to Plaintiff's First Amended First Request for Production and no documents. (*See* Appendix Pgs. 15-17). In their responses, Defendants raised claims of privilege and objections to each and every Requests for Production, however failed to provide a privilege log and improperly objected based on obscurity, relevancy, vagueness, and overly broad requests being made.

On August 14, 2023, Plaintiff's Counsel conferred with Defendants' Counsel via email regarding the discovery disputes. (*See* Appendix Pgs. 27-29). Defendants' counsel responded on August 15, 2023 and stated that he would get back regarding this matter. (*See* Appendix Pgs. 26-27). After no response was forthcoming, Plaintiff's counsel emailed a second time on August 17, 2023 and Defendants' counsel requested a telephone call to discuss the requested documents. (*See* Appendix Pgs. 25-26).

Defendant's counsel called Plaintiff's counsel on August 23, 2023 to discuss the ongoing issues. The phone call on August 23, 2023 was documented in an email on August 25, 2023 wherein all issues related to discovery were rectified, except for those documents related to the communications and documents between APFA and Woods, Stephens, and O'Neil as well as those responsive of Plaintiff's requests for the internal distribution and discussion surrounding

7

the Confidential Memorandum from Hal O'Neil. (*See* Appendix Pgs. 21-23).  On August 25, 2023, Plaintiff's counsel rectified all issues relating to discovery that Defendants' counsel had raised and turned over every document in Counsel's possession. (*See* Appendix Pgs. 21-23).

As for Defendants' counsel, however no documents were produced until September 1, 2023.  (*See* Appendix Pgs. 21-23).  In terms of the responsive documents, none were produced for Request for Production 1— notwithstanding Defendant's Counsel agreed to produce the insurance documents requested in RFP 1.  (*See* Appendix Pg. 40). Only 99 documents with no supplements thereto have been produced to date in response to Requests for Production 2 and 3, and Defendant's counsel.  The documents were not in their original true and correct form— redactions were made with no legal basis to do so.  Notably missing from these communications are any emails from the National President, Julie Hedrick.  Defendants failed to produce any privilege log asserting what documents and what communications have been redacted or removed based on privilege and which are not being produced based on privilege.

While the parties were able to confer, no resolution was reached as to Defendants' lack of any adequate production of documents.  In essence, Defendant contends that the requests for documentation are overly-board—however specificity was clarified during the conference call without appeasing Defendants' counsel.  Regarding Defendants' concerns, Plaintiff produced all documents in Plaintiff's counsel's possession. **Yet, Defendants failed to produce insurance documents and communications that Defendants' Counsel agreed to produce. (*See* Appendix Pg. 40).**  Those limited documents that were produced were heavily redacted or altered emails without notation for any redactions nor any privilege log provided.  Plaintiff's requests are proportional to the needs of this case and if not provided will leave him unable to adequately prepare for trial. Plaintiff will undoubtedly be prejudiced if Defendants are allowed to circumvent

standard procedural requirements, production, and disclosure of documents—to maintain a flippant disregard of the procedural laws, and authority of this Court.

The LMRDA requires insurance coverage or surety over officers for wrongful acts under 29 U.S.C. 502(a). Plaintiff requested copies of these policies that would cover Plaintiff and Defendants "for purposes of protection in compliance with Labor Management Reporting and Disclosure Act 502(a)." As confirmed on APFA's public LM-2 filings with the U.S. Department of Labor, the union maintains this insurance as noted in Question 14 on the LM-2 form, however Plaintiff failed to turn over these documents.[5] It is true that RLI—APFA's insurance agent—did produce insurance policies in response to the subpoena Plaintiff was forced to serve upon them, this does not alleviate Defendants obligation to comply with Plaintiff's discovery requests to produce documentation requested. The production of these insurance policies and any claims made thereunder relate to the heart of the matter in this case—wrongdoing of officers albeit by Plaintiff or the Defendant. Considering the union is the custodian of record and is required to maintain records on behalf of the union under 29 U.S.C. 436—the union maintains these documents and must turn them over. Furthermore, the Defendant's counsel agreed to produce these documents and yet continues to refuse to do so. (*See* Appendix Pg. 40).

In compliance with the Court's Order issued on September 8, 2023, Plaintiff's counsel reached out and spoke to Defendant's counsel through email on September 12, 2023 (Appendix Pg 31); September 13, 2023 (Appendix Pg 31), via telephone on September 15, 2023 (Appendix Pg 31), via email on September 18, 2023, September 20, 2023 (Appendix Pgs 50-51), September

---

[5] The LM-2 Filings require reporting whether or not an annual audit has been conducted under **Question 12.** Under **Section 69,** on the last page of each LM-2 form, APFA cites that the accounting firm that conducted the audit was Woods, Stephens, and O'Neil.
2023 - https://olmsapps.dol.gov/query/orgReport.do?rptId=869753&rptForm=LM2Form
2022 – https://olmsapps.dol.gov/query/orgReport.do?rptId=840723&rptForm=LM2Form
2021 - https://olmsapps.dol.gov/query/orgReport.do?rptId=773865&rptForm=LM2Form
2020 - https://olmsapps.dol.gov/query/orgReport.do?rptId=731533&rptForm=LM2Form

22, 2023, October 2, 2023, October 12, 2023, and October 15, 2023.  Plaintiff's Counsel informed Defendant's counsel that "There are multiple emails. . . there are emails missing, there are communications missing throughout your discovery you have produced. It looks like there are blank spots where there shouldn't be. There are blank spots where there shouldn't be. It looks like it has been tampered with.  And I. . .typically I try to note redactions.  I don't see any noted redactions."  Samples of the documents produced are attached in the Appendix for the Court's review to understand the scope and review the appearance and limited amount of the documents produced. The following issues continue to persist with the document produced:

- No insurance has been produced, despite Defendants' counsel agreeing to producing it, he continues to withhold insurance documents.

- Several documents and communications were withheld.

- Documents were withheld, either those attached or referenced within emails but not included within the document production.  These documents should be produced as they were relied upon in calculations, or were attached to communications (Appendix pp. 75, 76, 78, 79).

- Missing emails containing the initial requests for audits on the various Ross Administration officers or discussions about the audits were included. (Appendix pp. 73-80)

- Reviews, communications, or results of Ross's 401k payment review from 2018 (Appendix pp. 68).

In essence the breadth of the evidence is wholly disjointed.  There are reply emails with no original emails produced (Appendix pg. 73-74).  The original email and the following emails seem to be followed with large white gaps that defy logic for any standard export to a PDF, yet no notation was made of any redaction.  (Appendix pp. 80-93).  The document marked APFA 3 appears to have attachments that were not included in the production of documents and are missing. (Appendix pp. 75).  The document marked APFA 4 references worksheets that were also never included in the documents produced. (Appendix pp. 76).   Document marked as APFA 1 shows Craig Gunter scheduling a conference call with counsel and presumably Liz Geiss to discuss

10

calculations for the Ross Administration officers' overpayment payouts, however there are no communications requesting the audit or calculations be done.  (Appendix pp. 73-79).  There are no discussions about how the work Hal O'Neil is supposed to be done. (Appendix pp. 73-79). There are no emails about the need for this audit, no set up for the services, no explanation of what is needed or expected, no agreement on what needs to be done—nothing. (Appendix pp. 73-79). There are no emails where Craig Gunter requests Hal O'Neil's services explaining what he seeks and why.  No discussion with the officers about retaining Hal O'Neil's accounting firm for a review—nothing.  No emails to and from Mr. Richards with Mr. Hal O'Neil and Mr. Gunter scheduling a good time to call. (Appendix pp. 73-79).  There are references to documents, forms, calculations, attachments, additional information, payroll summaries, annual salaries amount, "Jeff's work product", charts, worksheets, etc.—but none of that was produced.  (Appendix pp. 73-84).  In essence, the most compelling evidence that the other side is withholding evidence, is the lack of evidence itself.  Defendants produced a total of *six email threads* in response to these two requests for production.

The same can be said of the overpayment calculations for the Ross Transition Agreement. There are no emails where Mr. Harris requests Mr. O'Neil to conduct an audit of Mr. Ross's Transition Agreement either.  The same is true in terms of a discussion regarding the Ross Confidential Transition Agreement—this apparent email or communication appears to have been to be missing. (Appendix pp. 80-81). There are a few communications in which there are mention of attachments that are missing, emails that were previously sent, that are not included, and notably unknown or missing communications that should be included.  (Appendix pp. 73-84).

As the Court can also view from evidence provided by Ross while he sat on the Board of Directors, Hal O'Neil was hired to also conduct a review of Ross's 401k contributions, however these reviews were never provided to Plaintiff either.  (Appendix pp. 67-72).      Furthermore,

Defendant never sent Plaintiff a copy of any insurance policy, in compliance with request for production number 1. Defendant's counsel agreed to produce these documents, but has not not complied. Defendant's counsel has not supplemented his original responses to Plaintiff's requests for production 1, 2, or 3 since entry of the court's order on September 8, 2023, therefore Plaintiff asks for an order compelling Defendant to produce documents responsive to Plaintiff's discovery requests.

## Argument and Authorities

The Federal Rules of Civil Procedure allow the parties to "obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case." Fed. R. Civ. P. 26(b)(1); McGowan v. SMU, 3:18-CV-141-N (N. D. Tex. May 6, 2020) at *2. (See App. Pgs. 43-45). A litigant may request the production of documents falling "within the scope of Rule 26(b)" from another party if the documents are in that party's "possession, custody, or control." FED. R. CIV. P. 34(a). The Federal Rules of Civil Procedure further provide for a proportionality standard for discovery. Fed. R. Civ. P. 26(b)(1); Dennis v. U.S., 3:16-cv-3148-G-BN (N.D. Tex. Oct. 23, 2017) (See App. Pgs. 32-42).; OrthoAccel Techn., Inc. v. Propel Orthodontics, LLC, 4:16-cv-00350-ALM (E.D. Tex. Apr. 4, 2017) at *5. (See App. Pgs. 46-49). The Fifth Circuit requires the party seeking to prevent discovery to specify why the discovery is not relevant or show that it fails the proportionality requirement. McLeod, Alexander, Powel & Apffel, P.C. v. Quarles, 894 F.2d 1482, 1485 (5th Cir. 1990). "A district court has wide discretion to supervise discovery and must limit discovery if it would be unreasonably cumulative, could be obtained more easily from a different source, or if the burden or expense of the proposed discovery outweighs its potential benefit." See FED. R. CIV. P. 26(b)(2)(C). McGowan at 2. (See App. Pgs. 43-45).

Furthermore, the Federal Rule of Civil Procedure 37 provides in part:

(a) MOTION FOR AN ORDER COMPELLING DISCLOSURE OR DISCOVERY.

(1) *In General.* On notice to other parties and all affected persons, a party may move for an order compelling disclosure or discovery. The motion must include a certification that the movant has in good faith conferred or attempted to confer with the person or party failing to make disclosure or   discovery in an effort to obtain it without court action.
…

(3) *Specific Motions.*

(B) *To Compel a Discovery Response.* A party seeking discovery may move for an order compelling an answer, designation, production, or inspection. This motion may be made if:
…

(iii) a party fails to produce documents or fails to respond that inspection will be permitted – or fails to permit inspection – as requested under Rule 34.

Federal Rule of Civil Procedure 37 provides an avenue for any party seeking disclosure of documents to compel that disclosure with an order.  Fed. R. Civ. P. 37(a)(3)(B); <u>McGowan</u> at *2. (*See* App. Pgs. 43-45). The Fifth Circuit provides that once a party, in the instant matter the Plaintiff, meets its burden to show the information sought is relevant or will lead to the discovery of admissible evidence the burden then shifts back to the opposing party to show why the requested information is irrelevant or show that it fails the proportionality requirement. <u>McGowan</u> at *2. (*See* App. Pgs. 43-45).  Courts interpret relevance broadly—meaning that the evidence and information sought does not need to prove or disprove a claim, moreover the evidence or information sought does not even need to have a strong probative force to be relevant. *Id.* at 3. (*See* App. Pgs. 43-45). Finally, when ruling on discovery matters under Fed. R. Civ. P. 37 the court should look to balance the need for Plaintiff's request against the harm, prejudice, and burden to Defendant. *Id.* (*See* App. Pgs. 43-45).

Here, the information sought in Requests for Production No. 1, 2 and 3 are relevant and Plaintiff has met his burden of showing that the information sought meets this standard.  The

insurance documents covering theft or misappropriation of the National Officers in 2016-2018 could lead to any possible claims made on the insurance policy and possible investigation into the matter by the insurance company—the lack of any such claim made would be just as profound to note to the court considering the claims for breach of fiduciary duty under LMRDA §501 for misappropriation and theft.  The communications with Hal O'Neil—the accountant that conducted Ross Administration's audits of their payouts prior to leaving office—gave rise to Hal O'Neil drafting the Confidential Memo.  The communications with Hal O'Neil, the accountant that conducted the Ross Administration audits that a gave rise to the disciplinary hearing of the Ross Administration officers is highly relevant to the case at issue.  The alleged overpayments form the basis of Defendant's counterclaims for breach of fiduciary duty as well as their internal union disciplinary charges.  Hal O'Neil also drafted the Confidential Memo, which is concealed from the disciplinary hearing for Plaintiff and Ross. The Confidential Memo states that the payments Bob Ross received appeared to be in compliance with his Transition Agreement.  Communications between Hal O'Neil, and APFA counsel, staff, leadership, and officers would be highly relevant as this would have been discussed heavily before Hal O'Neil drafted this letter and sent it to Erik Harris.  These communications are pertinent to Plaintiff's defense to his breach of fiduciary duty and pertinent to his claim that he was wrongfully disciplined by his union because of his association with  Robert "Bob" Ross, and to prevent him from holding public office.

Hal O'Neil's correspondence would also be relevant to the evidence of any coordinated effort to subvert Plaintiff's rights as a union member.  The documents produced were incomplete as to all responsive documents, and heavily redacted.   No privilege log was produced claiming a legal basis to withhold documents nor those involved or included in the communication. Defendants have not and cannot meet their burden. When analyzing the balance between Plaintiff's need for the information in response to Requests for Production No. 1, 2 and 3 and the possible

harm, prejudice, or burden to Defendant, the scale tips dramatically and unequivocally in Plaintiff's favor.

## A. Defendants Failed to Show How Plaintiff's Request is Not Relevant or Otherwise Objectionable

In <u>Ortho-Accel</u>, the plaintiff requested financial records to aid in its damages claim and calculations. The defendant objected asserting the requested information "contain sales information for other products in Propel's [defendant] line that are not the subject of this litigation." The court was not convinced.  It held that the plaintiff in this case should not be deprived of information because the defendant sold multiple products which were listed in its financials records. (<u>OrthoAccel</u>, at *7). Additionally, the court held in <u>OrthoAccel</u> plaintiff's request were not unduly burdensome or duplicative. (<u>Id</u>. at 8, 9).

In <u>McGowan</u> the court found defendant's request for access to plaintiff's various social media accounts was appropriate. (<u>McGowan</u> at 4, and 5). The court however, clarified that the defendant's access was not "unlimited" as unlimited access is too broad. (<u>Id</u>. at 5).

In the matter before this Court, Request for Production No. 1, and 2 requests insurance documents, as well as documents and communications between the accounting firm Woods, Stephens & O'Neil, L.L.P. regarding the four national officers noted as the Ross Administration.[6] and the transmittal of the Confidential Memo with parties inside and outside the union. (*See* App. Pgs. 8). Request for Production No. 3 seeks communications between APFA officials, and/or counsel for APFA transmitting communications and documentation from Woods, Stephens & O'Neil, L.L.P. (*See* App. Pgs. 7-8).  In its August 26, 2022 response to Plaintiff's Requests for Production, Defendants stated as follows:

> "The Union Defendants object on the basis of Fed.R.Civ.P., Rules 1 and 26(c), as set forth above and fully incorporated herein.

---

[6] Ross Administration defined with the Amended Requests as "any person supporting Robert 'Bob' Ross's elected position as National President or Base President, including but not limited to Eugenio Vargas and Nena Martin"

15

The Union Defendants further object to this request because it seeks documents 'concerning the Ross Administration.' Such a request is vague, ambiguous, overly broad and not reasonably focused or tailored to lead to the discovery of information relevant to any claim or defense of the parties. The Union Defendants further object to this request to the extent it seeks discovery of documents protected by the attorney-client privilege, trial preparation privilege, and/or work product doctrine.

The Union Defendants further object to this request as it seeks discovery of documents and materials which are not relevant to any claim or defense of the parties in that, and to the extent that, they relate to matters within the exclusive jurisdiction of the Arbitrator, to matters which go the merits of the Arbitrator's Decision and Order, and to matters which are otherwise irrelevant to the enforcement of the Arbitrator's Decision and Order and/or to any claim within the Court's subject matter jurisdiction."

Similar to Propel Orthodontics, here, Defendant should *not* be permitted to withhold information or documentation responsive of Request for Production No. 1, 2 or 3 simply because Defendants assert the term "concerning the Ross Administration" is overly broad, vague, or ambiguous.  Any Defendants objections based on overly broad, unduly burdensome and not likely to lead to the discovery of relevant information." (*See* App. Pgs. 15-17).  Any internal communication regarding the Ross Administration since the day Mr. Ross took office is within the scope of discoverable information. Not only is the objection improper as boilerplate, but also improper based on the proportional needs of Plaintiff's access to evidence that is relevant and proportional to the needs of his case.  Communications about the Ross Administration between and among AFPA officials, and internal and outside counsel is pertinent.  Further, it is not privileged as Mr. Vargas and Mr. Ross are dues-paying members and any counsel working on behalf of APFA is being paid with their union dues, thus there is mutual representation of the parties.  Margot Nikitas participated in the arbitration at issue for the parties, therefore she cannot assert attorney-client privilege.  Finally, the counsel hired by APFA were not hired for the purposes of pursuit of the Ross Administration and their alleged infractions, rather at the time Margot Nikitas represented flight attendants in arbitrations conducted under the collective bargaining agreement with American Airlines,

Inc. on behalf of APFA[7]. Despite this fact no privilege log has been produced. Counsel discussed potentially limiting this request to those communications with Woods, Stephens, and O'Neil only after March 1, 2018—the date after which Ross resigned as National President—however, narrowing the request as such prejudices Plaintiff as Defendant is counter-suing Plaintiff for breach of fiduciary duty based on charges and payments made. It deprives Plaintiff of the financial documents related to his defense of APFA's breach of fiduciary duty claim.

Additionally, and like <u>McGowan</u> here, Plaintiff is not requesting unlimited access to Defendant's records, he is simply requesting Defendants produce all communications and documents about the Ross Administration under which he served the union—those who were ultimately charged and disciplined by the union for similar conduct. Plaintiff narrowed his request to a specific time frame, and well defined the subject-matter related, and the pertinent parties within APFA—this is hardly an unfettered or unlimited request. By limiting the request to those communications serving in the Ross Administration, it defines the scope as those documents and communications after April 1, 2016, to current, and those documents and communications discussing the Ross Administration. These documents would be discussing any matters related to only Robert "Bob" Ross, Eugenio Vargas, Nena Martin, and Marcy Dunaway. The scope and definition clearly limit the request in this manner.

As discussed above, Plaintiff has met his burden to show how the requested documents are relevant and proportional. To date, Defendant failed to provide the requested documents or otherwise explain via specific objections how Request for Production No. 1, 2 and 3 are overly broad, burdensome, or oppressive by submitting affidavits or offering evidence revealing the nature of the burden and how the requested information fails the proportionality calculation.

---

[7] Note: Arbitrations conducted under a Collective Bargaining Agreement ("CBA") with American Airlines, Inc. pertained to infractions of an employee for specific conduct violations, as opposed to the arbitration/disciplinary hearing conducted by APFA against its membership.

Thus, Defendants should be compelled to respond and produce documents responsive to Request for Production No. 1, 2, and 3.

Defendant did not utilize any clear method or software to extract and preserve text messages, social media posts, website messages, or messages and information from other data points. No effort seems to have been made to recover, analog, review, categorize, and turn over the documents Plaintiff requested. Considering the Union retains and maintains the only known data source for all documents on behalf of the union—specifically prohibiting all other parties from making duplicates or retaining any other copies—than any copies that are not recovered must be the result of either withholding, negligence or spoliation. Since the union is required by law to retain all documents for up to five years and have any financial documents available to any member upon request to be viewed in scope, then the documents used to conduct the audits should be recoverable as they are required to maintain a copy per 29 U.S.C. §436.

Plaintiff seeks an order compelling all relevant insurance policies and riders covering the individual officers as agreed, documentation and communications between Woods, Stephens, and O'Neil and APFA in their original form, without any alterations, redactions, or deletions, since 2016 to current, as well as communications between APFA officials discussing the Ross Administration since 2020, again without any redactions, alterations, or deletions. These documents and communications are relevant, not privileged, and within the scope of discoverable information. Considering all financial documents are required to be exposed to any union member in good standing then claiming that the financial documents are private is not a claim one can make from a union as they are not entitled to maintain financial secrecy except over the members' personally identifiable information.

# CONCLUSION

Plaintiff is entitled to a response as to Requests for Production No. 2 and 3.  The responsive documents are both relevant and proportional.  He will be prejudiced if Defendants documents are withheld. Specifically, the information requested in Request for Production No. 1, 2, and 3 sought to prove Defendants' pattern and practice of discriminatory behavior, specifically as it relates to the Ross Administration, to establish the causal elements of Plaintiff's claims, and properly depose and potentially impeach witnesses. There are no other means for Plaintiff to obtain the information requested in Requests for Production No. 1, 2 and 3 as that documentation is solely in Defendant's possession, custody, and control. Despite Plaintiff's repeated attempts to resolve the discovery deficiency as to Requests for Production No. 1, 2 and 3, without Court intervention, those attempts have proven unsuccessful.  Based on the foregoing, Plaintiff requests that this Honorable Court set this matter for a hearing to discuss the pending discovery issues and grant Plaintiff's Motion to Compel Defendant to produce documentation responsive of Requests for Production No. 1, 2 and 3.

Date: October 20, 2023

Respectfully submitted,

By:  /s/ Kerri Phillips
Kerri Phillips, Esq.
Texas Bar No. 24065906
Phone: (972) 327-5800
Email:
KD PHILLIPS LAW FIRM, PLLC
6010 West Spring Creek Parkway
Plano, Texas 75024
Fax: (940) 400-0089
For Service of Filings:
notice@kdphillipslaw.com

ATTORNEY FOR PLAINTIFF

## Local Rule 7.1(b) Conferral and Certificate of Conference

Pursuant to Local Rule 7.1(b) I hereby certify that counsel for the movant has conferred with Defendant in a good faith effort to resolve the issues raised herein. Plaintiff's counsel conferred with Defendants' counsel on via email on August 14, 2023, August 17, 2023, August 18, 2023.  A telephone call was held on August 23, 2023 wherein the concerns and objections were discuss, in particular Plaintiff offered to limit the time frame of the Requests for Production  No. 1, 2 and 3 to overcome Defendants objections without success in appeasing him.  Plaintiff's further conferred with Defendants on via email on August 25, 2023, August 26, 2023, and received a response on August 30, 2023 stating documents would be produced on August 31, 2023. As of the date of filing this Motion, Plaintiffs served extremely limited responses that were heavily redacted and no documents have been received from Woods, Stephens, and O'Neil. Counsel conferred on September 1, 2023 as to the relief requested in this instant Motion and Defendants' counsel has replied they are opposed to the Motion.

Additionally, in compliance with the Court's order entered on September 8 2023, Plaintiff's Counsel conferred with Defendant's counsel on September 12, 2023 via email, on a telephone call on September 15, 2023 I was informed Opposing counsel did not know if he represented Woods, Stephens O'Neil (despite declining to withdraw his objections prior to the original filing of this motion), so I emailed notice to Hal O'Neil, Bill Osborne, (prior counsel) and Sandford Denison (prior counsel) on September 18, 2023 and mailed certified mail a copy of the pleading to Hal O'Neil.  Subsequently, Plaintiff's Counsel emailed on September 20, 2023 and September 22, 2023, September 25, 2023, and October 2, 2023.  On October 12, 2023 and October 13, 2023 Defendant's Counsel served very limited, heavily redacted documents. Plaintiff's Counsel emailed Defendant's Counsel seeking additional issues with discovery on October 12, 2023, October 15, 2023 and Defendant's counsel opposes this motion.  Plaintiff maintains that no attorney client privilege can be maintained between counsel for Defendant and Woods, Stephens, and O'Neil and that no privilege can be maintained while mutual representation exists and no privilege log has been produced and therefore asks the court to compel discovery.

As of October 19, 2023, Defendant's counsel did send a final email with minimal documents—still redacted, just before Plaintiff's deadline to amend this pleading, however all of Plaintiff's original issues continue to persist. (See Appendix pp. 155-163).

Date: October 20, 2023

By:  /S/ Kerri Phillips
        Kerri Phillips

20

## <u>CERTIFICATE OF SERVICE</u>

I certify that on October  20, 2023 a true and correct copy of the above was served on Defendants' attorneys, via the e-filing manager.

          /S/ Kerri Phillips
            Kerri Phillips

Jeffrey Bartos
Guerrieri, Bartos, & Roma, P.C.
1900 M Street, NW, Suite 700
Washington, DC 20036
Tel: (202) 624-7400; Fax: (202) 624-7420
Email: jbartos@geclaw.com

Charlette Matts
In-House Counsel for APFA
1004 West Euless Blvd
Euless, TX 76040
Tel: (682) 301-8454
Cmatts@apfa.org

James Sanford
4803 Gaston Avenue
Dallas, TX 75249-1020
Tel: (214) 800-5111;
Fax: (214) 838-0001
Email jim@gillespiesanford.com
Email: joe@gillespiesanford.com