IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
FORT WORTH DIVISION

| | | |
|---|---|---|
| EUGENIO VARGAS, | § § § | |
| Plaintiff/Counterclaim Defendant, | § § | Civil Action No. 4:22-cv-430-Y |
| v. | § § | Judge Terry R. Means |
| ASSOCIATION OF PROFESSIONAL FLIGHT ATTENDANTS, *et al.*, | § § § § | (Relates to Motion Referred to Magistrate Judge Cureton) |
| Defendants/Counterclaim Plaintiff. | § | |

**DEFENDANTS' RESPONSE IN OPPOSITION
TO AMENDED MOTION TO COMPEL
RESPONSES TO FIRST REQUESTS FOR PRODUCTION**

## **TABLE OF CONTENTS**

FACTUAL AND PROCEDURAL BACKGROUND ................................................................... 1

ARGUMENT: THE MOTION TO COMPEL SHOULD BE DENIED ........................................ 6

I. APFA COMPLIED WITH REQUEST 1. .......................................................................... 7

II. REQUESTS 2 AND 3 ARE OVERLY BROAD AND UNDULY BURDENSOME. ................................................................................................................ 7

III. THE APFA DEFENDANTS PROPERLY RESPONDED TO THE NARROWED SCOPE OF REQUESTS 2 AND 3 AGREED TO BY PLAINTIFF. ...................................................................................................................... 10

CONCLUSION ................................................................................................................................ 12

# TABLE OF AUTHORITIES

**Cases**                                                      **Page(s)**

*Lopez v. Don Herring Ltd.*,
  327 F.R.D. 567 (N.D. Tex. 2018) ......................................................................................... 8, 9

*MC Trilogy Texas, LLC v. City of Heath, Texas*,
  No. 3:22-CV-2154-D, 2023 WL 5918925 (N.D. Tex. Sept. 11, 2023) ....................................... 9

*MetroPCS v. Thomas*,
  327 F.R.D. 600 (N.D. Tex. 2018) ............................................................................................. 8

*Ross v. APFA*,
  No. 4:22-cv-343-Y ..................................................................................................................... 5

**Statutes**

UNITED STATES CODE
  29 U.S.C. § 401 *et seq.* ............................................................................................................. 2

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
FORT WORTH DIVISION

| | |
|---|---|
| EUGENIO VARGAS, § § § Plaintiff/Counterclaim Defendant, § v. § § ASSOCIATION OF PROFESSIONAL § FLIGHT ATTENDANTS, *et al.*, § § Defendants/Counterclaim Plaintiff. § | Civil Action No. 4:22-cv-430-Y Judge Terry R. Means (Relates to Motion Referred to Magistrate Judge Cureton) |

**DEFENDANTS' RESPONSE IN OPPOSITION
TO AMENDED MOTION TO COMPEL
RESPONSES TO FIRST REQUESTS FOR PRODUCTION**

Defendants the Association of Professional Flight Attendants ("APFA"), its President Julie Hedrick, and its Treasurer Erik Harris, hereby oppose Plaintiff's Amended Motion to Compel their responses to Plaintiffs First Requests for Production of Documents, Doc. 134. As shown below, Defendants have complied with the Requests as narrowed by counsel during the conferral process, and Plaintiff's effort to reassert a broader set of Requests fails because the original Requests are overly broad and unduly burdensome. The motion should be denied.

**FACTUAL AND PROCEDURAL BACKGROUND**

This case arises out of an internal union arbitration, which addressed charges of financial misconduct by Plaintiff Eugenio Vargas during his term as Treasurer of APFA. Pursuant to the APFA Constitution, two rank-and-file union members filed internal charges against Mr. Vargas alleging a range of financial misconduct while in office. A nationally respected arbitrator, Ruben R. Armendariz, served as the impartial arbitrator in the hearing on these charges and, after an extensive hearing, concluded that Mr. Vargas had, among other things, "attempted to benefit

monetarily and thus failed in his fiduciary duty as National Treasurer by willfully changing the formula" for calculation of certain benefits paid to himself and three other former National Officers. Doc. 1-1 at 35, 37. In a supplemental ruling based on an independent financial review ordered by the Arbitrator, Arbitrator Armendariz determined that Mr. Vargas had made over $13,000 in "Inappropriate credit card charges related to meals." Supp. Decision, Doc. 39-1 at 2; *see also* Order, Doc. 46 at 1 (taking judicial notice of the supplemental arbitral decision). Mr. Vargas was ordered to repay that amount, the cost of the independent financial review, and half of the Arbitrator's fee and was "prohibited from serving in any APFA National Officer position or Regional Officer position for life." Doc. 39-1 at 2.

While Mr. Vargas did agree to repay the APFA for some of his improper expenditures, Doc. 1-1 at 37 (noting that Mr. Vargas had "entered into a payment agreement to repay the overage debt" in one regard), he did not comply with the obligation to repay the union for other improper expenditures or other costs. Instead, he has sued the APFA and its National President and Treasurer claiming in the operative First Amended Complaint, Doc. 133, that the arbitration violated the Labor Management Reporting and Disclosure Act, 29 U.S.C. § 401 *et seq.*; and also that the APFA Defendants breached the APFA Constitution, breached their fiduciary duty, and engaged in fraud in connection with the arbitration. Doc. 133 ¶¶ 28-54. Plaintiff seeks $50,000 in compensatory damages, plus punitive damages. Doc. 133 at 11.

In addition, the APFA has filed a counterclaim against Mr. Vargas for breach of his federal fiduciary duty, based on the final and binding determination of the Arbitrator that Mr. Vargas had expended and received union funds in violation of the APFA Constitution and Policy Manual.  Doc. 132 at ECF pp. 6-11.

In July 2022, Plaintiff served the APFA Defendants with three Requests for Production of Documents. Pl.'s Appx. 3-8, Doc. 136 at ECF pp. 6-11. Plaintiff requested:

    1.    "All documents … that afford liability insurance to either APFA, or any of the current or former officer, board members, or any authorized agents or employees … for purposes of protection in compliance with Labor Management Reporting and Disclosure Act 502(a)"

    2.    "*All documents, correspondence and communications between the accounting firm of Wood, Stephens & O'Neil, LLP and any APFA official*, whether current or former, elected or appointed; *or any APFA counsel*, whether in-house or outside counsel, *concerning the Ross Administration*."

    3.    "*All communications* between any APFA officials, whether current or former, elected or appointed; or any APFA counsel, whether in-house or outside counsel, *which disseminated any communications or documentation from Wood, Stephens & O'Neil, LLP concerning the Ross Administration*."

Pl.'s Appx. 8 (emphasis added). For purpose of these Requests, Plaintiff defined "the Ross Administration" to "mean[] *any person supporting Robert 'Bob' Ross's elected position* as National President or Base President, including but not limited to Eugenio Vargas and Nena Martin." Pl.'s Appx. 6 (emphasis added).[1]

The firm Wood, Stephens, & O'Neil, LLP ("WSO") is an accounting firm based in Fort Worth, Texas. The firm, through Hal O'Neil, CPA, one of its owners, has provided accounting services to the APFA since 2004. The firm conducts an annual audit of the APFA, works on tax returns, and performs audits relating to certain requirements of the Railway Labor Act, 45 U.S.C. § 151, *et seq.*, regarding union dues. It also responds to requests for additional analysis on an as-needed basis. Declaration of Hal O'Neil, Appx. 3, ¶ 3.

---

[1] Mr. Ross served as APFA National President from 2016 to 2018, and as San Fransisco Base President in 2021-2022. While Plaintiff in his motion asserts a different definition of "Ross Administration," *see* Doc. 135 at 1 n.1, the quoted language above is from the Requests for Production he seeks to enforce.

3

In 2019 and 2020, Mr. O'Neil reviewed certain payments that had been made to certain former officers of the APFA, including Mr. Vargas. In connection with those requests, Mr. O'Neil prepared and produced to the APFA worksheets showing overpayment calculations the firm had made along with a memorandum. Declaration of Hal O'Neil, Appx. 3, ¶ 4. Plaintiff has referred to this memorandum as the "Confidential Memorandum" and it plays, according to Plaintiff, a central role in his lawsuit. *See* Doc. 135 at 5-6.[2]

The Defendants timely served objections to these Requests including, among other things, objections based on overbreadth and ambiguity. The Defendants further objected that in light of their then-pending Motion to Dismiss for lack of subject matter jurisdiction, Doc. 24, discovery on any of these issues was improper or at minimum posed an undue burden until the issue of subject matter jurisdiction was decided. Pl.'s Appx. 10-18, Doc. 136 at ECF pp. 13-21.[3]

On August 14, 2023, over a year after Defendants had responded to the Requests for Production and less than three months before discovery closed, Plaintiff's counsel emailed defense counsel with a "Request for Discovery and Withdraw of Objections … Conference Requirement." Pl.'s Appx. 27-28, Doc. 136 at ECF pp. 30-31. Focusing on the "insurance documents, and the communications about the Confidential Memo and any communication transmitting it to other union members, please advise whether your clients plan to produce *any* documents." Pl.'s Appx. 28-29, Doc. 136 at ECF pp. 31-32. After discussion among counsel,

---

[2] While not dispositive in the context of the present motion, Defendants note that Plaintiff vastly overstates the significance of the Confidential Memorandum. Among other things, it did not clear Mr. Vargas or anyone of wrongdoing, and, indeed, the Arbitrator held that Mr. Vargas had acknowledged his own error in authorizing and receiving payments discussed in that memo and had himself agreed to repay the amounts he improperly received. *See* Defs.' Appx. 7-10 (Arbitration decision excerpt, filed by Plaintiff as Doc. 1-1 herein).

[3] The Court granted the motion to dismiss, Doc. 52, but on reconsideration allowed Plaintiff to file an amended complaint, Doc. 72.

Plaintiff's counsel "offered to restrict [the request concerning communications] to only those documents and communications relating to the Ross Administration since 2018 – after the Ross Administration left office." Pl.'s Appx. 22-23, Doc. 136 at ECF 25-26. The APFA Defendants then agreed to produce APFA's documents related to the O'Neil firm's evaluation of overpayments made to Mr. Vargas and other union officers, as well as an audit report created by the O'Neil firm covering the year in which Mr. Vargas and Mr. Ross left office. Pl.'s Appx. 19, Doc. 136 at ECF p. 22.

To comply with this agreement, APFA searched electronic and physical files of the APFA representatives who would have communicated with the O'Neil firm or would have received communications between the APFA and the O'Neil firm. Responsive documents were compiled and initially produced as separate communications, and then again – after a request by Plaintiff's counsel – as complete email chains. *See* Pl.'s Appx 1 (email J. Bartos to K. Phillips, 9/1/23); Defs.' Appx. 2, 11 (Declaration of C. Matts, ¶ 4; email J. Bartos to K. Phillips, 10/20/23).[4] In addition to the APFA Defendants' production, Plaintiff's counsel – who represents former APFA President Robert Ross in a related case, *Ross v. APFA*, No. 4:22-cv-343-Y – subpoenaed the O'Neil firm for its corresponding set of documents and received responsive documents. (That production is also subject to a pending motion to compel.)

With regard to the requested insurance policy documents, Plaintiff had earlier subpoenaed the APFA's long-standing insurance broker, IMA Financial, which produced a complete set of APFA policies. Defs.' Appx. 17 (IMA Production Email, 6/1/23). Rather than re-producing

---

[4] Plaintiffs' Appendix includes some, but not all, of the APFA Defendants' initial production (Pls.' Appx. 73-154) but does not include the supplemental production of complete email chains, which were numbered APFA 100-176, see Defs.' Appx. 11 (email J. Bartos to K. Phillips, 10/20/23).

these documents, APFA referred Plaintiffs' counsel to those documents which Plaintiff already had in his possession.  Pl.'s' Appx. 1.

Despite the APFA's production, Plaintiff filed his Amended Motion to Compel on October 20, 2023.  Doc. 134.  Plaintiff accuses Defendants' counsel of "never turning over any meaningful discovery" and speculates that Defendants have "with[e]ld many relevant documents" and failed to "take any meaningful discovery measures to find … and produce discovery in this case."  Doc. 134 at 3.  While acknowledging, on the one hand, that he "narrowed his request to a specific time frame and well defined the subject matter" of the requests, Doc. 135 at 17, Plaintiff describes the sweep of his request as now including "all communications and documents about the Ross Administration," from "April 2016, to current", *ibid.*, and now including all "communications between APFA officials discussing the Ross Administration since 2020," *id.* at 18.  Plaintiff argues that his Requests are "proportional to the needs of his claim," not overly broad, and are relevant.  *Id.* at 7, 15-18.

## ARGUMENT

## THE MOTION TO COMPEL SHOULD BE DENIED

Plaintiff's motion should be denied.  With respect to the request for insurance policy documents, APFA has formally advised Plaintiff that he has the complete set of responsive documents from APFA's insurance broker.  There is no meaningful dispute with respect to that issue. With respect to communications with the accounting firm, Wood, Stephens & O'Neil, LLP ("WSO"), and follow on transmittals of information from that firm among APFA representatives, the Requests as written are on their face overly broad, ambiguous, and unduly burdensome.  Plaintiff agreed to narrow his requests to communications regarding WSO's

6

analysis of overpayments, and APFA searched for provided responsive documents. Plaintiff impugns that production as inadequate, but his critique is speculative and unfounded.

## I.   APFA COMPLIED WITH REQUEST 1.

Plaintiffs first request sought insurance policies held by APFA. On June 1, 2023, these policies, totaling over 1400 pages, were produced in full to Plaintiff by IMA Financial the APFA's insurance broker. Defs.' Appx. 17 (IMA Production Email) Subsequently, APFA confirmed in writing that the IMA production was also responsive to the request to APFA. *See* Pl.'s Appx. 1. Plaintiff insists on APFA producing these same documents to him again, a demand which is utterly unnecessary and the reasoning for which he has never explained. Rule 26 contemplates that "the court must limit … discovery … if it determines that: (i) the discovery sought is unreasonably cumulative or duplicative, or can be obtained by some other source that is more convenient … [or] (ii) the party seeking discovery has had ample opportunity to obtain the information." Rule 26(b)(2)(C), Fed. R. Civ. P. Plaintiff already has the documents he seeks, APFA has confirmed exactly which documents those are, and there is no basis to compel APFA to simply send him the same documents which are within his possession. The motion should be denied with respect to Request 1.

## II.   REQUESTS 2 AND 3 ARE OVERLY BROAD AND UNDULY BURDENSOME.

Plaintiff's requests regarding communications with the accounting firm WSO, or further transmission of such communications, are not reasonably particular, but are overly broad and unduly burdensome on their face.

> Federal Rule of Civil Procedure 34(b) provides that a request for production … must describe with reasonable particularity each item or category of items to be inspected or produced. The test for reasonable particularity is whether the request places the party upon 'reasonable notice of what is called for and what is not. Therefore, the party requesting the production of documents must provide 'sufficient information to enable [the party to whom the request is directed] to

7

> identify responsive documents. The goal is that the description be sufficient to apprise a man of ordinary intelligence which documents are required.

*Lopez v. Don Herring Ltd.*, 327 F.R.D. 567, 575–76 (N.D. Tex. 2018) (citations and internal quotations marks omitted).

Requests 2 and 3 fail this basic test. As noted above, after defining the term "the Ross Administration" to "mean[] *any person supporting Robert 'Bob' Ross's elected position* as National President or Base President, including but not limited to Eugenio Vargas and Nena Martin," Pl.'s Appx. 6 (emphasis added), Plaintiff goes on to request

> 2. "*All documents, correspondence and communications between the accounting firm of Wood, Stephens & O'Neil, LLP and any APFA official*, whether current or former, elected or appointed; *or any APFA counsel*, whether in-house or outside counsel, *concerning the Ross Administration*."

> 3. "*All communications* between any APFA officials, whether current or former, elected or appointed; or any APFA counsel, whether in-house or outside counsel, *which disseminated any communications or documentation from Wood, Stephens & O'Neil, LLP concerning the Ross Administration*."

Pl.'s Appx. 8 (emphasis added). By their terms, these requests call for the APFA Defendants to determine who are people "supporting" Mr. Ross during the two periods he held office (first as National President, and then as SFO Base President) and then to search for all communications with the union's long-standing outside accounting firm for any past audit or other communications regarding any such unspecified person and also any transmittal of any such communications. These requests would thus require APFA to search through all communications between any current or former APFA representative and anyone at Wood Stephens & O'Neil going back to at least 2016 regardless of the particular subject matter. Such requests are facially improper. *See MetroPCS v. Thomas,* 327 F.R.D. 600, 610 (N.D. Tex. 2018) (discovery requests are "facially overbroad where [they] … seek all documents concerning the parties to [the underlying]] action, regardless of whether those documents relate to that action and regardless of

8

date; [t]he requests are not particularized; and [t]he period covered by the requests is unlimited."); *Lopez*, 327 F.R.D. at 576.

The overbreadth of these requests is underscored by the fact that Mr. Vargas made no effort to limit them to communications or documents relating to himself or his claims and counter-defenses. He seeks all information regarding all unnamed "supporter[s]" of the Ross Administration, and at minimum regarding named individuals who are not party to this action. Such information is not likely to lead to the discovery of admissible evidence.

Plaintiff defends these Requests by asserting that he "is not requesting unlimited access to Defendant's records," Doc. 135 at 17, but quickly concedes just how overly broad his requests are: claiming that he "is simply requesting Defendants produce *all communications and documents about the Ross Administration,*" *id.* at 17 (emphasis added). These "[all-encompassing demands" fail to meet the requirement of reasonable particularity and are overly board. *Lopez v. Don Herring Ltd.*, 327 F.R.D. at 575.

These requests would also unduly impinge on legitimate privacy interests of individual APFA representatives during the past seven years, whose financial information may have been reviewed or discussed as part of any work by WSO. Plaintiff's counsel adamantly refused to discuss a protective order and communicated Mr. Vargas's disavowal of any interest in maintaining confidentiality of such information. Defs.' Appx. 13-15 (emails regarding confidentiality). In light of Mr. Vargas's failure to show any need for this information, these privacy concerns are compelling reasons to deny the motion. *See MC Trilogy Texas, LLC v. City of Heath, Texas,* No. 3:22-CV-2154-D, 2023 WL 5918925, at *8 (N.D. Tex. Sept. 11, 2023), Appx. 25 (finding burden, including privacy intrusion, "imposed on the non-party … is too great when compared to the negligible discoverable information that [plaintiff] may obtain.").

Finally, compliance with the broad requests now pursued by Mr. Vargas would impose a substantial and undue burden on APFA. APFA would be required to search physical and electronic files going back over seven years for all communications with WSO regarding any member (or, potentially, any "supporter") of the Ross Administration on any topic whatsoever, as well as all documents exchanged which related to any transactions involving such people. APFA would also have to search physical and electronic files for any internal communications among or between any "current or former", "elected or appointed" APFA officials. APFA has at any given time approximately 33 elected representatives at the national level, and approximately 32 appointed representatives. Plaintiff's unlimited request for seven years of such documents would multiply that number significantly. Defs.' Appx. 2 (Matts Decl.), ¶ 5. Compliance with the Requests as now pressed by Plaintiff would consume substantial amounts of APFA staff resources and funds, with little to no corresponding benefit to Plaintiff or the ultimate resolution of this case.

### III. THE APFA DEFENDANTS PROPERLY RESPONDED TO THE NARROWED SCOPE OF REQUESTS 2 AND 3 AGREED TO BY PLAINTIFF.

In the course of discussion regarding the scope of Plaintiff's requests, Plaintiff agreed to a narrower scope for production, to which the APFA Defendants then properly responded. As discussed above, given Plaintiff's focus on what he calls the "Confidential Memo" produced by WSO, which was written in 2020, and given the APFA's concerns over the broad sweep of the requests, the parties agreed to limit the scope of requests to documents surrounding the production and dissemination of the Confidential Memo, and communications with WSO regarding Ross after he had left office. APFA thereafter searched its files for responsive documents and produced them to Plaintiff, including WSO's audit covering Plaintiff's final year in union office. *See* Defs.' Appx. 1-2 (Matts Decl. ¶¶ 3-4). When Plaintiff initially questioned

the format of the original production, APFA responded with an additional production showing all email chains. Defs.' Appx. 11.

Plaintiff impugns that production as inadequate, but his critique is speculative and unfounded. Plaintiff speculates—offering no evidence—that more documents must exist. Doc. 135 at 8 (assuming communications from APFA President); 11 ("the most compelling evidence that the other side is withholding evidence, is the lack of evidence itself"); 11 (assuming there would be emails showing a "set up for the services … [and] agreement on what needs to be done"); 14 (assuming that the Confidential Memo "would have been heavily discussed [in writing] before Hal O'Neil drafted this letter"). The argument is as evidence-free as it is circular.

Plaintiff also critiques the format of the APFA's initial production, which had separated out email communications, *id.* at 10, but that issue was resolved by the APFA's production of the complete email chains in its supplemental production.[5] And while Plaintiff asserts that various "worksheets" attached to emails were not produced, his own Appendix includes the worksheets associated with the Confidential Memorandum regarding the overpayments made to himself, Mr. Ross, and the others from the Ross Administration. *See* Pls.' Appx. 100-01 (email referencing "the workpapers we discussed" and listing attachments) and Pls' Appx. 102-131 (the workpapers as referenced in the email); *see also* Pl.'s Appx. 141 (email referencing Memorandum and "the attached schedules") and Pl's Appx. 142-154 (the referenced Memorandum and schedules).[6]

---

[5] For example, the "gaps" between emails Plaintiff complains of, Doc. 135 at 10, were simply a byproduct of the initial production style; the subsequent production of email chains has no such "gaps."

[6] During the course of supplementing discovery and reviewing Plaintiff's briefing, APFA determined that attachments to two emails from the year prior to the Confidential Memorandum had not been included in the prior production and has supplemented its production to include these attachments. These pertain to the emails shown at Pl.'s Appx. 3-4.

With respect to Requests 2 and 3, Plaintiff seeks in his Proposed Order a mandate that APFA produce all responsive documents "in .PST format". No such demand was made in the Requests for Production, however, and the APFA should not be made to produce the same documents in more than one format. *See* Fed. R. Civ. P. 34(b)(2)(E)(iii) ("A party need not produce the same electronically stored information in more than one form.").

At bottom, APFA searched for and produced responsive documents. Plaintiff's *ipse dixit* belief that there must be more is not grounds for any relief under the Federal Rules.

## CONCLUSION

For the foregoing reasons, Defendants respectfully submit that Plaintiff's Amended Motion to Compel should be denied.

Dated: November, 13, 2023                                Respectfully Submitted,


   */s/ James D. Sanford*
JAMES D. SANFORD
Tex. Bar No. 24051289
Gillespie Sanford LLP
4803 Gaston Ave.
Dallas, TX 75246
Tel.: (214) 800-5111; Fax.: (214) 838-0001
Email: jim@gillespiesanford.com

JEFFREY A. BARTOS (*pro hac vice*)
D.C. Bar No. 435832
Guerrieri, Bartos & Roma, PC
1900 M Street, N.W. Suite 700
Washington, DC 20036
Tel.: (202) 624-7400; Fax: (202) 624-7420
Email: jbartos@geclaw.com
      abird@geclaw.com

*Counsel for Defendant and Counterclaim Plaintiff Association of Professional Flight Attendants, and*

12

*Defendants Julie Hedrick and Erik Harris*

CHARLETTE L. MATTS (*pro hac vice*)
Tex. Bar No. 24133870
Association of Professional Flight Attendants
1004 W. Euless Blvd.
Euless, TX 76040
Tel.: (682) 301-8454
Email: Cmatts@apfa.org

*Counsel for Defendant and Counterclaim Plaintiff Association of Professional Flight Attendants*

**CERTIFICATE OF SERVICE**

      I certify that on November 13, 2023, I electronically submitted this document to the clerk of the court for the U.S. District for the Northern District of Texas using the court's electronic case filing system. The electronic case filing system sent a "Notice of Electronic Filing" to the following individuals, who have consented to accept this Notices as service of this document by electronic means:

KERRI PHILLIPS
K.D. Phillips Law Firm, PLLC
6010 W. Spring Creek Parkway
Plano, TX 75024
Phone: (972) 327-5800
Fax: (940) 400-0089
Email: kerri@KDphillipslaw.com
        notice@KDphillipslaw.com

                                            /s/ *James D. Sanford*
                                            JAMES D. SANFORD