IN THE UNITED STATES DISTRICT
COURT FOR THE NORTHERN DISTRICT
OF TEXAS FORT WORTH DIVISION

| | | |
|---|---|---|
| EUGENIO VARGAS, | § § § § § § § § § § § § § | |
| | | Civil Action No. 4:22-cv-430-Y |
| Plaintiff/Counterclaim Defendant, | | |
| | | Judge Terry R. Means |
| v. | | |
| | | (Relates to Motion Referred to Magistrate Judge Cureton) |
| ASSOCIATION OF PROFESSIONAL FLIGHT ATTENDANTS, *et al.*, | | |
| Defendants/Counterclaim Plaintiff. | | |

**REPLY TO RESPONSE TO AMENDED MOTION TO
COMPEL RESPONSES TO PLAINTIFF'S FIRST REQUEST FOR PRODUCTION**

NOW COMES, Pursuant to Federal Rules of Civil Procedure Rules 26(b)(1), 34(c), and 45, and Local Rules 5.2, 7.1. 7.2. 53.1, 56.3 and 56.6. Plaintiff, Eugenio Vargas ("Vargas"), and files this, his Reply to Response to Motion to Compel Production of Documents and in support thereof, would respectfully show this Court as follows:

### INTRODUCTION

Plaintiff's counsel will take a moment to address Defendants' Counsels' misrepresentations before this Court submitted in Defendants' Response to Plaintiff's Motion to Compel Plaintiff's First Request for Production. Thereafter, Plaintiff's Counsel will reassert original arguments that Defendants' production of documents illustrate the following facts:

(1) Defendants have not produced any insurance documents illustrating compliance with 29 U.S.C. § 502(a) from 2020-2023 despite his agreement to produce such documents (*See* P. App. to Am. Mtn. to Compl, PAGEID 4165, ECF No. 136);

(2) Defendants made multiple redactions based on meritless objections (*See* P. App. to Am. Mtn. to Compl, PAGEID 4205-18, ECF No. 136);

(3) Defendants limited the scope of Plaintiff's Requests for Production unilaterally (*See* P. App. to Am. Mtn. to Compl, PAGEID 4147-48 #4, ECF No. 136); (*See* App., 39-43); and

(4) Defendants continue to withhold documents from Plaintiff (*See* P. App. to Am. Mtn. to Compl, PAGEID 4187-88, ECF No. 136).

In closing, Plaintiff reasserts his request for relief and moves the Court to compel Defendants' production of documents and withdrawal of Defendants' objections to Plaintiff's First Requests for Production.

### NO AGREEMENT TO LIMIT SCOPE OF DISCOVERY

Plaintiff's Counsel wants to emphasize to the Court that Defendants' Counsel misrepresents the agreement related to discovery between the parties. Defendants' Counsel states in his Response to Plaintiff's Motion to Compel that:

> "In the course of discussion regarding the scope of Plaintiff's requests, Plaintiff agreed to narrow scope of production, to which the APFA defendants then properly responded. As discussed above, given Plaintiff's focus on what he called the "Confidential Memo" produced by WSO, which was written in 2020, and given the APFA concerns over the broad sweep of the requests, the parties agreed to limit the scope of requests to documents surrounding the production and dissemination of

1

the confidential memo, and communications with WSO regarding Ross after he had left office." (*See* Dfts Resp. Am. Mtn. to Compl, PAGEID 4551, ECF No. 148).

Plaintiff's counsel asserts that this is a misrepresentation of facts in violation of Defendants' Counsel's ethical duty of candor to this court. (Tex. R. of Prof'l Cond. 3.03).

In conjunction with the filing of this Reply, Plaintiff's Counsel includes copies of recorded telephone conversation and transcripts of the conversations between Plaintiff's Counsel and Defendants' Counsel on August 23, 2023 and September 15, 2023.[1] (App., 47-95). This evidence will provide the Court an opportunity to determine the validity and accuracy of Defendants' Counsel's assertions regarding any mutual agreement related to the scope of discovery.

**AUGUST 23, 2023 TELEPHONE CONFERENCE CALL**: Plaintiff's Counsel conferenced with Defendants' Counsel on multiple occasions regarding Plaintiff's First Requests for Production, as well as the pending Subpoena served on Woods, Stephens, and O'Neil, LLP—APFA's outside Accounting Firm—in the sister case pending before this court, 22-cv-00343-Y, *Ross v. APFA, et al.* Plaintiff's Counsel and Defendants' Counsel conferenced on the August 23, 2023 with no agreement to any limitation. (*See* App., 3-32). Defendants' Counsel stated that he intended to limit the scope of discovery to only those documents surrounding the creation and dissemination of the Confidential Memo due to his concerns related to confidential financial information. (*See* App., 14-18). **Plaintiff's Counsel distinctly and clearly objected to this limitation based on the Confidential Memo.** (*See* App., 18). Plaintiff's Counsel, in an effort to assuage Defendants' concerns, offered to limit communications and documents produced by WSO to those documents and communications occurring after March 1, 2018—the date Robert "Bob" Ross resigned as National President—between APFA and WSO only. (*See* App., 13-17). Defendants' Counsel

---

[1] True and correct copies of the recorded telephone conversations are available: //drive.google.com/drive/folders/15cIaYxvLlVHTkWSa6rPvj_5twA3hw315?usp=sharing.

maintained his objections and refused the offer. (*See* App., 18). This offer was disclosed in Plaintiff's original Motion to Compel Subpoena against Woods, Stephens, and O'Neil, LLP. (22-cv-00343; *Ross v. APFA, et. al.*; *See* P. Am. Mtn. to Compl, PAGEID 3116, ECF No. 136). Defendants' Counsel continued to argue for his position that limiting the scope to Plaintiff's requests should surround only those documents and communication with Woods, Stephens, and O'Neil and the Confidential Memo. (*See* App., 13-17). Plaintiff's Counsel stated "Yeah. I—I can't—I can't—I clearly can't agree to it." (*See* App., 17-18). It should be noted that Defendants' Counsel also agreed to produce the insurance policy documents and all documents from 2018-2023 in response to Request 1. (*See* App., 13-14).

      **SEPTEMBER 15, 2023 TELEPHONE CONFERENCE CALL**: On September 15, 2023 telephone conference between Plaintiff's Counsel and Defendants' Counsel, Plaintiff's Counsel again offered and agreed to limit documents and communications to be produced from WSO to the time frame after Ross's resignation from office. (*See* App., 39-45). Defendants' Counsel agreed to it when he states "Okay. So, we'll – we'll produce them." (*See* App., 45). **Plaintiff's Counsel did not agree to any other limitations on the scope of discovery requested from either Defendants or WSO—particularly not exclusively to the Confidential Memorandum, its creation and dissemination.** In essence, though Plaintiff's Counsel agrees to limit discovery requests made to WSO to exclude only those documents and communications occurring prior to March 1, 2018—all other documents and communications relating to the Ross Administration should be produced from APFA and from WSO either (a) between APFA and WSO, (b) internally within WSO, (c) with any third parties, or (d) internally within APFA itself, should be produced.

      Plaintiff's Counsel made clear in the August 23, 2023 telephone conversation that Plaintiff did *not* agree to any limitation of document production outside of the time-frame offered, and only those within WSO's possession relating to communications and documents between APFA and

3

WSO. (*See* App., 13-18). A limitation to document production restricted by the production and dissemination of the Confidential Memo from either WSO or from Defendants would substantially prejudice Plaintiff's ability to pursue his claims. (*See* App., 15-16). Plaintiff argues Defendants conspired to pursue disciplinary measures for purposes of a political agenda. (*See* App., 15-16). This limitation would exclude substantial evidence as to the parties and discussions relating to this conspiracy. (*See* App., 15-18). This Court should note, Plaintiff asked for documents and communications from 2016-2023, meanwhile the declarations from Hal O'Neil and Charlette Matts indicate only those documents from 2019-2020 were produced. (*See* Dfts' App. to Resp. Am. Mtn. to Compl, PAGEID 4559-63, ECF No. 149). Additionally, the scope of the documents was limited to only those in relation to the Confidential Memo's creation and dissemination—a substantially limiting scope to which Plaintiff never agreed. (*See* Dfts' App. to Resp. Am. Mtn. to Compl, PAGEID 4559-63, ECF No. 149).

Discovery production was limited to only two out of eight years Plaintiff requested. Of those two years of documents, Defendants additionally withheld those related to the Ross Administration, except for those relating to the Confidential Memo's creation and dissemination. Those documents from 2019-2020 relating to the Confidential Memo were substantially redacted, or altogether withheld, based on privacy. Plaintiff asks this Court to compel document production in accordance with the original requests made to Defendants.

## REPLY ARGUMENTS

All documents in Plaintiff's Counsel's possession, as of the date of this pleading, have been produced to Defendants. Most importantly, Defendants admit in their Response to Plaintiff's Motion to Compel that they withheld relevant documents responsive to Plaintiff's requests. (*See* Dfts' App. to Resp. Am. Mtn. to Compl, PAGEID 4546-50, ECF No. 149).

**Counterargument: Defendants continue to withhold Insurance documents.**

4

Defendants admit in their Response that they have withheld the insurance documents responsive to Plaintiff's requests. In both telephone conferences, Defendants' Counsel agrees to produce the insurance documents IMA Financial already produced, however Defendants failed to do so. (App., 13-15; 39-41; 44-45). Insurance or surety bond coverage is required under LMRDA § 502(a) for any union leader's wrongful act and considering both Plaintiff and Defendants assert breach of fiduciary duty while the other served within APFA leadership—this insurance, and any claims made thereunder—are relevant to the breach of fiduciary duty claims pending before this Court.

Insurance coverage or surety bond coverage against leadership misconduct is a requirement under federal law. This insurance is relevant considering the claims for financial misconduct and breach of fiduciary duty. Additionally, APFA reported to the U.S. Department of Labor that it maintains insurance against leadership misconduct for each officer but refuses to produce these documents.[2] (29 U.S.C. § 502). Plaintiff seeks the Court to compel Defendants to produce insurance or surety bond policy documents that comply with 29 U.S.C. § 502(a).

In email exchanges regarding Plaintiff's production of documents to Defendants' discovery requests, Defendants' Counsel stated in his August 15, 2023 email "If your clients have responsive documents, they are not exempt from producing them simply because the Defendants might also be able to find them." (*See* P. App. to Am. Mtn. to Compl, PAGEID 4152, ECF No. 136). Ironically, when faced with whether to produce documents in Defendants' possession or control, Defendants argues that they produced the insurance documents because IMA Financial produced

---

[2] The LM-2 Filings require reporting the amount of insurance coverage on union leaders for wrongful conduct in compliance with 29 U.S.C. § 502 under **Question 14.** For the years between 2016-2020, APFA reported insurance coverage of $200,000 and $500,000 per officer for years 2021-2023. This insurance or surety coverage has not been turned over.
2023 - https://olmsapps.dol.gov/query/orgReport.do?rptId=869753&rptForm=LM2Form
2022 – https://olmsapps.dol.gov/query/orgReport.do?rptId=840723&rptForm=LM2Form
2021 - https://olmsapps.dol.gov/query/orgReport.do?rptId=773865&rptForm=LM2Form
2020 - https://olmsapps.dol.gov/query/orgReport.do?rptId=731533&rptForm=LM2Form

them, and the documents are in Plaintiff's possession. (*See* Dfts Resp. Am. Mtn. to Compl, PAGEID 4548, ECF No. 148). Essentially, Defendants illogically argue that documents Plaintiff possesses are presumed to be "produced" by Defendants.

**Counterargument: Defendants failed to provide all non-privileged responsive documents to Requests 2 and 3.**

APFA, as a matter of policy, does not allow members to duplicate, copy, or retain documents regarding the union business—all documents are held **only** within APFA's possession.[3] APFA disciplines any party that duplicates documents in the APFA archive. Plaintiff, in his Amended Motion to Compel and Appendix included numerous examples of documents indicating that additional evidence was withheld including emails, exhibits, attachments, and insurance documents. Defendant argued Plaintiff failed to attach documents Defendants continues to withhold. This argument is entirely baseless. No production of insurance documents singularly proves Plaintiff's point—Defendants withheld non-privileged responsive evidence.

Defendants argue that Plaintiff is not entitled to an order compelling discovery because Plaintiff failed to attach documents Defendants withheld under Plaintiff's unilateral limitation to the scope of Defendants' requests for production. (*See* Dfts Resp. Am. Mtn. to Compl, PAGEID 4552, ECF No. 148). Defendants ignore the evidence attached to Plaintiff's Amended Brief, which illustrate the following documents exist, but were simply withheld:

(1) Email communications between APFA and Woods, Stephens, and O'Neil, LLP (*See* P. App. to Am. Mtn. to Compl, PAGEID 4205, ECF No. 136-1);[4]

(2) Multiple unjustified redactions within those documents that were produced; (*See* P. App. to Am. Mtn. to Compl, PAGEID 4209-17, ECF No. 136-1);[5] and

---

[3] APFA Policy, Sec. 7(G)(1).https://www.apfa.org/policy-manual/
[4] "Erik last week I responded to your email regarding our review of the Bob Ross documents." No emails from the week of August 31, 2020 to September 4, 2020 have been produced by Defendants.
[5] Some communications indicate redactions were made, while others appear as if altered from their original document. (*See* P. App. to Am. Mtn. to Compl, PAGEID 4209-17, ECF No. 136-1) (the vertical lines that indicate a "reply" message to an original email do not line up to indicate the area which contains the reply message to the original message); (*See* P. App. to Am. Mtn. to Compl, PAGEID 4209-17, ECF No. 136-1) (the white space at the top of the page with the email starting at the bottom of the page is not normal production of email communications).

(3) Documents or attachments referenced within the original email correspondence (*See* P. App. to Am. Mtn. to Compl, PAGEID 4203, ECF No. 136-1).[6]

These are a few examples of improper document production. Defendants are required to produce all relevant non-privileged responsive documents to Plaintiff's Requests for Production. In the interest of justice, the Court should compel Defendants to comply with this standard. Plaintiff is entitled to ask for documents for purposes of isolating and resolving factual disputes at trial. Additionally, documents must be produced whether Plaintiff possesses those documents or not. The purpose of the discovery process is to establish the facts and resolve elements and claims based on those facts.

Defendants argue that it produced documents responsive to Plaintiff's requests, however on a narrower time-frame and scope limited to the Confidential Memorandum. (*See* Dfts Resp. Am. Mtn. to Compl, PAGEID 4558, ECF No. 135). Defendants fail to produce documents Plaintiff proved exists. (*See* Dfts Resp. Am. Mtn. to Compl, PAGEID 4558, ECF No. 135). Additionally, communications from multiple APFA leaders, in particular Julie Hedrick current APFA National President, are missing from APFA's document production.

Plaintiff argues that Defendants orchestrated a plan to pursue the Ross Administration based on a political agenda—one which violates federal law. Motive, intent, and the overall plan to pursue parties based on their political agenda strikes at the heart of the LMRDA claims for free speech and free association. Defendants should be required to produce these documents as relevant, as Plaintiff did not solely contend a violation of due process in its petition, but also violations of free speech, and wrongful discipline in violation of LMRDA 29 U.S.C. §§ 411, and 529. However, Plaintiff needs the additional documents requested as Plaintiff believes these

---

[6] Susanne Bender references a ("... I have a binder I'll be bringing. ... I would prefer not to show them the sheet that you noted as Jeff's, as to me that's work product and like we discussed before, I'd like to leave Jeff out of it as much as possible.").

documents evidence Defendants' motivation to seek an accounting review from Woods, Stephens, and O'Neil, LLP and cite this to validate disciplinary charges and mar his reputation. Additionally, Plaintiff needs these documents to conduct a deposition of the witnesses and Defendants. Plaintiff requests the court to overrule Defendants and/or Woods, Stephens, and O'Neil objections and compel proper responses to Plaintiff's Subpoena.

**Counterargument: No Agreement to Limit Requests 2 and 3 Occurred between the Parties.**

Defendants' Response is the first time Defendants raised any arguments seeking Plaintiff to clarify the definition of Ross Administration. (*See* Dfts Resp. Am. Mtn. to Compl, PAGEID 4545-4548, ECF No. 148). The Ross Administration is defined as Robert "Bob" Ross, Eugenio Vargas, Marcy Dunaway (retired) and Nena Martin. The Ross Administration served from 2016-2018—during the period for which Defendants base their alleged counterclaim. During 2019-2022, the Ross Administration was subject to action by the union for those alleged violations occurring during 2016-2018 including disciplinary hearings. These are finite time periods and subject-matter that are relevant to the claims pending before this court. Plaintiff seeks discussion and evidence as to why no audit was conducted of Ross's exit payments made from 2018-2019. Additionally, Plaintiff seeks evidence of Defendants conspiracy and motivations in their pursuit of the Ross Administration—all of which are imperative to Plaintiff's claims.

**Counterargument: No Burden is Imposed on Defendants- E-Discovery Software**

Defendants continue to assert the argument that compliance imposes a heavy burden on APFA and Woods, Stephens, and O'Neil, LLP. This argument holds no merit. (*See* Dfts Resp. Am. Mtn. to Compl, PAGEID 4551-53, ECF No. 148). Modern-day email service providers and platform hosts maintain e-discovery software programs that allow for an easy search, recovery, review, organization, de-duplication, automatic privilege notations, and easy delivery of documents recovered from a business server. Microsoft and Google both maintain their own e-

8

discovery software that make search, recovery, review, and delivery of documents as easy as a Google search with assistance provided by the service provider directly.

APFA utilizes Microsoft Office 365 Elite E3 Licensing plan for all company emails, remote desktops, calendaring events, and all union business as seen according to the limited documents produced in discovery. (*See* P. 2d Mtn to Cmpl. PAGEID 4462-67, ECF No. 141-2). All Microsoft Office 365 programs can export data into a PST format—in particular Microsoft Outlook.[7] Microsoft 365 Enterprise E3 accounts have access to Microsoft Purview's e-Discovery software.[8] This program easily allows one to conduct a search of documents and easily export relevant documents based on the person, the keyword search terms, and/or the dates for purposes of compliance with Discovery during litigation.[9] Consequently, Defendants' Counsel lacks any valid reason not to comply with Plaintiff's .PST format request as it is not unduly burdensome or in any way costly.

Additionally, the costs are minimal for Woods, Stephens and O'Neil to upgrade their subscription with Google Workspace, which offers e-discovery software called Google Vault.[10] Assuming Woods, Stephens and O'Neil, LLP subscribes to the most basic plan that does not provide Google Vault, an upgraded annual subscription to utilize Google Vault would cost between $144-$216 for an annual subscription.[11] Plaintiff will assume the additional costs to ensure recovery and delivery of those documents pertinent to Plaintiff's subpoena requests.

---

[7] https://support.microsoft.com/en-us/office/introduction-to-outlook-data-files-pst-and-ost-222eaf92-a995-45d9-bde2-f331f60e2790
[8] https://www.microsoft.com/en-us/microsoft-365/enterprise/office365-plans-and-pricing
[9] https://learn.microsoft.com/en-us/purview/ediscovery
[10]https://workspace.google.com/products/vault/#:~:text=Vault%20is%20included%20with%20Google,no%20additional%20cost%20to%20you. WSO document discovery indicate that it subscribes to Google Workplace to host its website and maintain its business email accounts. The Court should note that Google Vault—the top-rated and most simple e-discovery software on the market today—is free with two of the three programs subscriptions offered by Google Workspace.
[11]https://workspace.google.com/products/vault/#:~:text=Vault%20is%20included%20with%20Google,no%20additional%20cost%20to%20you

## CONCLUSION

In closing, Plaintiff will reiterate that he asked for documents from 2016-current as the relevant time frame, and those documents and communication illustrating compliance with 502(a) of the LMRDA, documents and communications between APFA and WSO relating to the Ross Administration, and those documents and communications between APFA leadership disseminating emails or documents from WSO. WHEREFORE, PREMISES CONSIDERED, Plaintiffs request that this Court schedule this matter for a hearing to discuss the issues relating to discovery and ultimately grant his Motion to Compel Responses to the Plaintiff's First Requests for Production, and for such other relief as the Court deems proper.

THIS, the 27th day of November, 2023.

Respectfully submitted,

By: /s/ Kerri Phillips
Kerri Phillips, Esq.
Texas Bar No. 24065906
Phone: (972) 327-5800
Email: kerri@kdphillipslaw.com
KD PHILLIPS LAW FIRM, PLLC
6010 West Spring Creek Parkway
Plano, Texas 75024
Fax: (940) 400-0089
**ATTORNEY FOR PLAINTIFF**

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing **BRIEF IN SUPPORT OF MOTION TO COMPEL PRODUCTION OF DOCUMENTS** has been served in accordance with the Federal Rules of Civil Procedure to all counsel of record identified below on this the 27rd day of November, 2023.

By: /s/ Kerri Phillips
Kerri Phillips

Jeffrey Bartos
Charlette Matts
James Sanford