## IN THE UNITED STATES DISTRICT COURT FOR THE NORTHERN DISTRICT OF TEXAS FORT WORTH DIVISION

| | | |
|---|---|---|
| **EUGENIO VARGAS,** | § | |
| | § | |
| | § | **Civil Action No. 4:22-cv-430-Y** |
| **Plaintiff/Counterclaim** | § | |
| **Defendant,** | § | **Judge Terry R. Means** |
| | § | |
| **v.** | § | |
| | § | **(Relates to Motion Referred to** |
| **ASSOCIATION OF PROFESSIONAL** | § | **Magistrate Judge Cureton)** |
| **FLIGHT ATTENDANTS,** ***et al.,*** | § | |
| | § | |
| **Defendants/Counterclaim** | | |
| **Plaintiff.** | | |

## PLAINTIFF EUGENIO VARGAS'S REPLY TO RESPONSE TO MOTION TO QUASH DEFENDANTS' SECOND NOTICE TO TAKE DEPOSITION AND MOTION FOR A PROTECTIVE ORDER

COMES NOW EUGENIO VARGAS ("Vargas"), Plaintiff, pursuant to Federal Rule of Civil Procedure 26(c) and Local Rules 7.1, 7.2, 53.1 and 72.1, files this his Reply to Defendants' Response to the Motion to Quash Defendants, the Association of Professional Flight Attendants ("APFA" or "the union"), Julie Hedrick's and Erik Harris's (collectively "Defendants") Second Notice of Deposition of Plaintiff, Eugenio Vargas on January 11 2024; Motion for Protective Order, as follows:

1.      Plaintiff filed an initial Motion to Quash and Motion for a Protective Order on September 25, 2023 (ECF No. 118) wherein Plaintiff argued, among other things, that the discovery period should be extended, and depositions should be scheduled so as not to interfere with the union's National Officer's election being held from November 2023 to January of 2024. After entry of the Court's order extending discovery until February 29, 2024, Defendants' Counsel emailed stating that the Motion to Quash and Motion for Protective Order is now mooted based on the extension of the discovery period.  Plaintiff agreed seeing as depositions could be scheduled

after the union's elections in January of 2024. Consequently, Plaintiff withdrew his motion to cooperate to reduce those discovery disputes pending before the Court.

2.     On December 2, 2023, Plaintiff withdrew his Motion to Quash and Motion for a Protective Order upon request by Defendants as the extension of the discovery period mooted the issues contained therein. However, on December 4, 2023, Plaintiff received Defendants' Notice of Deposition scheduled for January 11, 2024—during the APFA election campaign. Plaintiff's original motion for a protective order sought to protect the integrity of the union's elections. Plaintiff argued that to avoid abuse and harassment of Plaintiff and Defendants depositions should be scheduled after January of 2024, upon completion of the APFA's National Officer election. Defendants scheduled depositions without conference, during the union elections, and upon conference oppose moving the depositions by a matter of weeks, to avoid the APFA National Officer's election. Plaintiff's asserts that Defendants scheduled the depositions to publicize, harass and abuse Plaintiff to undermine the integrity of the APFA election. Consequently, Defendants' opposition to rescheduling the depositions during February necessitated Plaintiff filing a second Motion to Quash and Protective Order.

3.     Plaintiff conferred with Defendants prior to his filing and proposed depositions during February. Defendants refused to reschedule the depositions in February arguing the dispositive motions deadline required their depositions be scheduled earlier. Plaintiff finds it necessary to seek the Court's assistance to protect the integrity of APFA's internal democratic elections. It is not appropriate to take depositions during APFA's election of new National Officers, which closes on January 26, 2024, and proposed February 27, 2024, as an alternative date.

4.     Plaintiff is opposed to having either Plaintiff or Defendants deposed during the APFA National Officers' election. The integrity of the union's internal democratic process and

right to free speech ensures a full and fair election as guaranteed by the LMRDA.  It is within the interest of Congress and federal law to ensure our actions do not impose additional harm.  A free and fair election ensures the union's functional democracy.  The potential harm to the union by allowing depositions at a time when it may affect the outcome of the union election would stifle free and fair electoral procedures, and result in harassment and abuse of Plaintiff by exploiting his testimony to mar those running for office aligned with his political faction.  Comparatively the risks of a three-week delay to conduct Plaintiff's deposition is minimal as Defendants will be allowed to depose Plaintiff during the discovery period.

5.      Plaintiff asks that the court Quash the pending Notice of Deposition of Plaintiff and allow depositions to take place during February of 2024 instead, after the union's voting period has closed and still within the current discovery period.

**November 15, 2023 Order Extends Discovery Period:**

6.      Defendants argue that the Order extending the discovery period resolved the issues relating to the pending Motion to Quash and Motion for a Protective Order.  This order allowed for depositions to be scheduled outside the union's election window by extending discovery—and in that respect did moot the original motion to quash and motion for a protective order.  However, upon receipt of a new Notice of Deposition scheduled on January 11, 2024, within the election period, Plaintiff revives his need for protection before this court.  The November 15, 2023, Order referenced partial resolution of the Notice of Objection to take Depositions and the Motion to Extend Discovery (ECF No. 117). Whereas the initial Motion to Quash and Motion for a Temporary Protective Order is an entirely different filing on an entirely different date— ECF No. 118.  The November 15, 2023, order cites partial resolution of ECF No.117, therefore the court entered no order resolving the issue relating to depositions and protection of Plaintiff from harassment and abuse.  At Defendants' request, and in the spirit of cooperation, Plaintiff withdrew his Motion to Quash and Motion for a

Temporary Protective Order seeing as conference would be required prior to either party seeking judicial intervention related to deposition conflicts.

**Political Agenda:**

7.      Defendants waste time and resources to pursue Plaintiff's deposition which Plaintiff has agreed to be deposed only 3 weeks later—the reason to insist on a deposition in January is the same reason Defendants pursue their claims before this court—a political agenda.  Defendants second attempt to schedule Plaintiff's deposition exemplifies Plaintiff's argument.  Defendants' agenda is to harass and abuse him for their own political gain.  The hope is to manipulate the outcome of the Union's National Officer election to mar Ross', and his supporters' reputation, many of whom are currently running.  It is another attempt to intimidate and silence this membership to garner political power so that, among other things, Defendants can control the outcome of this litigation.

8.      The current union leadership is concerned more with maintaining their political position, than with any resolution of these claims before this Court.  Defendants moved to stay discovery until after the resolution of their pending Motion to Dismiss and Summary Judgment. Plaintiff delayed his pursuit of discovery due to this Motion (ECF No. 169). Defendants make multiple promises for production of documents at a future date, and deliver production in a format unusable in court, or in a fragmented, altered, repetitious, and incomplete manner altogether.  These methods have delayed the discovery process and resolution of this matter before the court. Thereafter, Defendants argued Plaintiff is not entitled to discovery because he waited to pursue a Motion to Compel, when it was Defendants who sought to delay and stonewall any discovery efforts, not Plaintiff. Plaintiff made multiple offers to settle at the court-ordered Settlement Conference, including non-monetary resolutions to this action, and Defendants refused all offers without any counters to settlement citing that under federal law the union must pursue its claims against

Plaintiff—even if settlement is in the union's best interest. (ECF No. 80).  Defendants continue to harass and intimidate witnesses to the matter before this court. (*See* App. to Mtn to Quash, PAGEID 3892-3952; ECF No. 119-1). On a telephone conference, Plaintiff offers to substantially limit discovery produced by Woods, Stephens and O'Neil based on an adjustment to the applicable dates. Defendants misrepresent the offer to limit discovery by Plaintiff surrounding the creation and dissemination of the Confidential Memo.  Defendants' strategy is a stall-delay-deny approach to the discovery process altogether.

**Election Process Protection:**

9.      The union is undergoing its National Officer election process—an event that happens once every four years.  While Defendants argue for their substantial need to depose Plaintiff, the potential harm suffered during this election process greatly outweighs the need of Defendants to hold their depositions in January as opposed to February—a mere month later and within the discovery period.

10.     Defendants argue that Plaintiff's non-participation in the election process prohibits his need to quash the deposition.  This argument combines two separate issues: the first that APFA unlawfully denied his right to run for office, and the second that denying his right to run for office entitles APFA to take a deposition when and how it chooses.  Plaintiff is affiliated with Robert "Bob" Ross, a well-known leader and advocate against any union merger or affiliation.  This supports the argument that anyone running from his political faction could be harmed if also running for office.  There are even members running that were a part of his previous administration.

11.     Melissa Chinery-Burns—the charging party on behalf of the union against the Ross Administration—recently started an online blog dedicated to discussing her claims against the Ross Administration. (See App., pp. 25-26). Her most recent post argues that Nena Martin—a

candidate in the pending election for National Vice-President and a former member of the Ross Administration—is "just as Bad as Ross and Vargas." (*See* App., pp. 25-26). Ms. Chinery-Burns, who recently married General Counsel of the Association of Flight Attendants (the union seeking a merger with APFA)—brought charges against Eugenio Vargas, Robert "Bob" Ross and Nena Martin for Ross's for financial misconduct.  At Nena Martin's disciplinary hearing in the Fall of 2022, the Arbitrator dismissed all charges against Nena Martin based on admissions of misrepresentations by the charging party to the Executive Committee and Arbitrator.  Ms. Chinery-Burns continues to incite questions from multiple members about Plaintiff's depositions during a time when the candidates are campaigning for office. (*See* App., pp. 1-3).

12.    Democracy functions through the campaign and election process within any given union, and as held by the Supreme Court, LMRDA was designed to "guarantee free and democratic union elections similar to the model of our political elections." (*Marshall v. Local 1402, Int'l. Longshoremen's Ass'n of Tampa. Fla. and Vicinity AFL-CIO*, 617 F. 2d 96, 98 (5th Cir. 1980) (citing *Steelworkers v. Usery*, 429 U.S. 305, 97 S.Ct. 611, 50 L.Ed.2d 502 (1977)). A deposition of either Plaintiff or Defendants at any time is likely to be an incendiary event for this union membership. Protection of the union membership and the integrity of its internal democratic election process should be the priority, considering the damage incurred would stifle the rights of all 26,000 member of the union's right to free and fair elections under the LMRDA.

13.    Harassment and abuse of the Ross Administration has escalated since the filing of this matter.   Defendants argue that Plaintiff's factual assertions of harassment are unsupported by evidence.  Evidence of these allegations include (1) threats for union disciplinary charges against those who oppose AFA, (*See* App., pp. 8-9) (2) a copy of letters sent to multiple APFA members from the Chinery-Burns' legal counsel (*See* App., pp. 20-24), (3) evidence reported to the

American Airlines, Inc. Human Resources Department against those who oppose AFA (*See* App., pp. 4-7), (4) the APFA Resolution on Confidentiality (*See* App., pp. 27-28), and Chinery-Burns' blog post against the Ross Administration (*See* App., pp. 25-26). The Court should note that Defendants do not deny any facts Plaintiff asserts.

## **PRAYER**

**WHEREFORE, PREMISE CONSIDERED, Plaintiff** prays that his Motion to Quash Defendants' Second Notice of Deposition and Motion for Protective Order will be granted. It is important to note that this union is in a vulnerable state and this pending action could substantially affect its future. The cost of waiting until February to conduct depositions is minimal compared to the possible risk of harm to the internal union elections. It is just to protect against abuse of the union's democratic internal election processes. Plaintiff's complaint centers on one political faction's abuse of the union's authority to garner power over the other political faction. Defendants conduct confirms its political agenda. This Court must seek to protect the Plaintiff and those similarly victimized by the abuse and harassment suffered at the hands of their union leadership. This was the policy interest Congress sought through enacting the Labor Management Reporting and Disclosure Act, and now forms the basis of Plaintiff's plea for relief.

Plaintiff prays his Motion be granted and that the Court enter an order quashing the deposition notice and requiring depositions of Plaintiff be scheduled after the January elections are held, and for such other and further relief, either at law or in equity, to which Plaintiff may be justly entitled.

Respectfully submitted,
KD PHILLIPS LAW FIRM, PLLC

By:  /s/ Kerri Phillips
     Kerri Phillips
     Texas Bar No. 24065906
     Phone: (972) 327-5800
     Email: kerri@KDphillipslaw.com
     6010 W. Spring Creek Parkway
     Plano, Texas 75024
     Fax: (940) 400-0089
     **ATTORNEY FOR PLAINTIFF**

## <u>CERTIFICATE OF SERVICE</u>

I certify that true and correct copy of this document was sent to all counsel of record, hereunder listed via ECF filing on this the 19th day of December 2023.

Jeff Bartos
James Sanford
Charlette Matts

                              /s/ Kerri Phillips
                              Kerri Phillips